1  Jeff D. Friedman
   715 Hearst Avenue, Suite 202
2  Berkeley, CA  94710
   Telephone: (510) 725-3000
3  Facsimile:  (510) 725-3001
   jefff@hbsslaw.com
4
   Steve W. Berman (*pro hac vice pending*)
5  Robert F. Lopez (*pro hac vice pending*)
   HAGENS BERMAN SOBOL SHAPIRO LLP
6  1918 Eighth Avenue, Suite 3300
   Seattle, WA  98101
7  Telephone:  (206) 623-7292
   Facsimile:   (206) 623-0594
8  steve@hbsslaw.com
   robl@hbsslaw.com
9
   *Attorneys for Plaintiff and the Proposed Class*
10
   [*Additional counsel on signature page*]
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15  FREE RANGE CONTENT, INC., a California          No.
    corporation, on behalf of itself and all others
16  similarly situated,                             CLASS ACTION COMPLAINT

17                                  Plaintiff,      COMPLAINT FOR BREACH OF
                                                    CONTRACT, BREACH OF THE IMPLIED
18          v.                                      COVENANT OF GOOD FAITH AND FAIR
                                                    DEALING, UNJUST ENRICHMENT,
19  GOOGLE INC., a Delaware corporation,            VIOLATION OF CALIFORNIA UNFAIR
                                                    COMPETITION LAW, AND FOR RELIEF
20                                  Defendant.      PURSUANT TO THE CALIFORNIA
                                                    DECLARATORY JUDGMENT ACT AND
21                                                  THE FEDERAL DECLARATORY
                                                    JUDGMENT ACT
22
                                                    **DEMAND FOR JURY TRIAL OF ANY**
23                                                  **ISSUES SO TRIABLE**

24

25

26

27

28

CLASS ACTION COMPLAINT - 1
010450-11  691407 V1

1

**TABLE OF CONTENTS**

2

**Page**

3

I.      INTRODUCTION ........................................................................................1

4

II.     JURISDICTION ..........................................................................................2

5

III.    PARTIES .....................................................................................................3

6

IV.     RELEVANT FACTS....................................................................................3

7

        A.      Google's AdSense Program ...........................................................3

8

        B.      Plaintiff's and Proposed Class Members' Bitter Experiences with Google's
                AdSense Program .........................................................................5

9
10
        C.      Reports from an Anonymous, Self-Described Former Employee of Google
                Regarding Google's Alleged Practice of Wrongfully Withholding Payment from
                AdSense Publishers ......................................................................8

11

V.      CLASS ALLEGATIONS ...........................................................................10

12

VI.     CLAIMS FOR RELIEF..............................................................................13

13

        FIRST CAUSE OF ACTION  BREACH OF CONTRACT ...................13

14

        SECOND CAUSE OF ACTION  BREACH OF THE IMPLIED COVENANT OF
        GOOD FAITH AND FAIR DEALING .....................................................15

15

16

        THIRD CAUSE OF ACTION  UNJUST ENRICHMENT ......................16

17

        FOURTH CAUSE OF ACTION  VIOLATION OF THE UNFAIR COMPETITION
        LAW (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)..............................16

18

19

        FIFTH CAUSE OF ACTION  REQUEST FOR DECLARATORY RELIEF
        (CALIFORNIA DECLARATORY JUDGMENT ACT CAL. CIV. PROC. CODE § 1060) ...................18

20

        SIXTH CAUSE OF ACTION  REQUEST FOR DECLARATORY RELIEF
        (FEDERAL DECLARATORY JUDGMENT ACT 28 U.S.C. § 2201(a)) .......................................18

21

22

PRAYER FOR RELIEF..............................................................................................19

23

JURY TRIAL DEMANDED .......................................................................................19

24

25

26

27

28

CLASS ACTION COMPLAINT - i

010450-11  691407 V1

1        For its complaint against the defendant, plaintiff, on its own behalf and on behalf of all

2  others similarly situated, alleges as follows:

3                        **I.     INTRODUCTION**

4        1.     Google Inc. ("Google") owns and operates the AdSense advertising program.  By

5  way of this program, Google induces website operators to host advertisements on their websites in

6  exchange for the promise that Google will pay these website operators a share of the fees that

7  advertisers pay it.  Under the terms of Google's contracts with the operators of these hosting

8  websites, program participants earn money when visitors to their websites view or interact with the

9  ads that Google has placed there.

10        2.     The AdSense program is enormously popular.  This popularity translates annually to

11  billions of dollars payable to AdSense publishers – Google's parlance for website operators that

12  host its ads.  But as the plaintiff and many other publishers have found, Google often shuts down

13  AdSense accounts shortly before a periodic payment is due and then denies the publisher the

14  entirety of the expected payment, notwithstanding all the ads the publisher already has served to

15  visitors to its website during the payment period.

16        3.     This practice has sparked numerous bitter complaints detailed at various places on

17  the web.  For example, one self-described AdSense publisher stated the following: "It's common

18  knowledge among SEOs that AdSense tends to be disabled a few days before the supposed payout.

19  I haven't lost any big sum – only $2000 but I know one person that lost $40,000.  It was all

20  legitimate traffic coming straight from Google themselves, no click fraud no bought traffic etc.  PS:

21  I was using AdSense from 2008 to 2013 – over 5 years so it's not like only new users got banned."[1]

22        4.     It is Google's wrongful refusal to pay terminated AdSense publishers the monies

23  they have earned and are owed that is the subject of this lawsuit.  Google's actions constitute

24  breach of contract, breach of the implied covenant of good faith and fair dealing, unjust

25  enrichment, and violation of the California Unfair Competition Law.

26

27  _____

28       [1] https://news.ycombinator.com/item?id=7672910 (last accessed May 7, 2014).

CLASS ACTION COMPLAINT - 1

5.      Plaintiff, on behalf of itself and a proposed nationwide class, seeks damages based on, and/or restitution of, the sums wrongfully withheld from it and members of the proposed class; a declaration that Google's adhesive contract terms purportedly allowing it to withhold all AdSense funds owed to terminated publishers are unconscionable and unenforceable, and that they are invalid and unenforceable penalties in violation of California law governing liquidated damages; and injunctive relief to prevent Google from withholding payment to AdSense publishers under the circumstances complained of going forward.

## II.      JURISDICTION

6.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). Upon information and belief, based on Google's figures regarding the number of terminated publishers and its policy of withholding monies owed to these publishers upon termination, the amount in controversy in this proposed class action will exceed $5,000,000, exclusive of interest and costs.  Also, given the nationwide character of Google's AdSense program, plaintiff alleges upon information and belief that at least one member of the proposed class is a citizen of a state other than California, where Google is a citizen, and further, that more than two-thirds of the members of the proposed class are citizens of states other than California.

7.      This Court has personal jurisdiction over the defendant because the defendant is licensed to do business in the state of California and in fact conducts business in this state; also, Google's AdSense contract specifies that Google consents to personal jurisdiction "in the federal or state courts of Santa Clara County, California, USA ...."  (*See*, *e.g.*, https://www.google.com/adsense/localized-terms?rc=US&ce=1 (last accessed May 7, 2014).)

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as unlawful practices are alleged to have been committed in this federal judicial district, and the defendant resides and regularly conducts business in this district.

9.      Assignment to the San Jose division of this Court is appropriate because the defendant has its headquarters in Mountain View, Santa Clara County, California, which is located in this division of the Northern District of California.  Also, it is believed, and therefore alleged, that many members of the proposed class reside or do business in the San Jose division of the

CLASS ACTION COMPLAINT - 2

1   Northern District of California.  Furthermore, Google's AdSense contract specifies that claims such

2   as these will be "litigated exclusively in the federal or state courts of Santa Clara County,

3   California, USA …."  (*See*, *e.g.*, https://www.google.com/adsense/localized-terms?rc=US&ce=1

4   (last accessed May 7, 2014).)

### III.   PARTIES

6        10.   Plaintiff Free Range Content, Inc. ("Free Range Content") is a California

7   corporation that owns and operates Repost.us, a website where it formerly hosted ads for Google

8   advertisers under Google's AdSense program.

9        11.   Defendant Google is a Delaware corporation with its headquarters and principal

10   place of business in Mountain View, California.  Google is America's leader in Internet

11   advertising.  It was number 55 on last year's U.S. Fortune 500, with 2013 revenues of $55.2 billion

12   and profits of $10.737 billion.

### IV.   RELEVANT FACTS

14   **A.   Google's AdSense Program**

15        12.   Google's AdSense program affords Google, *inter alia*, the ability to sell to

16   advertisers web ads that will appear on various non-Google websites.  (*See*, *e.g.*,

17   https://www.google.com/adsense/www/en_US/tour/index.html (last accessed May 7, 2014).)

18        13.   Google contracts with operators of these websites to publish these ads in exchange

19   for a percentage of the sums paid by advertisers to place and run the ads.  Thus, Google promises

20   to pay publishers when visitors to the publishers' web properties view, click on, or otherwise

21   interact with these ads.  (*See*, *e.g.*, *id.*; *see also* Exs. A (true and correct copy of the current

22   AdSense Online Terms and Conditions, retrieved on May 20, 2014 from

23   https://www.google.com/adsense/localized-terms?rc=US&ce=1), ¶ 5 (promise to pay)[2]; B (true and

24   correct copy of the AdSense Online Standard Terms and Conditions for the early July 2012

25   timeframe, when plaintiff became an AdSense program participant, retrieved on May 20, 2014

---

26   [2] "Subject to this Section 5 and Section 10 of these AdSense Terms, you will receive a payment
27   related to the number of valid clicks on Ads displayed on your Properties, the number of valid
     impressions of Ads displayed on your Properties, or other valid events performed in connection
28   with the display of Ads on your Properties, in each case as determined by Google."  (*Id.*)

CLASS ACTION COMPLAINT - 3
010450-11  691407 V1

from the Internet Archive via the Wayback Machine

(https://web.archive.org/web/20120706155053/https://www.google.com/adsense/localized-terms)),

¶ 11 (promise to pay)[3]; and C (true and correct copy of the AdSense Online Terms of Service then

current when plaintiff's AdSense account was disabled on or about March 1, 2014, retrieved on

May 20, 2014 from the Internet Archive via the Wayback Machine

(https://web.archive.org/web/20140220205332/https://www.google.com/adsense/localized-terms)),

¶ 5 (promise to pay)[4].)

14.     Google contracts with AdSense publishers consist of non-negotiable, adhesive terms

of participation.  (*See generally* Exs. A, B, and C.)  These contracts link to other non-negotiated

Google documents containing other adhesive terms.

15.     Among these terms are provisions purportedly allowing Google to disable, *i.e.*,

terminate, publisher AdSense accounts for various reasons, at Google's discretion.  (*See*, *e.g.*,

Ex. A, ¶ 10; Ex. B, ¶¶ 6; Ex. C, ¶ 10.)

16.     Also among these terms are provisions purportedly allowing Google not to pay

publishers for monies due them on their AdSense accounts upon Google's disabling of those

accounts.  (*See*, *e.g.*, Ex. A, ¶¶ 5 ("Payments will be calculated solely based on our accounting.

Payments to you may be withheld to reflect or adjusted to exclude any amounts refunded or

credited to advertisers and any amounts arising from invalid activity, as determined by Google in

its sole discretion. . . ."), 10; Ex. B, ¶ 11 ("Google reserves the right to withhold payment or charge

back Your account due to any of the foregoing or any breach of this Agreement by You, pending

Google's reasonable investigation of any of the foregoing or any breach of this Agreement by

You . . . ."); Ex. C, ¶¶ 5 ("Payments will be calculated solely based on our accounting.  Payments

---

[3] "You shall receive a payment related to the number of valid clicks on Ads, the number of valid impressions of Ads, the number of valid completions of Referral Events initiated through Referral Buttons displayed in connection with your Property(ies), and/or other events performed in connection with the display of Ads on Your Property(ies), in each case as determined by Google for participants in the Program." (*Id.*)

[4] "Subject to this Section 5 and Section 10 of these AdSense Terms, you will receive a payment related to the number of valid clicks on Ads displayed on your Properties, the number of valid impressions of Ads displayed on your Properties, or other valid events performed in connection with the display of Ads on your Properties, in each case as determined by Google."  (*Id.*)

to you may be withheld to reflect or adjusted to exclude any amounts refunded or credited to advertisers and any amounts arising from invalid activity, as determined by Google in its sole discretion . . . ."), 10.)

17.     Google, by its own tally, has disabled a massive number of publisher accounts.  For example, in a January 17, 2014 post entitled "Inside AdWords, Google's official blog for news tips and information on AdWords" – a publication directed to the advertiser side of Google's advertising ecosystem – Google states that "by the end of 2013" it had "[r]emoved more than 250,000 ad-funded publishers' accounts for various policy reasons." (http://adwords.blogspot.com/2014/01/busting-bad-advertising-practices-2013.html?m=1 (last accessed May 7, 2014).)  Given Google's contractual terms purportedly permitting it to withhold payment to publishers with disabled accounts, and in light of the experience of the plaintiff in seeing this policy actually effected, the total of earned funds that Google has refused to pay its AdSense publishers could be enormous.

**B.     Plaintiff's and Proposed Class Members' Bitter Experiences with Google's AdSense Program**

**Plaintiff Free Range Content**

18.     Google has withheld monies due plaintiff Free Range Content under its AdSense program.

19.     Plaintiff owns the Repost content syndication service and the website Repost.us.  In or about July 2012, plaintiff became an AdSense publisher for pages served on various websites under its Repost.us brand.

20.     All went well until February 2014, when estimated earnings for ads by the plaintiff, as reported by Google, began to increase at a previously unseen rate.  Plaintiff was took note of this earnings spike and self-reported it to Google, asking for help to ascertain why it was happening and also seeking aid to correct it as needed.  Additionally, plaintiff attempted to identify the reason for the spike on its own.

CLASS ACTION COMPLAINT - 5

010450-11  691407 V1

21.     Shortly after the plaintiff reached out to Google, it received a note asking it to set up an appointment to speak with a representative from the AdSense team.  Plaintiff did as requested, scheduling a call for March 6, 2014.

22.     At the end of February 2014, Google issued a report stating that plaintiff's estimated earnings for the covered period were over $40,000.  To the plaintiff, it seemed unlikely, based on its history with the program, that the number was correct; it seemed far too high.  But certainly the plaintiff was due some substantial portion of those estimated earnings, amounting to several thousands of dollars — perhaps in the $8,000 to $11,000 range — for AdSense ads it had dutifully served during that final period before Google disabled its account.  Indeed, Google's own estimate of plaintiff's payable earnings, issued at or around the beginning of March 2014, put the number for the covered period at over $11,000.

23.     Then on March 4, 2014 — two days before the March 6, 2014 call with the AdSense representative was to occur — plaintiff received word from the AdSense program that Google had disabled its account.  Google offered no explanation, other than a reference to its supposed detection of "invalid activity in [plaintiff's] AdSense account."  As Google put it: "We're limited in the amount of information we can provide about your specific violation.  We understand this can be frustrating for you, but we've taken precautionary measures because intentional violators can use this information to circumvent our detection systems."

24.     Plaintiff was shocked to hear of its account termination, given that it had itself alerted Google to a potential problem with its account and sought in good faith to identify and correct whatever problem there actually might be.  It promptly filed in writing the appeal referenced in the termination notice.  By way of this appeal, plaintiff sought not only reinstatement of its account but the earnings owed it and withheld by Google.

25.     Also, plaintiff's telephone conference with the Google AdSense representative took place as planned on March 6, 2014.  During this call, the AdSense representative sounded sympathetic but made it plain that he had no control over the matter.  The representative also indicated that plaintiff would be paid its earnings for the last payment period only if Google

granted its appeal.  Shortly thereafter, plaintiff received a terse letter from Google, dated March 7, 2014, rejecting its appeal.

26.     Now, having disabled plaintiff's AdSense account, Google refused to pay plaintiff *any* of the sums it owed plaintiff for having served many thousands of AdSense ads on Repost.com-branded webpages during the last pay period.  Google made no attempt to limit what it withheld, whether based on an assessment of the time-scope of the apparent problem with plaintiff's AdSense account, the number of pages and ads that may have been affected, or otherwise — Google simply withheld *all* of plaintiff's earnings for the last payment period.

**Other Publishers, Similar Experiences**

27.     Google's wrongful refusal to pay publishers terminated from the AdSense program *any* of the sums owed to them for serving ads since the last program payment has spawned a plethora of bitter complaints detailed at various places on the web.  For example, one self-described AdSense publisher stated the following: "It's common knowledge among SEOs that AdSense tends to be disabled a few days before the supposed payout.  I haven't lost any big sum – only $2000 but I know one person that lost $40,000.  It was all legitimate traffic coming straight from Google themselves, no click fraud no bought traffic etc.  PS:  I was using AdSense from 2008 to 2013 – over 5 years so it's not like only new users got banned." (https://news.ycombinator.com/item?id=7672910 (last accessed May 7, 2014.)  Another reported in part as follows:

> Oh joy, I just got this dreaded email this morning. I've spent since December creating 85 niche sites and generated around $400 so far, none of which I'm going to receive now because my account is disabled.
>
> I'm just starting to go through my sites and try to figure out WHY and here are a couple of things I have noticed so far.
>
> On my latest batch of 11 sites I forgot to disable adsense on the privacy policy and contact page (i only activated adsense on these sites 24 hours ago so they are my prime suspects)
>
> On some of my earliest sites I only made the contact page available via the privacy policy page, so I'll need to improve the navigation on those sites.

CLASS ACTION COMPLAINT - 7

010450-11  691407 V1

Apart from that, I honestly can't see why my entire account was killed. I was receiving normal amounts of clicks based on the traffic I was getting so I don't think I had invalid click activity. . . .

(http://empireflippers.com/adsense-account-disabled/ (last accessed May 8, 2014).)  Numerous

similar reports abound.

**C.     Reports from an Anonymous, Self-Described Former Employee of Google Regarding Google's Alleged Practice of Wrongfully Withholding Payment from AdSense Publishers**

28.     On April 29, 2014, an anonymous, self-described "former Google employee" took to the web to "leak information to the public of what [he or she] witnessed and took part in while being an employee."  (http://pastebin.com/qh6Tta3h (last accessed May 7, 2014).)  The individual wrote that "[his or her] position was to deal with AdSense accounts, more specifically the accounts of publishers (not advertisers)."  (*Id.*)  The individual indicates that he or she is keeping his or her identity a secret for now, and he or she did not reveal the subject information sooner, because of "[h]aving signed many documents such as NDA's and non-competes," and out of fear of "many repercussions …., especially in the form of legal retribution from Google."  (*Id.*)

29.     The individual goes on to describe an alleged first-quarter 2009 Google AdSense division meeting in which "division higher ups" participated.  (*Id.*)  In this "very long meeting," according to this individual, there was discussion to the effect that "Google had suffered some very serious losses in the financial department several months earlier."  (*Id.*)  The upshot was that Google was going to "'carry out extreme quality control on AdSense publishers.'"  (*Id.*)  This was said to mean that "AdSense itself hands out too many checks each month to publishers, and that the checks were too large and that needed to end right away."  (*Id.*)  Other "smaller meetings" reportedly followed, and "the word was," according to this individual, that "they [Google] were planning to cut off a large portion of publisher's payments."  (*Id.*)

30.     Purportedly, "the first big batch of bans happened in March of 2009.  The main reason, the publishers made too much money.  But something quite devious happened."  (*Id.*)  According to this individual, "[w]e were told to begin banning accounts that were close to their payout period (which is why account bans never occur immediately after a payout).  The purpose

CLASS ACTION COMPLAINT - 8

was to get that money owed to publishers back to Google AdSense, while already having served up the ads to the public."  (*Id*.)

31.     According to this individual, "[f]rom 2009 to 2012 there were many more big batches of bans.  The biggest of all banning sessions occurred in April 2012.  The AdSense division had enormous pressure from the company to make up for financial losses, and for Google's lack of reaching certain internal financial goals for the quarter prior."  (*Id*.)  Purportedly, Google AdSense employees "were threatened with job losses if we didn't enforce the company's wishes."  (*Id*.)

32.     After "[s]everal publishers [reportedly] launched legal actions which were settled," Google, according to this individual, "came up with a new policy."  (*Id*.)  This policy purportedly was "officially called AdSense Quality Control Color codes (commonly called AQ3C by employees)."  (*Id*.).  According to this individual, "[t]hose publisher's [sic] that could do the most damage by having their account banned were placed in a VIP group that was to be left alone.  The rest of the publishers would be placed into other groupings accordingly."  (*Id*.)  He or she also states that "[t]he new AQ3C also implemented 'quality control' quotas for the account auditors, so if you didn't meet the 'quality control' target (aka account bans) you would be called in for a performance review."  (*Id*.)

33.     The author of the post goes on to describe four groups, segregated by color, requiring various levels of attention from AdSense employees.  These purportedly ranged from urgent (red) to VIP (green), the latter of which he or she describes as the "'untouchables.'"  (*Id*.)  AdSense publishers in these four groups purportedly were subject to differing degrees of scrutiny, with publishers placed in the three non-green groups being subject to "ban[]s" for various "reason[s]," (*id*.)  All bans were to "occur as close to a payout period as possible with the most amount of money accrued," according to the anonymous poster.  (*Id*.)

34.     The individual goes on to write of a purported scheme whereby Google also used skewed "Google Analytics" data to bilk publishers out of some or all of the money owed them. (*See id*.)

35.     Google has denied these allegations made by the anonymous poster.  (*E.g.*, http://www.zdnet.com/adsense-leak-controversy-heats-up-as-google-denies-favoritism-theft-allegations-7000028913/ (last accessed May 7, 2014).)

36.     An individual purporting to be the same anonymous poster has replied to Google's denial.  (http://pastebin.com/DXTu8Mcm (last accessed May 20, 2014).)  This individual purports to take back nothing from the previous post and claims to "have communications, … files, … lists, … [and] names."  (*Id.*)  The individual indicates that he or she will release "it [his or her information and material] to the legal representatives of the class action lawsuit against Google in regards to AdSense," if such an action is brought.  (*Id.*)

37.     True and correct copies of the original April 29, 2014 post, and the second referenced post, dated April 30, 2014, are attached as Exhibits D and E, respectively.

38.     As of the date of this complaint, plaintiff cannot confirm the veracity of the allegations made by the individual or individuals in these two posts.  If true, the posts could help to illuminate why Google took such harsh and unfair action against the plaintiff, notwithstanding its good faith efforts to comply with Google's policies.  They also could help to explain why so many publishers have complained of similar actions on the part of Google.  But in any event, if the information in the referenced two posts does not prove to be true either in whole or part, Google nonetheless has behaved unlawfully in refusing to pay publishers, including the plaintiff, sums earned by them for serving AdSense ads in the period prior to Google's disabling of those publishers' accounts.

## V.     CLASS ALLEGATIONS

39.     Plaintiff brings this action under Fed. R. Civ. P. 23(b)(1), (2), and (3).

40.     Plaintiff brings this action on behalf of itself and the following class, for damages, declaratory, and injunctive relief:

> All U.S. Google AdSense publishers whose AdSense account was disabled or terminated, and whose last earned AdSense program payment was withheld in its entirety, and permanently, by Google.

Excluded from this proposed class is the defendant; defendant's affiliates and subsidiaries; defendant's current or former employees, officers, directors, agents, and representatives; and the

CLASS ACTION COMPLAINT - 10

district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members.  Plaintiff will seek to amend this proposed class as necessary, or to add a class or classes as necessary, in order to obtain all the relief sought by way of this complaint.

41.     **Numerosity:**  The exact number of the members of the proposed class is unknown and is not available to the plaintiff at this time, but, upon information and belief, the class will consist of many tens or even hundreds of thousands of members, such that individual joinder in this case is impracticable.

42.     **Commonality:**  Numerous questions of law and fact are common to the claims of the plaintiff and members of the proposed class.  These include, but are not limited to:

a.     Whether Google withholds earned funds from publishers whose accounts it disables or terminates, purportedly under terms of its AdSense contracts with those publishers;

b.     Whether terms of Google's AdSense contracts purportedly giving Google the right to withhold earned funds from website publishers participating in its AdSense program are unconscionable and unenforceable;

c.     Whether the terms of Google's AdSense contracts purportedly giving Google the right to withhold earned funds from website publishers participating in its AdSense program are actually liquidated damages terms that set forth penalties in violation of California law on liquidated damages, such that they are unenforceable;

d.     Whether Google has breached its AdSense contracts with publishers by refusing to pay them monies earned for serving ads on their websites;

e.     Whether Google has breached the implied covenant of good faith and fair dealing in administering its AdSense contracts in and following termination actions with its AdSense publishers;

f.     Whether plaintiff and members of the proposed class are entitled to declaratory relief with respect to the illegality of the terms of Google's AdSense contracts insofar as they purport to allow Google to withhold monies earned from AdSense program publishers, and injunctive relief in order to halt that unlawful practice, and whether plaintiff and the proposed class are entitled to their attorneys' fees, costs, and expenses for securing such relief;

g.      Whether plaintiff and members of the proposed class are entitled to any damages or restitution, including payments of AdSense program payments wrongfully withheld from them by Google, and to their attorneys' fees, costs, and expenses related to any recovery of such monetary relief; and

h.      Whether plaintiff and members of the proposed class are entitled to any damages or restitution incidental to the declaratory or injunctive relief they seek, and to their attorneys' fees, costs, and expenses related to any recovery of such monetary relief.

43.      **Typicality:**  Plaintiff's claims are typical of the claims of the members of the proposed class.  The factual and legal bases of Google's liability are the same and resulted in injury to plaintiff and all of the other members of the proposed class.

44.      **Adequate representation:**  Plaintiff will represent and protect the interests of the proposed class both fairly and adequately.  Plaintiff has retained counsel competent and experienced in complex class-action litigation.  Plaintiff has no interests that are antagonistic to those of the proposed class, and its interests do not conflict with the interests of the proposed class members it seeks to represent.

45.      **Prevention of inconsistent or varying adjudications:**  If prosecution of a myriad of individual actions for the conduct complained of were undertaken, there likely would be inconsistent or varying results.  This would have the effect of establishing incompatible standards of conduct for the defendant.  Certification of plaintiff's proposed class would prevent these undesirable outcomes.

46.      **Injunctive and declaratory relief:**  By way of its conduct described in this complaint, the defendant has acted on grounds that apply generally to the proposed class.  Furthermore, the defendant purports to apply common contractual terms in effecting the actions complained of with respect to members of the proposed class.  Accordingly, the injunctive and declaratory relief requested are appropriate respecting the class as a whole.

47.      **Predominance and superiority:**  This proposed class action is appropriate for certification.  Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all

CLASS ACTION COMPLAINT - 12

members is impracticable.  Even if members of the proposed class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter.  Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court.  Further, uniformity of decisions will be ensured.

<strong>VI.    CLAIMS FOR RELIEF</strong>

<strong>APPLICATION OF CALIFORNIA LAW</strong>

48.    Plaintiff's state-law claims in this matter, and those of the proposed class, are governed by California law per the terms of Google's AdSense contracts.  (Ex. A, ¶ 14; Ex. B, ¶ 17; Ex. C, ¶ 14.)

<strong>FIRST CAUSE OF ACTION</strong>

<strong>BREACH OF CONTRACT</strong>

49.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

50.    Plaintiff and members of the proposed class entered into contracts with Google regarding their participation in Google's AdSense program.  (*See* Exs. A, B, and C.)

51.    These AdSense contracts contain terms promising that Google will pay publishers for, *inter alia*, serving ads on their websites sold by Google to various advertisers.  (Ex. A, ¶ 5; Ex. B, ¶ 11; Ex. C, ¶ 5.)

52.    Plaintiff and publisher-members of the proposed class have performed under the AdSense contract by, *inter alia*, serving the subject ads on their websites.  But in turn, Google, purportedly relying on other terms of the contracts, refuses to pay these publishers funds already owed them upon its disabling of their accounts.

53.    The contractual terms purporting to permit Google to withhold payment of funds owed to publishers whose accounts it disables, *see* Ex. A, ¶¶ 5, 10, Ex. B, ¶ 11, and Ex. C, ¶¶ 5, 10, which Google reads and applies as permitting it to withhold such funds in their entirety, are unconscionable.  Accordingly, they are unenforceable.  *See* CAL. CIV. CODE § 1670.5(a).  These

CLASS ACTION COMPLAINT - 13

010450-11  691407 V1

oppressive terms appear in contracts of adhesion that were foisted upon small businesses and individuals with no bargaining power by a giant and powerful corporation, Google, that drafted them and presented them as a take-it-or-leave-it proposition. There was no negotiation, and there was an absence of meaningful choice. Furthermore, these terms are so one-sided as to shock the conscience; they are harsh and oppressive in that they purport, according to Google itself, to give it the right to withhold upon disabling of a publisher's AdSense account *all* unpaid sums already earned by the publisher for having served AdSense advertisements on its website(s) in the period prior to account termination, however limited in scope or time the supposed offense or policy violation might have been. As such, these terms are unconscionable and, therefore, unenforceable. *See id.*

54. Furthermore, these terms constitute invalid provisions for liquidated damages. CAL. CIV. CODE § 1671(b). Under California law governing liquidated damages provisions, the terms in question constitute penalties in that the sums Google can purportedly withhold from publishers, *i.e.*, *all* sums earned by them for serving AdSense ads in the period prior to termination of their accounts, bear no reasonable relationship to any actual damages or injury that Google might have suffered from the supposed breach of the AdSense contracts by publishers. No matter how limited the supposed offense, Google can (and does) refuse to pay all the funds owed, notwithstanding all the performance on the part of the publisher in the payment period prior to Google's disabling of its account. Thus, these terms were unreasonable under the circumstances existing at the time the contract was made, rendering them invalid and unenforceable. *See id.*

55. With these payment-withholding terms stricken from the contracts as unenforceable, Google's liability to plaintiff and the proposed class for breach of contract is stark.

56. Plaintiff and members of the proposed class have been damaged by Google's breach of contract in the amount of sums owed to them but not paid when their AdSense accounts were disabled, together with pre-judgment interest.

**SECOND CAUSE OF ACTION**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

57.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

58.     There exists in every contract, including Google's AdSense agreements with the plaintiff and members of the proposed class, an implied covenant of good faith and fair dealing.

59.     Google violated this covenant by terminating the plaintiff's AdSense agreement for purported violations of its policies, even though the plaintiff endeavored at all times to comply with Google's policies and itself brought potential issues to Google's attention so that it could resolve them to Google's satisfaction.  Next, Google compounded its violation of the covenant by withholding *all* sums payable to the plaintiff for ads already served on its website during the period prior to its account being disabled.  Google made no effort whatsoever to limit the funds it refused to pay to the plaintiff in any way.  For example, Google did not limit the funds it withheld to ads appearing on specific webpages, nor did it limit its action to a specific time period when activity that purportedly violated its policies had occurred.  Instead, Google refused to pay anything to plaintiff for the final pay period.  Upon information and belief, other members of the proposed class, have suffered similar fates and violations of the covenant.

60.     As alleged in the preceding cause of action, Google's contractual terms purportedly allowing it to refuse to pay publishers funds already earned at the time of disablement of their accounts are unenforceable because they are unconscionable and invalid liquidated damages provisions.  Accordingly, it is with respect to the remainder of the AdSense contract terms, including those requiring payment for ads served, *see* Ex. A, ¶ 5, Ex. B, ¶ 11, and Ex. C, ¶ 5, that Google has breached the implied covenant of good faith and fair dealing.

61.     Plaintiff and members of the proposed class have been damaged by Google's breach of the implied covenant of good faith and fair dealing in the amount of sums owed to them but not paid when their AdSense accounts were disabled, together with pre-judgment interest.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

62.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

63.    To the detriment of plaintiff and the proposed class, Google has been and continues to be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged herein.  More specifically, Google has been unjustly benefited by retaining, purportedly on the basis of unconscionable, invalid, and unenforceable AdSense contract terms, monies due and payable to publishers, including the plaintiff and members of the proposed class, for serving on their websites advertisements sold by Google to various advertisers.

64.    As between the plaintiff and the proposed class on one hand, and Google on the other, it would be unjust for Google to retain the benefits attained by its wrongful actions. Moreover, even if Google remitted some or all of the withheld funds to its advertisers, it did so by its wrongful choice, to the publishers' detriment, after first wrongfully choosing to withhold all of the sums payable to publishers when it terminated their accounts.  Thus, Google remains liable to plaintiff and members of the proposed class for these funds.  Accordingly, plaintiff and members of the proposed class seek full restitution of the referenced sums which Google withheld from them and by which Google was unjustly enriched, together with pre-judgment interest, or the value of the benefit by which Google was unjustly enriched, based on the wrongful conduct alleged herein.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW
#### (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)

65.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

66.    Plaintiff brings this claim on its own behalf and on behalf of each member of the proposed nationwide class described above.

67.     California's Unfair Competition Law ("UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice.  CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

68.     Google has engaged in, and, upon information and belief, continues to engage in, acts of unlawful and unfair business acts and practices prohibited by California's UCL.  These acts include the inducing of AdSense publishers to serve ads on their websites for Google advertisers on the promise of payment to the publishers of a share of the money paid to Google by the advertisers for that service; causing publishers to serve those ads on their websites; disabling publisher accounts before monies earned for serving those ads are due to be paid; and then withholding not some, but *all*, of the funds due to the publishers for serving ads during the final payment period, without any attempt to limit, let alone rationally limit, the sum withheld.

69.     Google's conduct has harmed plaintiff and members of the proposed class.  Despite publishers' actions, including those of the plaintiff, to comply with Google's policies and to act in good faith in response to any notices from Google of policy infringements, Google refuses to pay publishers, including the plaintiff, what is owed them for serving ads during the period prior to disabling the publishers' accounts.  It simply withholds all the monies due, however limited in scope or time a purported policy violation, or a publisher's supposed offense, may be.

70.     Google so acts on the basis of contractual terms purportedly permitting such conduct, but which actually violate California law (a) making unlawful and unenforceable contractual terms that are unconscionable; and (b) rendering unlawful and unenforceable invalid provisions for liquidated damages.  *See* CAL. CIV. CODE § 1670.5(a); CAL. CIV. CODE § 1671(b). Furthermore, Google's actions are patently unfair; as described above, Google withholds all monies due to publishers for performance already rendered when Google terminates the publishers' accounts, no matter how limited in scope or time the supposed offense identified by Google that led to termination.  Google's unlawful and unfair business acts and practices as described herein demonstrate unfair competition in violation of California's UCL.  *See* CAL. CIV. CODE § 17200 ("[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice . . . .").

CLASS ACTION COMPLAINT - 17
010450-11  691407 V1

71.     Under the UCL, plaintiff and the proposed class are entitled to restitution of the monies owed them for their performance under the AdSense program, but retained by Google wrongfully, together with pre-judgment interest, and to an injunction barring Google from withholding in the future all such funds owed to AdSense publishers whose accounts it disables.

**FIFTH CAUSE OF ACTION**

**REQUEST FOR DECLARATORY RELIEF**
**(CALIFORNIA DECLARATORY JUDGMENT ACT CAL. CIV. PROC. CODE § 1060)**

72.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

73.     Google's contractual terms purportedly permitting it to withhold all funds owed to AdSense publishers when Google disables their AdSense accounts violate California law as set forth herein.  As alleged herein and otherwise, these contractual terms are (a) unconscionable and (b) constitute invalid provisions for liquidated damages.  Accordingly, they are unenforceable. *See*, *e.g.*, CAL. CIV. CODE § 1670.5(a); CAL. CIV. CODE § 1671(b).  Yet Google purports to rely on these terms in withholding funds from AdSense publishers; accordingly, there is an actual controversy between the plaintiff and class members on the one hand, and Google on the other.

74.     Pursuant to CAL. CIV. PROC. CODE § 1060 and otherwise, plaintiff and members of the proposed class are entitled to an order declaring these terms unconscionable, invalid, and unenforceable as against them and all AdSense publishers.

**SIXTH CAUSE OF ACTION**

**REQUEST FOR DECLARATORY RELIEF**
**(FEDERAL DECLARATORY JUDGMENT ACT 28 U.S.C. § 2201(a))**

75.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

76.     Google's contractual terms purportedly permitting it to withhold all funds owed to AdSense publishers when Google disables their AdSense accounts violate California law as set forth herein.  As alleged herein and otherwise, these contractual terms are (a) unconscionable and (b) constitute invalid provisions for liquidated damages.  Accordingly, they are unenforceable. *See*, *e.g.*, CAL. CIV. CODE § 1670.5(a); CAL. CIV. CODE § 1671(b).  Yet Google purports to rely on

CLASS ACTION COMPLAINT - 18

1   these terms in withholding funds from AdSense publishers; accordingly, there is an actual

2   controversy between the plaintiff and class members on the one hand, and Google on the other.

3          77.     Pursuant to 28 U.S.C. § 2201(A) and otherwise, plaintiff and members of the

4   proposed class are entitled to an order declaring these terms unconscionable, invalid, and

5   unenforceable as against them and all AdSense publishers.

**PRAYER FOR RELIEF**

7          WHEREFORE, plaintiff respectfully requests the following relief:

8          A.      That the Court certify this case as a class action on the nationwide basis requested,

9   and that it appoint plaintiff as class representative and its counsel to be class counsel;

10         B.      That the Court award it and the proposed class all appropriate relief, including

11  monetary relief, whether by way of restitution or damages, together with pre-judgment interest at

12  the highest rate permitted by law, as well as injunctive relief requiring that Google cease the

13  practices with respect to its AdSense program complained of herein, and declaratory relief,

14  adjudging such practices and the contractual terms upon which Google purports to rely unlawful

15  and unenforceable, in addition to recovery of its attorneys' fees, costs, and expenses;

16         C.      That the Court grant it and the proposed class such additional orders or judgments as

17  may be necessary to redress or prevent the unlawful practices complained of herein; and

18         D.      That the Court award it and the proposed class such other, favorable relief as may be

19  available and appropriate under federal or state law, or at equity.

**JURY TRIAL DEMANDED**

21         Plaintiff demands a trial by jury on all issues so triable.

22  DATED:  May 20, 2014                    HAGENS BERMAN SOBOL SHAPIRO LLP

23                                          By _____/s/ Jeff D. Friedman_____
                                                   Jeff D. Friedman
24                                          715 Hearst Avenue, Suite 202
                                            Berkeley, CA  94710
25                                          Telephone:  (510) 725-3000
                                            Facsimile:  (510) 725-3001
26                                          jefff@hbsslaw.com

27

28

CLASS ACTION COMPLAINT - 19

010450-11 691407 V1

Steve W. Berman (*pro hac vice pending*)
Robert F. Lopez (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

LEVETOWN & JENKINS, LLP

By _____*/s/ John Jenkins*_____
            John Jenkins

John Jenkins (CA Bar No. 161959)
Levetown & Jenkins, LLP
4675 MacArthur Court, Suite 1470
Newport Beach, CA 92660
Telephone:  (866) 237-1014
Facsimile:  (866) 278-2973
john@levjen.com

Andrew Levetown
Levetown & Jenkins, LLP
One Metro Center
700 12th Street, N.W., Suite 700
Washington, DC  20005
Telephone:  (202) 379-4899
Facsimile:  (866) 278-2973
alevetown@levjen.com

*Attorneys for Plaintiff and the Proposed Class*