COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>            v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>                     Defendant. | Case No.  5:14-cv-02329-BLF<br><br>**Defendant Google Inc.'s Motion to Dismiss First Amended Class Action Complaint**<br><br>**F.R.C.P. 12(b)(6)**<br><br>Date:          January 22, 2015<br>Time:          9:00 am<br>Courtroom:  3<br>Judge:         Hon. Beth Labson Freeman<br>Trial Date:   Not Yet Set |

Cooley LLP
Attorneys At Law
San Francisco

**Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF**

# Table of Contents

**Page**

I.    INTRODUCTION ............................................................................................ 2

II.   STATEMENT OF FACTS ................................................................................. 4

    A.    Google's AdSense service provides website publishers with a free way to make money from advertisements placed on their sites .......................... 4

    B.    Publishers' compliance with the AdSense Terms of Service is critical to protect the integrity of the AdSense ecosystem .................................... 4

    C.    Plaintiffs agreed to the AdSense Terms and were terminated for breach ............. 7

    D.    The AdSense Terms govern Google's and Plaintiffs' rights and obligations ........ 9

        1.    Terms Regarding Invalid Clicks .................................................... 9

        2.    Terms Regarding Policy Violations (Content and Format Restrictions) ........................................................................ 10

        3.    Terms Regarding Termination For Click Fraud and Policy Violations ...................................................................... 11

        4.    Terms Regarding Dispute Resolution ............................................ 12

    E.    Plaintiffs sued Google ........................................................................ 12

III.  APPLICABLE STANDARDS .......................................................................... 12

IV.   ARGUMENT .............................................................................................. 13

    A.    Plaintiffs fail to state a claim for breach of contract (Count I) ..................... 13

        1.    Plaintiffs' conclusory claims of performance of the AdSense Terms are insufficient and at odds with other allegations in the FAC ................ 13

            a.    FRC repeatedly violated the AdSense Terms .............................. 13

            b.    The other Plaintiffs' webpages show multiple policy violations ...................................................................... 14

        2.    Terms that Plaintiffs do not mention, much less challenge, preclude a finding that Google breached or that Plaintiffs have damages .............. 16

        3.    The TOS terms that Plaintiffs do challenge are neither unconscionable nor an impermissible liquidated damages provision. (All Plaintiffs) ........................................................................ 17

            a.    The AdSense Terms are not unconscionable as a matter of law ...................................................................... 17

                (1)    Plaintiffs cannot establish procedural unconscionability .......................................................... 17

                (2)    Plaintiffs cannot establish substantive unconscionability .......................................................... 21

            b.    Prohibitions against liquidated damages do not apply here ......... 23

                (1)    There is no liquidated damages provision in the Terms ...................................................................... 23

                (2)    Even if the challenged provision were a liquidated damages provision, it would be enforceable .................... 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

**Table of Contents**
**(continued)**

Page

    4.    Plaintiffs Chose and Simpson Waived Their Claims Under the Terms .................................................................................................... 25

B.    The AdSense Terms preclude Plaintiffs' claim for breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) ............................................ 26

C.    Plaintiff fails to state a claim for unjust enrichment (Count III) ......................... 27

D.    Plaintiffs fail to state a claim under the UCL (Count IV) ................................... 28

    1.    Plaintiffs lack standing to sue under the UCL ........................................ 28

    2.    The facts alleged state no claim under the UCL's unlawful prong .......... 29

    3.    Plaintiffs allege no facts stating a claim under the UCL's unlawful prong ........................................................................................................ 29

E.    Plaintiffs fail to state a claim for accounting (Count V) ..................................... 30

F.    Plaintiffs fail to state a claim for declaratory relief (Counts VI and VII) ............ 30

V.    CONCLUSION ............................................................................................................... 30

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**DEF. GOOGLE INC.'S MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**
**CASE NO. 5:14-CV-02329-BLF**

# TABLE OF AUTHORITIES

**Page**

CASES

*ABI, Inc. v. City of L.A.*,
153 Cal. App. 3d 669 (1984).................................................................................................23

*Am. Software, Inc. v. Ali*,
46 Cal. App. 4th 1386 (1996) ...............................................................................18, 21, 22

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ............................................................................................................17

*Avila v. Countrywide Home Loans*,
No. 10-cv-5485, 2010 WL 5071714 (N.D. Cal. Dec. 7, 2010)............................26, 29

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ...........................................................................................29

*Beasley v. Wells Fargo Bank, N.A.*,
235 Cal. App. 3d 1383 (1991)..............................................................................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................12

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) ...........................................................................17, 19, 20, 29

*Berenblat v. Apple, Inc.*,
No. 08-cv-4969, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)..................................19

*Bionghi v. Metro. Water Dist. of S. Cal.*,
70 Cal. App. 4th 1358 (1999)..............................................................................................27

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*,
216 Cal. App. 4th 1249 (2013) ...........................................................................................26

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005)..............................................................................................13

*Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*,
No. 11-cv-0858, 2012 WL 928412 (S.D. Cal. Mar. 19, 2012) ....................18, 19, 21

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371, 1395 (1990)..........................................................................26, 27

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

**TABLE OF AUTHORITIES**
(continued)

Page

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ...........................................................................27

*Cornejo v. Spenger's Fresh Fish Grotto*,
   No. 09-cv-5564, 2010 WL 1980236 (N.D. Cal. May 17, 2010).............................19

*Craigslist, Inc. v. Naturemarket, Inc.*,
   694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..............................................18

*Day v. Microsoft Corp.*
   No. C13-478-RSM, 2014 WL 243159 (W.D. Wash. Jan. 22, 2014) ....................18

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
   875 F. Supp. 2d 1058 (N.D. Cal. 2012) ..............................................28

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ..........................................................29

*El Centro Mall, LLC v. Payless ShoeSource, Inc.*,
   174 Cal. App. 4th 58 (2009) ...........................................................24

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1997) ...........................................................25, 26

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................27

*Gerlinger v. Amazon.Com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ................................................27

*Haley Hill Designs, LLC v. UPS, Inc.*,
   2009 U.S. Dist. LEXIS 109512 (C.D. Cal. Nov. 23, 2009)...............................26

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ..........................................................29

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) .........................................................27

*Levine v. Blue Shield of Cal.*,
   189 Cal. App. 4th 1117 (2010) .........................................................27

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ..........................................................28

Cooley LLP
Attorneys At Law
San Francisco

iv.

**Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF**

**TABLE OF AUTHORITIES**
(continued)

Page

*Lucas v. Hertz Corp.*,
   875 F. Supp. 2d 991 (N.D. Cal. 2012) ..............................................................17, 18

*McClain v. Octagon Plaza, LLC*,
   159 Cal. App. 4th 784 (2008) ...........................................................................30

*Morris v. Redwood Empire Bancorp*,
   128 Cal. App. 4th 1305 (2005) ........................................................17, 19, 20, 21

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001)...........................................................................12

*Newton v. Am. Debt Servs., Inc.*,
   854 F. Supp. 2d 712 (N.D. Cal. 2012) .............................................................21

*Outdoor Recreation Grp. v. Crymson Co. Ltd.*,
   No. 99-cv-55690, 2000 WL 1685032 (9th Cir. Nov. 9, 2000) ................................23

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) ............................................................30

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ...........................................................................27

*Petroleum Sales, Inc. v. Valero Ref. Co.*,
   No. 05-cv-3526, 2006 WL 3708062 (N.D. Cal. Dec. 14, 2006)..............................21

*Platt Pac., Inc. v. Andelson*,
   6 Cal. 4th 307 (1993) .....................................................................................26

*Pry Corp. of Am. v. Leach*,
   177 Cal. App. 2d 632 (1960)............................................................................13

*Ridgley v. Topa Thrift & Loan Ass'n*,
   17 Cal. 4th 970 (1998) ....................................................................................24

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
   55 Cal. 4th 1169 (2013) ..................................................................................18

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*,
   31 Cal. 4th 1187 (2003) ..................................................................................25

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011)..............................................................12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

**TABLE OF AUTHORITIES**
(continued)

Page

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1998)..................................................................................20

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) .................................................................................17

*Tietsworth v. Sears, Roebuck & Co.*,
   No. 09-cv-0288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ........................18, 20

*In re Turnstone Sys. Sec. Litig.*,
   No. 01-cv-1256, 2003 U.S. Dist. LEXIS 26709 (N.D. Cal. Feb. 4, 2003) ..............20

*Ulbrich v. Overstock.Com, Inc.*,
   887 F. Supp. 2d 924 (N.D. Cal. 2012) .....................................................................17

*United States v. Drew*,
   259 F.R.D. 449 (C.D. Cal. 2009) .............................................................................18

*Utility Consumers' Action Network, Inc. v. AT&T Broadband of S. Cal., Inc.*,
   135 Cal. App. 4th 1023 (2006) ................................................................................25

*Wall St. Network, Ltd. v. N.Y. Times Co.*,
   164 Cal. App. 4th 1171 (2008) ................................................................................13

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
   187 Cal. App. 4th 634 (2010) ..................................................................................21

*Weber, Lipshie & Co. v. Christian*,
   52 Cal. App. 4th 645 (1997) ....................................................................................24

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) .....................................................................28

*West v. Henderson*,
   227 Cal. App. 3d 1578 (1991)...............................................................18, 19, 20, 26

*Williamson v. Reinalt-Thomas Corp.*,
   No. 11-cv-3548, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012)...............................29

*Woods v. Google Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012) ...................................................................18

*Wornum v. Aurora Loans Servs., Inc.*,
   No. 11-cv-2189, 2011 WL 3516055 (N.D. Cal. Aug. 11, 2011) ..............................30

Cooley LLP
Attorneys At Law
San Francisco

vi.

**Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF**

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Statutes**

Cal. Civ. Code
  § 1670 ..................................................................................................................24
  § 1671 .............................................................................................................24, 25

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................1, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 22, 2015, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled Court, located at 280 South First Street, San Jose, California 95113, in Courtroom 3 (5th Floor), defendant Google Inc. ("Google") will move to dismiss the First Amended Class Action Complaint (the "FAC") filed by Plaintiffs Free Range Content, Inc., Coconut Island Software, Inc., Taylor Chose, and Matthew Simpson (collectively, "Plaintiffs"). Google's Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jim Gray and Kyle C. Wong, and the concurrently filed Request for Judicial Notice ("RJN"), and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court.

**STATEMENT OF RELIEF SOUGHT**

Google seeks an order dismissing each of the FAC's seven causes of action with prejudice for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs fail to state a claim for breach of contract where contractual terms authorized Google's alleged conduct, and the terms Plaintiffs challenge are legally enforceable.

2. Whether Plaintiffs Chose and Simpson fail to state any cause of action, because they waived their claims by not appealing termination within 30 days as required under their contracts.

3. Whether Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing where the claim is duplicative of a breach of contract claim.

4. Whether Plaintiffs fail to state a claim under the California Unfair Competition Law ("UCL") because they do not allege "unlawful" conduct, nor any conduct that qualifies as "unfair" under the law, and Plaintiffs are not consumers within the meaning of the UCL.

5. Whether Plaintiffs fail to state claims for unjust enrichment and accounting, because these claims are not independent causes of action, and fail to state a claim for declaratory relief, because the contractual terms that expressly authorized Google's conduct are enforceable.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The original complaint in this action attempted to turn settled contract law on its head. Now, having seen Google's legal arguments, Plaintiffs have tried to re-package the same theory by adding new plaintiffs and misguided rhetoric.  The FAC, however, fares no better than its predecessor and should be dismissed as a matter of law.

Plaintiffs allege that they entered into a short, plainly-worded, and mutually-beneficial commercial contract with Google to earn money through Google's free online advertising network, "AdSense." After enjoying the benefits of participating in the AdSense program (in some cases for years), Plaintiffs each breached that contract.  Google then did exactly what it said it would do: (i) closed Plaintiffs' AdSense accounts, (ii) withheld payments to Plaintiffs that, pursuant to multiple contractual provisions, they had no right to receive, and (iii) began refunding the withheld payments (along with Google's share of the revenues) to affected advertisers. Plaintiffs then brought suit, on behalf of a putative class, asking the Court to void those provisions of the contract that they (apparently) no longer like, and to rule that Google had breached the contract by doing exactly what the contract said Google would do.  This attempt at legal jujitsu, in which breaching parties bring a suit for breach against the party that followed their agreement to the letter, must fail as a matter of law.

First, it is axiomatic that a plaintiff who has himself breached a contract cannot then bring his own breach of contract claim.  Here, each Plaintiff violated one or more of the AdSense Terms of Service (attached to the FAC).  Among other breaches, Plaintiffs placed ads on sites that violated Google's policies and/or on sites that experienced significant amounts of fraudulent or "invalid" clicks.   Unambiguous provisions in the AdSense terms, which Plaintiffs do not challenge, clearly authorized the actions that Google took in response to Plaintiffs' breaches, and also made clear that Plaintiffs are owed no money at all.

Second, the challenges to *other* provisions of the AdSense terms that Plaintiffs do raise are baseless.  Plaintiffs claim that the AdSense terms authorizing the withholding of payments from terminated publishers are unconscionable, yet their allegations establish neither procedural nor

substantive unconscionability.  Plaintiffs also claim that the challenged provisions impose impermissible liquidated damages, but these provisions do not fit within the narrow definition of "liquidated damages" recognized under California law.  Moreover, Plaintiffs fail to allege any facts suggesting that the provisions were not a reasonable forecast of the damages Google could have expected to incur from Plaintiffs' breaches at the time of contracting.  As if this were not enough, two of the new Plaintiffs did not even bother to dispute Google's alleged withholding of the payments they now sue over until they joined this lawsuit.  Their acquiescence and failure to dispute those alleged non-payments during the contractually-mandated timeframe should dispose of their claims altogether.

Third, while Plaintiffs contend that Google breached the implied covenant of good faith and fair dealing, their claim is premised on the very same conduct that purportedly supports their breach of contract claim and, worse yet, on conduct that the contract expressly authorizes.  Settled law establishes that the implied covenant cannot be used to override a directly applicable *actual covenant* in a party's agreement.

Fourth, Plaintiffs bring a claim for unjust enrichment, which not only has no factual basis (since Google was not enriched, as stated above), but also has no legal basis.  As numerous courts in this district have made clear, unjust enrichment is not a recognized cause of action.

Fifth, Plaintiffs' claims under California's consumer protection law are inapt for a host of reasons, including that Plaintiffs are not consumers, that nothing Google did plausibly qualifies as "unlawful," and that Plaintiffs have no claim of "unfairness" under any of the recognized tests.

Finally, Plaintiffs' claim for an accounting fails because no independent cause of action exists under California law where, as is the case here, there is no fiduciary relationship and plaintiffs are not entitled to any funds.

For these reasons, and others discussed below, Plaintiffs' (second) attempt to retroactively rewrite their contracts with Google is legally and factually meritless.  Google respectfully submits that two bites at this apple are enough.  This Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

## II.   STATEMENT OF FACTS

### A.   Google's AdSense service provides website publishers with a free way to make money from advertisements placed on their sites.

AdSense is an online advertising service offered by Google that allows website publishers of all sizes to earn money by displaying Google-supplied ads on their sites.  (FAC ¶¶ 15, 19.)[1] Publishers using the service place a snippet of code on their website pages to display ads from advertisers who contract separately with Google.  When a user visits an AdSense publisher's page, Google conducts an auction to select relevant ads to display.  If the user clicks on an ad, Google charges the advertiser and pays most of that revenue to the publisher.  (FAC ¶¶ 1, 19 n.2; Wong Decl. Ex. 15 ("AdSense Revenue Share") (cited in FAC ¶ 19).)  Publishers pay nothing to Google to participate in the service.  (FAC ¶ 19; *see also* Wong Decl. Ex. 14.)

AdSense, and other advertising networks and exchanges like it, give web publishers a simple and highly efficient way to earn income from their sites and fund the content they create. *Id.*  AdSense affords all types of publishers (including thousands of small businesses, individual bloggers, and other content producers who may lack dedicated advertising sales teams) access to a large pool of advertisers, saving them the expense of finding and contracting with advertisers individually.  AdSense also helps advertisers, providing an efficient way to buy online ad inventory.  (FAC ¶ 20 (explaining the AdWords program for advertisers).)  AdSense is a win-win—advertisers get quality inventory and publishers monetize their content.

### B.   Publishers' compliance with the AdSense Terms of Service is critical to protect the integrity of the AdSense ecosystem.

For the AdSense network to function properly, and benefit both advertisers and publishers, advertisers must have confidence that clicks for which they are charged come from real people expressing real interest in their ads.  (*See, e.g.*, Wong Decl. Ex. 17 (cited in FAC ¶ 26)

---

[1] *See also* Declaration of Kyle C. Wong ("Wong Decl.") Ex. 14 (cited in FAC ¶ 16) (describing AdSense as a tool for publishers to monetize content); Ex. 17 (cited in FAC ¶ 26) ("Advertising helps fund great web services and enables companies of all sizes to grow.").  *See generally* RJN (showing that the Gray and Wong exhibits are properly before the Court).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

(Busting Bad Advertising Practices).)  The reason is simple: advertisers do not want to be charged for clicks that do not reflect a genuine interest in their product.  On the other hand, because publishers are paid for each click, some may feel that they have a short-term incentive to break the rules and artificially inflate the number of clicks on the ads on their sites (or to fail to prevent this from happening).  These artificial clicks are called "invalid clicks" or "click fraud."[2] Publishers can commit click fraud through unsophisticated means, such as paying people to click on their ads, or by more subtle means like formatting their site so that visitors are tricked into clicking the ads, mistaking them for organic content.  (*See* Gray Decl. Ex. 1 at "Invalid clicks"; FAC ¶¶ 3, 62 (referring to "click fraud").)  If publishers are allowed to game the system like this, advertisers would be charged for fake clicks for which they receive no value at all.[3]

Accordingly, Google requires that all publishers agree to a set of rules in order to participate in its free AdSense program.  Those rules are laid out in the AdSense Online Terms of Service ("TOS"), which is a concise, plainly worded contract to which AdSense publishers (like Plaintiffs) agree before participating in AdSense.  (*See* FAC ¶¶ 21 & Exs. A-C.)[4]  At four pages

---

[2] *See* Declaration of Jim Gray ("Gray Decl.") Ex. 1 (AdSense Program Policies) at "Invalid clicks" ("Clicks on Google ads must result from genuine user interest.  Any method that artificially generates clicks or impressions on your Google ads is strictly prohibited.") Publisher's incentive to cheat the system is short term, because Google terminates publishers who fraudulently generate their own clicks.  *See also* Wong Decl. Ex. 19 (cited in FAC ¶ 62).

[3] Wong Decl. Ex. 19 ("fake" clicks reflect "no interest in the particular subject, but does results [sic] in clicks that cost the advertiser money.  This type of traffic is harmful to advertisers…[who pay] for traffic that will, ultimately, not convert for them.").

[4] Plaintiffs include the TOS operative on May 20, 2014 (Ex. A), in July 2012 (Ex. B), and on March 1, 2014 (Ex. C); these exhibits did not change with the amended complaint.  Because the relevant TOS provisions were substantively the same at the time when each Plaintiff's account was terminated (*see* Gray Decl. ¶ 3 - 4), all references to the TOS are to Exhibit C unless otherwise noted.

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

long, the TOS is far shorter than many commercial contracts.  Publishers also must agree to abide by the AdSense Program Policies, which are incorporated by reference in the TOS (collectively with the TOS, the "AdSense Terms" or "Terms").  (TOS ¶ 1 (requiring compliance with Program Policies).)  The AdSense Terms strictly forbid all forms of invalid clicks, and explain the types of clicks that are invalid and for which publishers will not be paid.  (FAC ¶ 21; TOS ¶ 5 (payments withheld for invalid activity); Gray Decl. Exs. 1-3.)

In addition to prohibiting click fraud, the AdSense Terms also help ensure that AdSense ads appear on quality websites that are appropriate for Google's advertisers.  For example, they prohibit: (i) displaying ads on web pages with violent content, adult content, or little to no original content at all, (ii) confusing ad formatting that may encourage accidental clicks, and (iii) displaying ads on third-party sites that do not comply with the AdSense Terms.  (Gray Decl. Ex. 1 at "Content Guidelines" and "Encouraging Clicks.")   As these rules arise from the policies incorporated into the TOS, violations of them are generally referred to as "policy violations."

Google bears the responsibility to both advertisers and publishers to monitor publishers' sites and click activity to ensure compliance with the Terms, and to enforce the Terms when necessary.  It has a sophisticated fraud detection network, which has identified, and prevented advertisers from being charged for, hundreds of millions of dollars of invalid activity.  Where the invalid activity is sufficiently egregious, Google will close the publisher's AdSense account, consistent with the provisions of the AdSense Terms, and, to the fullest extent possible, refund any unpaid revenue back to affected advertisers, along with Google's share of that revenue.  (*See* TOS ¶ 5, Wong Decl. Exs. 18, 21.)  Google does not disclose specific information about its systems for detecting invalid clicks and policy violations, nor does it explain the precise details of how it arrived at the decision to terminate publishers.  This is for good reason: the public disclosure of such information would allow bad actors to evade Google's detection of their click fraud and policy violations, and thereby defraud advertisers.  (*See* FAC ¶¶ 32, 42, 50, 58 (quoting Plaintiffs' termination letters); *see also* Gray Decl. Exs.  8, 9, 11 and 12 (full letters).)

Because Google actively and vigilantly enforces the rules regarding click fraud and policy violations, AdSense is able to deliver clicks that reflect real value, allowing advertisers to get a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1  return on their ad dollars.  This, in turn, redounds to the benefit of *publishers*, many of whom

2  could not offer their content to the public without the advertising that funds their work.

3      **C.**    **Plaintiffs agreed to the AdSense Terms and were terminated for breach.**

4         Aside from using AdSense, Plaintiffs have little in common: different styles of sites,

5  different types of traffic, different audiences and users, and different reasons for termination.

6         **Free Range Content, Inc. ("FRC").**  FRC owns the "Repost content syndication service"

7  and the website Repost.us."  (FAC ¶ 28.)[5]  As described on the Repost website, Repost "partnered

8  with thousands of publishers and bloggers to make a wide range of news, features, videos, and

9  more available" to its users.  (*See* Wong Decl. Ex. 23 (Repost FAQ).)  Repost gathered content

10  from users wanting to spread their content around the web and made it available to other users

11  looking for content to republish on their own websites.  (*Id.*)  FRC signed up for the AdSense and

12  agreed to the Terms in July 2012.  (FAC ¶ 28; *see also* FAC Ex. B (TOS from July 2012).)  Like

13  AdSense, the Repost service was free to users, and Repost made money by appending ads to the

14  content it collected from one set of users and reposted to other users' sites.  (Wong Decl. Ex. 23.)

15  Given the nature of Repost's business, AdSense ads appeared on third-party websites that were

16  not owned or controlled by Repost.[6]  Google disabled FRC's AdSense account in March 2014,

17  following a dramatic spike in earnings, at least 75-80% of which even FRC itself attributes to

18  invalid activity.  (FAC ¶¶ 29-31 (admitting that of $40,000 earned, between $8,000 and $11,000

19  was valid).)  FRC appealed its termination, but upon review, Google confirmed that FRC was not

20  entitled to reinstatement.  (Gray Decl. Ex. 8 (FRC appeal and Google response (FAC ¶¶ 33-34)).)

21         **Coconut Island Software, Inc. ("CIS").**  CIS operates several websites, including

22  www.healthcarehiring.com and www.e-physician.info.  (FAC ¶ 40.)  A visit to these websites,

23  which are still operational, shows that they, generally, collect job listings and physician

24  information from other sources.  (Wong Decl. Exs. 25 and 26 (offering searches within the

25  _____

26  [5] Repost has shut down its site.  *See* Wong Decl. Ex. 22 (current Repost homepage).

27  [6] FAC ¶¶ 28 ("plaintiff became an AdSense publisher for pages served on various websites under

28  its Repost.us brand") and 35 (AdSense ads shown on "Repost.com-branded webpages").

Cooley LLP
Attorneys At Law
San Francisco

7.

Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF

1    publicly-available National Provider Identifier (NPI) Registry and noting that their job listings are

2    provided by SimplyHired.)  Both sites currently serve ads from other ad networks, including the

3    Yahoo!/Bing Network.  (*See id.*)  Some of the ads displayed appear to be part of the website

4    content, are placed where they might be clicked accidentally, or are not clearly marked as ads.

5    (*See id.*)  CIS joined AdSense in March 2005, and Google terminated its account in November

6    2012, explaining that CIS sites were out of compliance with the AdSense Program Policies and

7    Webmaster Quality Guidelines.  (FAC ¶¶ 38, 42; Gray Decl. Ex. 9 (CIS termination letter).)

8    Specifically, Google explained that AdSense sites must "offer significant value to the end user by

9    providing unique and relevant content," "provide a good user experience through clear navigation

10   and organization," and that ads should not be placed on "sites with little to no original content."

11   (Gray Decl. Ex. 9.)  CIS also appealed, but was not entitled to reinstatement.  (*Id.* Ex. 10.)

12       **Plaintiff Chose.** Plaintiff Chose was the owner of the site www.teens-read.com and an

13   AdSense publisher for only about two months, from September to November 2013.  (FAC ¶¶ 48,

14   46.)  Though the website is no longer active, archived copies show that it consisted of a series of

15   lists featuring photos accompanied by a few lines of text (e.g., "Gorgeous Male Celebrities" and

16   "The Best Ugliest Holiday Sweaters").  (Wong Decl. Ex. 27 (Chose screenshots).)  Like CIS,

17   Chose's termination letter explained that AdSense sites must provide "unique and relevant

18   content" and not place AdSense ads on "auto-generated pages or pages with little or no content,"

19   directing Chose to the Program Policies, a help article about scraped content, and the Webmaster

20   Quality Guidelines.  (FAC ¶ 50; Gray Decl. Ex. 11 (Chose termination letter).)  Despite her short

21   tenure and limited page content, Chose alleges that Google owed her approximately *$20,000* at

22   the time of termination, about twice what FRC claims to be owed and more than ten times the

23   claim of the other Plaintiffs.  (FAC ¶ 51.)  Also, despite the large sum allegedly owed, Chose

24   does not allege that she appealed Google's refusal to pay her.

25       **Plaintiff Simpson.**[7]  Simpson joined AdSense in February 2012 and served ads on his

26   _____

27   [7] Plaintiffs CIS, Chose, and Simpson all assert that AdSense was not "free" because they spent

28   money on website development, hosting fees, equipment costs, time to generate content, and (in

Cooley LLP
Attorneys At Law
San Francisco

8.

**Def. Google Inc.'s Motion to Dismiss**
**First Amended Complaint**
**Case No. 5:14-cv-02329-BLF**

1  sites www.konacoffeebeans.org, www.classicalmusicheadphones.com, and www.case-cafe.com.

2  (FAC ¶¶ 54, 56.)   All three sites remain active today and serve ads that appear to be through

3  Chitika and other online ad providers.  (Wong Decl. Exs. 28-30 (Simpson screenshots).)  Simpson

4  also, apparently, now redirects traffic going to www.classicalmusicheadphones.com over to

5  www.classicalmusicheadphones.org, for which he apparently set up an AdSense account after

6  Google terminated him in June 2013, in clear and brazen violation of the Terms.  (*Id.*)[8]  At the

7  time of termination, Simpson alleges Google owed him $147.  (FAC ¶ 59.)  Simpson too does not

8  allege that he disputed the payments withheld from him at the time his account was terminated.

9      **D.      The AdSense Terms govern Google's and Plaintiffs' rights and obligations.**

10        Plaintiffs signed up for the AdSense service between 2005 and 2013, which required each

11  of them to agree to the AdSense Terms, including (as noted above) the TOS and all documents it

12  incorporates.  (FAC ¶¶ 19, 21; *see also* FAC Exs. A-C.)  Plaintiffs attached only three versions of

13  the TOS to the FAC; however, all versions require compliance with later modifications to the

14  Terms.[9]  Particular AdSense Terms are germane to (and dispositive of) the claims here.

15      **1.      Terms Regarding Invalid Clicks**

16        The TOS specifies the types of clicks for which a publisher will and will not be paid.

17  Specifically, the TOS states that publishers "will receive a payment related to the number of valid

18  clicks on Ads displayed on your Properties . . . in each case as determined by Google."  (*See, e.g.*,

19  FAC ¶ 19, TOS ¶ 5.)  The same paragraph of the TOS specifies that "[p]ayments to [publishers]

20  _____

21  Simpson's case) the purchase of products to review.  (FAC ¶¶ 41, 49, 57.)  This claim is flatly

22  unsupportable.  The costs to create and maintain a website are in no way connected to AdSense,

23  nor do Plaintiffs even allege that they incurred such costs in reliance on any AdSense offering.  It

24  is self-evident that Plaintiffs are free to create and maintain their websites, or not, and to use

25  AdSense, or not.  Google does not require plaintiffs to "pay" for AdSense in this or any manner.

26  [8] Terminated publishers "will not be allowed to create a new Account."  (TOS ¶ 10.)

27  [9] TOS ¶ 4 ("We may modify the Agreement at any time. . . .  If you don't agree to any modified

28  terms in the Agreement, you'll have to stop using the affected Services.")

Cooley LLP
Attorneys At Law
San Francisco
9.
**Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF**

may be withheld to reflect or adjusted to exclude any amounts refunded or credited to advertisers and any amounts arising from invalid activity, as determined by Google in its sole discretion." (*Id.*)[10] "Invalid activity" is defined as including (without limitation):

> (i) spam, invalid queries, invalid impressions or invalid clicks on Ads generated by any person, bot, automated program or similar device, including through any clicks or impressions originating from your IP addresses or computers under your control; (ii) clicks solicited or impressions generated by payment of money, false representation, or requests for end users to click on Ads or take other actions; (iii) Ads served to end users whose browsers have JavaScript disabled; and (iv) clicks or impressions co-mingled with a significant amount of the activity described in (i, ii, and iii) above.

(TOS ¶ 5.) The FAC does not challenge the validity and enforceability of these provisions.[11]

### 2. Terms Regarding Policy Violations (Content and Format Restrictions)

Google's content policies, which are largely described in the AdSense Program Policies, place additional restrictions on how and where AdSense ads can be displayed. As noted above, this includes forbidding the display of AdSense ads on pages containing "[p]ornography, adult or mature content," and "[a]ny other content that is illegal, promotes illegal activity or infringes on the legal rights of others." (*See* Gray Decl. Ex. 1 (Program Policies).) The AdSense Program Policies, in its section on "ad placement policies," also forbids the display of AdSense ads on third-party pages that are not in compliance with the AdSense Terms. (*Id.* and Ex. 2.) The Program Policies also set forth specific content guidelines, including the requirement that sites

---

[10] If this action proceeds beyond the pleadings, which it should not, the evidence will show that the money withheld from Plaintiffs is being refunded to advertisers, including Google's "revenue share," which Google could have kept if it treated these clicks as genuine. (*See also*, Wong Decl. Ex. 18 (cited at FAC ¶¶ 3 n.1 & 62) ("I work in an agency with several fortune 500 clients. Yes, I've seen ad spending refunds on several occurrences because of alleged fraud.")

[11] Paragraph 23 of the FAC references TOS ¶ 5, but only challenges non-payment when accounts are terminated. Elsewhere, Plaintiff FRC admits that Google need not pay publishers for invalid clicks. *See*, *e.g.*, FAC ¶ 31 (conceding that FRC is only owed $8,000 - $11,000).

Cooley LLP
Attorneys At Law
San Francisco

10.

**Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF**

must "add value" and provide "unique and relevant content" that gives users a reason to visit the site.[12]

The FAC refers to the Program Policies (*see, e.g.*, FAC ¶¶ 21, 42, 50), but challenges none of them. Indeed, it quotes a source stating that Google puts "substantial technical, financial, and human resources" to removing "bad ads and bad ad-funded content" and "[h]undreds of [Google] engineers, policy experts and others have dedicated their careers to this work." Wong Decl. Ex. 17.

### 3. Terms Regarding Termination For Click Fraud and Policy Violations

The TOS expressly permits either party to terminate the relationship at will. (TOS ¶ 10.)[13] It also explicitly authorizes Google to withhold final payments to publishers and refund money back to advertisers if Google detects invalid activity above a threshold amount or a policy violation and, in clear and certain terms, alerts publishers of Google's right to take such action:

> Google may at any time terminate the Agreement, or suspend or terminate the participation of any Property in the Services for any reason. If we terminate the Agreement due to your breach or due to invalid activity, we may withhold unpaid amounts or charge back your account.

(*Id.*) Other public sources (including sources cited in the FAC) also confirm Google's approach to dealing with violations of the AdSense Terms:

> [Google's] teams and automated systems work around the clock to stop bad actors and protect our publishers, advertisers and users. All publishers that sign up for AdSense agree to the Terms and Conditions of the service and a set of policies designed to ensure the quality of the network for users, advertisers and other publishers. When we discover violations of these policies, we take quick action, which in some cases includes disabling the publisher's account and refunding

---

[12] Gray Decl. Exs. 1 (Program Policies), 3 (Webmaster quality guidelines) and 4 (little or no content) ("Google will take action against domains that try to rank more highly by just showing scraped or other cookie-cutter pages that don't add substantial value to users."). *See also id.* Exs. 9 and 11 (termination emails sent to Plaintiffs CIS and Chose explaining the need to "offer significant value to the user by providing unique and relevant content").

[13] Plaintiffs also do not challenge this provision, which is unsurprising, since they clearly have no basis whatsoever to force Google to offer its free service to them.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1  affected advertisers.[14]

2      ### 4.   Terms Regarding Dispute Resolution

3      The TOS also tells publishers that "[i]f you dispute any payment made or withheld

4  relating to the Services, you must notify Google in writing within 30 days of any such payment. If

5  you do not, any claim relating to the disputed payment is waived."  (TOS ¶ 5.)

6      ### E.   Plaintiffs sued Google.

7      On May 20, 2014, FRC brought this action for Google's "refusal to pay terminated

8  AdSense publishers the monies they have earned and are owed" from their final "periodic

9  payment."  (FAC ¶¶ 2, 4.)  After Google moved to dismiss, FRC amended, adding three new

10 plaintiffs and an additional claim.  Plaintiffs now claim (1) breach of contract; (2) breach of the

11 implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) violation of the

12 "unlawful" and "unfair" prongs of the California Unfair Competition Law; (5) accounting; and

13 (6) declaratory relief under both the California and the Federal Declaratory Judgment Acts.

14 ## III.   APPLICABLE STANDARDS

15     A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal

16 theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v.*

17 *Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted).  In deciding a motion under Rule

18 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable

19 inferences to be drawn from them."  *Id.* (citation omitted).  However, "labels and conclusions . . .

20 and a formulaic recitation of the elements of a cause of action will not" survive a motion to

21 dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The court is

22 "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping

23 legal conclusions cast in the form of factual allegations."  *Stanislaus Food Prods. Co. v. USS-*

24 *POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D. Cal. 2011) (citation and quotation omitted).[15]

25 _____

26 [14] Wong Decl. Ex. 21. This article is identified as the source for a portion of the article attached as

27 Wong Decl. Ex. 20 (cited at FAC ¶ 70).  *See* RJN at 10.

28 [15] As established in the concurrently filed Request for Judicial Notice, in deciding a motion to

## IV.    ARGUMENT

### A.    Plaintiffs fail to state a claim for breach of contract (Count I).

Plaintiffs do not, and cannot, allege that Google breached the AdSense Terms.   To successfully plead a breach of contract, a plaintiff must allege (1) the existence of a valid contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff arising from the breach.   *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).   Aside from pleading that the contracts between Plaintiffs and Google were valid, the FAC fails to allege facts that could establish any of these elements.

### 1.    Plaintiffs' conclusory claims of performance of the AdSense Terms are insufficient and at odds with other allegations in the FAC.

"A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'"   *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (quoting *Pry Corp. of Am. v. Leach*, 177 Cal. App. 2d 632, 639 (1960)).   As an initial matter, Plaintiffs' allegations of performance are conclusory and inadequate.   Plaintiffs allege that they "performed under the AdSense contract by, *inter alia*, displaying the subject ads on their websites and other properties."   FAC ¶ 87; *see also id.* ¶¶ 28, 40, 48, 56 (describing the service of ads and receipt of payments).   Plaintiffs do not allege actual compliance with the AdSense Terms.[16]

Moreover, even at this early stage of the litigation, the allegations and documents relied on in the FAC contradict these perfunctory claims of performance.

### a.    FRC repeatedly violated the AdSense Terms.

The TOS explains that that "clicks or impressions co-mingled with a significant amount of [invalid] activity" are themselves considered invalid activity.   (TOS ¶ 5.)   Plaintiff FRC admits that a whopping 75-80% of the clicks it received in the disputed, final payment period were

---

dismiss, courts may also properly consider documents incorporated by reference into a complaint.

[16] Plaintiffs allege that they did not "intentionally" cause the invalid click activity or violate Google policies.   (FAC ¶¶ 29, 42, 50, 58.)   That allegation is irrelevant, even if true, as what matters is whether advertisers are being billed inappropriately, not publishers' subjective intent.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1    invalid.  (FAC ¶ 31.)  This rampant click fraud on the sites on which FRC placed AdSense ads

2    constituted a material breach that precludes FRC from bringing a breach of contract claim.

3        In addition to experiencing widespread click fraud, FRC violated other Terms as well.

4    The AdSense Terms expressly forbid publishers from displaying ads on other websites not in

5    compliance with AdSense policies.  (Gray Decl. Ex. 2 (Ad placement policies) and note 19 *infra*.)

6    The FAC and FRC's Repost.us website make clear that showing AdSense ads on other

7    publishers' sites was the *sine qua non* of FRC's business model.  (FAC ¶ 28 ("[FRC] became an

8    AdSense publisher for pages served on various websites under its Repost.us brand.").)  With this

9    amendment, FRC claims that its activities were "expressly permitted by Google," quoting an Ad

10   placement policy stating that, "If a site *is in compliance with our program policies* and the

11   company or owner of the site has given you permission to display ads on their site, you may place

12   your ad code on the same page as the other publishers' ad code." (emphasis added.)[17]  Yet

13   regardless of whether FRC "obtained the requisite permission" from third-party websites (FAC ¶

14   28), FRC does not allege (nor can it) that those countless thousands of websites were in

15   compliance with AdSense policies (or even that FRC undertook any vetting of those sites to

16   confirm compliance).[18]  Thus, FRC admits, through its allegations, that its basic method of using

17   AdSense was a material breach of the Terms.

18           **b.    The other Plaintiffs' webpages show multiple policy violations.**

19       In contrast to the FRC allegations, the FAC provides little detail about the three new

20   Plaintiffs.  Nonetheless, a review of the termination letters for each (which the FAC quotes and

21   relies upon) as well as their websites makes clear that each is in violation of the AdSense Terms.

22       As stated in their termination letters, Plaintiffs Chose and CIS were both terminated for

23   policy violations (*see* Gray Decl. Exs. 9 and 11), and a review of their webpages establishes that

24   these terminations were well founded.   For example, Chose's page www.teens-read.com

25   consisted of series of photos compiled into lists like "Gorgeous Male Celebrities" and "The Best

26   _____

27   [17] Gray Decl. Ex. 2 (Ad placement policies.)  (The FAC misquotes this policy at paragraph 28.)

28   [18] Repost.us states that the site "served content to over 100,000 domains." (Wong Decl. Ex 22.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

1  Ugliest Holiday Sweaters" with limited text below the photos.  (Wong Decl. Ex. 27 (cached

2  screenshots of www.teens-read.com).)  Google expressly requires publishers to "provide unique

3  and relevant content that gives users a reason to visit their site" or risk termination of their

4  accounts.[19]  Plaintiff CIS' pages www.healthcarehiring.com and www.e-physician.info, among

5  other violations: 1) place ads where the sites' drop-down menus may lead to accidental clicks as

6  the AdSense placement policies expressly prohibit (*compare* Wong Decl. Exs. 25 and Ex. 26

7  (screenshots of CIS sites) with Gray Decl. Ex. 2 (examples of prohibited ad placement similar to

8  that shown in Exhibits 25 and 26)), 2) use site navigational content and ad content so similar that

9  it encourages inadvertent ad clicks, and 3) regurgitate information from other websites.  (Wong

10  Decl. Exs. 25 and 26.)

11       Though Plaintiff Simpson's termination letter refers to the presence of invalid activity on

12  his sites, the content on www.konacoffeebeans.org, www.classicalmusicheadphones.com, and

13  www.case-cafe.com also contradict Simpson's conclusory claims of performance.  Those sites

14  run afoul of the requirement for "unique and relevant content that gives users a reason to visit

15  [the] site" in that he has posted on both classicalmusicheadphones.com and case-cafe.com only

16  once in 2014 and has not posted on konacoffeebeans.org since September 2013).  *See* Wong Decl.

17  Exs. 28-30 (Simpson websites).  Further, a visit to Simpson's headphones webpage shows that he

18  has flagrantly violated the AdSense Terms by opening a new AdSense account, after termination,

19  and then redirecting web traffic from a terminated page to classicalmusicheadphones.org (which

20

21  _____

22  [19] Google warns publishers that it "will take action against" sites comprised of "scraped or other

23  cookie-cutter pages that don't add substantial value to users," including auto-generated content

24  (e.g., "stitching or combining content from different web pages without adding sufficient value"

25  and "[s]ites dedicated to embedding content such as video, images, or other media from other

26  sites without substantial added value to the user").  *See* Gray Decl. Exs. 3 (Webmaster quality

27  guidelines); 4 (Little or no original content), 5 (Automatically generated content), and 6 (Scraped

28  content).  *See also* Gray Decl. Exs. 9 and 11 (CIS and Chose termination letters).)

Cooley LLP
Attorneys At Law
San Francisco

15.

Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF

is currently displaying AdSense ads).  *See id.* Ex. 29; TOS ¶ 10.[20]

For these reasons, the FAC and its incorporated documents demonstrate the non-performance of the Terms by the Plaintiffs, precluding all of their claims for breach of contract.

### 2. Terms that Plaintiffs do not mention, much less challenge, preclude a finding that Google breached or that Plaintiffs have damages.

Plaintiffs' claim that Google breached their agreements distills down to one essential allegation:  because certain provisions authorizing Google to withhold payments from terminated publishers are unenforceable, Google breached the Terms and damaged Plaintiffs by not paying them, upon termination, for their allegedly legitimate clicks.[21]  What Plaintiffs fail to recognize, but the FAC conclusively establishes, is that because they were in breach of the AdSense Terms that Plaintiffs never challenged (as described immediately above in Section IV(A)(1)), Plaintiffs had no clicks for which they were entitled to payment.  Consequently, Google's nonpayment was not a breach and Plaintiffs have no damages.

First, as to FRC, the TOS expressly authorizes Google to withhold payments from publishers for invalid clicks, which Plaintiffs do not contest.  (TOS ¶ 5 ("Payments to you may be withheld to reflect or adjusted to exclude . . . any amounts arising from invalid activity").)  The TOS also defines "invalid activity" to include valid "clicks or impressions co-mingled with a significant amount of [invalid clicks or impressions]".  (*Id.*)  Plaintiff FRC concedes that three quarters or more of its clicks in the final pay period were invalid.  (FAC ¶ 31.)  This constitutes a "significant amount" under any plausible interpretation.  Consequently, all of FRC's clicks are invalid, FRC was entitled to no payment, and FRC has alleged neither breach nor damages.

Second, as also just discussed, the other three Plaintiffs' websites also operated in violation of various AdSense content policies that, again, the FAC does not allege are

---

[20] The highly individualized nature of these policy violations shows that, if this case proceeded to discovery and class certification, issues particular to every publisher would make proof of liability impossible to demonstrate by predominantly common evidence.

[21] Not surprisingly, Plaintiffs do not seek payment for invalid clicks.  *See*, *e.g.*, FAC ¶ 31.

Cooley LLP
Attorneys At Law
San Francisco

16.

Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF

unenforceable.  Because of these violations, Plaintiffs were entitled to no payment for the clicks on ads run on pages that violated the Program Policies and breached the TOS (*see* TOS ¶¶ 5, 10), and, thus, none have alleged either breach or damages.

### 3. The TOS terms that Plaintiffs do challenge are neither unconscionable nor an impermissible liquidated damages provision. (All Plaintiffs)

Unable to actually plead a breach of contract, Plaintiffs attempt to manufacture a breach claim by attacking the validity of *some of* the terms that authorized Google's actions.  Contrary to Plaintiffs allegations, however, the "terms purporting to permit Google to withhold payment of funds owed to publishers whose accounts it disables" (FAC ¶ 88) are neither unconscionable nor an invalid liquidated damages provision.  Rather, the unambiguous terms governing the parties' relationships explicitly spell out the consequences for publishers when invalid activity on their sites or other policy violations threatens the integrity of the AdSense ecosystem.  For this reason, even if the Court accepted Plaintiffs' conclusory allegations of performance at this stage, which it should not, Plaintiffs' claims would still fail.

### a. The AdSense Terms are not unconscionable as a matter of law.

To avoid enforcement of contract terms as unconscionable, Plaintiffs must establish that they are both procedurally and substantively unconscionable.  *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932 (N.D. Cal. 2012); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  The AdSense Terms at issue here are neither.

### (1) Plaintiffs cannot establish procedural unconscionability.

Procedural unconscionability only exists where the challenged contract term imposes surprise or oppression on the challenging party.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005) ("'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.  It focuses on factors of oppression and surprise.") (internal quotations and citation omitted).

**Surprise.**  Plaintiffs do not allege that they were surprised by the AdSense Terms.  Nor can they.  "Surprise is defined as 'the extent to which the supposedly agreed-upon terms of the

Cooley LLP
Attorneys At Law
San Francisco

17.

**Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF**

1    bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed

2    terms.'" *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1004 (N.D. Cal. 2012) (quoting *Stirlen v.*

3    *Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)).   Courts may deem a term unconscionable

4    by virtue of surprise where it is buried in fine print or intentionally obscured.  *Id.* at 1006.  Here,

5    however, the TOS is short, straightforward, and written in plain English, as are the Program

6    Policies (which are explicitly incorporated in the first paragraph of the TOS).  (*See generally* TOS

7    ¶ 1; Gray Decl. Ex. 1 (Program Policies).)   There is no fine print, and the terms are all presented

8    in the same font and size.  *See, e.g.*, *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1394 (1996)

9    (finding no surprise where there were no hidden or unclear terms); *Tietsworth v. Sears, Roebuck*

10   *& Co.*, No. 09-cv-0288, 2009 WL 3320486, at *9-10 (N.D. Cal. Oct. 13, 2009) (same).

11          No Plaintiff makes any allegation to support a claim of surprise nor alleges that it was

12   unaware of these terms.  Moreover, especially in the context of commercial agreements, courts

13   reject claims of surprise in contracts of much greater complexity, reasoning that "[p]arties to

14   commercial contracts fail to read them at their own peril."  *West v. Henderson*, 227 Cal. App. 3d

15   1578, 1587 (1991) (no surprise in a commercial lease where term at issue was in a confusing 86-

16   word sentence in a 20-page, single-spaced document), *overruled on other grounds by Riverisland*

17   *Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n,* 55 Cal. 4th 1169, 1182 (2013).

18          **Oppression.**   Oppression is measured by the totality of circumstances at the time a party

19   enters into a contract.  *See Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, No. 11-cv-0858, 2012

20   WL 928412, at *6-7 (S.D. Cal. Mar. 19, 2012).   Despite the conclusory assertion that Google

21   "foisted" the agreement upon Plaintiffs without negotiation (FAC ¶ 88), the circumstances of

22   Plaintiffs' agreement to the AdSense Terms also preclude a claim of oppression as matter of law.

23          First, it is not enough that the contract was not negotiated and that Google is a large

24   company.  In fact, the allegation that a company is a "behemoth" (a term Plaintiffs belabor, *see*

25   FAC ¶¶ 36, 39, 47, 55), even if accepted, does not prevent courts from enforcing click-to-accept

26   agreements like the TOS (including Google's own), even against individuals and presumably

27   unsophisticated consumers.  *See, e.g.*, *Woods v. Google Inc.*, 889 F. Supp. 2d 1182, 1187 (N.D.

28   Cal. 2012); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1059 (N.D. Cal. 2010);

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

1   *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009); *Day v. Microsoft Corp.*, No.

2   C13-478-RSM, 2014 WL 243159, at 2 (W.D. Wash. Jan. 22, 2014).  Courts also commonly rule

3   that a plaintiff's inability to negotiate a form agreement (i.e., where the agreement is "adhesive")

4   neither establishes oppression nor renders an agreement unconscionable.  *See, e.g., Captain*

5   *Bounce*, 2012 WL 928412 at *6-8 (financing company's form contract with small business not

6   unconscionable); *Cornejo v. Spenger's Fresh Fish Grotto*, No. 09-cv-5564, 2010 WL 1980236, at

7   *7 (N.D. Cal. May 17, 2010) (arbitration clause in employment agreement was not

8   unconscionable "even though the Agreement represents a paradigmatic contract of adhesion").

9       <u>Second</u>, "[o]ppression refers not only to an absence of power to negotiate the terms of a

10  contract, but also to the absence of reasonable market alternatives." *Morris*, 128 Cal. App. 4th at

11  1320; *accord Captain Bounce*, 2012 WL 928412 at *7; *West*, 227 Cal. App. 3d at 1587.

12  Numerous courts reject claims of procedural unconscionability where viable substitutes exist,

13  even where the agreement is not subject to negotiation.  In *Captain Bounce*, for example, the

14  court rejected a small business owner's claim that an agreement was oppressive, despite his

15  inability to negotiate, because the plaintiff could have obtained the same cash advance or another

16  form of financing elsewhere.  2012 WL 928412 at *7.  Similarly, in *Morris*, the court rejected the

17  claim that a credit card agreement's terms were procedurally unconscionable where the plaintiff

18  "failed to allege he could not have obtained merchant credit card services from another source on

19  different terms."  128 Cal. App. 4th at 1320.  *See also Belton*, 151 Cal. App. 4th at 1245-46;

20  *Berenblat v. Apple, Inc.*, No. 08-cv-4969, 2010 WL 1460297, at *5 (N.D. Cal. Apr. 9, 2010).

21      Because the FAC and its incorporated documents do not plead the "absence of meaningful

22  choice" for Plaintiffs regarding whether to accept Google's terms rather than opting for a

23  different ad network (or another means of monetizing its website), oppression cannot be found.

24  (FAC ¶ 88.)  *See, e.g.*, *Captain Bounce*, 2012 WL 928412, at *7.  Plaintiffs assert that they "were

25  convinced that there was no real alternative to AdSense for publication of ads on web properties"

26  because Google promotes the AdSense product as better than its competitors.  (FAC ¶ 16.)  The

27  conclusory assertion that Plaintiffs had no alternative to AdSense is both false and irrelevant.

28      Plaintiffs' claim is clearly false, because the Plaintiffs still operating their sites *currently*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

*display ads from other ad networks*, including Yahoo!/Bing.[22]  It is also irrelevant, because

Google's alleged assertion that its AdSense service is superior to other services is a matter of

marketing—a byproduct, in fact, of competition—and hardly evinces lack of choice.  *Tietsworth*,

2009 WL 3320486, at *10 (plaintiffs' assertions that salespeople told them defendant's machines

were "the best" and superior to other brands did not demonstrate that the absence of alternatives,

but rather the availability of alternatives).  The websites of the providers serving ads on Plaintiffs'

sites similarly tout that provider's strengths and state or imply its superiority.[23]  Even an article

referenced in the FAC lists several alternatives available to (and in direct competition with)

AdSense.[24]   The court is not "'required to accept as true conclusory allegations which

are contradicted by documents referred to in the complaint.'"  *In re Turnstone Sys. Sec. Litig.*, No.

01-cv-1256, 2003 U.S. Dist. LEXIS 26709, at *42 (N.D. Cal. Feb. 4, 2003) (quoting *Steckman v.*

*Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998)).

    Finally, courts may consider the need for the product or service for which the parties are

contracting and, particularly, whether it concerns life necessities.  *West*, 227 Cal. App. 3d at 1587

(oppression on plaintiff was "self-imposed" where plaintiff "was not in pursuit of life's

necessities; this was a business venture.").[25]  Here, Plaintiffs simply chose to monetize their

---

[22] Wong Decl. Exs. 25, 26, 28-30 (screenshots showing CIS and Simpson's sites with ads from

other ad networks).  To determine the source of ads on these sites, Google's counsel either noted

the branding included with the ad or hovered its mouse over or clicked on the word "AdChoices."

[23] *See, e.g.,* Wong Decl. Ex. 31(Yahoo!/Bing: "one of the world's largest base of keyword-

targeted advertisers;" "Large global brands and leading digital agencies from across the world

actively advertise on our network."); *see also id.* Exs. 32 and 33 (Conversant and Chitika).

[24] Wong Decl. Ex. 19 (cited at FAC ¶ 62) (listing five AdSense alternatives for publishers whose

AdSense accounts were closed); *id.* Exs. 31-33.

[25] *See Morris*, 128 Cal. App. 4th at 1320 (considering the immediacy of the need for the good or

service, and whether it was non-essential, such as where the contract was for business purposes);

*Belton*, 151 Cal. App. 4th at 1245 (streaming radio service at issue was a nonessential service).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

1   websites by entering into a non-essential, commercial relationship to make money serving ads.[26]

2          Because Plaintiffs fail to plead surprise or oppression with respect to the AdSense Terms,

3   the court cannot find the Terms to be procedurally unconscionable.

4                  **(2)      Plaintiffs cannot establish substantive unconscionability.**

5          Plaintiffs' conclusory assertions of substantive unconscionability are also without merit.

6   A term is substantively unconscionable only if it is "so one-sided as to 'shock the conscience,' or

7   [ ] impose harsh or oppressive terms. . . .   The phrases 'harsh,' 'oppressive,' and 'shock the

8   conscience' are not synonymous with 'unreasonable.'"   *Walnut Producers of Cal. v. Diamond*

9   *Foods, Inc.*, 187 Cal. App. 4th 634, 647-48 (2010) (quoting *Morris*, 128 Cal. App. 4th at 1322-

10  23) (internal quotation marks omitted).   Terms considered substantively unconscionable are those

11  that strip rights from one party or impose such an unanticipated burden that a party would not

12  have entered into the agreement had they understood the consequences.   *See, e.g.*, *Newton v. Am.*

13  *Debt Servs., Inc.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012).   Moreover, "unconscionability turns

14  not only on a 'one-sided' result, but also on an absence of 'justification' for it . . . substantive

15  unconscionability must be evaluated as of the time the contract was made."   *Walnut Producers*,

16  187 Cal. App. 4th at 647 (citations omitted).   Courts also make clear that a business arrangement

17  is not substantively unconscionable because it is "less advantageous" to one party.   *Petroleum*

18  *Sales, Inc. v. Valero Ref. Co.*, No. 05-cv-3526, 2006 WL 3708062, at *18 (N.D. Cal. Dec. 14,

19  2006).

20         *Am. Software, Inc. v. Ali* is particularly instructive here.   46 Cal. App. 4th 1386.   There,

21  plaintiff Ali was terminated after having earned substantial commissions on several sales.   *Id.* at

22  1389.   By the terms of her employment agreement, she was ineligible to collect commissions

23  received more than 30 days after her termination, and several such sales (and payments) occurred.

24  _____

25  [26] "[T]he business-to-business context of the [agreement] is relevant" to the unconscionability

26  inquiry.   *Captain Bounce*, 2012 WL 928412, at *7; *see also Morris*, 128 Cal. App. 4th at 1322

27  ("[I]t is reasonable to expect even an unsophisticated businessman to carefully read, understand,

28  and consider all the terms of an agreement affecting such a vital aspect of his business").

1   *Id.*  Rejecting her claim that the contract was substantively unconscionable when the company

2   refused to pay the late commissions, the court explained that the contract terms with respect to

3   compensation "involved certain risks to both parties to the bargain": Ali risked losing earned

4   commissions, but her employer "took the risk that at the time of Ali's termination, she would not

5   have earned sufficient commissions to cover the substantial draws [an amount paid monthly to

6   her which was deducted from commissions earned] 'credited' to her." *Id.* at 1393.  As in *Am.*

7   *Software,* the provisions at issue here do no more than authorize the withholding of payments

8   during a single, finite period where violative conduct warranting termination is detected, limiting

9   Google's discretion to this narrow situation.  The FAC never shows how such terms remotely

10  shock the conscience or impose unduly harsh or unanticipated terms on the Plaintiffs. [27]

11         Further, the AdSense Terms (along with Google's extensive help pages and other

12  AdSense information) set forth clear and specific justifications for Google's discretion: to prevent

13  fraudulent clicks and prohibit certain content, and to keep advertisers whole, all in order to

14  maintain the integrity of the AdSense network.  Unfortunately, without substantial (and costly)

15  investigation, Google has no way to determine whether a publisher itself or some other bad actor

16  is responsible for the conduct that led to invalid activity—nor do Plaintiffs suggest that such

17  differentiation is possible.  It is certainly not unconscionable to disable accounts associated with

18  fraudulent clicks whether or not the publisher knowingly caused the fraud by encouraging (or

19  permitting) these inauthentic clicks.   Google's vigilance ultimately benefits publishers like

20  Plaintiffs by creating an attractive, reliable marketplace for advertisers, without whom publishers

21  could not make money through the AdSense program.

22         That Plaintiffs would apparently prefer Google turn a blind eye to fraudulent and policy-

23  violating activity on their sites is no basis for this Court to dictate how and when Google may

24  terminate publishers, consistent with the AdSense Terms, and refund advertisers in order to

25  _____

26  [27] Indeed, even after being subject to the misconduct he alleges in the FAC, Simpson agreed to

27  this "unconscionable" contract *again* and serves AdSense ads to this day (despite the fact that

28  duplicate accounts are prohibited by the Terms).  *See* Wong Decl. Ex. 29; TOS ¶ 10.

Cooley LLP
Attorneys At Law
San Francisco

22.

Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF

1    maintain the integrity of the program.

2                  **b.**        **Prohibitions against liquidated damages do not apply here.**

3          Plaintiffs' attempt to strike down certain AdSense terms as liquidated damages fail for two

4    reasons.  First, the AdSense Terms contain no liquidated damages provision.  Second, even if the

5    Court were to (generously) construe the challenged provision as being a form of liquidated

6    damages, it is a reasonable estimation of damages and would be permissible and enforceable.

7                **(1)**       **There is no liquidated damages provision in the Terms.**

8          A liquidated damages provision only exists where a provision requires a party "to pay [a

9    sum] or a deposit which [the party] agrees to forfeit for *breach of some contractual obligation*."

10   *ABI, Inc. v. City of L.A.*, 153 Cal. App. 3d 669, 685 (1984) (emphasis in original) (citation

11   omitted) (no liquidated damages where the contract language was "far from purporting to be a

12   preestimate of damages for breach of contract"); *see also Outdoor Recreation Grp. v. Crymson*

13   *Co. Ltd.*, No. 99-cv-55690, 2000 WL 1685032, at *2 (9th Cir. Nov. 9, 2000) ("A liquidated

14   damages provision, by definition, must impose an obligation on the breaching party to pay the

15   damages it endeavors to liquidate.") (citation omitted).  The Terms contain no such clause.

16         The AdSense system is simple: publishers display ads, but they are *only* entitled to

17   revenue from clicks *after* Google determines their validity and compliance with the AdSense

18   Terms.  To evaluate whether activity is valid, clicks are analyzed through both automated and

19   manual reviews.[28]  Plaintiffs FRC and Simpson had invalid activity in their accounts, and Google

20   identified such activity as the reason for their termination.  Indeed, FRC admits that the bulk of its

21   clicks were invalid; admits that invalid clicks create no entitlement to payment; and does not

22   challenge the TOS's statement that clicks "co-mingled with a significant amount of" invalid

23   clicks are treated as invalid.  (FAC ¶ 31; *see* TOS ¶ 5.)  Where invalid activity renders any

24   _____

25   [28] *See, e.g.,* TOS ¶ 5 ("you will receive a payment related to the number of valid clicks on Ads. . .

26   *in each case as determined by Google*.") (emphasis added); Wong Decl. Ex. 21 ("Our teams and

27   automated  systems  work  around  the  clock  to  stop  bad  actors  and  protect  our  publishers,

28   advertisers and users."); *id.* Ex. 13.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF

purported "earnings" void, a publisher cannot claim that Google extracted "liquidated damages" from it by withholding payments to which the publisher was not entitled.  Similarly, Plaintiffs CIS and Chose were terminated for failure to comply with (unchallenged) policies regarding website content.  There again, Plaintiffs' failure to comply forfeits any entitlement to payment.  Thus, like in *ABI*, no provision requires Plaintiffs to *pay* for the breach of some contractual provision, and there is no liquidated damages provision in the AdSense Terms.

> ### (2) Even if the challenged provision were a liquidated damages provision, it would be enforceable.

Under California Civil Code Section 1671, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."  Cal. Civ. Code § 1671(b).  Such a provision is unreasonable only "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach."  *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998).  In determining reasonableness, courts consider only the circumstances "at the time the contract was made" and not in retrospect.  *El Centro Mall, LLC v. Payless ShoeSource, Inc*., 174 Cal. App. 4th 58, 63 (2009) (quotation omitted).  Moreover, "[a] liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered."  *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645, 656 (1997) (citation omitted).

Here, the amount withheld and refunded to advertisers (including Google's revenue share) was a reasonable estimation of damages at the time the contract was formed, given the hard to measure, but plainly negative, effects of invalid click activity.  The damage to the overall AdSense ecosystem that results from (for example) three quarters of a publisher's web traffic being fraudulent is real, but extraordinarily difficult to quantify.  *See Beasley v. Wells Fargo Bank, N.A.*, 235 Cal. App. 3d 1383, 1398-99 (1991) (finding that Civil Code Sections 1670 and 1671 "merely restated the preexisting common law," which provided that "stipulated damages were permitted when actual damages 'were wholly uncertain and incapable of estimation

Cooley LLP
Attorneys At Law
San Francisco

24.

Def. Google Inc.'s Motion to Dismiss
First Amended Complaint
Case No. 5:14-cv-02329-BLF

1  otherwise than by mere conjecture'") (citation omitted).  Withholding payment for a single pay

2  period is a reasonable estimation of the damage caused either by the clearly substantial invalid

3  activity on FRC's site as well as the policy violations engaged by other Plaintiffs.

4      Plaintiffs cannot save this claim by stating there was no mutual endeavor by the parties to

5  estimate damages.  Indeed, a number of courts enforce liquidated damages provisions in form

6  contracts that the parties did not negotiate.  *Utility Consumers' Action Network, Inc. v. AT&T*

7  *Broadband of S. Cal., Inc*., 135 Cal. App. 4th 1023, 1035-38 (2006) ("the reasonable endeavor

8  test [for a valid liquidated damages provision] does not require both parties to form a contract to

9  expressly negotiate the amount of liquidated damages.") (collecting cases).  Accordingly, these

10  purported liquidated damages are "valid" under Section 1671.

11      **4.      Plaintiffs Chose and Simpson Waived Their Claims Under the Terms.**

12      In addition to all these arguments, the claims of Plaintiffs Chose and Simpson also fail

13  because those Plaintiffs did not, as the AdSense TOS expressly require, timely dispute Google's

14  withholding of their final payments.  (*See* TOS ¶ 5 ("If you dispute any payment made or

15  withheld relating to the Services, you must notify Google in writing within 30 days of any such

16  payment. *If you do not, any claim relating to the disputed payment is waived*." (emphasis

17  added)).)  Indeed, according to the FAC, Chose took no action to contest the withholding of her

18  payments for over 10 months, and Simpson took no action for well over a year.[29]

19      These are not mere technicalities.  Large-scale service providers, such as Google, rely

20  upon prompt appeal requirements to ensure that claims from closed accounts do not remain a

21  potential liability for the years in which statutes of limitations might remain open.  Numerous

22  courts have held that the failure to follow contractual procedures for dispute resolution, as here,

23  results in waiver of rights or claims.  *See, e.g.*, *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.

24  4th 1187, 1195, n. 4 (2003) ("While 'waiver' generally denotes the voluntary relinquishment of a

25  known right, it can also refer to the loss of a right as a result of a party's failure to perform an act

26  it is required to perform, regardless of the party's intent to relinquish the right.") (citing *Engalla v.*

27  _____

28  [29] This was no pleading oversight, as FRC and CIS both allege appeals.  (FAC ¶¶ 33, 43.)

*Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 983 (1997)); *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 311 (1993) (where the parties' agreement permitted either party to file a demand for arbitration but gave a specific, firm date by which to do so, plaintiffs' failure to timely file demand resulted in the loss of the right to arbitrate); *cf. Haley Hill Designs, LLC v. UPS, Inc.*, 2009 U.S. Dist. LEXIS 109512, at *6-7 (C.D. Cal. Nov. 23, 2009) (breach of contract claim failed where the plaintiffs did not adhere to the express terms of the contract "to request any charges be voided within 180 days of the receipt of any invoice.").[30]   Indeed, a "contrary conclusion would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement." *Platt Pac.*, 6 Cal. 4th at 314.

Here, Chose and Simpson (and any other unnamed plaintiff similarly situated for that matter) have waived all rights to sue over the unappealed payments.

### B.   The AdSense Terms preclude Plaintiffs' claim for breach of the Implied Covenant of Good Faith and Fair Dealing (Count II).

To prevail on a claim for breach of the implied covenant of good faith and fair dealing under California law, Plaintiffs will have to show: (1) a valid contract; (2) Plaintiffs performed all or substantially all of their obligations under the contract; (3) Google unfairly interfered with Plaintiffs' rights to receive benefits under the contract; and (4) Plaintiffs were damaged by Google's actions. *See Avila v. Countrywide Home Loans*, No. 10-cv-5485, 2010 WL 5071714, at *5 (N.D. Cal. Dec. 7, 2010).  Moreover, the breach must go beyond the "statement of a mere contract breach" that "rel[ies] on the same alleged acts [to] simply seek the same damages or other relief already claimed in a companion contract cause of action." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

The implied covenant allegations here are purely duplicative of the Plaintiffs' breach of contract claim.  Plaintiffs claim in both the breach of contract and implied covenant causes of

---

[30] In the statute of limitations context, parties can waive their right to untimely claims by contract. *See, e.g.*, *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1263 (2013);

1    action that they entered into a contract with Google; that they performed by placing ads on their

2    websites; and that Google refused to pay for the revenue earned by those ads.  (*Compare* FAC ¶¶

3    84-91 with *id.* ¶¶ 92-96.)  No implied covenant claim exists where it "relies on the same acts, and

4    seeks the same damages, as its claim for breach of contract," *Bionghi v. Metro. Water Dist. of S.*

5    *Cal.*, 70 Cal. App. 4th 1358, 1370 (1999), because the claim must "involv[e] something beyond

6    breach of the contractual duty itself."  *Careau*, 222 Cal. App. 3d at 1394 (citation omitted).

7    Moreover, as the claim has essentially the same elements as breach of contract, the dispositive

8    arguments set forth above apply with equal force to the implied covenant claim as well.

9            Additionally, Google's disabling of Plaintiffs' accounts (and withholding of payment)

10   cannot frustrate the purpose of the Terms, because Google had an express right to withhold

11   payment where Plaintiffs did not comply with their agreement.  As the California Supreme Court

12   observed in *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374

13   (1992), "[w]e are aware of no reported case in which a court has held the covenant of good faith

14   may be read to prohibit a party from doing that which is expressly permitted by an agreement."

15                   **C.       Plaintiffs fail to state a claim for unjust enrichment (Count III).**

16           Plaintiffs' unjust enrichment claim should also be dismissed because there is no such

17   independent cause of action in California.  *See, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App.

18   4th 1117, 1138 (2010) ("[t]here is no cause of action in California for unjust enrichment")

19   (citations omitted); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814-15 (N.D. Cal. 2011)

20   (same) (collecting cases).   Nor may Plaintiffs bring a claim in quasi-contract for unjust

21   enrichment where "an enforceable, binding agreement exists defining the rights of the parties."

22   *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (citation

23   omitted); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) (precluding

24   unjust enrichment claim where plaintiffs "pleaded the existence of an enforceable agreement and

25   their unjust enrichment claim did not deny the existence or enforceability of that agreement");

26   *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).  Plaintiffs concede

27   that the AdSense Terms control the parties' duties here (regardless of whether specific provisions

28   are enforceable).  (*See, e.g.,* FAC ¶¶ 21, 85.)  Accordingly, the unjust enrichment count fails.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27.

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

**D.      Plaintiffs fail to state a claim under the UCL (Count IV).**

      **1.      Plaintiffs lack standing to sue under the UCL.**

To begin, "[w]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (demurrer upheld where "the alleged victims are neither competitors nor powerless, unwary consumers, but . . . [each] presumably has the resources to seek damages or other relief . . . should it choose to do so") (citation and quotation omitted). AdSense is a *business-to-business* program involving entities outside the UCL's intended protection, which was enacted for consumers and competitors "by promoting fair competition in commercial markets for goods and services." *Id.*; *see also Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012) (UCL claim failed where the claim was "based on a breach of a contract that does not implicate the public in general or individual consumers").

Plaintiffs' attempts to fall within the protective reach of the UCL fail for multiple reasons. First, Plaintiffs' claim that they are "small and unsophisticated entities or individuals" (FAC ¶ 103), is of no consequence under the UCL. *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998 (N.D. Cal. 2010) ("small mom and pop merchants" failed because they pled "insufficient [allegations] to establish the requisite public or individual consumer interest as required under California law."). Second, FRC and CIS are business entities that operate websites and are, therefore, not the consumers that the UCL was intended to protect. Moreover, none of the Plaintiffs fall within the protection of the UCL because the AdSense service is not used by the general public, but only by website publishers. Like *Linear Tech* and *Dollar Tree Stores*, the UCL claims here should be dismissed because the breach of contract claim "does not implicate the public in general or individual consumers."[31] In fact, Chose and Simpson are more like sole proprietors of businesses that operated websites than consumers, moving them outside of the UCL's protective umbrella.

---

[31] *Linear Tech.*, 152 Cal. App. 4th at 135; *Dollar Tree Stores*, 875 F. Supp. 2d at 1083.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

**2.      The facts alleged state no claim under the UCL's unlawful prong.**

Plaintiffs claim that Google's conduct is "unlawful" under the UCL because Google acted "on the basis of contractual terms" that are unconscionable and an improper liquidated damages provision under California law.  (FAC ¶ 105.)  But, as shown above, such claims have no merit and cannot be the predicate for an "unlawful" UCL claim.  *See, e.g.*, *Avila*, 2010 WL 5071714, at *6 (dismissing a § 17200 claim premised on a violation of an underlying law for which plaintiff failed to state a claim); *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under [Section] 17200 for committing unlawful business practices without having violated another law.") (citation and quotation omitted).

**3.      Plaintiffs allege no facts stating a claim under the UCL's unfair prong.**

Plaintiffs fare no better with their claim under the unfair prong of the UCL. California courts have not coalesced around a single definition about what makes conduct "unfair" under the UCL, but the FAC does not pass muster under any accepted definition.

First, Plaintiffs do not explain how Google's alleged conduct violates a legislative public policy that is "tethered to specific constitutional, statutory, or regulatory provisions."  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (affirming dismissal where "plaintiff failed to allege any violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition") (citations omitted); *Belton*, 151 Cal. App. 4th at 1239-40. Likewise, the FAC does not allege that Google's alleged conduct was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Drum*, 182 Cal. App. 4th at 257; *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1270-71 (2006). Additionally, Plaintiffs' allegations that Google's practices "detrimentally affect the public interest" (FAC ¶ 107), are not only conclusory and self-serving, but fail to allege "any violation . . . of any statutory or regulatory provision, or any significant harm to competition."[32]

---

[32] *Drum*, 182 Cal. App. 4th at 257. Some courts employ a third test, weighing the claimed injury against the consumer benefit, however, the Ninth Circuit declined to do so. *See Williamson v. Reinalt-Thomas Corp.*, No. 11-cv-3548, 2012 WL 1438812, at *11 (N.D. Cal. Apr. 25, 2012).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29.

**DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

1   For these reasons, under any recognized test for unfairness, Plaintiffs' allegations fail.

2       **E.      Plaintiffs fail to state a claim for accounting (Count V).**

3       Courts have permitted an action for accounting only "in rare cases."  *Pantoja v.*

4   *Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1191-92 (N.D. Cal. 2009).  For instance,

5   courts have permitted accounting claims where "a defendant has a fiduciary duty to a plaintiff

6   which requires an accounting, and . . . some balance is due to the plaintiff that can only be

7   ascertained by an accounting" (citations omitted), *id.*, or "when two parties enter into an

8   agreement for the sharing of profits that accords one party exclusive access and control over

9   financial records bearing on the profits," and the other party is not in breach, *McClain v. Octagon*

10  *Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008) (citation omitted).  This litigation is not such a

11  rare case.  Plaintiffs have not only failed to plead the existence of a fiduciary relationship, but, by

12  their own admission, they have not earned anything that would be subject to an accounting given

13  their violations of the AdSense Terms.  As such, an action for accounting is not sustainable.

14      **F.      Plaintiffs fail to state a claim for declaratory relief (Counts VI and VII).**

15      "Declaratory relief is an equitable remedy which fails to the extent that the underlying

16  claims fail."  *Wornum v. Aurora Loans Servs., Inc.*, No. 11-cv-2189, 2011 WL 3516055, at *10

17  (N.D. Cal. Aug. 11, 2011) (citation omitted).  Plaintiffs seek a declaration that certain Terms are

18  unconscionable and improper liquidated damages.  (FAC ¶¶ 113-114, 117-118.)  Because those

19  claims fail on their merits (*see supra* Section IV(A)(3)), Plaintiffs cannot obtain declaratory relief.

20  **V.      CONCLUSION**

21      For the foregoing reasons, Plaintiffs fail to state a claim for relief.  Google respectfully

22  requests that the Court grant its motion and dismiss the First Amended Complaint with prejudice.

23  Dated: October 15, 2014                    COOLEY LLP

24

25                                             */s/ Jeffrey M. Gutkin*
                                               Jeffrey M. Gutkin (216083)
26  111156376                                  Attorneys for Defendant
                                               GOOGLE INC.

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30.

DEF. GOOGLE INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
CASE NO. 5:14-CV-02329-BLF