Mark Poe (S.B. #223714) – mpoe@gawpoe.com
Randolph Gaw (S.B. #223718) – rgaw@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Super Cray Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FREE RANGE CONTENT INC., et al.<br><br>                Plaintiffs,<br><br>   v.<br><br>GOOGLE INC.<br><br>                Defendant. | Case No. 5:14-CV-02329 BLF<br><br>**SUPER CRAY'S OPPOSITION TO DEFENDANT GOOGLE INC.'S ADMINISTRATIVE MOTION TO RELATE CASES**<br><br>Courtroom: 3<br>Judge: Hon. Beth L. Freeman |

**INTRODUCTION**

Super Cray Inc., ("Super Cray") the plaintiff in the matter of *Super Cray Inc. v. Google Inc.*, No. 5:15-CV-00109-PSG (N.D. Cal.) ("*Super Cray*"), respectfully requests that the Court decline to order that this action be related to the *Super Cray* action. The events alleged by the Free Range Content plaintiffs in this putative class action concern defendant Google Inc.'s ("Google") bad faith and arbitrary treatment towards small Internet publishers participating in Google's AdSense program. The events alleged in the *Super Cray* action, however, concern Google's **_fraud_**.

In *Super Cray*, Google affirmatively represented to Super Cray on multiple occasions that Super Cray was fully complying with Google's requirements for AdSense. After receiving the go-ahead from Google, Super Cray went on to invest $300,000 in monetizing its website – primarily by having the Super Cray website heavily promoted on Facebook in order to receive user traffic. Only after these actions occurred—and after Google's advertiser clients had in fact received all of the traffic that had been generated by Super Cray's investment—did Google abruptly pull the plug on Super Cray's AdSense account, rather than pay out the $535,000 in AdSense earnings Super Cray had accrued to that point.

**_None of these types of facts_** are present in the class action. There is no fraud claim. There was no representation by Google to any of the Free Range Content plaintiffs that the latter were fully complying with the AdSense terms of use. Instead, the Free Range Content action is largely about Google's refusal to communicate any meaningful reason for terminating the AdSense accounts of the Free Range Content plaintiffs. Moreover, there was no appreciable effort by any of the Free Range Content plaintiffs to monetize their websites around the AdSense program. Rather, Google's attempt to relate the two cases is instead a likely attempt to slow down discovery in the compelling *Super Cray* action, by attempting to have it coordinated as much as possible with this slower-moving class action. Super Cray respectfully requests that the Court see through Google's charade and permit the *Super Cray* case to continue along as-is.

**STATEMENT OF FACTS**

**The *Super Cray* Case**

Super Cray is the publisher of a popular entertainment website called SuperCrayCray and was a participant in Google's AdSense program. (*Super Cray* Complaint ¶ 1.) SuperCrayCray is a humorous website where public domain photographs are curated and coupled together with amusing commentary authored by Super Cray's founders. (*Id.* ¶¶ 23-24.) On multiple occasions, Super Cray's founders had discussions with AdSense personnel as to whether the AdSense advertisements placed on SuperCrayCray were fully compliant with Google's AdSense policies. (*Id.* ¶¶ 32-37.) Every single time, Google either explicitly or implicitly affirmed that SuperCrayCray was correctly implementing its AdSense advertisements. (*Id.*)

Encouraged by Google's written confirmations, Super Cray proceeded to spend $300,000 to have its website prominently advertised and displayed on websites like Facebook. (*Id.* ¶ 38.) This was done to drive user traffic to SuperCrayCray and present more viewers for its AdSense advertisements. (*Id.*) Super Cray accrued $535,000 in earnings under AdSense, but Google abruptly terminated its AdSense account and refused to pay anything. (*Id.* ¶¶ 41-42.) Google refused to acknowledge its prior written confirmations to Super Cray. (*Id.* ¶¶ 43-44.)

**ARGUMENT**

**I.    THE LAWSUITS DO NOT INVOLVE SUBSTANTIALLY THE SAME EVENTS.**

Google's argument is essentially that because both cases involve Google's refusal to pay out amounts owed to publishers under its AdSense program, they therefore involve substantially the same events. Google's position is unduly simplistic and superficial.

A key distinction between the two actions, unaddressed by Google, is that the *Super Cray* lawsuit is a classic fraud case while the class action is not. There is, of course, no fraud or negligent misrepresentation cause of action asserted by the Free Range Content plaintiffs. More importantly, the facts alleged by the Free Range Content plaintiffs show dramatically different (yet also reprehensible) conduct by Google towards them. None of the Free Range Content plaintiffs received affirmative representations by Google that they were complying with the AdSense terms of use. Instead, the Free Range Content action appears to be about the lack of

communication from Google to the putative class and the arbitrariness of Google's decisions – the First Amended Complaint is replete with allegations that Google terminated the AdSense accounts of the Free Range Content plaintiffs while refusing to provide a meaningful explanation.[1] (FAC ¶¶ 32-34, 42, 50, 58.)

Thus, the facts that Super Cray needs to prove in order to obtain relief in the *Super Cray* action are not the same facts that the putative class needs to establish in order to prevail in this action. Moreover, the different plaintiffs each have unique hurdles to surmount in their respective actions. Super Cray, for example, has the burden of proving Google's fraudulent intent. By contrast, Google's motive is irrelevant to the Free Range Content plaintiffs. *JRS Products, Inc. v. Matsushita Elec. Corp. of America*, 115 Cal. App. 4th 168, 182 (2004) ("[M]otive, regardless of how malevolent, remains irrelevant to a breach of contract claim[.]"). Google cites both plaintiffs as relying on the same anonymous whistleblower, but those particular allegations appear to be nothing more than an attempt to add atmospherics by the Free Range Content plaintiffs, and are not among the core disputed facts in either action. More importantly, Google pointedly ignores that Super Cray has alleged motives for Google that are entirely absent from the classaction. Super Cray has pointed out that Google's actions were a way for it to essentially provide kickbacks to its advertising customers, thereby creating goodwill and strengthening its competitive edge in the online advertising business, at the expense of publishers like Super Cray. (*Super Cray* Complaint ¶ 53.)

More importantly, the Free Range Content plaintiffs have the burden of proving that this action is suitable for class treatment. This involves extensive discovery regarding those plaintiffs and the members of the proposed class, and is entirely irrelevant to anything in the *Super Cray*

---

[1] Super Cray does allege breach of contract and breach of the implied covenant of good faith and fair dealing in its lawsuit, of course, but this is because Google's representations are proof that Super Cray was fully complying with the AdSense Terms of Service. By contrast, it appears that the Free Range Content plaintiffs are seeking to invalidate large portions of the AdSense Terms of Service and, once the Terms are accordingly revised, Google's conduct would constitute a breach of contract. (FAC ¶¶ 88-89.) This is another key difference between the two actions, as the *Super Cray* lawsuit is not concerned about whether the AdSense Terms of Service are unconscionable.

1  action.  By itself, class certification discovery and issues could require years of work and would

2  not be related to the actual merits of the Free Range Content causes of action.

3        In short, while there is obviously some similarity of facts between the two cases, those

4  similarities are insufficiently substantial to warrant the cases being related.  Unlike *In re Leapfrog*

5  *Enterprises, Inc. Sec. Litig.*, No. C 03 05421 RMW, 2005 WL 5327775 (N.D. Cal. July 5, 2005),

6  these two actions do not involve identical causes of action nor do they allege essentially the same

7  facts.  The result in *Leapfrog* does not apply here.  *See Hynix Semiconductor Inc. v. Rambus Inc.*,

8  No. C-00-20905 RMW, 2008 WL 3916304, at \*\*1-2 (N.D. Cal. Aug. 24, 2008) (declining to

9  relate patent litigation cases because only some of the patents overlapped between the cases);

10 *Hodges v. Akeena Solar, Inc.*, No. CV 09-02147 JW, 2010 WL 2756536, at \*1 (N.D. Cal. July 9,

11 2010) (declining to relate cases even though they involved "substantially the same transaction and

12 events" because, in part, the plaintiffs in each lawsuit alleged differing causes of action).

13 **II.  THERE WILL NOT BE UNDULY BURDENSOME DUPLICATION OF LABOR.**

14       Google claims that "[j]udicial coordination of the two actions" would be to the Court's

15 benefit as Google would otherwise be subject to duplicative motions regarding discovery or

16 summary judgment.  *See* Admin. Mot. At 4:20-27.  Therein, Google betrays its true intent behind

17 this administrative motion.  Google does not seek to relate these cases in order to preserve judicial

18 resources, but to slow down Super Cray's ability to prosecute its case.

19       It is no secret that class actions operate on a different timetable than ordinary litigation.

20 Much of the initial discovery and motion practice – which may take one or more years – is solely

21 dedicated to whether the case is suitable for class treatment.  None of this concerns Super Cray in

22 any way, but it is likely that Google will request the Court to prevent Super Cray from engaging

23 in its own discovery until class-related discovery is complete in this action.  Moreover, it is likely

24 that the parties in the *Super Cray* action will be ready to file motions for summary judgment by

25 the end of this year, and Google's own words show that Google would seek to delay Super Cray

26 from filing such a motion because it would ostensibly be "duplicative" of a similar motion filed in

27 this case.  Thus, the *Super Cray* action would be left to languish for years before this action

28 catches up with respect to its procedural posture.  By then, Super Cray will likely have been

bankrupt for years and its founders greatly harmed for not being able to obtain any redress.[2] (*Super Cray* Complaint ¶ 63.)

Therefore, the fact that class certification is a critical component of this action and entirely missing in *Super Cray* demonstrates by itself that there will not be duplication of effort by the courts between the two actions. In addition, the fact that *Super Cray* is primarily a fraud case while this action is not, also means that the parties will be obtaining discovery about different issues to different ends. The two cases are not similar to each other and thus the Court should not grant Google's motion to relate them together.

## CONCLUSION

For the reasons stated herein, Super Cray Inc. respectfully requests that the Court deny defendant Google Inc.'s administrative motion to relate cases.

Dated:  February 5, 2015                             GAW | POE LLP

By: _____
Randolph Gaw
Attorneys for Super Cray Inc.

---

[2] Super Cray also suspects that Google is not worried so much as having to litigate "duplicative" motions but is truly worried that an unfavorable summary judgment or trial result in the *Super Cray* action could be used for issue preclusion by the Free Range Content plaintiffs in this action (a risk that they do not face from Google, given the rules of issue preclusion). Given the tremendous exposure Google would face if a class is certified, it is to Google's advantage to delay any dispositive ruling in *Super Cray* as long as possible.