Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Jeff D. Friedman
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>    v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>                        Defendant. | No. 5:14-CV-02329 BLF<br><br>PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION<br><br>Date:    Not applicable<br>Time:   Not applicable<br>Judge:  Hon. Beth Labson Freeman<br>Dept.:  Courtroom 3, 5th Floor |

010450-11 767265 V1

**TABLE OF CONTENTS**

**Page**

A.  STATEMENT OF RELIEF SOUGHT ................................................................... 1

B.  STATEMENT OF ISSUES TO BE DECIDED ...................................................... 1

I.  introduction ........................................................................................................................ 2

II. statement of facts ............................................................................................................... 3

    A.  Google's arguments and representations .................................................................. 3

        1.  First step: was there a liquidated damages provision? ................................. 3

        2.  Second step: if there was a liquidated damages provision, did plaintiffs adequately allege unreasonableness? ..................................... 6

    B.  The Court's ruling ..................................................................................................... 7

    C.  Plaintiffs' reasonable diligence in bringing this motion ........................................... 8

III. ARGUMENT ..................................................................................................................... 8

    A.  Part 1 of the Court's ruling ....................................................................................... 9

    B.  Part 2 of the Court's ruling ..................................................................................... 10

    C.  The Court's comment regarding plaintiffs' allegations as to the unreasonableness of the provision at issue ............................................................. 13

IV. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

<u>Page(s)</u>

### CASES

*ABI, Inc. v. City of L.A.*,
    153 Cal. App. 3d 669 (1984) ...................................................................................... 3, 4, 8, 9

*Atel Fin. Corp. v. Quaker Coal Co.*,
    132 F. Supp. 2d 1233 (N.D. Cal. 2001) .......................................................................... 11, 12

*Bayol v. Zipcar, Inc.*,
    2015 WL 394515 (N.D. Cal. Jan 29, 2015) ........................................................................ 11

*Dytch v. Yoon*,
    2011 WL 839421 (N.D. Cal. Mar. 7, 2011) ......................................................................... 6

*Kraus v. Trinity Mgmt. Servs., Inc.*,
    67 Cal. Rptr. 2d 210 (Cal. App. 1st Dist.,1997) (*rev'd on other grounds*, 23 Cal.
    4th 116 (2000)) ................................................................................................................. 10

*Mahroom v. Best Western Intern., Inc.*,
    2009 WL 2216578 (N.D. Cal. July 22, 2009) ................................................................ 11, 12

*Outdoor Recreation Grp. v. Crymson Co. Ltd.*,
    2000 WL 1685032 (9th Cir. Nov. 9, 2000) ................................................................... 3, 4, 7

*Ruwe v. Cellco P'ship*,
    613 F. Supp. 2d 1191 (N.D. Cal. 2009) .......................................................................... 11, 12

# NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that plaintiffs move for leave to file a motion for reconsideration regarding the Court's decision as to plaintiffs' liquidated damages-related claims, which decision was made in response to defendant Google Inc.'s ("Google") motion to dismiss plaintiffs' first amended complaint. (Dkt. No. 38.) Plaintiffs' motion is made pursuant to Fed. R. Civ. P. 54(b) and Civil L.R. 7-9 and is based on this Notice of Motion and Motion and the sub-joined memorandum, as well as the pleadings and papers on file in this matter, including the Court's written order on Google's motion to dismiss (Dkt. No. 66) and the transcript of the hearing during which the Court ruled orally on Google's motion (Dkt. No. 70), the supporting Declaration of Robert F. Lopez, and upon such other matters as may be presented to the Court, including any response by the defendant and any reply thereto.

**A.    STATEMENT OF RELIEF SOUGHT**

Plaintiffs seek an order granting them leave to file a motion for reconsideration of the Court's decision that a provision identified by the plaintiffs in Google's AdSense terms and conditions is not an invalid and unenforceable liquidated damages clause as a matter of law.

**B.    STATEMENT OF ISSUES TO BE DECIDED**

The issue presented is whether the Court should grant plaintiffs' leave to file a motion for reconsideration of the Court's decision that a provision identified by the plaintiffs in Google's AdSense terms and conditions is not an invalid and unenforceable liquidated damages clause as a matter of law.

## I.  INTRODUCTION

Plaintiffs seek leave to file a motion for reconsideration regarding an error of law in the Court's ruling on Google Inc.'s ("Google") motion to dismiss plaintiffs' first amended complaint. (Dkt. Nos. 66 and 70.)  This error concerns plaintiffs' causes of actions based on their contention that there is an invalid and unenforceable liquidated damages provision in Google's AdSense contract, which Google relies upon to withhold 100% of program funds payable to publishers when it terminates their AdSense accounts.  As to this error, respectfully, plaintiffs believe that there was "[a] manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order."  *See* Civil L.R. 7-9(b)(3).

The Court's erroneous ruling deprives plaintiffs of a significant theory that they are entitled to pursue not only on their own behalf, but on behalf of the proposed class of publishers.  The question of whether there is an invalid and unenforceable liquidated damages provision in the AdSense contract is readily amenable to class treatment.  Plaintiffs' prosecution of claims based on their liquidated damages theory will lead, in their view, to justice for the thousands and thousands of publishers whose program funds Google withholds in their entirety, in spite of the valuable and compensable services rendered by the publishers prior to termination of their accounts.

On the other hand, if the Court's error is not corrected, unnecessary prejudice will result to the plaintiffs and ultimately, in their view, to Google as well, for the parties will be required to litigate this matter without claims that the plaintiffs are entitled to prosecute.  Depending on the outcome of the matter without their liquidated damages theory in the mix, plaintiffs may well be forced to appeal this issue to the Ninth Circuit, which they believe will lead to a remand.  Better to allow plaintiffs leave to file a motion for reconsideration now, so that the error can be corrected at the outset of this case before unnecessary and expensive inefficiencies result in the proceedings.

## II.     STATEMENT OF FACTS

**A.     Google's arguments and representations**

Google relies on a term in its AdSense contract to withhold 100% of program earnings from AdSense publishers when it terminates their accounts.  (Dkt. No. 27 Exs. A and C, ¶ 10, and Ex. B, ¶ 11.)

Plaintiffs claim that this term is an invalid and unenforceable liquidated damages provision.  (*E.g.*, Dkt. No. 70 at 7 ll. 15-17 ("The contract provision at issue Section 10 is the one which they are trying to blow up, vis a vi [*sic*], unconscionability or liquidated damages principles.").)

In its motion to dismiss plaintiffs' first amended complaint, Google argued: (1) that the provision at issue is not a liquidated damages provision; and (2), that even if it is, it is an enforceable liquidated damages provision.  (Dkt. No. 38 at 23.)

### 1.     First step: was there a liquidated damages provision?

*First*, in its motion to dismiss, Google offered *only one argument* as to why the term is supposedly not a liquidated damages provision: that the provision does not require  "a party 'to pay [a sum] or a deposit on which [the party] agrees to forfeit for *breach of some contractual obligation*.'"  (*Id.* (emphasis in original).)  For this proposition, Google cited only to *ABI, Inc. v. City of L.A.*, 153 Cal. App. 3d 669, 685 (1984).  Google also purported to cite to *Outdoor Recreation Grp. v. Crymson Co. Ltd.*, 2000 WL 1685032, at *2 (9th Cir. Nov. 9, 2000), but that decision is unpublished.  Per Ninth Circuit Rule 36-3(c), Google was not permitted to cite this pre-January 1, 2007 disposition to this Court.  Nor may the *Outdoor Recreation* case be considered as precedent by this Court.  Ninth Circuit Rule 36-3(a).

In spite of the emphasis it left intact in its quote from *ABI*,[1] Google evidently meant to argue that plaintiffs FRC and Simpson, because Google referred to "invalid activity"—not

---

[1] The *ABI* court's comment on the meaning of liquidated damages was based on the italicized portion of the quote cited by Google.  There, the defendant sought to characterize a fee paid to it by a developer, which it wished to keep, as liquidated damages.  153 Cal. App. 3d at 684-85.  But the court held that it could not retain the fees on that basis because the contract there—unlike the contract here at issue—did not tie retention of the fee to "breach of some contractual obligation." *Id.* at 685 (emphasis omitted).  In referring to the contractual term there at issue, the court stated: "The language used is far from purporting to be a preestimate of damages for breach of contract,

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                              - 3 -
Case No. 14-cv-02329-BLF

010450-11 767265 V1

specifically "invalid clicks"—in the termination notice it sent to them, Dkt. Nos. 39-7 (termination notice to FRC) and 39-12 (termination notice to Mr. Simpson), never accrued any sums payable, despite their service of ads, in the first place.  (Without citation—because it is an untrue statement—Google argues that FRC (alone) "admitt[ed] that the bulk of its clicks were invalid." (Dkt. No. 38 at 23.))  But Google, in light of the italicized language in *ABI*, also seemed to argue that there was no breach triggering payment or forfeiture of plaintiffs' program funds.

Additionally, Google evidently meant to argue—without any citation to its own contract—that because its termination notices to plaintiffs CIS and Chose purportedly advised that their accounts were terminated for failure to comply with its "policies regarding website content," they also were never entitled to payments for the period before termination, in spite of having served ads at Google's behest.  "Thus, like in *ABI*," Google concluded, "no provision requires Plaintiffs to *pay* for the breach of some contractual provision, and there is no liquidated damages provision in the AdSense Terms."  (Dkt. No. 38 at 24 (emphasis in original).)

But the premise of the foregoing argument is untrue, as Google's own statements establish. In its motion, for example, Google stated that "[w]here the invalid activity is sufficiently egregious, Google will close the publisher's AdSense account, consistent with the provisions of the AdSense Terms, and, to the fullest extent possible, refund any *unpaid revenue* back to affected advertisers, along with Google's *share* of that revenue." (*Id.* at 6 (emphasis added).)  Google also stated, "If this action proceeds beyond the pleadings, which it should not, the evidence will show that *the money withheld from Plaintiffs is being refunded to advertisers*, including Google's 'revenue share,' which Google could have kept if it treated these clicks as genuine." (*Id.* at 10 n.10 (emphasis added).)  In other words, when it terminates a publisher's account, Google indeed will

---

particularly since it is possible for the conditions causing reallocation to be without fault on the part of the developer." *Id.*  But to reiterate: here, Google itself admits that the contract term at issue is triggered by breach.  (*See*, *e.g.*, Dkt. No. 70 at 9, ll. 14-25, 10, ll. 1-2 ("So the first thing I want to make clear is it could be either of those concepts.  The breach of contract might be a violation of one of the policies or procedures that's incorporated by reference at the very beginning of the contract.  Obviously, the second reference to invalid activity links back to Section 5.  It says [in paragraph 10], we, meaning Google, may withhold unpaid amounts or charge back your account.").)

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                - 4 -
Case No. 14-cv-02329-BLF

010450-11  767265 V1

withhold a sum certain from the publisher and refund it, along with Google's separate share, to corresponding advertisers.

Google further admitted as much at the hearing on its motion, where it abandoned its no-amount-owing-therefore-no-liquidated-damages theory. There, Google specifically stated that upon a breach based on invalid activity or violation of program policies, "Google may terminate you and . . . *with hold* [sic] the last billing cycle. *Whatever that is*, could be 30 days, it could be one day, but the last billing cycle." (Dkt. No. 70 at 7, ll. 18-25; 8, l. 1; 9, ll. 22-25; 10, ll. 1-5 ("It says we, meaning Google, may *withhold unpaid amounts* or charge back your account." (emphasis added); 17, ll. 5-20 (further referring to "withhold[ing]" of 100% of the sums attributable to the last program period[2] from the publishers upon termination).) This comports with the parlance of the notices sent to the plaintiffs; for example, Ms. Chose's termination notice states that Google will "withhold payment of [the publisher's] account balance" and that the "earnings on [the publisher's] account will be returned to the affected advertisers." (Dkt. Nos. 39-11 (termination notice to Ms. Chose); *see also* Dkt. No. 39-9 (termination notice to CIS, providing in part that "*[t]he earnings on your account* will be returned to the affected advertisers.") (emphasis added); Dkt. No. 39-8 (appeal disposition to FRC, providing that "accounts disabled for invalid click activity will receive no further payment nor any reissue of previous payment. *Your outstanding balance and Google's share of the revenue* will both be fully refunded back to the affected advertisers.").) Thus, Google underscored the true state of affairs: that there is a sum certain otherwise payable to publishers that it chooses to withhold when it terminates publishers' accounts, and that it "refunds" that money to publishers.

That Google abandoned its no-payment-ever-due theory at the hearing is further illustrated by this statement on the part of its counsel: "[y]ou're right, it's not liquidated damages *because you don't set aside or liquidated* [sic] some at the outset that you forfeit upon one or more breaches." (Dkt. No. 70 at 11, ll. 4-6 (emphasis added).) Via this statement, Google raised a new argument at

---

[2] As plaintiffs make abundantly clear in their second amended complaint, Google, depending on when in a month it terminates a publisher, will withhold funds payable for periods closer to two months rather than at most 30 days, contrary to the representation of Google's counsel at the hearing. (Dkt. No. 73, ¶¶ 6, 59, 88.)

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                - 5 -
Case No. 14-cv-02329-BLF

010450-11  767265 V1

the hearing: that because in its view there was no specific amount set aside at the time of contracting, there could be no liquidated damages provision.  But this is not the law, as discussed below.  (Moreover, even as to this argument, Google contradicted itself by stating in the lines preceding it that "[i]t's a fair reasonable allocation at the time of formation given the uncertainty of what could happen"—which is the language of liquidated damages.  (Dkt. No. 70 at 11, ll. 2-4.))

Furthermore, as alleged in greater detail in plaintiffs' second amended complaint, Google, in extra-contractual documents, admits that "*earnings*" are at stake when Google terminates publishers for breach of contract based on supposed "invalid activity" or "policy violations." (Dkt. No. 73, ¶¶ 25, 32 (emphasis added).)  And indeed, its online dashboard that is available to publishers before they are terminated (whereupon Google locks publishers out of their account information including the dashboard), sets forth two numbers: a gross number, and a net number, the latter being the earnings payable after Google deducts whatever sum it deducts for supposed "invalid activity" or other issues.  (*Id.*, ¶¶ 40, 41, 44, 58.)  So there is indeed a specific sum that is being withheld from publishers upon their termination for supposed breach of contract.

> **2. Second step: if there was a liquidated damages provision, did plaintiffs adequately allege unreasonableness?**

*Second*, as to the question of whether, if there was a liquidated damages provision, plaintiffs adequately alleged unreasonableness, Google, in its motion, did *not* challenge the sufficiency of plaintiffs' allegations.  It did not argue that plaintiffs failed to raise adequately the issue of whether the provision is "unreasonable under the circumstances existing at the time the contract was made."  (Dkt. No. 38 at 23-25.)  Rather, Google proceeded simply to argue that the provision was reasonable as a matter of law.  So plaintiffs never had the opportunity to respond in their opposition to any contention that their allegations regarding unreasonableness were in some way insufficient, and they object.  Google did not raise this new argument, if it ever did, until its *reply*.[3] (Dkt. No. 45 at 11 ("Plaintiffs did not plead any facts establishing that it was not a

---

[3] "'It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.'" *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) (citations omitted).

Also, Google did not raise this argument at the hearing.  (*See generally* Dkt. No. 70.)

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                - 6 -
Case No. 14-cv-02329-BLF

010450-11 767265 V1

reasonable estimation of damages.").)  And even then, Google immediately proceeded to argue that paragraph 10 of its contract meets the reasonableness test of California law.  (*Id.* at 11-12.)

**B.     The Court's ruling**

At the hearing on Google's motion to dismiss, the Court dismissed plaintiffs' liquidated damages claims because, in its view, there is no liquidated damages provision in the contract.  It stated:

> On your liquidated damages claim, I'm just not seeing it.  I just don't see this as liquidated damages.  I don't see this as a penalty.  I don't see this as an agreement to forfeit a sum of money upon a specific occurrence.
>
> It looks like a contract that, at least on its face at the time the parties entered into it, was a hold back like a security deposit is a hold back with a provision to review the valid clicks versus the invalid and adjust compensation based on that.

(Dkt. No. 70 at 5, ll. 6-14.)

The Court also stated:

> But the contract doesn't provide.
>
> See, liquidated damages generally are, you mean, you see them or maybe you used to see them, I don't know that you still do, the earnest money in a real estate deal and there's an express liquidated damages clause that says if you terminate this contract for the following reasons, the earnest money will be liquidated damages of 10,000, 10 million, whatever the deal is.
>
> We don't have that at all here.  This is not an express liquidated damages clause, there's no amount of money not even the full month's worth because it is a may, and Google does say that we have the discretion to withhold it all.
>
> But it doesn't say that it will.  And it doesn't say that their first determination is their final determination because they provide an opportunity to contest.

(Dkt. No. 70 at 27, l. 25; 28, ll. 1-14.)

Also, the Court stated with respect to the second part of plaintiffs' liquidated damages claims, *i.e.*, if there was a liquidated damages provision at issue—which the Court said there was not—that in its view it might require further allegations:

> That's a lynchpin to your argument, but, the statute requires you to allege facts to show it was unreasonable under the circumstances existing at the time of the

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                      - 7 -
Case No. 14-cv-02329-BLF

010450-11  767265 V1

contract, and the case law show [*sic*] that is that cannot be viewed with hindsight. I have nothing from you on that in the pleading. I'm not sure that survives.

(Dkt. No. 70 at 27, ll. 2-13.)

### C. Plaintiffs' reasonable diligence in bringing this motion

Plaintiffs have exercised reasonable diligence in bringing this motion. After reviewing the transcript of the hearing on Google's motion to dismiss, and after conducting preliminary research, plaintiffs contacted Google to advise of their plans to file this motion and to set a schedule for doing so. (Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Leave to File Motion for Reconsideration, ¶ 2.) Plaintiffs are moving in accordance with that schedule, and before what very likely will be Google's motion to dismiss their third amended complaint. The schedule agreed upon by the parties gives Google its requested 28 days to file its motion to dismiss (or to answer) following the settling of the pleadings. No prejudice will accrue to Google by the consideration of this motion or if the Court grants the relief requested.

## III. ARGUMENT

In light of the Court's rulings, the facts as alleged, and the arguments actually advanced by Google in its motion, the Court should permit plaintiffs to move for reconsideration as requested.

Fed. R. Civ. P. 54(b) allows the Court to correct its interlocutory order on Google's motion to dismiss at any time prior to entry of final judgment. As for Civil L.R. 7-9(b)(1), (3), it provides that plaintiffs, in order to file their motion for reconsideration, must show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order" or "a material difference in fact or law." Plaintiffs meet this standard.

Respectfully, with respect to Civil L.R. 7-9(b)(3), the Court did not consider plaintiffs' argument that there is a liquidated damages provision here within the meaning of the law, including as expressed in *ABI*. This disregard is evident when considered against the explicit holdings of the Court, as set forth in this memorandum. These holdings go beyond *ABI*, the only case properly cited by Google on the definition of liquidated damages, because *ABI* itself merely recited that "[l]iquidated damages constitute a sum which a contracting party agrees to pay or a deposit which

he agrees to forfeit for breach of some contractual provision." 153 Cal. App. 3d at 685 (emphasis omitted). Plaintiffs addressed this argument in their opposition: the provision here at issue neatly fits this definition because in Google's view, plaintiffs agreed that Google could withhold 100% of terminated publishers' money upon breach of the AdSense contract. (Dkt. No. 43 at 5, 18, 21.) Withholding this money is either paying the funds to Google or forfeiting a deposit; either way, based on this provision, Google withholds publishers' funds in their entirety when Google claims breach of contract.

To illustrate further what plaintiffs contend to be a manifest failure to consider the law and facts presented to the Court before it issued its decision, they ask the Court to consider the following:

### A.     Part 1 of the Court's ruling

The Court indicated in Part 1 of its ruling that the contract here at issue "was like a security deposit is a hold back with a provision to review the valid clicks versus the invalid and adjust compensation based on that."[4] (Dkt. No. 70 at 5, ll. 10-14.) For this reason, according to the Court, it did not "see this as an agreement to forfeit a sum of money upon a specific occurrence." (*Id.* at ll. 8-9)

This security deposit analogy was not one argued by Google, so plaintiffs had no opportunity to offer briefing in response to it. Nonetheless, this part of the Court's ruling is premised on the notion that there was some unpaid amount to "adjust," which was based on ads served by the plaintiffs. The Court did not hold that there was no money owed to plaintiffs to begin with. Indeed, paragraph 10 of the AdSense contract, which as Google admits is the term at issue, provides that upon termination for breach, Google "may withhold *unpaid amounts* or charge back your account." (Dkt. No. 27 Exs. A and C, ¶ 10 (emphasis added).) So there is some

---

[4] It bears repeating that only the termination notice Google sent to two of the four named plaintiffs, FRC and Mr. Simpson, referenced "invalid activity," which according to the contract can *include*, but does not necessarily mean, "invalid clicks." (Dkt. No. 27 Exs. A and C, ¶ 5.)

Further, as plaintiffs allege, there was no "adjust[ment]" at termination; Google simply withheld 100% of the sums unpaid at the time of termination.

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION           - 9 -
Case No. 14-cv-02329-BLF

010450-11  767265 V1

liquidated but unpaid *amount* at issue, and Google withholds that sum certain and purportedly "refunds" that very sum, along with its share, to advertisers.

Also, security deposits can be security for liquidated damages. *See Kraus v. Trinity Mgmt. Servs., Inc.*, 67 Cal. Rptr. 2d 210, 213 (Cal. App. 1st Dist.,1997) (*rev'd on other grounds*, 23 Cal. 4th 116 (2000)) ("Should a tenant terminate his or her tenancy before the expiration of the lease term, Trinity Properties assesses a 'liquidated damages' charge equal to the amount specified in the Lease. The average amount of this charge is $700. Every tenant is required to pay a 'security deposit' in an amount generally equal to one month's rent. This 'security deposit' is routinely used to secure payment of the liquidated damages amount."). So even if the sums earned by but not yet paid to publishers could be considered as a type of security deposit, the sums were securing the payment of what Google *always* considered to be proper damages for breach of the AdSense contract: 100% of the program funds unpaid to the publisher at the time of termination. As plaintiffs alleged, the amount of the unpaid program funds is Google's liquidated damages for their supposed breaches of contract. (Dkt. No. 27, ¶ 89.)

**B.     Part 2 of the Court's ruling**

In the second part of its ruling, the Court held that there is no liquidated damages provision here because liquidated damages "generally are" the same as "earnest money in a real estate deal and there's an express liquidated damages clause that says if you terminate this contract for the following reasons, the earnest money will be liquidated damages of 10,000, 10 million, whatever the deal is." (Dkt. No. 70 at ll. 1-7.) The Court continued:

> We don't have that at all here. This is not an express liquidated damages clause, there's no amount of money not even the full month's worth because it is a may, and Google does say that we have the discretion to withhold it all. But it doesn't say it that it will. And it doesn't say that their first determination is their final determination because they provide an opportunity to contest.

(*Id.* at ll. 8-14.) Again, these holdings are not premised on arguments made by Google in its motion (the Court did not hold that no money was owed to the publishers in the first place), and plaintiffs had no opportunity to offer briefing in response to such arguments.

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                                         - 10 -
Case No. 14-cv-02329-BLF

010450-11 767265 V1

By way of the foregoing language from its ruling, the Court seems to be expressing three separate reasons for deciding that there is no liquidated damages provision in Google's contract:

One, there is no explicit reference to "liquidated damages in the contract." But where liquidated damages are concerned, California courts look to the substance, rather than the form, of the agreement. *See*, *e.g.*, *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1197 (N.D. Cal. 2009) ("California courts have 'consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures.'") (citation omitted).

Two, there is no specific amount referenced in the contract. For example, the contract does not provide that upon a breach, the defendant has a right to keep or collect $10,000. But so long as the amount is an ascertainable sum certain, there are liquidated damages. *See*, *e.g.*, *Bayol v. Zipcar, Inc.*, 2015 WL 394515, at *3 (N.D. Cal. Jan 29, 2015) (liquidated damages need only be "'certain or *readily ascertainable*'") (citing *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002)) (emphasis in original); *Mahroom v. Best Western Intern., Inc.*, 2009 WL 2216578, at *8 (N.D. Cal. July 22, 2009) (discussing liquidated damages figure that required extensive calculations to ascertain); *Atel Fin. Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233, 1239 (N.D. Cal. 2001) (referring to liquidated damages term providing for the recovery of "an amount equal to the present value of all monies to be paid by Lessee during the remaining Basic Term or any successive term then in effect, plus the present value of any balloon payment and the anticipated residual of the Equipment," etc., the latter of which was defined as "*the lessor's estimate* of the remaining ownership value at the end of the lease transaction.") (emphasis added).

Here, Google absolutely demonstrates that the sums are certain or ascertainable because it acts accordingly, based on paragraph 10 of the contract, which provides that it "may withhold unpaid amounts." Quite simply this reference to "unpaid amounts" is to a sum certain that is always readily ascertainable from Google's own figures. Google then proceeds to withhold that sum in each case of a terminated publisher. Then, as it states, it purports to return this very specific sum, along with its own ascertainable share, to advertisers. (Dkt. No. 38 at 6, 10 n.10.) In short,

1    "unpaid amounts" is quite certain—it is a plain reference to whatever amount is unpaid to the
2    publisher when his or her account is terminated.⁵

3    Three, the Court points to Google's supposed discretion (even though Google admits it
4    exercises none where the systematic and uniform withholding of 100% of program funds is
5    concerned) and appeal process as further demonstrating that liquidated damages are not at issue.
6    However, neither Google nor the Court cited to any authority for this aspect of the Court's ruling,
7    and a liquidated damages provision will always only give the exercising party the *right* to those
8    liquidated damages.  *See*, *e.g.*, *Mahroom*, 2009 WL 2216578, at *8 ("For each day during which
9    any Best Western Symbol . . . [is] used in connection with the Hotel, after fifteen (15) days
10   following termination of this License Agreement, Best Western *may elect* to claim from Applicant
11   daily damages . . . ."); *Atel Fin.*, 132 F. Supp. 2d at 1238 ("Upon the occurrence of an Event of
12   Default, Lessor *may at its option* . . . (iii) recover from Lessee . . . [the liquidated damages
13   specified]." (emphasis added).  Plaintiffs are aware of no authority providing that if a party chooses
14   to apply discretion to its decision whether to enforce the clause, or if it permits the opposite party
15   to appeal to it to reverse its decision to do so, then there is no liquidated damages provision at
16   issue.

---

⁵ *See Ruwe*, at 613 F. Supp. 2d at 1198 ("Verizon Wireless contends the reconnect fee is not fixed and certain because it applies only to some customers: those with suspended service who elect to reactivate their accounts.  Because some customers may elect to terminate their contract and pay an early termination fee, rather than pay the reconnect fee and activate their service, Verizon Wireless argues the manner in which the reconnect fee is applied is neither fixed nor certain. . . .  *[Also, a]lthough the Customer Agreement does not specify the specific amount*, all customers electing to reconnect suspended service are charged the same $15 fee.  Although Verizon Wireless could presumably increase or decrease the sum under its Customer Agreement, were it do so, the same flat fee would be charged to all customers reconnecting suspended service, resulting in a sum that is both fixed and certain.  Therefore, a customer entering into an agreement with Verizon Wireless is certain as to his liability in the event of breach, which is one of the primary purposes of liquidated damages provisions.  If a customer's service is suspended due to nonpayment, the Customer Agreement provides that he is subject to a reconnect fee, and this fee is the same for all customers similarly situated.") (emphasis added).  Here, due to Google's systematic practice based on paragraph 10 of the contract, the sum withheld from each publisher is equal in each case to the program funds unpaid to him or her, which amount is necessarily and readily ascertainable.

### C. The Court's comment regarding plaintiffs' allegations as to the unreasonableness of the provision at issue

Also, at the hearing, the Court noted that if it were to have held that there is a liquidated damages provision in the contract, then it might want further allegations as to its unreasonableness. (Dkt. No. 70 at 27, ll. 2-13.)  Again, however, Google in its motion to dismiss did not challenge the sufficiency of plaintiffs' allegations in this regard, so plaintiffs did not have an opportunity to brief in response to any such challenge.

As for the Court's comment, enhancing plaintiffs' allegations would only come into play if the Court agreed that there was a liquidated damages provision at issue.  Because it held there was not, amending to add further allegations regarding unreasonableness was not indicated, nor would it have been effective.

But, if the Court grants the instant motion as well as the motion for reconsideration that would follow, plaintiffs request leave to amend as needed in the Court's view to augment their allegations regarding the unreasonableness of the liquidated damages provision they contend to be at issue.

### IV.    CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully ask for leave to file a motion for reconsideration regarding their liquidated damages-based claims.  Plaintiffs provide a proposed form of order with this motion.

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                - 13 -
Case No. 14-cv-02329-BLF

010450-11 767265 V1

| | | |
|---|---|---|
| 1 | DATED:  March 16, 2015 | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 2 | | By   */s/ Steve W. Berman* |
| | | Steve W. Berman |
| 3 | | Steve W. Berman (*pro hac vice*) |
| | | Robert F. Lopez (*pro hac vice*) |
| 4 | | 1918 Eighth Avenue, Suite 3300 |
| | | Seattle, WA  98101 |
| 5 | | Telephone:  (206) 623-7292 |
| 6 | | Facsimile:  (206) 623-0594 |
| | | steve@hbsslaw.com |
| 7 | | robl@hbsslaw.com |
| 8 | | Jeff D. Friedman |
| | | 715 Hearst Avenue, Suite 202 |
| 9 | | Berkeley, CA 94710 |
| | | Telephone: (510) 725-3000 |
| 10 | | Facsimile:  (510) 725-3001 |
| | | jefff@hbsslaw.com |
| 11 | | |
| 12 | | *Attorneys for Plaintiffs and the Proposed Class* |

# CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2015, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

Dated: March 16, 2015              /s/ *Steve W. Berman*
                                   Steve W. Berman

PLAINTIFFS' MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                    - 15 -
Case No. 14-cv-02329-BLF

010450-11  767265 V1