1  COOLEY LLP
2  MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
   JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
   KYLE C. WONG (224021) (kwong@cooley.com)
3  101 California Street, 5th Floor
   San Francisco, CA  94111-5800
4  Telephone:    (415) 693-2000
   Facsimile:    (415) 693-2222
5
   Attorneys for Defendant
6  GOOGLE INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

| | |
|---|---|
| 12  FREE  RANGE  CONTENT,  INC.,  a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii Corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others simply situated, | Case No.  5:14-cv-02329-BLF |
| | **DEFENDANT GOOGLE INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | Date:         February 18, 2016 |
| v. | Time:         9:00 a.m. |
| | Courtroom:  3 |
| GOOGLE INC., a Delaware corporation, | Judge:        Hon. Beth Labson Freeman |
| Defendant. | Trial Date:   Not Yet Set |

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT ...................................................................................................... 1

STATEMENT OF RELIEF SOUGHT ..................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

I.      INTRODUCTION ......................................................................................... 2

II.     STATEMENT OF FACTS ............................................................................ 3

        A.      AdSense affords publishers that comply with Google's terms of service a free way to make money from advertisements placed on their websites. ............... 3

        B.      The AdSense Terms govern Google's and Plaintiffs' rights and obligations. ........ 3

        C.      Plaintiffs agreed to the AdSense Terms and were terminated for breach. .............. 5

III.    APPLICABLE STANDARDS ....................................................................... 7

IV.     ARGUMENT ................................................................................................. 7

        A.      Plaintiffs fail to state a claim for breach of contract (Count II). ............................ 7

                1.      Plaintiffs' conclusory claims of performance are insufficient and contrary to the facts in the TAC and judicially noticed by the Court. ........ 7

                2.      The Terms expressly authorized Google to withhold the disputed payments, and are fully enforceable............................................................. 10

                        a.      Plaintiffs have not established that any provision of the AdSense Terms was unconscionable. ..................................................... 10

                                (1)     The Terms are not procedurally unconscionable. ............. 11

                                (2)     The Terms are not substantively unconscionable. ........... 12

                        b.      Prohibitions against unreasonable liquidated damages are no obstacle to the Terms' enforcement. ............................................... 14

                                (1)     The Terms contain no liquidated damages provision. ...... 14

                                (2)     Even if the challenged provision were considered a liquidated damages provision, it would be enforceable.......................................................................... 15

                        c.      Google did not terminate Plaintiffs for "no reason." .................... 17

                3.      Plaintiffs Chose and Simpson have waived their right to assert breach of contract (or any other claim) by failing to timely appeal......... 18

        B.      The Terms and controlling law preclude Plaintiffs' redundant claim for breach of the implied covenant of good faith and fair dealing (Count III). .......... 20

        C.      Plaintiffs fail to state a claim for unjust enrichment (Count IV)......................... 21

        D.      Plaintiffs fail to state a claim under the UCL (Count V). .................................. 22

                1.      Plaintiffs lack standing to sue under the UCL. ...................................... 22

                2.      Plaintiffs do not state a claim under the UCL's fraudulent prong. ........... 23

                3.      The facts alleged state no claim under the UCL's unlawful prong........... 24

Cooley LLP
Attorneys At Law
Palo Alto

i.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

    4.    Plaintiffs allege no facts stating a claim under the UCL's unfair prong. ...................................................................................... 25

4

  E.    Plaintiffs fail to state a claim for declaratory relief (Counts VI and VII). ............ 25

5

  F.    Plaintiffs' claim under 1671 fails for the reasons described above (Count I)....... 25

V.    CONCLUSION ............................................................................................. 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ABI, Inc. v. City of L.A.*,
   153 Cal. App. 3d 669 (1984)...................................................................................14

*Am. Software, Inc. v. Ali*,
   46 Cal. App. 4th 1386 (1996) ...............................................................................13

*Armendariz v. Found. Health Psychcare Servs., Inc.*
   24 Cal. 4th 83 (2000) ...........................................................................................10

*Austero v. Aurora Loan Servs.*,
   No. 11-cv-0490, 2011 U.S. Dist. LEXIS 86340 (N.D. Cal. Apr. 27, 2011) ...........11

*Avila v. Countrywide Home Loans*,
   No. 10-cv-5485, 2010 WL 5071714 (N.D. Cal. Dec. 7, 2010)..........................20, 24

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) ..............................................................................25

*Bayol v. Zipcar, Inc.*,
   78 F. Supp. 3d 1252 (N.D. Cal. 2015) ..............................................................14, 15

*Beasley v. Wells Fargo Bank, N.A.*,
   235 Cal. App. 3d 1383 (1991)................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................7

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (2007) .........................................................................12, 25

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) ..............................................................................23

*Bionghi v. Metro. Water Dist. of S. Cal.*,
   70 Cal. App. 4th 1358 (1999) ................................................................................20

*Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*,
   No. 11-cv-0858, 2012 WL 928412 (S.D. Cal. Mar. 19, 2012) ..........................11, 12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990)................................................................................20

*Carma Developers (California), Inc. v. Marathon Development California, Inc.*,
   2 Cal. 4th 342 (1992) ........................................................................................20, 21

Cooley LLP
Attorneys At Law
Palo Alto

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................23

*Chodos v. West Publ'g Co., Inc.*,
   292 F.3d 992 (9th Cir. 2002)..................................................................................14

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008).................................................................................23

*Craigslist, Inc. v. Naturemarket, Inc.*,
   694 F. Supp. 2d 1039 (N.D. Cal. 2010) .................................................................11

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) .................................................................................23

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
   875 F. Supp. 2d 1058 (N.D. Cal. 2012) ............................................................22, 23

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) .................................................................................25

*El Centro Mall, LLC v. Payless ShoeSource, Inc.*,
   174 Cal. App. 4th 58 (2009) ...................................................................................16

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................................21

*Freeman v. Wal-Mart Stores, Inc.*,
   111 Cal. App. 4th 660 (2003) .................................................................................10

*Gulf Oil Corp. v. FERC*,
   706 F. 2d 444 (3rd Cir. 1983) .................................................................................10

*Hahn v. Massage Envy Franchising, LLC*,
   No. 12-cv-0153, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014).........................13, 14

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ...............................................................................24

*Kelly v. McDonald*,
   98 Cal. App. 121 (1929).........................................................................................14

*King v. Hausfeld*,
   No. 13-cv-0237, 2013 U.S. Dist. LEXIS 51116 (N.D. Cal. Apr. 9, 2013) ..............10

Cooley LLP
Attorneys At Law
Palo Alto

iv.

Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Klein v. Chevron U.S.A., Inc.,*
  202 Cal. App. 4th 1342 (2012) ...................................................................21, 22

4

5

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005).............................................................................19

6

*Lennar Homes of Cal., Inc. v. Stephens,*
  232 Cal. App. 4th 673 (2014) ..............................................................................11

7

8

*Levine v. Blue Shield of Cal.,*
  189 Cal. App. 4th 1117 (2010) ............................................................................21

9

10

*Linear Tech. Corp. v. Applied Materials, Inc.,*
  152 Cal. App. 4th 115 (2007) .........................................................................22, 23

11

*Lucas v. Hertz Corp.,*
  875 F. Supp. 2d 991 (N.D. Cal. 2012) ................................................................11

12

13

*Morgan v. AT&T Wireless Servs., Inc.,*
  177 Cal. App. 4th 1235 (2009) ............................................................................23

14

15

*Morris v. Redwood Empire Bancorp,*
  128 Cal. App. 4th 1305 (2005) ................................................................11, 12, 16

16

*Nagrampa v. MailCoups, Inc.,*
  469 F.3d 1257 (9th Cir. 2006)..............................................................................12

17

18

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001)..................................................................................7

19

20

*Newton v. Am. Debt Servs., Inc.,*
  854 F. Supp. 2d 712 (N.D. Cal. 2012) ................................................................12

21

*Northwest, Inc. v. Ginsberg,*
  134 S. Ct. 1422 (2014) .........................................................................................20

22

23

*Novak v. Overture Servs., Inc.,*
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) ................................................................11

24

25

*Pardee Constr. Co. v. Super. Ct.,*
  100 Cal. App. 4th 1081 (2002) ............................................................................13

26

*Pirozzi v. Apple, Inc.,*
  966 F. Supp. 2d 909 (N.D. Cal. 2013) ................................................................23

27

28

Cooley LLP
Attorneys At Law
Palo Alto

v.

**Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF**

**TABLE OF AUTHORITIES**
(continued)

Page

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir.1990)............................................................................8

*Rosado v. eBay, Inc.*,
  53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014) ...........................................24

*Ruwe v. Cellco P'ship*,
  613 F. Supp. 2d 1191 (N.D. Cal. 2009) .........................................................14

*Schuman v. Ikon Office Solutions, Inc.*,
  232 Fed. App'x 659 (9th Cir. 2007).................................................................13

*Serpa v. Cal. Surety Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) .........................................................................13

*Song Fi Inc. v. Google, Inc.*,
  No. 14-cv-5080, 2015 U.S. Dist. LEXIS 75272 (N.D. Cal. June 10, 2015) ...........................11

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  782 F. Supp. 2d 1059 (E.D. Cal. 2011).............................................................7

*Steiner v. Thexton*,
  48 Cal. 4th 411 (2010) ............................................................................20, 21

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..................................................................................24

*TradeComet.com, LLC v. Google, Inc.*,
  693 F. Supp. 2d 370 (S.D.N.Y. 2010)..............................................................11

*In re Turnstone Sys. Sec. Litig.*,
  No. 01-cv-1256, 2003 U.S. Dist. LEXIS 26709 (N.D. Cal. Feb. 4, 2003) .............................8, 9

*Util. Consumers' Action Network, Inc. v. AT&T Broadband of S. Cal., Inc.*,
  135 Cal. App. 4th 1023 (2006) .......................................................................16

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
  187 Cal. App. 4th 634 (2010) ...................................................................10, 12

*Weber, Lipshie & Co. v. Christian*,
  52 Cal. App. 4th 645 (1997) ...........................................................................16

*In re Webkinz Antitrust Litig.*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) .............................................................23

Cooley LLP
Attorneys At Law
Palo Alto

vi.

Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Wietschner v. Monterey Pasta Co.*,
294 F. Supp. 2d 1102 (N.D. Cal. 2003) ..................................................................19

4

*Woods v. Google Inc.*,
889 F. Supp. 2d 1182 (N.D. Cal. 2012) ..................................................................11

5

6

*Wornum v. Aurora Loan Servs., Inc.*,
No. 11-cv-2189, 2011 WL 3516055 (N.D. Cal. Aug. 11, 2011) ............................25

7

8

**Statutes**

9

Business and Professions Code
§ 17200.............................................................................................................24, 25

10

California Civil Code
§ 1671...........................................................................................................................17

11

§ 1671(b).................................................................................................................1, 16
§ 1709........................................................................................................................25

12

§ 1710........................................................................................................................25

13

14

California Unfair Competition Law ................................................................. *passim*

15

**Other Authorities**

16

Federal Rule of Civil Procedure
9(b)............................................................................................................................23

17

12(b)(6)...................................................................................................................1, 7

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

vii.

**DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

**NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 18, 2016 at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled Court, located at 280 South First Street, San Jose, California 95113, in Courtroom 3 (5th Floor), defendant Google Inc. ("Google") will move to dismiss the Third Amended Class Action Complaint (the "TAC") filed by Plaintiffs Free Range Content, Inc., Coconut Island Software, Inc., Taylor Chose, and Matthew Simpson (collectively "Plaintiffs").  Google's Motion pursuant to FRCP 12(b)(6) is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jim Gray and Kyle Wong, the current and previously-granted requests for judicial notice, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court.

**STATEMENT OF RELIEF SOUGHT**

Google seeks an order dismissing each of the TAC's seven causes of action with prejudice for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claim for breach of contract fails where Plaintiffs breached their agreement with Google, contract terms authorized Google's alleged conduct, and the contract is enforceable.

2. Whether Plaintiffs Chose and Simpson fail to state any cause of action, because they waived their claims by not appealing Google's actions within 30 days as required under their contracts.

3. Whether Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails as duplicative of Plaintiffs' breach of contract claim and for lacking facts showing unfairness.

4. Whether Plaintiffs' claim under the California Unfair Competition Law ("UCL") fails because they do not allege "fraudulent" or "unlawful" conduct, nor any conduct that qualifies as "unfair" under the law, and Plaintiffs are not consumers within the meaning of the UCL.

5. Whether Plaintiffs' claim for unjust enrichment fails because this claim is not an independent cause of action and Plaintiffs failed to meet other pleading requirements.

6. Whether Plaintiffs' claims for declaratory relief and under Civil Code Section 1671(b) fail because the contractual terms that expressly authorized Google's conduct are enforceable.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

# I. INTRODUCTION

At the hearing on Google's first motion to dismiss, the Court identified numerous flaws in Plaintiffs' First Amended Complaint.  The Court repeatedly noted the difficulty Plaintiffs faced, observing at one point "I don't think this case is going to go very far."  Although Plaintiffs have attempted to refashion their claims, added a few conclusory allegations, and—startlingly—expanded their putative class to include residents of more than 40 countries, insurmountable defects remain.  No amount of wordsmithing alters the fact that this is a suit about Google following the contracts to which the Parties agreed, *to the letter*, and Plaintiffs wishing their agreements were different than they are.  Wishful thinking aside, Plaintiffs' contracts are enforceable and preclude their claims.  The Court should dismiss again, this time with prejudice.

The substance of Plaintiffs' breach of contract claim is unchanged.  Plaintiffs now add conclusory claims of performance, but they have no plausible rebuttal to the fact that their own allegations established their breach.  Their claims continue to depend entirely on showing that the terms of Plaintiffs' contracts were unconscionable or impermissible liquidated damages.  The Court, however, has already rejected these very arguments.  Plaintiffs still have no basis to allege procedural unconscionability, particularly in light of the brevity of Google's terms and the many other options for monetizing websites.  Plaintiffs also cannot allege the terms remotely "shock the conscience," as the magnitude of the challenged withholding is both limited to a short time period and proportional to how much each publisher used AdSense (and damaged Google by their breach).  Plaintiffs also cannot allege that the challenged provisions constitute liquidated damages, since Plaintiffs paid Google nothing and the contract specifies neither a set nor a formulaic amount to be paid for breach.  Plaintiffs also cannot allege that this withholding was not a fair *ex ante* estimate of the harm a breach could inflict on the AdSense ecosystem.

As to the implied covenant, Plaintiffs still do no more than repeat their breach of contract claims and assert that, Google doing what the contract said Google would, deprives Plaintiffs of the benefit of the bargain.  California law makes clear that these allegations are insufficient.

The unjust enrichment claim fares no better.  Plaintiffs' inability to fully allege the absence of an agreement here, as *Klein* requires, is unsurprising.  The existence and enforceability

1  of this contract is undisputed and indisputable.  Unjust enrichment is wholly inapt.

2          Plaintiffs' ancillary claims, including their new, ill-supported UCL fraud claim, depend on

3  the viability of their main claims.  Therefore, they also do nothing to help Plaintiffs' cause.

4          Having had an excess of time and opportunity to fix the problems with their case,

5  Plaintiffs' inability to do so is telling.  The Court should bring this action to an end.

6  **II.    STATEMENT OF FACTS**

7          **A.    AdSense affords publishers that comply with Google's terms of service a free
                   way to make money from advertisements placed on their websites.**

8

9          At this stage of the proceedings, the Court is familiar with AdSense, Google's free

10  advertising service, which allows website publishers to earn money by displaying Google-

11  supplied ads on their sites.  (TAC ¶¶ 19, 23.)  The Court also understands why, for the AdSense

12  network to function properly, Google must strive to minimize "invalid clicks"[1] as well as

13  violations of Google's publisher content and website layout policies.   These efforts give

14  advertisers confidence that the clicks for which they are charged come from real people

15  expressing real interest in their ads and that their ads will appear on high quality and appropriate

16  sites.  (*See, e.g.*, Decl. of Kyle C. Wong ("Wong Decl.") Ex. 17 at 2 (cited in TAC ¶ 34).)[2]

17          Accordingly, all AdSense publishers signing up online agree to follow the rules set forth

18  in the AdSense Online Terms of Service ("TOS")—a four-page, plainly worded contract—before

19  participating in AdSense.  (*See* TAC ¶ 27 & Exs. A-C.)[3]  Publishers also agree to the AdSense

20  Program Policies, incorporated into the TOS (collectively with the TOS, the "AdSense Terms" or

21  "Terms").  (TOS ¶ 1.)  Violations of these latter rules are referred to as "policy violations."

22          **B.    The AdSense Terms govern Google's and Plaintiffs' rights and obligations.**

23          The TOS states that publishers "will receive a payment related to the number of valid

---

[1] Decl. of Jim Gray ("Gray Decl.") Ex. 1 at "Invalid clicks" ("Any method that artificially generates clicks or impressions on your Google ads is strictly prohibited.").
[2] The Court previously granted judicial notice of Exhibits 1-30 of the Gray and Wong Declarations.  (Order Granting Motion to Dismiss at 1 n.1, Dkt. 66.)
[3] Plaintiffs include the TOS operative on May 20, 2014 (Ex. A), in July 2012 (Ex. B), and on March 1, 2014 (Ex. C); these exhibits did not change with the amendment.  Because the relevant TOS provisions were substantively the same when each Plaintiff's account was terminated (*see* Gray Decl. ¶¶ 3 – 4), all references to the TOS are to Ex. C unless otherwise noted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

**DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

1    clicks on Ads . . . in each case as determined by Google." (*See, e.g.*, TAC ¶ 23, TOS ¶ 5.)  It also

2    states, "[p]ayments to [publishers] may be withheld to reflect or adjusted to exclude any amounts

3    refunded or credited to advertisers and any amounts arising from invalid activity, as determined

4    by Google in its sole discretion." (*Id.*)  "Invalid activity" is defined as including: " . . . invalid

5    clicks on Ads generated by any person, bot, automated program or similar device, including

6    through any clicks or impressions originating from your IP addresses or computers under your

7    control; (ii) clicks solicited or impressions generated by payment of money, false representation,

8    or requests for end users to click on Ads or take other actions . . . and (iv) clicks or impressions

9    co-mingled with a significant amount of the activity described . . . above." (TOS ¶ 5.)

10        The TOS incorporates the AdSense Program Policies (which, in turn, incorporate the Ad

11   placement policies and Webmaster Quality Guidelines), which govern how and where AdSense

12   ads can be displayed.  For instance, they prohibit: (i) displaying ads on web pages with little to no

13   original content or pages consisting of "scraped" content, (ii) confusing ad formatting that may

14   encourage accidental clicks, and (iii) displaying ads on third-party sites that do not comply with

15   the AdSense Terms.  (*See* Gray Decl. Exs. 1-3.)[4]  The TAC refers to the Program Policies (*see,*

16   *e.g.*, TAC ¶¶ 27, 70, 79), but challenges <u>none</u> of them.

17        The TOS expressly permits either Party to terminate the relationship at will.  (TOS ¶ 10.)[5]

18   It states, "Google may at any time terminate the Agreement, or suspend or terminate the

19   participation of any Property in the Services for any reason.  If we terminate the Agreement due

20   to your breach or due to invalid activity, we may withhold unpaid amounts or charge back your

21   account." (*Id.*)  The TOS also tells publishers that "[i]f you dispute any payment made or

22   withheld relating to the Services, you must notify Google in writing within 30 days of any such

23   payment. If you do not, any claim relating to the disputed payment is waived." (*Id.* at ¶ 5.)[6]

---

[4] *See,* in particular, Gray Decl. Ex. 1 ("Encouraging clicks"), Ex. 2 ("Avoiding accidental clicks" and "Ads on the same page or site as another publisher"), Ex. 3 ("Quality guidelines"), and 4 (defining "Little or no original content").

[5] Despite the tone of the TAC, Plaintiffs never challenge this provision, which is unsurprising, as they have no basis whatsoever to force Google to offer them its free service.

[6] If this action proceeds, which it should not, the evidence will show that Google endeavored to refund the money withheld from Plaintiffs, including Google's "revenue share," which Google could have kept if it treated these clicks as genuine to advertisers. (*See* Wong Decl. Ex. 18.)

Google monitors publishers' sites and click activity, and the enforcement of its Terms benefits both advertisers and publishers.[7]  Google's vigilant enforcement of the rules regarding click fraud and policy violations helps AdSense deliver clicks that reflect real value and increase the return on advertisers' dollars, redounding to the benefit of advertisers, users, *and publishers*.

### C.    Plaintiffs agreed to the AdSense Terms and were terminated for breach.

**Free Range Content, Inc. ("FRC").**  FRC, which signed up for AdSense in July 2012, owns the "Repost content syndication service" (www.repost.us).  (TAC ¶ 51.)  Repost "partnered with thousands of publishers and bloggers to make a wide range of news, features, videos, and more available" to its users.  (*See* Wong Decl. Ex. 23 (Repost FAQ).)  Repost gathered content from users wanting to spread their content around the web and made it available to other users looking for content for their websites.  (*Id.*)  FRC made money by appending ads to the content it posted to users' websites.  (*Id.*)  Given the nature of FRC's business, AdSense ads appeared on third-party websites that FRC did not own or control.[8]

FRC's breach of the Terms is undeniable.  Google disabled FRC's AdSense account in March 2014, following a dramatic spike in earnings, at least 75-80% of which even FRC itself attributed to invalid activity.  (TAC ¶¶ 53-57 (admitting that of $40,000 earned, between $8,000 and $11,000 was genuine).)  FRC appealed its termination, but Google determined it was not entitled to reinstatement.  (Gray Decl. Ex. 8 (FRC appeal and Google response (TAC ¶¶ 59-60).)

**Coconut Island Software, Inc. ("CIS").**  CIS joined AdSense in March 2005 and operates several sites, including www.healthcarehiring.com and www.e-physician.info.  (TAC ¶ 66.)  These websites, which are still operational, generally collect job listings and physician information from other sources.  (Wong Decl. Exs. 25 and 26 (offering searches within a publicly-available registry and noting that their job listings are provided by SimplyHired).)  Both sites currently serve ads from other ad networks, including the Yahoo!/Bing Network.  (*See id.*)

---

[7] Google does not reveal specific information about its systems for detecting invalid clicks and policy violations, as such disclosures could allow bad actors to evade Google's detection of their click fraud and policy violations, and thereby defraud advertisers.  (*See* TAC ¶¶ 58, 70, 79, 91 (quoting Plaintiffs' termination letters); *see also* Gray Decl. Exs. 8, 9, 11 and 12 (full letters).)
[8] (TAC ¶¶ 51 ("plaintiff became an AdSense publisher for pages served on various websites under its Repost.us brand") and 61 (AdSense ads shown on "Repost.com-branded webpages").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

CIS's breach of the Terms is undeniable.  Some of the ads displayed appear to be part of the website content, are placed where they might be clicked accidentally, or are not clearly marked as ads in clear violation of Google policy.  (*See id.*)  Google terminated CIS in November 2012, explaining that CIS sites were out of compliance with the Program Policies.  (TAC ¶¶ 64, 70; Gray Decl. Ex. 9 (CIS termination letter).)  Specifically, Google explained that AdSense sites must "offer significant value to the end user by providing unique and relevant content," "provide a good user experience through clear navigation and organization," and that ads should not be placed on "sites with little to no original content."  (Gray Decl. Ex. 9.)  CIS also appealed, but, after review, Google found it was not entitled to reinstatement.  (*Id.* Ex. 10.)

**Plaintiff Chose.**  Plaintiff Chose was the owner of the site www.teens-read.com and an AdSense publisher for only about two months, from September to November 2013.  (TAC ¶¶ 74, 76.)  Though the website is no longer active, archived copies show that it consisted of a series of lists featuring photos accompanied by a few lines of text (*e.g.*, "Gorgeous Male Celebrities" and "The Best Ugliest Holiday Sweaters").  (Wong Decl. Ex. 27 (Chose screenshots).)

Chose's breach of the Terms is undeniable.  Like CIS, Chose's termination letter explained that AdSense sites must provide "unique and relevant content" and not place AdSense ads on "auto-generated pages or pages with little to no content," directing Chose to the Program Policies, a help article about scraped content, and the Webmaster Quality Guidelines.  (TAC ¶ 79; Gray Decl. Ex. 11 (Chose termination letter).)  Despite her short tenure and limited page content, Chose alleges that Google owed her approximately *$25,000*, about twice what FRC claims to be owed and more than ten times the other two Plaintiffs' claims combined.  (TAC ¶ 80.)  Also, despite the large sum allegedly owed, Chose did not appeal Google's refusal to pay her.

**Plaintiff Simpson.**[9]  Simpson joined AdSense in February 2012 and served ads on his sites www.konacoffeebeans.org, www.classicalmusicheadphones.com, and www.case-cafe.com.

---

[9] Plaintiffs CIS, Chose, and Simpson all assert that AdSense was not "free" because they spent money on website development, hosting fees, equipment costs, time to generate content, and (in Simpson's case) the purchase of products to review.  (TAC ¶¶ 69, 78, 90.)  This claim is flatly unsupportable.  The costs to create and maintain a website are in no way connected to AdSense. It is self-evident that Plaintiffs are free to create and maintain their websites, or not, and to use AdSense, or not.  Google does not require plaintiffs to "pay" for AdSense in this or any manner.

1  (TAC ¶¶ 86, 88.)   All three sites remain active today and serve ads that appear to be through

2  Chitika and other online ad providers.  (Wong Decl. Exs. 28-30 (Simpson screenshots).)  Simpson

3  also, apparently, now redirects traffic going to www.classicalmusicheadphones.com over to

4  www.classicalmusicheadphones.org, for which he apparently set up an AdSense account after

5  Google terminated him in June 2013, in brazen violation of the Terms.  (*Id.*)[10]

6      Google terminated Simpson, like FRC, for invalid activity.  He alleges Google owes him

7  $147.  (TAC ¶ 93.)  He also did not dispute the payments withheld from him, before this suit.

8  ### III.  APPLICABLE STANDARDS

9      A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal

10  theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v.

11  Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted).  In deciding a motion under Rule

12  12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable

13  inferences to be drawn from them."  *Id*.  However, "labels and conclusions . . . and a formulaic

14  recitation of the elements of a cause of action will not" survive a motion to dismiss.  *Bell Atl.

15  Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The Court is "free to ignore legal

16  conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions

17  cast in the form of factual allegations."  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782

18  F. Supp. 2d 1059, 1064 (E.D. Cal. 2011) (citation and quotation omitted).[11]

19  ### IV.  ARGUMENT

20  ### A.   Plaintiffs fail to state a claim for breach of contract (Count II).

21  #### 1.   Plaintiffs' conclusory claims of performance are insufficient and contrary to the facts in the TAC and judicially noticed by the Court.

22

23      Plaintiffs' amended allegations of performance remain inadequate.  In response to the

24  Court's prior dismissal order, the TAC adds a laundry list of purely conclusory assertions about

25  how Plaintiffs allegedly avoided activities prohibited by the AdSense Terms.  (*See* TAC ¶¶ 51 &

26

---

27  [10] Terminated publishers "will not be allowed to create a new Account."  (TOS ¶ 10.)

28  [11] As established in the previously-granted Request for Judicial Notice, in deciding a motion to dismiss, courts may also properly consider documents incorporated by reference into a complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

n.11; 52; 67 & n.15; 68; 77 & n.20; 79; 89 & n.22; 91.)   However, these assertions are contradicted elsewhere in the pleadings and by Plaintiffs' own judicially-noticed website content. The Court is not "'required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.'" *In re Turnstone Sys. Sec. Litig.*, No. 01-cv-1256, 2003 U.S. Dist. LEXIS 26709, at \*42 (N.D. Cal. Feb. 4, 2003) (citations omitted).

**FRC breached the Terms.**   As the Court by now knows well, Plaintiff FRC's own allegations demonstrate that it had egregious levels of invalid activity on the sites running its ads (75-80% of clicks in its final payment period appeared by to be invalid).   (TAC ¶ 57.)   This admission of rampant invalid activity constitutes a material breach of the Terms that precludes FRC's claim.   FRC tries to disclaim knowledge of whether its massive surge in clicks was due to invalid activity (TAC ¶¶ 54-55), but it cannot undo its prior admission that FRC itself believed that only about a quarter of the clicks in its final pay period were genuine.   (Compl. at ¶ 22 (FRC alleging that its clicks "seemed far too high"), May 20, 2014, ECF No. 1.); *Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296–97 (9th Cir.1990) ("amended complaint may only allege other facts consistent with the challenged pleading")   (citation and quotation omitted).

Additionally, nothing in Plaintiffs' new allegations changes the fact that FRC's basic business model— placing ads on thousands of third-party websites—violated the AdSense Terms. The Terms permit ad placement on a third party website only if the site "*is in compliance with our program policies . . .*"   (Gray Decl. Ex. 2.)   In its third amendment, FRC now claims that FRC would "check out" new sites it enlisted for compliance with AdSense policies and that "FRC monitored participating sites for compliance with AdSense policies."   (TAC ¶ 51.)   Despite this carefully worded allegation, FRC never alleges that it continuously reviewed *every* site on which it displayed AdSense ads for compliance, nor that it had any control over the content of those sites. Indeed, FRC could never have policed the sites running its AdSense ads, given that it "served content to over 100,000 domains."   (Wong Decl. Ex. 22.)[12]

---

[12] Moreover, Plaintiffs do not (and could not) deny that the TOS' definition of "invalid activity" includes valid "clicks or impressions co-mingled with a significant amount of [invalid clicks or impressions]."   (TOS ¶ 5.)   FRC's other clicks were clearly "comingled" with a "significant amount" of invalid clicks under any plausible reading of that provision.   Thus, even if FRC had

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

**CIS, Chose, and Simpson breached the Terms.** The amended pleading also adds a series of conclusory statements of compliance with the AdSense Terms for the remaining Plaintiffs. (*See* TAC ¶¶ 67 & n.15, 68, 71 & n.17, 76 & n.19, 77 & n.20, 86 & n.21, 89 & n. 22.) As before, a simple comparison of CIS' judicially-noticed ad placements with placements presented as examples of "unacceptable implementations" in Google's policies demonstrates that its allegations of compliance are false. (*Compare* Wong Decl. Exs. 25 and 26 *with* Gray Decl. Ex. 2 (especially "Encouraging accidental clicks" and "Formatting content to mimic ads").)

Ms. Chose, whose website is no longer active, offers no facts in support of her allegations of compliance with the Terms. Instead, she points to an allegedly similar site, and contends that because it is running AdSense ads, her website must have been fully complying with Google's Terms. (TAC ¶ 79.) Ms. Chose cannot refute the fact that her website is composed of little but scraped content, in clear violation of the Program Policies. (*See* Wong Decl. Ex. 27.)[13]

Finally, Mr. Simpson never denies the presence of invalid activity on his site and only says he did not cause it and is not aware of it. (TAC ¶ 91.) He also offers nothing new beyond the conclusory statement that his rarely-updated websites complied with the AdSense Terms. (*Id.* ¶¶ 89 & n.22, 91.) The Court should discount these baseless conclusory assertions. *See In re Turnstone*, 2003 U.S. Dist. LEXIS 26709, at *42.

**Plaintiffs' excuses for their breaches are unpersuasive.** FRC and Simpson's continued insistence that they are not responsible for the invalid activity on their sites (*e.g.*, TAC ¶¶ 54-55, 91-92), is irrelevant. The AdSense Terms to which they voluntarily agreed do not distinguish between sources of invalid activity, and Google had no obligation to devote the time and resources to the Herculean (if not impossible) task of determining the exact cause of every invalid click on every publisher's website. Plaintiffs agreed in the Terms that invalid activity includes invalid clicks "generated by *any* person, bot, automated program or similar device," and were not limited to bad clicks Plaintiffs themselves intentionally caused. (TOS ¶ 5 (emphasis added).)

---

not breached, it had no valid clicks and was owed nothing at all by Google. (*Id.*)
[13] CIS makes the same inapposite argument, pointing to sites currently displaying AdSense ads it claims are "similar to CIS's." (TAC ¶ 70.) For the reasons described in Section IV(A)(2)(c), even a very similar site allegedly running AdSense ads would offer Plaintiffs' arguments no support.

Cooley LLP
Attorneys At Law
San Francisco

9.

Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF

Plaintiffs also assert that any invalid activity on their websites should be excused as *force majeure* under the Terms.  (*E.g.*, TAC ¶¶ 55.)  This argument is specious.  A customer renting a car cannot agree to return a vehicle undamaged, and then claim *force majeure* after an accident because he did not intentionally cause it.  "It is well settled that a *force majeure* clause . . . defines the area of unforeseeable events that might excuse nonperformance within the contract period" and the "frequent, almost predictable, occurrence" of the events "takes them outside of a *force majeure* excuse to nonperformance."  *Gulf Oil Corp. v. FERC*, 706 F. 2d 444, 452-54 (3rd Cir. 1983) (citations omitted).  Here, the risk of invalid activity was undeniably known to Plaintiffs, as it was discussed in the TOS, and it was Plaintiffs' burden to prevent it, and Plaintiffs accepted the risk of the consequences if they failed to do so.

### 2. The Terms expressly authorized Google to withhold the disputed payments, and are fully enforceable.

The short and easy-to-read TOS gives Google the right to withhold payment "to exclude any amounts refunded or credited to advertisers and any amounts arising from invalid activity" and to "withhold unpaid amounts" when a publisher is terminated "due to [its] breach or due to invalid activity."  (TOS ¶¶ 5, 10.)  Plaintiffs' flawed arguments that these provisions are unenforceable are addressed, in turn, below.

### a. Plaintiffs have not established that any provision of the AdSense Terms was unconscionable.

To avoid enforcement of contract terms as unconscionable "both the procedural and substantive elements must be met." *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 645 (2010) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.* 24 Cal. 4th 83, 114 (2000)).  Courts routinely decide unconscionability on the pleadings.  *See Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 660, 668-70 (2003) (rejecting claim "the trial court erred in sustaining [] demurrer because under section 1670.5, subdivision (b), plaintiff is entitled to submit evidence on the issue of unconscionability" where "Plaintiff alleged facts concerning the commercial setting, purpose, and effect of the shopping card terms" and attached exhibits).  *See also King v. Hausfeld*, No. 13-cv-0237, 2013 U.S. Dist. LEXIS 51116, at *54 (N.D. Cal. Apr. 9,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1   2013) (granting motion to dismiss unconscionability claim); *Austero v. Aurora Loan Servs.*, No.

2   11-cv-0490, 2011 U.S. Dist. LEXIS 86340, at *24 (N.D. Cal. Apr. 27, 2011) (same).  Courts have

3   also dismissed unconscionability claims as to various of Google's terms.  *See TradeComet.com,*

4   *LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 381 (S.D.N.Y. 2010) (dismissing unconscionability

5   claim); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004) (same).

6   **(1)    The Terms are not procedurally unconscionable.**

7   Procedural unconscionability exists only where a contract imposes surprise or oppression

8   on the challenging party.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224,

9   1245 (2007); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005).

10   Surprise is defined in California as "'the extent to which the supposedly agreed-upon terms of the

11   bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed

12   terms.'"  *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1004 (N.D. Cal. 2012) (citations omitted).

13   Plaintiffs never allege surprise and it is plainly absent here.  Further, courts routinely reject claims

14   of surprise with agreements like the TOS, reasoning that "[p]arties to commercial contracts fail to

15   read them at their own peril."  *Morris*, 128 Cal. App. 4th at 1322 (emphasis and citation omitted).

16   As to oppression, Plaintiffs claim that the Terms were "foisted" upon them is not enough.

17   *See Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, No. 11-cv-0858, 2012 WL 928412, at *6-7

18   (S.D. Cal. Mar. 19, 2012).  Courts routinely enforce the terms of form agreements, even against

19   unsophisticated consumers, and even where the agreements are presented in "take-it-or-leave-it"

20   form by large companies.  *See, e.g.*, *Song Fi Inc. v. Google, Inc.*, No. 14-cv-5080, 2015 U.S. Dist.

21   LEXIS 75272, *16-18 (N.D. Cal. June 10, 2015) (enforcing YouTube's terms of service granting

22   YouTube the right to determine whether content violates such terms "in its sole discretion");

23   *Woods v. Google Inc.*, 889 F. Supp. 2d 1182, 1187 (N.D. Cal. 2012); *Craigslist, Inc. v.*

24   *Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1059 (N.D. Cal. 2010).  The inability to negotiate a

25   contract does not by itself establish oppression, as the inquiry looks to the totality of the

26   circumstances at the time of contracting.  *Lennar Homes of Cal., Inc. v. Stephens*, 232 Cal. App.

27   4th 673, 688 n.10 (2014) (requiring "a particularized analysis of oppression and surprise").  For

28   example, courts look to the availability of market alternatives and viable substitutes for a good or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

**DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF**

1    service, especially if the good or service is non-essential.  *Belton*, 151 Cal. App. 4th at 1245-46

2    (requiring customers to buy cable service even if they only wanted music services was not

3    unconscionable where plaintiffs had multiple options for music services); *see also Captain*

4    *Bounce*, 2012 WL 928412 at *7-8; *Morris*, 128 Cal. App. 4th at 1320.  Here, Plaintiffs not only

5    include no allegation that AdSense was their only website monetization option, but those

6    Plaintiffs whose sites are still operational display ads from other ad networks.  (*See* Wong Decl.

7    Exs. 25, 26, 28-30 (showing CIS and Simpson's sites with ads from other ad networks).)

8                          **(2)      The Terms are not substantively unconscionable.**

9          Even if Plaintiffs could show procedural unconscionability, it would be minimal at most,

10   and Plaintiffs would also have to plausibly allege considerable substantive unconscionability in

11   order to avoid enforcement of the Terms.  *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257,

12   1293 (9th Cir. 2006) (where "evidence of procedural unconscionability is slight, the evidence of

13   substantive unconscionability [must be] strong enough to tip the scale and render the [ ] provision

14   unconscionable").  A small amount of each type of unconscionability is not sufficient.

15         Substantive unconscionability is found only where a term is "so one-sided as to shock the

16   conscience, or [ ] impose harsh or oppressive terms."  *Walnut Producers* 187 Cal. App. 4th at

17   647-48 (quoting *Morris*, 128 Cal. App. 4th at 1322-23) (internal quotation marks omitted).  An

18   unconscionable term must impose such an unanticipated burden that a party would not have

19   entered into the agreement had they understood the consequences.  *See, e.g.*, *Newton v. Am. Debt*

20   *Servs., Inc.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012).  Moreover, "unconscionability turns not

21   only on a 'one-sided' result, but also on an absence of 'justification' for it . . . substantive

22   unconscionability must be evaluated as of the time the contract was made."  *Walnut Producers*,

23   187 Cal. App. 4th at 647 (citations omitted).

24         As the Court observed at the motion to dismiss hearing, Plaintiffs' prior allegations did

25   not contain "any facts . . . that support the requirement . . . that this clause in the contract shocks

26   the conscience . . . ."  (MTD Hr'g Tr. at 21:24-25:2.)  The TAC is no better.  First, the challenged

27   terms are well justified.  The record makes clear that the purpose of Google's discretion is to

28   prevent fraudulent clicks, prohibit undesirable content, and compensate advertisers, all in order to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1   improve the integrity of the AdSense network.  Google's vigilance ultimately benefits publishers

2   like Plaintiffs by creating an attractive, reliable marketplace for advertisers, without whom

3   publishers could not make money through AdSense.  Second, the withholding of only the current

4   unpaid amounts is plainly proportional to the harm that invalid activity and policy breaches do to

5   Google, as the greater the AdSense usage of the breaching publisher, the more their failure to

6   comply with the Terms harms advertisers and damages Google.  As the Court recognized, "the

7   fact that these contracts provide that the withhold amount is limited to a 30-day period . . .

8   necessarily reduces the amount of harm as you allege that would even be in play."  (MTD Hr'g

9   Tr. at 19:2-5).[14]  Thus, there is nothing oppressive about this facet of the Parties' agreement.

10  Third, unilateral discretion, even in form agreements, is not substantively unconscionable where

11  the party exercising such discretion is bound by the implied covenant of good faith and fair

12  dealing.  *See, e.g.*, *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 709-10 (2013)

13  (employer's discretion to alter the personnel handbook without notice limited by the implied

14  covenant of good faith and fair dealing and thus not substantively unconscionable).

15          Finally, the AdSense Terms simply do not resemble the kinds of terms California courts

16  deem unconscionable.  *See, e.g.*, *Hahn v. Massage Envy Franchising, LLC*, No. 12-cv-0153, 2014

17  WL 5100220, at *9 (S.D. Cal. Sept. 25, 2014) (provision forfeiting pre-paid, unused massages

18  "negates the reasonable expectation that the member will be able to redeem their already

19  purchased massage services at a later time"); *Pardee Constr. Co. v. Super. Ct.*, 100 Cal. App. 4th

20  1081, 1092 (2002) (hidden and complex judicial waiver).  Indeed, they are far more similar to

21  terms courts have upheld.  *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1389-93 (1996)

22  (provision forfeiting commission on past sales); *Schuman v. Ikon Office Solutions, Inc.*, 232 Fed.

23  App'x 659, 663 (9th Cir. 2007) (agreement vesting clause where salesperson lost unvested sales

24  after transferring off of customer account).  Here too, the provisions at issue do no more than

25  authorize the withholding of payments during a short, finite period.

26

27  _____

    [14] Although counsel for Google did not intend to convey that 30 days was an absolute limit on

28  withholding, the withholding under TOS ¶ 10 is limited to the final, unpaid amounts in the
    publisher's account at termination, and, therefore, would never implicate a much lengthier period.

Cooley LLP
Attorneys At Law
San Francisco

13.

Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF

b.    **Prohibitions against unreasonable liquidated damages are no obstacle to the Terms' enforcement.**

(1)    **The Terms contain no liquidated damages provision.**

Plaintiffs' TAC asks the Court to wholly redefine the meaning of liquidated damages. California courts have long defined liquidated damages as "'an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement . . .'" *Chodos v. West Publ'g Co,, Inc.*, 292 F.3d 992, 1002 (9th Cir. 2002) (quoting *Kelly v. McDonald*, 98 Cal. App. 121, 125 (1929)); *see also, e.g.*, *ABI, Inc. v. City of L.A.*, 153 Cal. App. 3d 669, 685 (1984) ("a sum which a contracting party agrees to pay or a deposit which he agrees to forfeit for breach . . . ") (emphasis omitted).  As the Court said, "we don't have that at all here. This is not an express liquidated damages clause, there's no amount of money not even the full month's worth because it is a may, and Google does say that we have the discretion to withhold it all." (MTD Hr'g Tr. at 28:8-11.)

First, the common element running through liquidated damages decisions is a *payment* by the breaching party, whether in the form of a deposit upfront that is later forfeited, *see, e.g.*, *Hahn,* 2014 WL 5100220, at *12 (forfeiture of pre-paid monthly membership fee), or, more commonly, in the form of a fee or charge as a consequence of certain breaching conduct, *see, e.g.*, *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252 (N.D. Cal. 2015) (uniform fees for the late return of rental cars); *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1198 (N.D. Cal. 2009) (uniform fee to reconnect service after breach).  Here, no such payment or forfeiture exists.  Plaintiffs attempt to claim that their performance under the AdSense Terms (however inadequate) transforms their potential future payments into a deposit that they are forfeiting to Google.  But Plaintiffs' problem is simple: they did not provide any payment up front and are only entitled to be paid if they comply with Google's Terms.  An analogy shows the fallacy in Plaintiffs' reasoning.

Imagine if Google contracted with FRC to paint the outside of an office building.  FRC started painting and Google paid FRC's first two invoices.  Before paying FRC's third invoice, Google realized that FRC had used interior paint, which would damage the building in the long run.  When Google does not pay any of FRC's third invoice, Google is not invoking a liquidated

14.

damages provision, it is merely not paying for work that was not done in accordance with the controlling agreement.  The same holds here.  Plaintiffs did not comply with the Terms, and are not entitled to be paid, regardless of whether unpaid amounts are referred to as "earnings."

Second, courts may only find provisions that are not a fixed penalty to be liquidated damages "where they can easily be determined *from the contract* at the time of breach."  *Bayol*, 78 F. Supp. 3d at 1256 (emphasis added).  *Bayol* explained that "[t]o be sufficiently fixed and certain to qualify as 'liquidated damages,' a provision must either set the exact amount (*i.e.*, a single number), or provide some formula by which the amount is 'certain or readily ascertainable.'"  *Id.*  Here, no such formula exists.  Google has the right to withhold unpaid amounts, which may: 1) be a lot or a little at the time of termination, 2) cover a few days or cover between one and two payment periods, and 3) be a large portion of what the publisher has previously earned from AdSense (Chose) or a trivial portion (CIS).  The Terms contain no formula similar to those deemed definite enough to constitute liquidated damages in prior decisions.  The Court should decline Plaintiffs' invitation to stretch this doctrine, meant to address excessive *and certain* pre-set penalties, far beyond its intended bounds.

Moreover, as the Court said, "*the contract* doesn't provide" for the automatic holdback Plaintiffs allege, which prevents the provision *as written* from being liquidated damages.  (MTD Hr'g Tr. at 27:25 (emphasis added).)  The TAC does not change the fact that the Terms explicitly build in discretion, at the front end ("Google *may* withhold"), and in the ability of the publisher to appeal its termination and withholding.  Plaintiffs essentially concede this point by alleging that this is a liquidated damages provision "as a matter of extra-contractual policy."  (TAC ¶ 151.)

Thus, finding liquidated damages here for withholding an unknown payment, only from the final billing cycles, and only if an appeal is denied, would substantially expand existing law.

> **(2)     Even if the challenged provision were considered a liquidated damages provision, it would be enforceable.**

Even if the Court were to accept Plaintiffs' unwarranted expansion of the definition of liquidated damages, a provision "liquidating the damages for the breach of contract is valid unless . . . the provision was unreasonable under the circumstances existing at the time the contract was

made."  Cal. Civ. C. § 1671(b); *see also El Centro Mall, LLC v. Payless ShoeSource, Inc.*, 174 Cal. App. 4th 58, 63 (2009).[15]  "[S]tatutory policy [ ] favors the validity of such agreements . . . [,] casts the burden on the opposing party to prove unreasonableness[,] and requires only that the liquidated damages bear a reasonable relationship to the range of harm that might reasonably be anticipated."  *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645, 656 (1997).  As the Court explained, "the statute [Section 1671(b)] requires you to allege facts to show it was unreasonable under the circumstances existing at the time of the contract, and the case law show [] that cannot be viewed with hindsight."  (MTD Hr'g Tr. at 27:2-5.)

Here, the amount withheld was a reasonable estimation of damages at the time of contracting, given the hard to measure, but plainly negative, effects of invalid click activity and publisher policy violations.  Rather than being a "sledgehammer," as Plaintiffs hyperbolically suggest (TAC ¶ 45), the withholding provision scales with the magnitude of the publishers' breach: a publisher whose policy-violating site receives heavy traffic, on average, does more damage to advertisers, Google, and to AdSense generally than a publisher whose site violates the same policy, but experiences little traffic.  Similarly, on average, high levels of invalid activity detected on high traffic sites do more damage to Google than they do when detected on rarely visited sites.  Thus, this purported penalty is inherently proportional to Google's harm.[16]

Additionally, Plaintiffs cannot save their claim by pointing to Google's "immense power relative to plaintiffs" or the fact that the provisions at issue were part of a form contract.  (TAC ¶ 47.)  California courts have enforced many liquidated damages provisions in form contracts that the parties did not negotiate.  *Util. Consumers' Action Network, Inc. v. AT&T Broadband of S. Cal., Inc*., 135 Cal. App. 4th 1023, 1035-38 (2006) ("the reasonable endeavor test [for a valid liquidated damages provision] does not require both parties to a form contract to expressly

---

[15] "The question whether a contractual provision is an unenforceable liquidated damages provision is one for the court."  *Morris*, 128 Cal. App. 4th at 1314 (quoting *Beasley v. Wells Fargo Bank, N.A.*, 235 Cal. App. 3d 1383, 1393 (1991)).

[16] Plaintiffs emphasize their claim that advertisers cannot demand refunds in this situation.  (*See, e.g.*, TAC ¶ 46.)  This is irrelevant.  Whether or not it is sued by advertisers, Google is damaged by invalid activity and policy violations, which reduce the value Google is offering advertisers and the prices it can command.  Moreover, advertisers receiving such traffic may simply chose to advertise with a Google competitor, again, directly financially harming Google.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1    negotiate the amount of liquidated damages") (collecting cases).

2         Accordingly, even if TOS Sections 5 and 10 were treated as liquidated damages

3    provisions, they would be "valid" under Section 1671 and, therefore, enforceable.

4              **c.    Google did not terminate Plaintiffs for "no reason."**

5         Chief among Plaintiffs' new allegations (and in the same paragraph in which they

6    recognize that Google could terminate "for any reason," quoting TOS ¶ 10) is that Google had

7    "no meaningful reason" to terminate.  (TAC ¶ 133.)  Google gave each Plaintiff the reason for its

8    termination, derived directly from that Plaintiff's noncompliance with the AdSense Terms.  (*See*

9    *supra* Section II(A)(1)(discussing each Plaintiff's violations of the AdSense Terms).)  Plaintiffs

10   allege no facts showing that these terminations were pretextual, or motivated by some malice

11   toward these individual Plaintiffs, and, therefore, Plaintiffs' terminations were not a breach.[17]

12        Plaintiffs attempt to show that their terminations were improper, for some of the Plaintiffs,

13   by pointing to third-party websites and claiming that "other publishers [ ] continue serving

14   AdSense ads on sites similar to those on which plaintiffs CIS and Chose served AdSense ads."

15   (TAC ¶ 133 (referencing Exs. G and H).)  First, Exhibits G and H are irrelevant, even if the cited

16   pages were nearly identical to CIS and Chose's sites.  Google works with more than 2 million

17   publishers, many of whom display AdSense ads on multiple websites.  (*See* Wong Decl. Ex. 21.)

18   Despite its best efforts, Google cannot police every single website at all times.  (*See, e.g.*, id. Ex.

19   17 ("[Google] removed more than 350 million bad ads from our systems in 2013.  To put that in

20   perspective, if someone looked at each of these for one second, it would take them more than ten

21   years to see them all.").)  Evidence that any one of these millions of sites is breaching in the same

22   manner as Plaintiffs, but has evaded detection, is probative of nothing.[18]

23        Second, these other sites are not truly similar.  While Exhibit G appears to show websites

24

_____

25   [17] Plaintiffs fail to explain why Google would choose to terminate compliant publishers, when
     keeping the publisher active is financially beneficial to Google.  Plaintiffs offer no reasonable
26   explanation why Google would forego the substantial long-term profits it stands to gain from
     compliant publishers—nor can they.  In reality, Google does not terminate publishers lightly, and
27   did not do so here.
     [18] Moreover, Google is aware of no authority permitting Plaintiffs to plead its own performance
28   by reference to a third party's actions.

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

that deal with *similar subject matter* as CIS' websites, these sites, unlike CIS, do not appear to have ad placements identical to the examples of prohibited placements in the Terms.  Similarly, Plaintiffs assert that Exhibit H, which appears to be a screenshot from a mobile device, "displayed AdSense advertisements the same way in which Ms. Chose published them."  (TAC ¶ 79.)  This allegation is both conclusory (no screen shots or other references are provided), and unverifiable, as Ms. Chose's site is no longer available and its mobile implementation cannot be checked.

### 3.    Plaintiffs Chose and Simpson have waived their right to assert breach of contract (or any other claim) by failing to timely appeal.

As the Court correctly recognized in granting the motion to dismiss Chose and Simpson's claims, both Plaintiffs failed to timely dispute Google's withholding of their final payments per the explicit requirements of their "very simple brief primary contract" (MTD Hr'g Tr. at 4:17-18; TOS ¶ 5 ("If you dispute any payment made or withheld relating to the Services, you must notify Google in writing within 30 days of any such payment.  If you do not, any claim relating to the disputed payment is waived.").)   Plaintiffs admit that Chose took no action to contest the withholding for over 10 months, and Simpson took no action for over a year.  (TAC ¶¶ 82, 95.)

These appeal requirements are not mere technicalities.  Large-scale service providers, such as Google, rely upon prompt appeals to ensure that claims from closed accounts do not remain a potential liability for years.  As Google showed in its prior motion to dismiss (and Plaintiffs did not dispute), numerous rulings hold that failing to follow contractual dispute resolution procedures can cause waiver.  (MTD FAC at 25-26 (collecting cases).)

Nothing in Plaintiffs' amended allegations cures this defect.  First, the TAC now alleges that the "AdSense terms and conditions did not tell [Ms. Chose] an appeal was possible, nor did her termination notice."  (TAC ¶ 82.)  But the Court has already rejected this insupportable argument.  (MTD Hr'g Tr. at 24:15-21.)  The Terms explicitly note that disputes as to payments withheld "must" be raised within 30 days, and Plaintiffs do not (and cannot) plead any legal duty that would require Google to remind them of that explicit term.  Moreover, the lack of a reminder did not stop CIS from appealing promptly.  (*See, e.g.*, TAC ¶ 58; Gray Decl. Ex. 10 (CIS Letter).)

Second, the Court has already rejected Plaintiffs' notion that "the language at issue in

paragraph 5 [of the terms] did not pertain to the withholding," because the TOS required an appeal within "30 days of any such payment" and there "was no payment to her upon termination." (TAC ¶¶ 82, 95.)   As Google explained in its reply in support of its previous motion to dismiss, this interpretation reads the words "or withheld" entirely out of this short provision. (Reply Brief at 13, Dec. 19, 2014, ECF No. 45.)   The plain meaning of that provision is that, if a payment the publisher anticipated is withheld, either in whole or in part, the publisher would have 30 days from the date the payment would have been made to dispute the withholding.

Third, equally unavailing are Plaintiffs' new allegations that they should be excused from their obligation to appeal because of Google's actions.  Plaintiffs claim, for instance, that as a result of being allegedly locked out of their accounts upon termination, they couldn't access their publisher identification number.  (TAC ¶¶ 33, 82, 95.)   But they do not allege that Google's appeal process required reference to this number, or that they could not have appealed without it. Additionally, without any further explanation from Google, both Chose and Simpson prepared a lengthy complaint.  They clearly had ample information to file a far less involved appeal.  Finally, there is no merit to the claim that Plaintiffs could not appeal because they did not have an address to which to submit their appeal.  Simpson's termination notice explicitly provided a link to submit the appeal.[19]  And while Chose's letter did not provide a link, CIS received a similar letter and still submitted the appeal (when it had far less allegedly on the line).[20]  Moreover, the TAC directly and repeatedly cites to an AdSense Help Center page that provides online links to: 1) the appeal form for termination due to invalid activity (TAC ¶¶ 3, 25, 32, 41, 43, 59, nn. 2, 13) and 2) the Help Center's "AdSense account disabled for policy reasons" page, which links to the appeal form for termination due to policy violations.  (*See* Wong Decl. Exs. 31& 32.)[21]

Chose and Simpson have waived all rights to sue over the unappealed payments.

---

[19] The TAC erroneously cites to Chose's termination letter (Gray Decl. Ex. 11) when referring to Simpson's letter (Gray Decl. Ex. 12).

[20] Plaintiffs' TAC also quotes from two alleged AdSense Help Center pages, but neither Chose nor Simpson claims to have read either such statement or relied upon them.  (TAC ¶¶ 83, 95.)

[21] Google asks the Court to take judicial notice of Exhibits 31 and 32 to the Wong Declaration on the same bases it took notice of the Exhibits 1-30. *See, e.g., Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1108-09 (N.D. Cal. 2003) (documents referenced in pleadings); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (web pages linked to other pages cited in complaint).

Cooley LLP
Attorneys At Law
San Francisco

19.

Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF

1

2

**B.     The Terms and controlling law preclude Plaintiffs' redundant claim for breach of the implied covenant of good faith and fair dealing (Count III).**

3

4

5

6

Plaintiffs' implied covenant claim still fails for multiple reasons.  First, because of Plaintiffs' breaches, discussed above, they cannot satisfy an element of their implied covenant claim, since they did not perform all or substantially all their obligations under the Terms.  *Avila v. Countrywide Home Loans*, No. 10-cv-5485, 2010 WL 5071714, at *5 (N.D. Cal. Dec. 7, 2010).

7

8

9

10

11

12

13

14

15

Second, despite multiple opportunities to amend, Plaintiffs' implied covenant allegations remain duplicative of their breach of contract claim.  Plaintiffs continue to argue in both claims that they entered into a contract, they performed their duties under the contract; and that Google refused to pay for the revenue generated by their ads.  (*Compare* TAC ¶¶ 129-130, 139-144 with *id.* ¶¶ 147-149.)  No implied covenant claim exists where it "relies on the same acts, and seeks the same damages, as its claim for breach of contract," *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999), because the claim must "involv[e] something beyond breach of the contractual duty itself," *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990) (citation omitted).

16

17

18

19

20

21

22

23

24

25

26

27

Third, as the California Supreme Court observed in *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374 (1992), "[w]e are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement."  The U.S. Supreme Court has also recognized that some states allow parties to include express contractual provisions that "grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing," *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1432 n.2 (2014) (quoting *Steiner v. Thexton*, 48 Cal. 4th 411, 419-20 (2010)).  The *Steiner* court stated, "'The general rule [regarding the covenant of good faith] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing.'"  *Id.* at 419-20 (quoting *Carma Developers*, 2 Cal. 4th at 374).

28

Plaintiffs have no factual basis to claim that Google exercised its termination and

Cooley LLP
Attorneys At Law
San Francisco

20.

Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF

1    withholding rights in bad faith (for example, because of a personal feud between an AdSense

2    support rep and a publisher).  Indeed, Plaintiffs have no factual basis to claim that Google did

3    anything unfair at all.  Google expressly reserved the right to withhold payment when a publisher

4    was terminated for invalid activity or breach, and when payments for ads were refunded to

5    advertisers.  (TOS ¶¶ 5, 10.)  Under *Carma* and *Steiner*, as a matter of law, Plaintiffs cannot

6    establish that Google engaged in bad faith by acting in conformance with this express reservation.

7    Plaintiffs, also, cannot impose related obligations absent from the Terms on Google, such as the

8    obligation to "offer[] . . . meaningful reasons [for termination]" and to respond to a purportedly

9    "sincere and reasonable request for details [regarding termination]."[22] (TAC ¶¶ 151-52.)

10       Plaintiffs' argument that Google failed to use any discretion in withholding payments is

11   similarly unfounded, because Plaintiffs have alleged no factual basis whatsoever for this claim.[23]

12   As the Court stated, Plaintiffs "need to allege *facts showing* bad faith and unreasonable exercise

13   of discretion."  (MTD Hr'g. Tr. at 23:16-17 (emphasis added).)  It is simply not enough for

14   Plaintiffs to acknowledge that Google's conduct comported with their agreement, but then to

15   declare, without a factual basis, that Google must have exercised no discretion at all.

16       **C.    Plaintiffs fail to state a claim for unjust enrichment (Count IV).**

17       At the last hearing, the Court dismissed the unjust enrichment claim, but stated that

18   Plaintiffs could attempt to amend their complaint to comply with the ruling in *Klein v. Chevron*

19   *U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012).  (MTD Hr'g Tr. at 5:17-25.)[24]  Plaintiffs have

20   clearly failed to comply with this guidance, and could not have done so here in any case.

21

22   [22] Nor can Plaintiffs argue that Google's review of their appeals were not "meaningful" because
     they were decided within days of having been submitted.  Plaintiffs do not explain how the TOS
23   requires any specific type of appellate consideration, and the timeliness, if anything, reflects
     Google's good faith effort to render a decision expeditiously instead of making Plaintiffs wait.
24   [23] Plaintiffs repeatedly quote particular help center language, claiming it proves that Google
     exercises no discretion in withholding payments in the event of a breach: "According to our
25   AdSense Terms and Conditions, publishers disabled for invalid click activity may not receive any
     further payment.  The earnings on your account will be properly returned to the affected
26   advertisers."  (quoted at TAC ¶¶ 25, 32, 40, 41, 43.)  This language only makes clear, as Google
     has stated, that where payments are withheld, Google undertakes to refund them to advertisers.
27   [24] Google maintains that there is no independent unjust enrichment cause of action in California.
     *See, e.g.*, *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Fraley v. Facebook,*
28   *Inc.*, 830 F. Supp. 2d 785, 814-15 (N.D. Cal. 2011) (collecting cases).

1    In *Klein*, the court held that in the narrow instance where "a plaintiff was uncertain as to

2    whether the parties had entered into an enforceable agreement, the plaintiff would be entitled to

3    plead inconsistent claims predicated on both the existence and absence of such an agreement."

4    *Klein*, 202 Cal. App. 4th at 1388.  This is not the case here.  There is no ambiguity or dispute

5    regarding whether the Terms exist or as a whole are enforceable, and Plaintiffs have never

6    articulated any theory under which the entirety of the AdSense Terms might be deemed

7    unenforceable.  Instead, Plaintiffs only added the hedged and conclusory allegation that "[f]or

8    purposes of this cause of action, plaintiffs deny the enforceability of the terms at issue, and, as

9    needed to enable the recovery of the earnings due them for serving AdSense program ads, the

10   unenforceability of their entire AdSense contracts with Google."  (TAC ¶ 159.)  Plaintiffs' denial

11   of the enforceability of the "terms at issue" is irrelevant and was, of course, prevalent in the prior,

12   dismissed version of the complaint.  Plaintiffs' odd new allegation that the entire contract is

13   unenforceable "as needed to enable the recovery of earnings" is so conclusory that it is supported

14   by literally nothing at all elsewhere in the TAC.

15   For this reason, the TAC is, in substance, indistinguishable from *Klein*, in which the court

16   dismissed the unjust enrichment claim, noting that "[i]ndeed, the plaintiffs' pleadings and briefs

17   do not provide any explanation as to why the consumer sales agreement referenced in their breach

18   of contract claim might be unenforceable or otherwise not qualify as a contract."  *Klein*, 202 Cal.

19   App. 4th at 1389.  Plaintiffs' amendment changes nothing and this claim fails.

20   **D.     Plaintiffs fail to state a claim under the UCL (Count V).**

21   **1.     Plaintiffs lack standing to sue under the UCL.**

22   To begin, "where a UCL action is based on contracts not involving either the public in

23   general or individual consumers who are parties to the contract, a corporate plaintiff may not rely

24   on the UCL for the relief it seeks."  *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App.

25   4th 115, 135 (2007) (citation omitted).  AdSense is a *business-to-business* program outside the

26   UCL's intent to protect consumers and competitors "by promoting fair competition in commercial

27   markets for goods and services."  *Id.* (citations omitted); *see also Dollar Tree Stores Inc. v.*

28   *Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012) (no UCL claim for "contract

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1    that does not implicate the public in general or individual consumers") (citation omitted).

2        Plaintiffs do not fall within the protective reach of the UCL.  First, Plaintiffs' claim that

3    they are "small and unsophisticated entities[] or individuals" (TAC ¶ 167), is of no consequence

4    under the UCL.  *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010)

5    (claims of "small mom and pop merchants" failed because they pled "insufficient [allegations] to

6    establish the requisite public or individual consumer interest as required under California law.").

7    Second, FRC and CIS are business entities that operate websites and not the consumers that the

8    UCL was intended to protect.  Similarly, Chose and Simpson, as the Court acknowledged, are

9    more like sole proprietors of businesses that operated websites than consumers.  (MTD Hr'g Tr.

10   at 22:11-13.)  Moreover, AdSense service is not used by the general public, but only by website

11   publishers.  *Linear Tech.*, 152 Cal. App. 4th at 135; *Dollar Tree*, 875 F. Supp. 2d at 1083.

12              **2.       Plaintiffs do not state a claim under the UCL's fraudulent prong.**

13       After telling the Court they did not want to allege fraud (MTD Hr'g Tr. at 27:19-22),

14   Plaintiffs now bring a UCL fraud claim under an omission theory.  For such an omission to be

15   actionable under the UCL, the defendant must have a duty to disclose.  *See Berryman v. Merit

16   Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556-57 (2007) ("[A] failure to disclose a fact one has

17   no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the

18   UCL"); *see also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006).

19   Plaintiffs have not—and cannot—show that Google was subject to any such duty to disclose.[25]

20       Plaintiffs try to manufacture a duty by claiming that Google's use of the word "may" was

21   misleading.  (TAC ¶¶ 169-70.)  But nothing about Google's terms created "a likelihood of

22   confounding an appreciable number of reasonably prudent purchasers exercising ordinary care."

23   *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (citation omitted); *see

24   also Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (a true

25   statement only triggers a duty to disclose when it is "couched in such a manner that it is likely to

26   

27   ─────────────────
     [25] Plaintiffs' claims under the fraudulent prong of the UCL must meet the heightened pleading
     requirements of Federal Rule of Civil Procedure 9(b).  *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909,

28   920 (N.D. Cal. 2013); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d
     1051, 1112 (N.D. Cal. 2015).

1    mislead or deceive the consumer") (citation omitted).  Google's plainly-worded Terms provided

2    notice of exactly the treatment to which breaching publishers could be subject.

3          Plaintiffs also fail to plead actual reliance.  *See In re Tobacco II Cases*, 46 Cal. 4th 298,

4    326 (2009); *see also e.g.*, *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014)

5    ("for a fraudulent business practices claim, the UCL mandates that plaintiff demonstrate 'actual

6    reliance' upon the defendant's misrepresentation or omission") (citation omitted).  Plaintiffs must

7    allege that, but for the fraudulent omission, "the plaintiffs *in all reasonable probability* would not

8    have engaged in the injury-producing conduct."  *Tobacco II*, 46 Cal. 4th at 326-27 (internal

9    quotation and citation omitted) (emphasis added).  It flies in the face of reality to assert, for

10   example, that, even though "for years, a substantial portion of the family income for CIS's owner

11   came from Google AdSense payments," facing a future $2,400 alleged loss would have "in all

12   reasonable probability" deterred CIS from signing up for the AdSense program.  (TAC ¶¶ 66, 71.)

13   Additionally, Plaintiff Simpson *signed back up* for AdSense after Google terminated him,

14   demonstrating that he was undeterred by Google's termination policies.  As to FRC and Chose,

15   they merely pled that "[h]ad this information [about Google's alleged extra-contractual policy]

16   been disclosed. . . they would have behaved differently" and they "would not have expended

17   time, energy, and money in their websites."  (TAC ¶ 171.)  These conclusory statements are

18   insufficient.  Plaintiffs fail to allege that Google's use of the word "may" in any way *induced*

19   them to sign up for the AdSense program.  *Tobacco II*, 46 Cal. 4th at 326 ("Reliance is proved by

20   showing that the defendant's misrepresentation or nondisclosure was an *immediate cause* of the

21   plaintiff's injury producing conduct") (internal quotation and citation omitted) (emphasis added).

22          **3.      The facts alleged state no claim under the UCL's unlawful prong.**

23          Plaintiffs claim that Google's conduct is "unlawful" under the UCL because Google acted

24   "on the basis of contractual terms" that are unconscionable and an improper liquidated damages

25   provision.  (TAC ¶ 173.)  But, as shown, such claims have no merit and cannot be the predicate

26   for an "unlawful" UCL claim.  *See, e.g.*, *Avila*, 2010 WL 5071714, at *6 (dismissing a § 17200

27   claim premised on a violation of an underlying law for which plaintiff failed to state a claim);

28   *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant

Cooley LLP
Attorneys At Law
San Francisco

24.

**Def. Google Inc.'s Motion to Dismiss Third
Amended Class Action Complaint
Case No. 5:14-cv-02329-BLF**

1    cannot be liable under [Section] 17200 for committing unlawful business practices without

2    having violated another law") (citation and quotation omitted).  Moreover, while Plaintiffs have

3    added claims under California Civil Code section 1709 and 1710 to their allegations, they have

4    not alleged the necessary elements under those laws as described in the preceding Section.

5              **4.**    **Plaintiffs allege no facts stating a claim under the UCL's unfair prong.**

6              Plaintiffs fare no better with their claim under the unfair prong.  Plaintiffs do not explain

7    how Google's alleged conduct violates a legislative public policy that is "tethered to specific

8    constitutional, statutory, or regulatory provisions."  *Drum v. San Fernando Valley Bar Ass'n*, 182

9    Cal. App. 4th 247, 257 (2010) (affirming dismissal where "plaintiff failed to allege any violation

10   or incipient violation of any statutory or regulatory provision, or any significant harm to

11   competition") (citations omitted); *Belton*, 151 Cal. App. 4th at 1239-40.  Nor do they allege that

12   Google's alleged conduct was "immoral, unethical, oppressive, unscrupulous or substantially

13   injurious to consumers."  *Drum*, 182 Cal. App. 4th at 257; *see also Bardin v. DaimlerChrysler*

14   *Corp.*, 136 Cal. App. 4th 1255, 1270-71 (2006). Additionally, Plaintiffs' new allegations that

15   Google's practices "detrimentally affect the public interest" because "[t]housands and thousands .

16   . . are . . . affected as they consumer [sic] Google's AdSense service or product," (TAC ¶ 176) are

17   conclusory, self-serving, and continue to fail to allege "any violation . . . of any statutory or

18   regulatory provision, or any significant harm to competition."  *Drum*, 182 Cal. App. 4th at 257.

19             **E.**    **Plaintiffs fail to state a claim for declaratory relief (Counts VI and VII).**

20             "Declaratory relief is an equitable remedy which fails to the extent that the underlying

21   claims fail."  *Wornum v. Aurora Loan Servs., Inc.*, No. 11-cv-2189, 2011 WL 3516055, at *10

22   (N.D. Cal. Aug. 11, 2011) (citation omitted).  Plaintiffs seek a declaration that certain Terms are

23   unconscionable and improper liquidated damages.  (TAC ¶¶ 178-185.)  Because those claims fail

24   on their merits (*see supra* Section IV(A)(2)(a-b)), Plaintiffs cannot obtain declaratory relief.

25             **F.**    **Plaintiffs' claim under 1671 fails for the reasons described above (Count I).**

26             As shown in Section III(A)(2)(b), there is no liquidated damages clause.

27   **V.    CONCLUSION**

28             For these reasons, Google respectfully asks this Court to dismiss the action with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:14-CV-02329-BLF

1    Dated: October 13, 2015              COOLEY LLP

2                                         */s/ Jeffrey M. Gutkin*
                                          Jeffrey M. Gutkin (216083)
3
                                          MICHAEL G. RHODES (116127)
4                                         JEFFREY M. GUTKIN (216083)
                                          KYLE C. WONG (224021)
5
                                          Attorneys for Defendant
6                                         GOOGLE INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   122178243

COOLEY LLP
ATTORNEYS AT LAW                          26.                     DEF. GOOGLE INC.'S MOTION TO DISMISS THIRD
SAN FRANCISCO                                                     AMENDED CLASS ACTION COMPLAINT
                                                                  CASE NO. 5:14-CV-02329-BLF