Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Jeff D. Friedman
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>                            Plaintiffs,<br><br>        v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>                            Defendant. | No. 5:14-cv-02329-BLF<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOOGLE INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     STATEMENT OF FACTS .......................................................................................1

III.    ARGUMENT ...........................................................................................................1

      A.      Plaintiffs have pled adequately a claim for breach of contract.....................1

           1.      Plaintiffs have pled their performance adequately...........................2

                a.      Plaintiff FRC ........................................................................4

                b.      Plaintiffs CIS, Chose, and Simpson......................................5

           2.      Alternatively, plaintiffs' performance was excused.........................7

           3.      In any event, Google cannot withhold payment for all ad serves.....................9

      B.      Plaintiffs have pled adequately their claims of unconscionability. ...............9

      C.      Plaintiffs have alleged adequately a liquidated damages provision that is invalid and unenforceable. ...........................................................................11

           1.      Plaintiffs have pled adequately a liquidated damages provision.....................12

           2.      Plaintiffs have pled unreasonableness adequately. ........................15

      D.      Plaintiffs Chose and Simpson have not waived their rights to bring this case. ..........16

           1.      Plaintiffs Chose and Simpson were not required to "appeal." ........16

           2.      Google cannot enforce its contractual limitations period here........18

      E.      Plaintiffs have pled adequately a claim in the alternative for breach of the implied covenant of good faith and fair dealing.................................20

      F.      Plaintiffs adequately allege their unjust enrichment claim..........................21

      G.      Plaintiffs allege adequately claims pursuant to the UCL. ...........................22

           1.      Plaintiffs have standing to sue under the UCL. ..............................22

           2.      Plaintiffs state a claim under the UCL's fraudulent prong.............24

           3.      Plaintiffs state a claim under the UCL's unlawful prong................24

           4.      Plaintiffs state a claim under the UCL's unfair prong. ...................25

      H.      Plaintiffs allege adequately their remaining claims. ...................................25

IV.     CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Software, Inc. v. Ali*,
  46 Cal. App. 4th 1386 (1996) ................................................................... 11

*Assaad v. Am. Nat. Ins. Co.*,
  2010 WL 541841 (N.D. Cal. Dec. 23, 2010) ............................................. 19

*Bayol v. Zipcar, Inc.*,
  78 F. Supp. 3d 1252 (N.D. Cal. 2015).......................................... 14, 15, 16

*Bear, LLC v. Marine Grp. Boat Works, LLC*,
  2015 WL 4255061 (S.D. Cal. July 14, 2015) ............................................ 22

*Bondanza v. Peninsula Hosp. & Med. Ctr.*,
  23 Cal. 3d 260 (1979)................................................................................ 15

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) ..................................................................... 10

*Britz Fertilizers, Inc. v. Bayer Corp.*,
  665 F. Supp. 2d 1142 (E.D. Cal. 2009) ................................................... 4, 7

*Builders Bank v. Oreland, LLC*,
  2015 WL 1383308 (C.D. Cal. Mar. 23, 2015) ............................................. 3

*City and Cty. of San Francisco v. Tutor-Saliba Corp.*,
  2005 WL 645389 (N.D. Cal. Mar. 17, 2005) ........................................... 4, 7

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) ....................................................................... 8

*Dean Witter Reynolds, Inc. v. Superior Court*,
  211 Cal. App. 3d 758 (1989) ..................................................................... 11

*Doe v. Successfulmatch.com*,
  70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014)............................................. 24

*Dollar Tree Stores, Inc. v. Toyama Partners LLC*,
  875 F. Supp. 2d 1058 (N.D. Cal. 2012).............................................. 15, 23

*Edwards v. Princess Cruise Lines, Ltd.*,
  371 Fed. Appx. 768 (9th Cir. 2010)........................................................... 18

*Ellis v. U.S. Security Associates*,
  224 Cal. App. 4th 1213 (2010) .................................................................. 19

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................ 1

*Ewert v. eBay, Inc.*,
  2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ........................................ 23

*Feldman v. Google, Inc.*,
  513 F. Supp. 2d 229 (E.D. Pa. 2007) ..................................................... 18

*Filet Menu, Inc. v. C.C.L. & G., Inc.*,
  79 Cal. App. 4th 852 (2000) .............................................................. 5, 9

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal. App. 4th 846 (2001) ................................................................ 10

*Free Range Content, Inc. v. Google Inc.*,
  2015 WL 5029480 (N.D. Cal. Aug. 25, 2015) ........................... 12, 14, 15

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) ............................................ 25

*Google, Inc. v. Jackman*,
  2011 WL 3267907 (N.D. Cal. July 28, 2011) ...................................... 2, 3

*Hahn v. Massage Envy Franchising, LLC*,
  2014 WL 5100220 (S.D. Cal. Sept. 25, 2014) ........................... 11, 14, 22

*Han v. Mobil Oil Corp.*,
  73 F.3d 872 (9th Cir. 1995) ................................................................. 20

*Harvey G. Ottovich Revocable Living Trust v. Washington Mut., Inc.*,
  2010 WL 3769459 (N.D. Cal. Sept. 22, 2010) ...................................... 20

*Hawthorne v. Umpqua Bank*,
  2012 WL 1458194 (N.D. Cal. Apr. 26, 2012) ....................................... 21

*Hernandez v. Path, Inc.*,
  2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ........................................ 21

*Jackson v. S.A.W. Entm't, Ltd.*,
  629 F. Supp. 2d 1018 (N.D. Cal. 2009), *abrogation on other bases recognized by
  Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ............................................. 19

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ............................................................ 21

*Kodiak 1981 Drilling P'ship v. Delhi Gas Pipeline Corp.*,
  736 S.W.2d 715 (Tex. App. 1987) ........................................................... 8

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ........................................................................... 23

*Martinez v. Extra Space Storage, Inc.*,
  2013 WL 3889221 (N.D. Cal. July 26, 2013) ......................................... 19, 20

*Moreno v. Sanchez*,
  106 Cal. App. 4th 1415 (2003) ......................................................................... 19

*Newton v. Am. Debt. Servs., Inc.*,
  854 F. Supp. 2d 712 (N.D. Cal. 2012) ............................................................ 9, 10

*Novak v. Overture Servs., Inc.*,
  309 F. Supp. 2d 446 (E.D.N.Y. 2004) .............................................................. 9

*Oculus Innovative Sciences, Inc. v. Nofil Corp.*,
  2007 WL 2600746 (N.D. Cal. Sept. 10, 2007) ............................................... 20

*Perlman v. Pioneer Limited P'ship*,
  918 F.2d 1244 (5th Cir.1990) ........................................................................... 8

*Petersen v. Hartell*,
  40 Cal. 3d 102 (1985) ......................................................................................... 1

*Plotnik v. Meihaus*,
  208 Cal. App. 4th 1590 (2012) ......................................................................... 2

*Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.*,
  2014 WL 31251 (N.D. Cal. Jan. 3, 2014) ...................................................... 13

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ........................................................................... 22

*Ramos v. Citimortgage, Inc.*,
  2009 WL 86744 (E.D. Cal. Jan. 8, 2009) ...................................................... 9, 20

*Reddy v. Litton Indus.*,
  912 F.2d 291 (9th Cir. 1990) ........................................................................... 4

*Ridgley v. Topa Thrift & Loan Ass'n*,
  17 Cal. 4th 970 (1998) ....................................................................................... 11

*Rosenbluth Int'l v. Superior Court*,
  101 Cal. App. 4th 1073 (2002) ......................................................................... 23

*Ruiz Food Prods., Inc. v. Catlin Underwriting U.S., Inc.*,
  2011 WL 3323046 (E.D. Cal. Aug. 2, 2011) ................................................. 3

*Ruwe v. Cellco P'ship*,
  613 F. Supp. 2d 1191 (N.D. Cal. 2009) .......................................................... 13

*Sabine Corp. v. ONG Western, Inc.*,
725 F. Supp. 1157 (W.D. Okla. 1989) .................................................................. 8

*Schoettler v. Wachovia Corp.*,
2008 WL 5101367 (E.D. Cal. Dec. 3, 2008) ...................................................... 18

*Schuman v. Ikon Office Solutions, Inc.*,
232 Fed. Appx. 659 (9th Cir. 1997) ..................................................................... 11

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007), *abrogated on other grounds*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................................................ 10

*Smith v. Simmons*,
2007 WL 2815033 (E.D. Cal. Sept. 25, 2007) ...................................................... 2

*Smith v. Wal-Mart Stores*,
2006 WL 2711468 (N.D. Cal. Sept. 20, 2006) ...................................................... 3

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .............................................................................. 5

*Stonebrae, L.P. v. Toll Bros., Inc.*,
No. C08-0221 EMC, 2009 WL 1082067 (N.D. Cal. Apr. 22, 2009) .................... 3

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
100 Cal. App. 4th 44 (2002) (1992) ..................................................................... 21

*Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*,
2008 WL 2510876 (E.D. Cal. June 19, 2008) ................................................... 5, 6

*Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*,
2007 WL 1795695 (N.D. Cal. June 20, 2007) ...................................................... 3

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........................................................................................ 24

*Toyrrific, LLC v. Karapetian*,
2012 WL 3542578 (C.D. Cal. Aug.16, 2012) ....................................................... 3

*TradeComet.com, LLC v. Google, Inc.*,
693 F. Supp. 2d 370 (S.D.N.Y. 2010) ................................................................... 9

*Ubaldi v. SLM Corp.*,
852 F. Supp. 2d 1190 (N.D. Cal. 2012) .............................................................. 25

*Union Bond & Trust Co. v. Blue Creek Redwood Co.*,
128 F. Supp. 709 (N.D. Cal. 1955) ..................................................................... 16

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001) ........................................................... 8

*In re Webkinz Antitrust Litig.*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) ........................................................... 23

*Wolschlager v. Fidelity Nat. Title Ins. Co.*,
  111 Cal. App. 4th 784 (2003) ......................................................................... 6

*Woods v. Google Inc.*,
  889 F. Supp. 2d 1182 (N.D. Cal. 2012) ......................................................... 10

*In re Yahoo! Litig.*,
  251 F.R.D. 459 (C.D. Cal. 2008) ................................................................... 23

## STATUTES

Cal. Civ. Code § 1442 ........................................................................................ 18

Cal. Civ. Code § 1670.5 ......................................................................... 11, 22, 24

Cal. Civ. Code § 1671 ..................................................................... 16, 19, 24, 25

Cal. Civ. Code § 1709 ........................................................................................ 24

Cal. Civ. Code § 1710 ........................................................................................ 24

Cal. Civ. Code, § 3294 ....................................................................................... 16

Cal. Civ. Proc. Code § 1856 ............................................................................... 14

## OTHER AUTHORITIES

15 Williston on Contracts § 45:18 (4th ed.) ......................................................... 9

Restatement (Second) Contracts § 240 ................................................................. 9

Restatement (Third) of Restitution and Unjust Enrichment § 36(1) (2011) ........ 22

## I.      INTRODUCTION

The question posed by plaintiffs' case is whether it is lawful for Google Inc. to withhold earned but unpaid program funds from AdSense publishers when it terminates them for supposed breach of contract.  Plaintiffs contend that it is not—California law does not permit a company to react to a claimed breach of contract by extracting punitive damages from the opposite party.[1]

Plaintiffs meet the applicable pleading standards for each of their causes of action, so they ask that the Court deny Google's motion in its entirety.  They also respectfully seek leave to amend where, in the Court's view, such amendment is needed to survive dismissal of any of their claims.[2]

## II.      STATEMENT OF FACTS

Each plaintiff was an AdSense publisher.  (TAC (Dkt. No. 92), ¶¶ 14-17.)  Each dutifully served ads, providing value to Google and to advertisers.  (TAC, ¶¶52, 66, 76, 88.)  Each thereby accrued "earnings" in his or her publisher's account.  (TAC, ¶¶ 57, 71, 80, 93.)  Each endeavored to comply with the AdSense contract, and none is aware of violating it.  (TAC, ¶¶ 51, 67-68, 76-77, 88-89.)

All plaintiffs allege that Google terminated their AdSense accounts.  (TAC, ¶¶ 58, 70, 79, 91.)  All allege that upon doing so, Google suddenly withheld 100% of all funds that Google itself had reported to be net but unpaid earnings.  (TAC, ¶¶ 61, 72, 81, 94.)

## III.      ARGUMENT

**A.      Plaintiffs have pled adequately a claim for breach of contract.**

Plaintiffs provided a valuable service to Google and its AdWords advertisers by displaying the ads that Google sent them.  (TAC, ¶¶ 51, 68-69, 76, 78, 88-90.)  For providing this valuable

---

[1] *See, e.g., Petersen v. Hartell*, 40 Cal. 3d 102, 108 (1985) ("We concluded that *the prohibition of punitive damages for breach of contract* (Civ. Code, § 3294), the strict limitations on the right to provide for liquidated damages (Civ. Code, §§ 1670, 1671), and the provision that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . .' (Civ. Code, § 3369) together established a policy that precludes any forfeiture having no reasonable relation to the damage caused [by a contractual breach].") (emphasis added).

[2] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Because Google would suffer no prejudice as a result of any such amendment, the liberal policy regarding amendment should be observed as necessary to save plaintiffs' complaint.  *E.g., id.*

1   service, plaintiffs accrued "earnings"—Google's own consistent characterization of the funds at

2   issue—in their publisher accounts.  (TAC, ¶¶ 25, 40-44, 57, 71, 80, 93.)  Google regularly reports

3   gross and net earnings figures to publishers, the latter taking account of dynamic adjustments it

4   makes to gross earnings.  (TAC, ¶¶ 44, 54.)  Google has admitted repeatedly that it withheld these net

5   earnings (*i.e.*, the earnings in plaintiffs' account as of the time of termination) as a matter of

6   contractual right.  (TAC, ¶¶ 25, 35, 40-41.)  That is correct in one sense: Google definitely withheld

7   100% of unpaid earnings based on a contractual provision.  But that contractual provision, a

8   liquidated damages term, is unreasonable, invalid, and unenforceable.  When that term drops out of

9   the contract, what is left are the other provisions mandating payment for services rendered.  Google

10   violated these.  This is the gravamen of plaintiffs' claim for breach of contract as to funds withheld.[3]

11        Even if, for the sake of argument, the Court assumed that each plaintiff breached Google's

12   AdSense contract *materially*—a fact-laden proposition[4] that cannot be decided on a motion to

13   dismiss—such a breach would not entitle Google to withhold all net funds each earned by serving

14   ads.  Plaintiffs explain further below.

15        **1.    Plaintiffs have pled their performance adequately.**

16        One of the elements of a breach-of-contract claim, as frequently pled,[5] is an allegation of

17   "plaintiff's performance or excuse for non-performance."  *Google, Inc. v. Jackman*, 2011 WL

18   3267907, at *4 (N.D. Cal. July 28, 2011) (citation omitted).  Google argues that plaintiffs have pled

19   their performance insufficiently.  (MTD (current motion—Dkt No. 94) at 7-10.)  But in fact, all

20        [3] But also, the AdSense contracts provide that Google may terminate publishers "for any reason"
21   —not for "no reason."  (TAC Exs. A and C, ¶ 10.)  Based on this provision and the circumstances of
     their terminations, plaintiffs have pled breach of contract and breach of the implied covenant of good
22   faith and fair dealing.  (TAC, ¶¶ 133, 151.)  Google asserts that it did not terminate plaintiffs for "no
     reason."  (MTD at 17-18.)  Plaintiffs, however, have pled that Google offered no meaningful reason
23   for terminating them, and Google itself admits that its termination notices are purposely vague.  (TAC,
     ¶¶ 58, 91, 133, 151.)  In light of plaintiffs' allegations that they endeavored to comply with all Ad-
24   Sense rules and that they are aware of no violations, certainly there are questions of fact as to whether
     Google terminated them for "any" reason, or, perhaps, if a Google machine issued a termination notice
25   accidentally.  (TAC, ¶¶ 3, 53.)  These questions preclude dismissal on the pleadings.
          [4] *See Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602-03 (2012) ("'Normally the question of
26   whether a breach of an obligation is a material breach, so as to excuse performance by the other party,
     is a question of fact.'") (citations omitted).
27        [5] Pleading a mere "common count" of breach of contract—a statement of indebtedness,
     consideration, and nonpayment—also suffices under both California law and Fed. R. Civ. P. 8(a).
28   *Smith v. Simmons*, 2007 WL 2815033, at *5, n.1 (E.D. Cal. Sept. 25, 2007) (citation omitted).

plaintiffs have alleged plainly that they performed their contractual duties by dutifully serving ads.[6] (TAC, ¶¶ 52, 66, 76, 88.)  Pleading thus is sufficient pursuant to Rule 8[7]—and it comports with Google's own pleading practice.[8]  Google itself has referred to the AdSense program as "simple," MTD/FAC (previous motion to dismiss—Dkt. No. 38) at 4, 23; given Google's own description, plaintiffs' performance also is a simple concept.[9]

Further, to the extent that any of plaintiffs' duties under the AdSense contract could be deemed conditions precedent to payment, plaintiffs' allegations also suffice.[10]  In this manner, too, plaintiffs' breach of contract claim is not deficient.[11]  Plaintiffs need do no more than allege generally their performance of conditions precedent to payment, which they have done amply.[12]

Nonetheless, Google seeks impermissible *factual* determinations as to performance.[13]

---

[6] Additionally, all plaintiffs have alleged in detail that in serving ads, they did not act or omit in various other manners that Google might now claim, however groundlessly, to bear on the performance element of their breach-of-contract claims.  (TAC, ¶¶ 51, 67-68, 76-77, 88-89.)

[7] *See* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim").

[8] *See Jackman*, 2011 WL 3267907, at *4 (holding Google's allegation that it "performed by offering and allowing the posting of Defendant's ads through the AdWords program" sufficient for purposes of pleading a claim for breach of contract) (citations omitted).

[9] Indeed, "the Ninth Circuit has held that 'fair notice' [to a defendant] does not require that the party 'plead all the elements of a prima facie case,' *Wong v. United States*, 373 F.3d 952, 969 (9th Cir. 2004) . . . ."  *Smith v. Wal-Mart Stores*, 2006 WL 2711468, at *13 (N.D. Cal. Sept. 20, 2006) (emphasis added) (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002)). Here, Google has fair notice of plaintiffs' claim for breach of contract, including plaintiffs' assertions that they successfully served ads, giving rise to Google's duty to pay.  Accordingly, the Court should not dismiss any of plaintiffs' breach of contract claims.  *See, e.g.*, *Toyrrific, LLC v. Karapetian*, 2012 WL 3542578, at *6 (C.D. Cal. Aug.16, 2012) (denying motion to dismiss breach of contract claim where claimant generally alleged that it performed all required conditions under the contract); *accord*, *Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, 2007 WL 1795695, at *2 (N.D. Cal. June 20, 2007).

[10] Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege *generally* that all conditions precedent have occurred or been performed.") (emphasis added); *see also Builders Bank v. Oreland, LLC*, 2015 WL 1383308, at *2 (C.D. Cal. Mar. 23, 2015) ("Rule 9(c) is 'intended to . . . allow[ ] claimants in breach of contract cases to generally aver the performance of all "conditions precedent," including all terms and obligations (promissory conditions) that plaintiffs must perform when suing for breach of bilateral contracts . . . .'") (citation omitted).

[11] *See Ruiz Food Prods., Inc. v. Catlin Underwriting U.S., Inc.*, 2011 WL 3323046, at *3 (E.D. Cal. Aug. 2, 2011) ("'Neither Rule 9(c) nor Rule 8(a)(2) expressly requires that the performance or occurrence of conditions precedent be pled at all by a claimant.'") (citing, *inter alia*, *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1123-24 (9th Cir. 1998)).

[12] It is Google, when it answers, that must plead any denial of plaintiffs' performance with particularity.  Fed. R. Civ. P. 9(c).

[13] "Generally, whether a party has performed as required by a contract, or breached it, is a question of fact.  *See Stonebrae, L.P. v. Toll Bros., Inc.*, No. C08-0221 EMC, 2009 WL 1082067, at *5 (N.D. Cal. Apr. 22, 2009) ('Ordinarily, whether a party has performed as required under a contract is a

1

####     a.        Plaintiff FRC

2         Plaintiffs' amended complaint adds extra, elucidating details that do not contradict its earlier

3    allegations.  Google's authority, *Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990), in no way

4    precludes the additional detail that FRC has provided.[14]

5         Again, Google disingenuously argues that "FRC itself believed that only about a quarter of

6    clicks in the final pay period were genuine."  (MTD at 8.)  But that is not what FRC has alleged, now

7    or previously.[15]  Consistent with its initial complaint, FRC alleges in the TAC that as a good

8    AdSense publisher, it self-reported to Google an increase in gross earnings.  (TAC, ¶¶ 53-54.)  To

9    FRC, the $40,000 gross figure reported by Google seemed high, based on FRC's history with the

10   program, but FRC did not know if the increase in gross earnings was due to anything problematic,

11   which is why it contacted Google for help.[16]  (TAC, ¶¶ 54, 57.)  FRC's reference to an "$8,000 to

12   $11,000 range," from which Google extrapolates its "quarter of clicks" contention, is what FRC

13   recalls that *Google* reported as net earnings in the pertinent pay period prior to termination.  (TAC,

14   ¶ 57.)  Google compares these gross and net figures and comes up with 25%—but these are its own

15   numbers.  There is no FRC admission here.

16         Google also wishes the Court to determine factually that one or more of the websites on

17   question of fact for a jury, not a judge, to decide.') . . . ."  *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F.
     Supp. 2d 1142, 1161 (E.D. Cal. 2009); *accord*, *City and Cty. of San Francisco v. Tutor-Saliba Corp.*,
18   2005 WL 645389, at *18-20 (N.D. Cal. Mar. 17, 2005).

19   [14] *Cf. id. at* 296-97 ("It would not be possible for Reddy to amend his complaint to allege a
     completely new injury that would confer standing to sue without contradicting any of the allegations
20   of his original complaint.").

21   [15] Google states, MTD at 8, that FRC alleged in its original complaint "that its clicks 'seemed far
     too high'"—but FRC did not allege that.  It alleged that its "earnings" seemed too high, "based on its
     history with the program."  (Dkt. No. 1, ¶ 22.)  This is an important distinction because in footnote 12
22   of its current motion, Google attempts to mislead the Court into believing that FRC itself admitted
     "invalid activity" comprised of "invalid clicks," when in fact it did not admit either "invalid activity"
23   or "invalid clicks" and denies knowing of any.  (*See id.*; TAC, ¶¶ 54, 57.)  The existence of a factual
     question as to whether any "invalid activity" took place on FRC's account means there can be no
24   determination at this stage of whether FRC's thoroughly valid click activity was "co-mingled with a
     significant amount" of invalid activity as described in Paragraph 5 of the AdSense contract.

25   [16] Google has *never* told FRC if it deemed any part of its final earnings to be problematic due to
     what Google might deem *invalid clicks.*  (TAC, ¶¶ 54, 57, 59.)  Importantly, FRC's notice of
26   termination referred only to "invalid *activity*," which, by Google's own definition, might have meant
     activity *other than* supposedly "invalid *clicks*," a term that is not itself defined.  (TAC, ¶ 58.)  For
27   example, the AdSense contract provides that "invalid activity" can include "[a]ds served to end users
     whose browsers have JavaScript disabled," "spam," or "invalid queries" (whatever those latter terms
28   mean).  (*Id.* and TAC Exs. A and C, ¶ 5.)

1    which FRC facilitated ad serves—which is permitted by Google's terms and conditions—was not "in

2    compliance with [Google's] program policies," even though there are no allegations to that effect.

3    (*See* MTD at 8.)  It then asks the Court to find a failure to perform on plaintiff FRC's part by

4    suggesting the Court jump with it to the factual conclusion that FRC facilitated the display of

5    AdSense ads on "'100,000 domains,'" such that FRC could not possibly have monitored participating

6    sites for compliance with AdSense policies.  (*See id.* (citation omitted).)  But the Court cannot make

7    this leap on a motion to dismiss.

8        As to both of these attempted attacks on the sufficiency of FRC's breach-of-contract claim,

9    Google evidently means to assert that the supposedly admitted behavior it posits constitutes a prior

10   breach by FRC of the AdSense terms and conditions, such that Google owes it nothing.  But not only

11   does Google ask the Court to engage in impermissible fact finding with respect to this supposed

12   behavior; additionally, as with its last motion to dismiss, Google utterly fails to engage in an analysis

13   as to whether FRC's supposed breach constitutes a *material* breach, the only kind sufficient to excuse

14   Google's own performance in turn.[17]  Google merely *asserts*, in conclusory fashion, material breach

15   on the part of FRC, MTD at 8, but this is not enough to overcome FRC's allegation that it performed,

16   such that Google must pay it.[18]

17                **b.    Plaintiffs CIS, Chose, and Simpson**

18       Google also claims prior breach on the part of plaintiffs CIS, Chose, and Simpson.  But as to

19   these plaintiffs, it does not even *assert* material breach, MTD at 9, let alone undertake the required

20

21       [17] *See, e.g.*, *Filet Menu, Inc. v. C.C.L. & G., Inc.*, 79 Cal. App. 4th 852, 861 (2000) (to excuse
     performance/duty to pay, other party's breach must be material) (citation omitted); *Sunstone*

22   *Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 2008 WL 2510876, at *7 (E.D. Cal. June 19,
     2008) (setting forth six fact-intensive "[f]actors to consider in determining whether a failure to fully

23   perform constitutes a material breach of the contract," and noting further that "'[w]hether a breach
     constitutes a failure of consideration sufficient to be deemed material . . . is a question of fact . . . .'")

24   (citations omitted).

             [18] Also, there is nothing "conclusory" about FRC's allegations of performance.  Nothing requires
25   plaintiffs to engage in a guessing game as to what Google may consider material aspects of
     performance, and then to plead them.  Here, FRC has alleged that it did what the contract required it to

26   do in order to get paid, TAC, ¶¶ 51-52, and it has offered further details surrounding that performance,
     *id.*  That is enough.  *See, e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[T]o be entitled to

27   the presumption of truth, allegations in a complaint or counterclaim may not simply recite the
     elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair

28   notice and to enable the opposing party to defend itself effectively.").

1      analysis to demonstrate it.  *See Sunstone*, 2008 WL 2510876, at *7.  Moreover, each of its

2      contentions, to be accepted, would require the Court to resolve significant questions of fact.

3              Like FRC, CIS has pled its performance.  (TAC, ¶¶ 66-67.)  Nonetheless, Google invites the

4      Court to engage in a "simple comparison"—really an impermissible factual analysis—of what it says

5      were CIS's "ad placements" with exemplar placements presented as "unacceptable implementations"

6      in Google's placement policies.  (MTD at 9.)  Evidently, this is supposed to demonstrate that CIS's

7      allegations are conclusory, such that they should be disregarded.  But according to counsel's

8      declaration, Mr. Wong allegedly viewed CIS's websites on *October 14, 2014*, which is almost two

9      years *after* Google terminated CIS's account in November 2012.  (Wong Decl. (Dkt. No. 95), ¶¶ 14-

10     15; TAC, ¶ 70.)  This says nothing about ad placement at any time at or before the date on which

11     Google terminated CIS's account.

12             Further, Google's Mr. Gray has declared that there was *no* link in the 2012-2013 Program

13     Policies to the "full Ad placement policies article" referenced by Google in its current motion to

14     dismiss.  (Gray Decl. (Dkt. No. 94), ¶ 5.)  But this is of no import, he implies, because he was

15     "informed that Google does not cite those policies in connection with the plaintiffs terminated at that

16     time"—except that in fact Google now does cite and rely on those policies with respect to plaintiff

17     CIS.  (*Id*.)  Given Google's admission that the AdSense terms and conditions did not link to the "full

18     Ad placement policies article" in 2012, when Google terminated CIS's account, the Court cannot

19     deem the particular placement policies now relied upon by Google to have been a part of the

20     AdSense contract in effect when CIS was an active publisher.[19]  In sum, Google's argument as to CIS

21     is misleading and groundless,[20] and it ought to be emphatically rejected.

22

23     _____

       [19] *E.g.*, *Wolschlager v. Fidelity Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003) (reference to
24     document supposedly incorporated into a contract "must be clear and unequivocal"; "reference must
       be called to the attention of the other party and he must consent thereto"; and "the terms of the
       incorporated document must be known or easily available to the contracting parties.").

25     [20] In addition to making another comment about ad placement, Google also refers to portions of
26     the termination notice it sent to CIS.  (MTD at 6.)  It lists three excerpts from the termination notice,
       apparently to illustrate that CIS also violated certain other "Program Policies."  But it does not even
27     bother to say which specific webpages supposedly violated any specific "Program Policy," or which
       specific policy it is talking about (not to mention whether it was in effect at pertinent times).  Google,
       therefore, has not met its burden to support its own motion adequately.  In any event, the excerpts to
28     which Google cites are wholly subjective and fact-intensive (example: "provide a good user

       PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOOGLE INC.'S MOTION
       TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT - 6
       Case No. 5:14-cv-02329-BLF
       010450-11  828263 V1

As for Ms. Chose, Google seems to argue that, in spite of her allegations of performance, TAC, ¶¶ 77-78, screen grabs of her website, as it allegedly appeared on a day in November 2013, demonstrate conclusively that she did not perform because she supposedly breached Google's "Program Policies" by presenting "scraped content."  (MTD at 9; Wong Decl., ¶ 16.)  But regarding its supposed policy as to "scraped content," Google points to a mere "help page" from *October 2014*, which post-dates Ms. Chose's account termination in November 2013 by almost a year.[21]  *What is more, its cited "help page" does not even purport to prohibit "scraped content."*  (Gray Decl., ¶ 9 and Ex. 6.)  So yes, contrary to what Google argues, Ms. Chose *does* "refute the fact that her website is composed of little but scraped content, in clear violation of the Program Policies."  (*See* MTD at 9.)  In sum, Google's argument as to Ms. Chose, like its arguments as to FRC and CIS, is misleading and groundless,[22] and it ought to be emphatically rejected.[23]

## 2.    Alternatively, plaintiffs' performance was excused.

Plaintiffs also have pled alternatively that any failure in performance was excused, including under the broad *force majeure* clause of the AdSense contract.  As for their general allegations of

---

experience through clear navigation and organization"), *see* MTD at 6, and they cannot negate CIS's allegations of performance on a motion to dismiss.  *E.g.*, *Britz Fertilizers*, 665 F. Supp. 2d at 1161; *Tutor-Saliba*, 2005 WL 645389, at *18-20.

[21] Google nowhere establishes that this "help page" existed as of November 2013 or before then, let alone that it was part of the AdSense contract during the pertinent time period (in October 2014, Google admits that it was two links away from Google's program policies (Gray Decl., ¶ 9)), such that Google cannot use it as a basis for Ms. Chose's breach of contract.  Furthermore, Google does not explain how the webpages it references bear "scraped content"—certainly nothing is obvious when one compares the pages to the content of Google's proffered "help page."

[22] In addition to making another comment about ad placement, Google also refers to portions of the termination notice it sent to Ms. Chose.  (MTD at 6.)  But it does not even bother to say which specific webpages supposedly violated any specific policy, "help article," or "guideline," or which specific aspect of these that it might be talking about (not to mention whether it was in effect at pertinent times, or whether it properly forms a part of the AdSense contract).  Again, Google, has not met its burden to support its own motion properly.  In any event, the excerpts to which Google cites are wholly subjective and fact-intensive (example: "provide unique and relevant content"), *see* MTD at 6, and they cannot negate Ms. Chose's allegations of performance on Rule 12 motion.

[23] As for Mr. Simpson, Google merely disputes his allegations of performance.  (MTD at 9.)  Google also notes that Mr. Simpson has alleged that he is unaware of invalid activity on his site, and that he certainly never caused any.  (TAC, ¶ 91.)  Supposedly, though, Mr. Simpson's allegations are too "conclusory" to be credited because he had a "rarely-updated website."  Google, however, does not here tie this subjective assertion to violation of any supposed contractual term.  Moreover, as demonstrated by plaintiffs' analysis above, Mr. Simpson's allegations of performance, TAC, ¶¶ 88-91, are adequate, and they certainly cannot be extinguished, given the inherent factual disputes, on a motion to dismiss.  *E.g., Britz Fertilizers*, 665 F. Supp. 2d at 1161.

1   excuse, TAC, ¶¶ 55, 68, 76, 92, these entail questions of fact (for example: which traffic was

2   allegedly "invalid"; how and why; and could FRC or Mr. Simpson have reasonably prevented it?) not

3   appropriate for resolution on a motion to dismiss.[24]

4           As for plaintiffs' allegations that invoke the *force majeure* clause of the contract, TAC Exs. A

5   and C, ¶ 14, Google argues, based on citation to one non-binding authority, that because in its view:

6   plaintiffs "undeniably" knew of "the risk of invalid activity"; because it was their duty "to prevent

7   it"; and because "Plaintiffs accepted the risk of the consequences if they failed to do so," then the

8   broad *force majeure* provision it drafted cannot possibly apply.  (MTD at 10 (citing *Gulf Oil. Corp. v.*

9   *FERC*, 706 F.2d 444, 452-54 (3d Cir. 1983)).)  But here, the *force majeure* provision says nothing

10  about foreseeability.[25]  Instead, it speaks only to inadequate performance caused by conditions

11  "beyond the party's reasonable control," which plaintiffs have pled here.[26]  (TAC, ¶¶ 55, 68, 76, 92.)

12          Google's authority on foreseeability, *Gulf Oil*, which is not based on California law, states but

13  one view on whether a lack of foreseeability is required for reliance on a *force majeure* provision.

14  There are several authorities to the contrary,[27] and these are the better authorities because they do not

15

16  [24] *See, e.g, Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 245
    (9th Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a
17  motion to dismiss for failure to state a claim upon which relief can be granted.") (citation omitted).

18  [25] *See* TAC Exs. A and C, ¶ 14 ("Neither party will be liable for inadequate performance to the
    extent caused by a condition (for example, natural disaster, act of war or terrorism, riot, labor
19  condition, governmental action, and Internet disturbance) that was beyond the party's reasonable
    control.").

20  [26] Whether an event is beyond the reasonable control of a party is a question of fact that is
    inappropriate for resolution on a motion for summary judgment, *see Watson Labs., Inc. v. Rhone-*
21  *Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1109-11 (C.D. Cal. 2001); *a fortiori*, the question also
    would be inappropriate for resolution on a motion to dismiss (but note that Google does not attempt to
22  argue reasonable control here).  (*See* MTD at 10.)

23  [27] *See, e.g.*, *Perlman v. Pioneer Limited P'ship*, 918 F.2d 1244, 1248 (5th Cir.1990) ("Because the
    clause labelled 'force majeure ' in the Lease does not mandate that the force majeure event be
24  unforeseeable or beyond the control of [the nonperforming party] before performance is excused, the
    district court erred when it supplied those terms as a rule of law."); *accord*, *Sabine Corp. v. ONG*
    *Western, Inc.*, 725 F. Supp. 1157, 1170 (W.D. Okla. 1989); *Kodiak 1981 Drilling P'ship v. Delhi Gas*
    *Pipeline Corp.*, 736 S.W.2d 715, 720-21 (Tex. App. 1987).

25      Furthermore, the rationale for reading a foreseeability requirement into a *force majeure* clause "'is
    the view that a promisor can protect himself against foreseeable events by means of an express
26  provision in an agreement.'"  *Watson Labs.*, 178 F. Supp. 2d at 1112 (citation omitted).  Here,
    however, plaintiffs were in no position to do so; they were given no opportunity to negotiate, and they
27  had no power to insist on, any terms with Google.  But even if Google's view of the law were correct,
    there are factual questions bound up with foreseeability, starting with the most basic one: what,
28  exactly, is the "invalid activity" to which Google refers?  "Invalid activity" does not mean any one

1      read into a provision language that is not present.

2              **3.     In any event, Google cannot withhold payment for all ad serves.**

3              In any event, even if Google could demonstrate that plaintiffs materially breached as to

4      certain ad serves, it cannot withhold payment for all the other ad serves.  As illustrated by the fact

5      that Google as a matter of course dynamically separates out what it deems to be problematic ad

6      serves but pays for the others, TAC, ¶¶ 3, 32, 44, and that divisibility is contemplated by the contract

7      itself, TAC Exs. A and C, ¶ 5, Google cannot avoid paying net earnings at termination.[28]

8      **B.     Plaintiffs have pled adequately their claims of unconscionability.**

9              California law utilizes a "sliding scale" approach to analyzing claims of unconscionability,

10     where the more substantively oppressive the contract term, the less evidence of procedural

11     unconscionability is required, and vice versa.  *See Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d

12     712, 722 (N.D. Cal. 2012).  Further, it is not appropriate to dismiss these sorts of claims on a motion

13     to dismiss.[29]

14

15     _____

       thing according to Google, TAC, ¶ 58, and Google has never told FRC and Mr. Simpson what it
16     meant by referring to "invalid activity" in their termination notices.

17          [28] *See, e.g.*, *Filet Menu*, 79 Cal. App. 4th 852, 860 (2000), *as modified* Apr. 6, 2000 ("Thus, if a
       party has breached one part of a divisible contract, he or she is not precluded from obtaining the
18     consideration that was allocated to that portion of the contract that he or she performed.") (citation
       omitted); Restatement (Second) Contracts § 240 ("If the performances to be exchanged under an
19     exchange of promises can be apportioned into corresponding pairs of part performances so that the
       parts of each pair are properly regarded as agreed equivalents, a party's performance of his part of
20     such a pair has the same effect on the other's duties to render performance of the agreed equivalent as
       it would have if only that pair of performances had been promised."); 15 Williston on Contracts §
21     45:18 (4th ed.) ("Where there has been a breach of a divisible portion of a divisible contract, the
       injured or nonbreaching party can recover damages for that portion of the contract, but its remaining
22     contractual duties are not necessarily discharged.  In other words, a breach by one party of its part of
       one or more pairs of corresponding part performances, which may be deemed agreed equivalents, will
23     not, by itself, excuse performance of the injured party's duties with regard to other such pairs although
       it may give rise to a cause of action for damages.").

24          [29] *See, e.g.*, *Ramos v. Citimortgage, Inc.*, 2009 WL 86744, at *7 (E.D. Cal. Jan. 8, 2009)
       (inappropriate to dismiss claim of unconscionability on motion to dismiss) (citing, *inter alia*, Cal. Civ.
25     Code § 1670.5 (where a contract is alleged to be unconscionable, "the parties shall be afforded a
       reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the
       court in making the determination.")).

26          Google states that it is "routine" to decide unconscionability on the pleadings.  But the cases it
27     cites, including two involving "various of Google's terms," MTD at 11, do not resemble the
       allegations or circumstances here.  *See TradeComet.com, LLC v. Google, Inc.*, 693 F. Supp. 2d 370,
28     380 (S.D.N.Y. 2010) (run-of-the-mill forum selection clause, with nothing offered to support claim of
       unconscionability—and not decided under California law regarding unconscionability); *Novak v.*

       PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOOGLE INC.'S MOTION
       TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT - 9
       Case No. 5:14-cv-02329-BLF
       010450-11 828263 V1

1    *First*, plaintiffs allege procedural unconscionability sufficiently.  Analysis of procedural

2    unconscionability begins with an inquiry into whether the contract is one of adhesion.[30]  Here, the

3    agreement is a form contract of adhesion, offered on a take-it-or-leave it basis.  (TAC, ¶¶ 62, 65, 75,

4    87, 140.)  It is oppressive in light of the manifest inequality of bargaining power between Google on

5    the one hand, and each of these plaintiffs on the other, which resulted in a complete inability of these

6    former publishers to negotiate any of their terms.  Thus, the adhesive nature of Google's contracts

7    fulfills the requirement of procedural unconscionability.[31]  *Newton*, 854 F. Supp. 2d at 723.

8    *Second*, plaintiffs also allege sufficiently that the contract terms at issue are substantively

9    unconscionable.  Substantive unconscionability focuses on "the effects of the contractual terms and

10   whether they are overly harsh or one-sided."  *Flores*, 93 Cal. App. 4th at 853.

11   The AdSense contract purports to give Google the right to withhold *all* earned but unpaid

12   funds owed to publishers at termination.  But AdWords advertisers at most may seek credits for ads

13   associated with invalid clicks or other activities—not for ads run on non-problematic pages.[32]

14   Nonetheless, Google behaves as though advertisers were entitled to *refunds*, without even asking, and

15   even with respect to ads run on perfectly conforming properties—and it takes *publishers' earned*

16   *funds* in the process.

17   In fact, Google admits by necessary inference (to which plaintiffs are entitled here) that if one

18   page out of 1,000 on a terminated publisher's website is, in its view, problematic, its contract

19   nevertheless entitles it to withhold payment associated not only with the ads served on that one page,

---

*Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (same, and not decided under California law).

[30] *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001).  "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree."  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)); *Newton*, 854 F. Supp. 2d at 723.

[31] Further, plaintiffs need not plead that there were no alternatives to AdSense, given Google's power relative to plaintiffs and its presentation of a take-it-or-leave-it contract to them.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 985 (9th Cir. 2007), *abrogated on other grounds*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  But plaintiffs have pled that Google itself deems AdSense *sui generis*, such that there is no genuine alternative.  (TAC, ¶ 20.)

[32] *See Woods v. Google Inc.*, 889 F. Supp. 2d 1182, 1188 (N.D. Cal. 2012) ("The '[c]ustomer's exclusive remedy, and Google's exclusive liability, for suspected invalid impressions or clicks is for [c]ustomer to make a claim for a refund in the form of advertising credits.'"); TAC, ¶ 25.

1    but also the earnings associated with the ads served on *the other 999* pages.  (TAC, ¶¶ 25, 41, 134

2    (alleging by way of Google's statements that its policy is to withhold all unpaid earnings whenever a

3    publisher is terminated).)  Furthermore, contrary to what Google said in Court, it regularly withholds

4    for periods closer to two months rather than one, TAC, ¶ 6, and its draconian refusals to pay result in

5    publishers losing *all* the money they earned by serving ads, from hundreds, to hundreds of thousands,

6    of dollars and more, TAC, ¶ 7, all with little if any meaningful explanation as to why.  (TAC, ¶¶ 7,

7    58.)

8          These terms are the definition of harsh and one-sided, especially when Google can segregate

9    the supposedly tainted from the untainted (TAC, ¶ 32).[33]

10          In sum, because the terms at issue are both procedurally and substantively unconscionable,

11    they cannot be enforced.[34]  Instead, they drop out of the AdSense contracts.  Cal. Civ. Code

12    § 1670.5(a).

13    **C.     Plaintiffs have alleged adequately a liquidated damages provision that is invalid and unenforceable.**

14

15          Like Google, plaintiffs focus on Paragraph 10 of the AdSense contract.  But as plaintiffs have

16    pled, TAC, ¶ 36, to the extent Google relies upon Paragraph 5 of the contract to withhold publishers'

17    reported net earnings upon termination for supposed breach, then the language it cites there, too, is

18

---

19    [33] *See Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768 (1989)
20    ("'Substantive' unconscionability consists of an allocation of risks or costs which is overly harsh or
      one-sided and is not justified by the circumstances in which the contract was made.") (citation
      omitted); *see also Hahn v. Massage Envy Franchising, LLC*, 2014 WL 5100220, at *9-11 (S.D. Cal.
21    Sept. 25, 2014) (under California law, substantive unconscionability does not require "the degree of
      one-sidedness that shocks the conscience"; it is concerned "with terms that are unreasonably favorable
22    to the more powerful party"—and finding contract that contained penalizing liquidated damages
      provision substantively unconscionable).  As in *Hahn*, the liquidated damages term here at issue
23    "negates the reasonable expectation" that a party will be paid for valuable services rendered.  *See
      Hahn*, 2014 WL 5100220, at *9.

24    [34] Google's terms are *not* similar to "terms courts have upheld."  (MTD at 13.)  *See Am. Software,
      Inc. v. Ali*, 46 Cal. App. 4th 1386, 1388-93 (1996) (unlike here, plaintiff was paid base salary for her
25    performance in any event; plus, commissions were withheld where next salesperson would have to
      provide service for the customer; also, the risk of overpayment or underpayment was shared);
26    *Schuman v. Ikon Office Solutions, Inc.*, 232 Fed. Appx. 659, 661-63 (9th Cir. 1997) (salesperson paid
      for six months at 30% of commission rate even after being removed from account; also, court
27    determined that the contract did not generate revenue; that the salesperson was not replaced arbitrarily;
      and that the commissions did not revert to the employer but were paid to the salesperson's successor,
28    who would have serviced the account).

1    operating as a liquidated damages provision, and the same analysis applies.[35]

2        **1.    Plaintiffs have pled adequately a liquidated damages provision.**

3        Recall what Google always has claimed: that in withholding plaintiffs' earned but unpaid

4    funds at termination, it did exactly what the contract said it could do.  (*E.g.*, TAC, ¶ 41.)  In other

5    words, Google exercised its liquidated damages provision.  Plaintiffs have pled this term adequately.

6    (TAC, ¶ 126.)

7        As this Court has written, "California courts have defined liquidated damages as 'an amount

8    of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain

9    . . . .'"  *Free Range Content, Inc. v. Google Inc.*, 2015 WL 5029480, at *3 (N.D. Cal. Aug. 25, 2015)

10   (citations omitted).  "Thus, to allege that Google's withholding of 'unpaid amounts' at termination

11   constitutes liquidated damages, Plaintiffs must allege that the contractual provision authorizing

12   withholding (1) arises from a breach; and (2) provides a fixed a certain sum."  *Id.* (citing, *inter alia*,

13   *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1196 (N.D. Cal. 2009)).  Plaintiffs have alleged both of

14   these elements, including specifically that the withholdings resulted from purported contractual

15   breaches by *all four* plaintiffs, per Google itself.[36]  (TAC, ¶¶ 38-41.)

16       As for the second element, "'[t]o be sufficiently fixed and certain to qualify as "liquidated

17   damages," a provision must either set the exact amount (*i.e.*, a single number), or provide some

18   formula by which the amount is "certain or readily ascertainable."'"  *Id.* at *4 (citing, *inter alia*,

---

19   [35] *See*, *e.g.*, *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 979 (1998) ("We have
20   consistently ignored form and sought out the substance of arrangements which purport to legitimate
     penalties and forfeitures."); *see also* Gray Decl., ¶ 3.

21   [36] In its order on plaintiffs' motion for reconsideration regarding liquidated damages, the Court
     noted that in its view, plaintiffs FRC and Simpson, whose accounts Google terminated for
22   (unspecified) "invalid activity," could not meet the first element because they were not terminated for
     breach of contract.  *Id.*  But as plaintiffs have alleged, Google has repeatedly represented, and
23   therefore admitted, that in fact it purports to have terminated all plaintiffs, including specifically FRC
     and Simpson, for breach of contract.  (TAC, ¶¶ 38-41.)  Also, plaintiffs have provided references to
24   Google documents illustrating that in its view, "invalid activity" constitutes breach of contract.  (*Id.*)
     Furthermore, Google has never, and does not now in its instant motion, challenge FRC and Mr.
25   Simpson's liquidated damages-based claims on the theory that they were terminated on a basis not
     constituting breach of contract.  Accordingly, as with plaintiffs CIS and Chose, where the Court
26   "infers that the withholding from [those two plaintiffs] was done on account of breach of contract"—
     and again, where Google has represented and admitted the same, *id.* —Google terminated plaintiffs
27   FRC and Mr. Simpson for breach of contract.  FRC and Mr. Simpson, therefore, like plaintiffs CIS
     and Chose, have "surpassed the first hurdle," *i.e.*, have met the first element, in pleading successfully a
28   liquidated damages provision.  *Free Range Content*, 2015 WL 5029480, at *4.

1    *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1256 (N.D. Cal. 2015)).  Here, plaintiffs have pled that

2    the AdSense contract so provides: it purports to give Google the right to withhold 100% of a

3    terminated publisher's earned but unpaid funds, which Google holds for publishers pending regular,

4    periodic payments to them.  (TAC, ¶¶ 6, 38-41, 52.)

5         It is difficult to conceive of language designating a more fixed and certain sum than this: "If

6    we terminate the Agreement due to your breach . . . we may [meaning, we have the right to] withhold

7    unpaid amounts . . . ." (TAC, ¶ 35.)  *And Google itself agrees with this reading of the contract.*  In its

8    motion to dismiss plaintiffs' first amended complaint, it admitted: "Here, the amount of 'damages'

9    was limited and capped, *and the Terms expressly provide the amount Google may withhold.*"

10   (MTD/FAC at 12 (emphasis added).)  Moreover, whether Google has the discretion[37] to withhold

11   less from a given publisher (which it never does) is irrelevant to the analysis[38]—a non-breaching

12   party may always opt to take less than the maximum sum permitted[39]; the question is whether the

13   clause puts publishers on notice that Google *has the (purported) right to withhold all unpaid earnings*

14   *at termination for breach.*[40]  That it does.

15        Google itself repeatedly, and exclusively, refers to these monies as *the publisher's*

16   "*earnings,*" including in its termination notices to plaintiffs.  (TAC, ¶¶ 25, 44, 83, 96.)  And this

17   terminology is functional: plaintiffs have served ads, and Google itself has strongly emphasized to

18

19

---

20   [37] Google argues that plaintiffs "effectively concede" that there is no "automatic holdback" called
     for by the contract.  (MTD at 15.)  Plaintiffs *do not*, as Google states, allege a "liquidated damages

21   provision 'as a matter of extra-contractual policy.'"  (*Id.*)  To the contrary, plaintiffs allege that the
     *contract* purports to give Google the right to withhold all earned, unpaid funds at termination for

22   breach.  (*E.g.*, TAC, ¶ 35.)  They also allege that, as a matter of policy, Google shows no mercy in
     application of this purported contractual right; it always withholds 100% of these funds.  (TAC, ¶ 25.)

23   [38] So is whether Google permitted appeals, though as discussed below, the contract does not
     provide for appeals from Google's withholding decisions.

24   [39] *See Ruwe*, 613 F. Supp. 2d at 1198 ("Verizon Wireless argues the manner in which the

25   reconnect fee is applied is neither fixed nor certain . . . .  The Court finds that the fixed and certain
     requirement, as articulated by California case law, concerns the sum, and not the application, of

26   liquidated damages.") (citation omitted).

     [40] *See Press Rentals, Inc. v. Genesis Fluid Solutions, Ltd.*, 2014 WL 31251, at *9 (N.D. Cal. Jan.

27   3, 2014) ("The requirement that liquidated damages be fixed and certain arises out of the concern that
     parties possess some degree of certainty regarding their liability in the event of a breach.") (citing

28   *Ruwe*, 613 F. Supp. 2d at 1198).

1    advertisers and the world, including in court, the value of displayed ads,[41] even where the ads have

2    been presented on error pages or webpages with no content at all.  (TAC, ¶ 48.)  Thus, by serving

3    ads, publishers earn funds that Google holds for regular, periodic payment.[42]

4         So, as a matter of course, Google tallies and dynamically reports a publisher's (1) gross

5    earnings; and (2) net, adjusted "*earnings*" for serving ads in the *publisher's account*.  (TAC, ¶¶ 32,

6    53-54, 57.)  But at the moment of termination, whatever dollar figure appears as net earnings Google

7    sweeps away completely, 100% of it, without any sort of further adjustment, as a penalty for the

8    publisher's purported breach of contract.  (TAC, ¶ 44.)  Again, Google itself states that it always

9    withholds these "earnings" from terminated publishers, as the contract permits it to do.  (*E.g.*, TAC,

10   ¶ 25.)  This course of dealing, or course of performance, which the Court may look to here,[43]

11   comports precisely with plaintiffs' allegations that Google is exercising its purported rights under a

12   liquidated damages provision providing for withholding of a fixed and certain sum, or pursuant to a

13   formula specified by the contract.[44]

14        Finally, citing to *Bayol*, Google argues that because the amount of unpaid earnings at

15   termination may be large or small, covering a short or long period of ad serves, or a large part of what

16   the publisher has previously earned, then there is no formula in the contract.  (MTD at 15.)  But to

17   ───────────────

     [41] Google's house-painting analogy, MTD at 14, fails because it does not comport with plaintiffs'
18   allegations.  In Google's hypothetical, it discovered belatedly that the painter had used the purportedly
     wrong paint over the whole exterior structure.  On this motion to dismiss, the analogy is missing the
19   detail that the painter denies having used the wrong paint anywhere.  And critically, to square with
     plaintiffs' allegations, the analogy would have to include the proviso that the painter used the right
20   paint for at least some of the discrete exterior walls, yet Google refused to pay for that perfectly good
     work.

21   [42] The Court itself has observed that the term "unpaid amounts" in Paragraph 10, containing what
     plaintiffs allege to be a liquidated damages provision, "could mean an 'earned balance' that is unpaid,
22   as the same provision also states that '[a]ny earned balance below the applicable threshold will remain
     *unpaid.*'"  *Free Range Content*, 2015 WL 5029480, at *4 (emphasis in original) (citation omitted); *see
23   also* Google's Motion to Dismiss in *Super Cray Inc. v. Google Inc.*, 2015 WL 3604019, at p. 5 (N.D.
     Cal. Apr. 16, 2015) (referring to Paragraph 10, Google wrote: "It also explicitly authorizes Google to
24   withhold final payments to publishers if Google detects invalid activity or a policy violation . . . .").  If
     there were no earnings in the account, there could be no "final payments" to withhold.

25   [43] *See* Cal. Civ. Proc. Code § 1856(c) ("The terms set forth in a writing described in subsection (a)
     [a "writing intended by the parties as a final expression of their agreement"] may be explained or
26   supplemented by course of dealing or usage of trade or by course of performance.").  The contract
     here purports to be such a writing.  (TAC Exs. A and C, ¶ 14.)

27   [44] It supports plaintiffs' reading of the contract that "[Google] may withhold 'unpaid amounts' at
     its election, [and] the 'unpaid amounts' refers to the entirety of a terminated publisher's last month of
28   unpaid earned balance."  *Free Range Content*, 2015 WL 5029480, at *4.

reiterate: as *Bayol* and the other cases make plain,[45] there can be either an "exact amount" *or* a "formula" in a liquidated damages provision.  While the AdSense contract does not specify a $500 withholding for everyone, it most certainly specifies a *formula*: 1.00 x earnings at termination.  The authorities, including *Bayol*, do not support Google's argument.[46]

### 2.  Plaintiffs have pled unreasonableness adequately.

As with the existence of the liquidated damages provisions, plaintiffs also have pled adequately that the term is unreasonable.  No matter the magnitude of the breach, whether Google claims that one ad was served in violation of its contract, or 1,000 ads, the contract purports to give Google the right to withhold *all* earned but unpaid program funds[47]—no matter how many ads were served without issue, for periods approaching two months.  (TAC, ¶¶ 6, 134.)  And Google admits it acts accordingly, in all instances.  (TAC, ¶¶ 25, 32, 40, 83.)

Google's term purports to allow it to withhold all funds at termination for purported breach despite its proclamations that it can separate good ad serves from problematic ones.  (TAC, ¶ 32.)  It purports to allow Google to act in this manner despite Google's insistence to advertisers that all ads served have value, TAC, ¶ 48, and in spite of its lack of liability to advertisers, with whom its

---

[45] *E.g.*, *Hahn*, 2014 WL 5100220, at *12 ("When a contract provides a formula to calculate liquidated damages based on profits, and damages can be calculated after breach when the profits had been earned, the provision is for liquidated damages, even if the actual amount cannot be calculated at the time of contract formation.") (citing *Higgins v. Desert Breamar, Inc.*, 219 Cal. App. 2d 744, 752 (1963)).

[46] *See, e.g.*, *Bondanza v. Peninsula Hosp. & Med. Ctr.*, 23 Cal. 3d 260, 263, 266-67 (1979) (finding a liquidated damages provision (albeit an unenforceable one) where a patient entered into an "admission agreement" with a hospital that called for her to pay "'reasonable attorney's fees and collection expense'" if her account were referred to a collection agency or attorney; where the sum upon which the liquidated damages were to be calculated was the "amount due at the time of assignment"; and where the sum due as liquidated damages was to be based on an undisclosed contract with a collection agency that called for payment of "one-third of the amount owed at the time of the assignment, plus any accrued interest thereafter collected"); *Free Range Content*, 2015 WL 5029480, at *4 (if plaintiffs' reading is correct—which they respectfully assert to be the case—"then a breaching publisher's liability could be reasonably certain at the outset: in the event of a termination, Google may elect to withhold the entire unpaid balance owed to the publisher, whether it be $0 or $1,000."). In fact, that Google's liquidated damages provision can, as written, result in enormous or small withholdings, whatever the magnitude of the alleged breach, is actually an argument for why the liquidated damages provision is unreasonable and unenforceable.

[47] California law provides, however, that "[w]here a fixed sum is agreed upon as liquidated damages for one of several breaches of varying degree, *it is to be inferred that a penalty was intended*."  *See, e.g.*, *Dollar Tree Stores, Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1072 (N.D. Cal. 2012) (emphasis added) (citing *Smith v. Royal Mfg. Co.*, 185 Cal. App. 2d 315, 324 (1960)).

1    contracts provide that at most, an advertiser may "request" *credits*, that may or may not be given to

2    them.  (*Id.*)  Furthermore, Google's takings occur in an atmosphere where advertisers are not

3    claiming issues with ad serves in the first place.

4            "[T]he validity of a liquidated damages provision is a fact-based inquiry not appropriately

5    determined on a motion to dismiss . . . ."  *Bayol*, 78 F. Supp. 3d at 1255 (citations omitted).  Google's

6    defenses patently are factual in nature.  (*See* MTD at 16.[48])  Also, as the Law Revision Commission

7    Comments to Cal. Civ. Code § 1671 make plain, the liquidated damages called for here—100% of all

8    earned but unpaid funds—must be assessed in terms of several fact-based considerations, all of

9    which favor the plaintiffs.[49]

10           In sum, plaintiffs have pled adequately that Google has withheld their funds pursuant to a

11   liquidated damages provision that is unreasonable under the circumstances existing at the time the

12   contract was made; this provision is a punitive term that is invalid and unenforceable under

13   California law.[50]

14   **D.    Plaintiffs Chose and Simpson have not waived their rights to bring this case.**

15           **1.    Plaintiffs Chose and Simpson were not required to "appeal."**

16           Relying on Paragraph 5 of its contract, Google again contends that plaintiffs Chose and

17   Simpson waived their rights to proceed with this action because they failed to "appeal" their

18   _____

19   [48] *See id.* (whether "a publisher whose policy-violating site receives heavy traffic, on average, does
     more damages to advertisers"—if any; and whether "on average, high levels of invalid activity
20   detected on sites do more damages to Google than they do when detected on rarely visited sites"—if
     any; and whether there are "plainly negative [] effects of invalid click activity and publisher policy
21   violations"—whatever the violation might be, and however picayune).

     [49] The Comments provide:
22
         All the circumstances existing at the time of the making of the contract are considered,
23       including the relationship that the damages provided in the contract bear to the range of harm
         that reasonably could be anticipated at the time of the making of the contract.  Other relevant
24       considerations in the determination of whether the amount of liquidated damages is so high or
         so low as to be unreasonable include, but are not limited to, such matters as the relative
25       equality of the bargaining power of the parties, whether the parties were represented by
         lawyers at the time the contract was made, the anticipation of the parties that proof of actual
26       damages would be costly or inconvenient, the difficulty of proving causation and
         foreseeability, and whether the liquidated damages provision is included in a form contract.

27   [50] *See* Cal. Civ. Code § 1671(b); *Union Bond & Trust Co. v. Blue Creek Redwood Co.*, 128 F.
     Supp. 709, 712 (N.D. Cal. 1955) (citing Cal. Civ. Code § 3294(a), and stating: "Section 3294
28   expresses the policy of the law against the allowance of exemplary damages for breach of contract
     regardless of the nature of the breach.").

withholdings.[51]  The provision itself, however, does not provide for an appeal of a *withholding decision*.[52]  (TAC Exs. A and C, ¶ 5.)  In fact, Google has stated explicitly that withholdings of earnings, which supposedly are returned to advertisers, *cannot* be appealed.[53]  (TAC, ¶¶ 83, 96.)

Also, as Ms. Chose and Mr. Simpson allege in the TAC, neither the AdSense contract nor their termination notices told them that an "appeal" of funds withheld was possible.  (TAC, ¶¶ 82-83, 95-96.)  And nowhere in the AdSense contract or in their termination notices did Google provide an address to "dispute any payment made or withheld relating to the Services," nor did it do so in their termination notices.[54]  (TAC, ¶¶ 82, 95.)  In fact, Ms. Chose's notice told her that no action was required.  (TAC, ¶ 82.)  Also, neither Ms. Chose nor Mr. Simpson had access to their publisher numbers upon termination and lock-out from their accounts, and it was their understanding that a publisher needs that number to communicate with Google about his or her account.  (TAC, ¶¶ 82, 95.)  Additionally, the termination notices to Ms. Chose and Mr. Simpson were so opaque as to give them no meaningful information on which to base an appeal regarding the withholding of their funds.  (*Id*.)

Google's reading of the contract would work a forfeiture of Ms. Chose and Ms. Simpson's

---

[51] Plaintiffs respectfully re-assert that this provision relates to *active* publishers, and not to Ms. Chose or Mr. Simpson, given that it appears in the "Payments" section of the contract, and given Google's dynamic adjustments to earnings for active publishers.  (TAC Exs. A and C, ¶ 5 and ¶¶ 32, 44.)  The Court can, of course, modify its non-final prior ruling on this subject pursuant to Fed. R. Civ. P. 54(b), and plaintiffs respectfully urge it to do so.

[52] Google cites to Mr. Simpson's termination notice as advising that he could appeal—but note the language and context: it is referring to *an appeal of the decision to terminate the account*, *not* an appeal of Google's withholding of earnings (which Google at first said it credited to advertisers, and now says it merely "endeavors" so to do).  (Gray Decl. Ex. 12 ("In some cases, publishers can make significant changes to correct the violation and are willing to comply with the AdSense program policies . . . .  For this reason, we offer an appeals process . . . .").)

[53] In a help article entitled "Deductions from earnings FAQs," Google states that when it makes deductions from earnings "for invalid click activity or for activity that was not in compliance with Google policy," it "adjust[s] [the publisher's] earnings and reimburse[s] the advertisers who paid for these clicks." (https://support.google.com/adsense/answer/2808531?hl=en (last accessed February 17, 2015).)  This is what Google told Ms. Chose and Mr. Simpson it was doing upon termination of their accounts.  (TAC, ¶¶ 83, 96 ("As your account has been permanently disabled, we will withhold payment of your account balance . . . .  The earnings on your account will be returned to the affected advertisers.").)  And in the "Deductions from earnings FAQs," Google explicitly states in answer to the question, "I'd like to appeal the deduction.  Can I do so?" as "*Unfortunately you can't appeal the deduction.*" (https://support.google.com/adsense/answer/2808531?hl=en (emphasis added).)  (TAC, ¶¶ 83, 96.)

[54] Mr. Simpson's termination notice provides a web address for an appeal *of termination*, Gray Decl., Ex. 12, but not of any funds or payments withheld.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOOGLE INC.'S MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT - 17
Case No. 5:14-cv-02329-BLF
010450.11 828263 V1

1   earned but unpaid funds though they did not mean to waive or forfeit their rights to maintain this

2   action in court.  (TAC, ¶¶ 82, 95.)  Here, where plaintiffs have raised serious questions as to whether

3   Ms. Chose and Mr. Simpson were required to, or even could, "appeal" from funds withheld at

4   termination, there should be no forfeiture of these plaintiffs' right to maintain this suit.[55]  Certainly

5   the Court should not dismiss their claims on this basis at the pleadings stage.

           ## 2.   Google cannot enforce its contractual limitations period here.

7         Furthermore, the language at issue is really a private, or contractual, statute of limitations.

8   Defenses based on statutes of limitations, including contractual or private statutes of limitations, are

9   affirmative defenses.[56]  And, it is the defendant that "bear[s] the burden of establishing" that

10  affirmative defense.  *Schoettler*, 2008 WL 5101367, at *7 (citations omitted).  But here, Google has

11  never identified the term at issue as a contractual statute of limitations or argued it as such, nor has it

12  now offered, nor did it with its previous motion to dismiss offer, any authorities in aid of analyzing

13  whether it, as a contractual statute of limitations, is reasonable and enforceable.[57]  Accordingly,

14  Google has never met its burden in establishing it as a valid limitation on Ms. Chose and Mr.

15  Simpson's right to maintain this suit.  Respectfully, the Court should consider the clause's

16  enforceability on that basis now, especially where enforcing the provision as Google requests would

17  result in dismissal of these two plaintiffs' claims, while on the other hand, undertaking this analysis

18  will not prejudice Google, given that the parties are at the inception of the case.

19        Whereas the law provides for four-year statutes of limitations for plaintiffs' breach-of-

20  contract and UCL claims, for example, the language at issue purports to limit the publisher to 30 days

21  to notify Google of the referenced disputes under penalty of waiving its claims.  *See Feldman v.*

22  *Google, Inc.*, 513 F. Supp. 2d 229, 243 (E.D. Pa. 2007) (considering provision in AdWords contract

---

[55] *See* Cal. Civ. Code § 1442 ("CONDITIONS INVOLVING FORFEITURE, HOW CONSTRUED.  A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.").

[56] *E.g.*, *Edwards v. Princess Cruise Lines, Ltd.*, 371 Fed. Appx. 768, 769 (9th Cir. 2010) ("Invocation of a contractual limitations period to bar a claim is an affirmative defense.") (citation omitted); *Schoettler v. Wachovia Corp.*, 2008 WL 5101367, at *7 (E.D. Cal. Dec. 3, 2008) (citations omitted).

[57] *Cf.* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party *must affirmatively state* any avoidance *or affirmative defense*, including: . . . *statute of limitations* . . . .") (emphasis added).

1  stating: "You waive all claims relating to charges unless claimed within 60 days after the charge . . .

2  ."). This provision, however, is unconscionable, and it cannot be enforced here.

3  While such contractual limitations periods—at least as to non-statutory claims[58]—can be

4  enforceable under California law *if reasonable*, *e.g.*, *id.* (citations omitted), here, the 30-day limit set

5  forth in Paragraph 5 is unreasonable.[59] The AdSense contract purports to give Google the right to

6  withhold a publisher's earnings upon termination. A publisher will not have the innate understanding

7  that perhaps he or she can challenge this withholding as done pursuant to an invalid liquidated

8  damages provision, and in violation of Cal. Civ. Code § 1671(b) or other statutes such as the UCL.

9  30 days is not a reasonable time period for a terminated publisher to consult with legal counsel and to

10  determine if he or she might have claims, under penalty of waiving them, especially in light of the

11  legislature's grant of four-year statutes of limitation. Additionally, 30 days is not sufficient when, as

12  alleged, the termination notices were so non-specific as to what exactly led to plaintiffs' account

13  closures, and where the notices indicated that Ms. Chose and Mr. Simpson's earnings already had

14  been returned to advertisers.[60]

15  Furthermore, the provision here is unilateral. Only publishers are purportedly subject to

16  waiving claims if they do not notify Google of disputes within 30 days, not Google vis-à-vis

17  publishers. This demonstrates substantive unconscionability.[61]

18  _____

19  [58] *See Jackson v. S.A.W. Entm't, Ltd.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009), *abrogation on*

20  *other bases recognized by Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014)
     ("Contractual agreements to shorten the statute of limitations period are generally disfavored because
     they 'derogate' statutory intent."). In *Jackson*, the court held substantively unconscionable (and

21  procedurally as well) a "6 month" limitation, where statutes whose violation the plaintiff claimed
     afforded three- and four-year statutes of limitation. *Id.* at 1028-29.

22  [59] *Assaad v. Am. Nat. Ins. Co.*, 2010 WL 541841, at *7 (N.D. Cal. Dec. 23, 2010) (30-day
     contractual limitations period substantively unconscionable as "'trap for the unwary'" that limits

23  "'ability to consult counsel'") (citation omitted); *Ellis v. U.S. Security Associates*, 224 Cal. App. 4th
     1213, 1222-1226 (2010) (six-month period unreasonable; it "d[id] not provide 'sufficient time for the

24  effective pursuit of the judicial remedy.'") (citation omitted); *Moreno v. Sanchez*, 106 Cal. App. 4th
     1415, 1430-32 (2003) (one-year contractual statute of limitations unreasonably short; shortened period

25  may not be "'so unreasonable as to show imposition or undue advantage in some way.'") (citation
     omitted).

26  [60] And again, as alleged in the TAC, Ms. Chose's notice told her that no "[a]ction [was] required,"
     TAC, ¶ 82, while Mr. Simpson's notice only referred to "invalid activity," without indicating what

27  that meant and where it might have occurred, TAC, ¶ 91.

28  [61] In *Martinez v. Extra Space Storage, Inc.*, 2013 WL 3889221, at *3-4 (N.D. Cal. July 26, 2013),
     the court considered a challenge to a one-year private statute of limitations on an unconscionability

1   Whether analyzed on the basis of unconscionability, or solely on the basis of its

2   unreasonableness,[62] the 30-day private/contractual statute-of-limitations period in the contract should

3   not work a waiver or dismissal of plaintiffs Chose and Simpson's claims.  Other than Google's

4   conclusory and improper factual assertion that large service providers "rely upon prompt appeals to

5   ensure that claims from closed accounts do not remain a potential liability *for years*" (which begs the

6   question why Google needs a *30-day* period, including in light of the 60-day term in its contract with

7   advertisers), MTD at 18 (emphasis added), Google offers no rationale for why it ought to be able to

8   extinguish an unwary publisher's claims in one month's time.  While the Court can find here as a

9   matter of law that the provision is unreasonable and unenforceable as a matter of law, the Court

10   should not find the provision conscionable and enforceable as a matter of law.[63]

**E.   Plaintiffs have pled adequately a claim in the alternative for breach of the implied covenant of good faith and fair dealing.**

12   Plaintiffs also state a claim for breach of the implied covenant of good faith and fair dealing.[64]

13   Google argues that plaintiffs "have no factual basis to claim that Google exercised its

14   termination and withholding rights in bad faith (for example, because of a personal feud . . . .)."  But

15   plaintiffs have alleged that Google terminated publishers, including CIS and Ms. Chose, for supposed

16   policy violations, while leaving publishers with the same types of displays active.  (TAC, ¶¶ 70, 79

---

19   theory.  *Id.* at 3.  After determining that the plaintiff had shown procedural unconscionability because the contract was one of adhesion, as here, the court turned to substantive unconscionability and noted that a "'paramount consideration' is mutuality."  *Id.* (citation omitted).  Because the clause there was unilateral, as here, the court found "that plaintiff has therefore demonstrated important elements of both procedural and substantive unconscionability."  *Id.*  And where, as in this case, "[t]he facts that must be shown to establish whether plaintiffs [*sic*] could have reasonably discerned and brought her claims within one year . . . present disputed factual issues," the court held it to be "inappropriate to decide on a motion for judgment on the pleadings."  *Id.* at *4.

[62] *See Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) (discussing as reasonable a *12-month* contractual limitation under the circumstances there, but noting that the plaintiff "d[id] not dispute the reasonableness of the provision.").

[63] *Martinez*, 2013 WL 3889221, at *4; *see also Ramos*, 2009 WL 86744, at *7 (inappropriate to dismiss claim of unconscionability on motion to dismiss) (citations omitted).

[64] "To establish this claim, a plaintiff must establish the existence of a contractual obligation, the identities of the parties involved, and conduct that impedes the other party's rights to benefit from the contract."  *Harvey G. Ottovich Revocable Living Trust v. Washington Mut., Inc.*, 2010 WL 3769459, at *3 (N.D. Cal. Sept. 22, 2010); *accord, Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746, at *3 (N.D. Cal. Sept. 10, 2007) (citation omitted).

1   and Ex. D.)  This displays bad faith on Google's part, in violation of the implied covenant.[65]

2          As for the use of the phrase "may withhold unpaid amounts" in the contract, Google agrees

3   that this language gave it absolute discretion to withhold all unearned payments from terminated

4   publishers.  But the only consideration it offered or gave to plaintiffs at any time was payment for ads

5   served.  Given these circumstances, under pain of rendering the contract "'an unenforceable, illusory

6   agreement,'" Google had an obligation to act in good faith in exercising that discretion.[66]  Here,

7   plaintiffs have alleged that it did not.  (TAC, ¶¶ 29, 137.)

8          Finally, Google contends that plaintiffs "are only entitled to be paid if they comply with

9   Google's Terms."  (MTD at 14.)  This is the language of a condition precedent.  Under this

10  alternative framework, Google, in terms of its contractual statement that it "may withhold unpaid

11  amounts" from terminated publishers, had the obligation to determine if the conditions for payment at

12  termination were met "in accordance with an objective standard of reasonableness" or, alternatively,

13  it might have been able to exercise its discretion subjectively, but only if it did so in good faith.

14  *Storek & Storek*, 100 Cal. App. 4th at 58-63 (citations omitted).  But plaintiffs allege that Google did

15  neither.  (TAC, ¶¶ 29, 137.)  For this reason, too, plaintiffs' claim survives.

16  **F.      Plaintiffs adequately allege their unjust enrichment claim.**

17         Under California law, unjust enrichment is a distinct cause of action; also, plaintiffs are

18  allowed to plead inconsistent theories for relief (*i.e.*, entitlement to damages under a contract or a

19  remedy for unjust enrichment).[67]  In its ruling on Google's last motion to dismiss, the Court gave

20  plaintiffs leave to amend with respect to this claim, in order to comply with the rule of *Klein v.*

21  *Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (2012).

22         [65] Google also attempts to overcome plaintiffs' allegation of fact that Google, as a matter of
23  course, and based on its own statements, always withholds 100% of unpaid earnings from publishers
    upon termination for breach.  (MTD at 21 and n.22; TAC, ¶ 25.)  The Court cannot resolve any such
24  dispute on a motion to dismiss.  But in any event, Google's posited reading of one of its statements is
    completely untenable.  When it tells publishers that "[t]he earnings on your account will be properly
25  returned to the affected advertisers," it means exactly that, as plaintiffs have alleged; and the phrase
    "may not" in the preceding sentence plainly means in that context "you are not authorized to."  (MTD
26  at n.22.)

        [66] *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55-58 (2002) (citations
27  omitted).

        [67] *Hawthorne v. Umpqua Bank*, 2012 WL 1458194, at *2-3 (N.D. Cal. Apr. 26, 2012) (tentative
28  ruling); *Hernandez v. Path, Inc.*, 2012 WL 5194120, at *8 (N.D. Cal. Oct. 19, 2012).

1     Plaintiffs have amended to strengthen their liquidated damages-based claims and claims

2  alleging unconscionability.  (TAC, ¶¶ 45-47, 127, 139-41.)  Because the former claim alleges that the

3  withholding term is an invalid and unenforceable liquidated damages provision, and because the

4  latter claim asks that the provision be stricken as unconscionable pursuant to Cal. Civ. Code §

5  1670.5(a),[68] plaintiffs' unjust enrichment claim comports with *Klein* in the same manner the

6  counterclaim-plaintiff's claim did in the recent case of *Bear, LLC v. Marine Grp. Boat Works, LLC*,

7  2015 WL 4255061, at *5 (S.D. Cal. July 14, 2015) (holding claim sustainable under *Klein* where

8  plaintiff "contest[ed] the validity of at least some of the Contract's terms . . . .").  Also, as in *Bear*,

9  plaintiffs here allege that their opposing party accepted or received the benefit of work and services

10  that they performed.  (TAC, ¶¶ 48-49.)  This entitles them to seek restitution of the same.[69]

11  Plaintiffs' unjust enrichment claim survives.

12  **G.     Plaintiffs allege adequately claims pursuant to the UCL.**

13       **1.       Plaintiffs have standing to sue under the UCL.**

14     Google claims that plaintiffs lack standing to maintain their UCL claims because they

15  purportedly are not consumers; because Google claims that AdSense is a "*business-to-business*

16  program*"; because plaintiffs supposedly are "'corporate'"; and because Google's contract, it asserts,

17  does not "'implicate the public in general or individual consumers.'"[70]  (Google MTD at 22-23.)  But

18  in fact, by Google's own admission, AdSense is a "*service* offered by Google that allows website

19  publishers *of all sizes* to earn money by displaying Google-supplied ads on their sites."  (MTD/FAC

---

[68] Plaintiffs' new allegation, which plaintiffs state *in the alternative*, TAC, ¶ 159, denying the enforceability of the agreement as a whole, ties to their unconscionability claims.  Cal. Civ. Code § 1670.5(a) provides that when there is an unconscionable term in a contract, a court can refuse to enforce the contract either as to that term or as a whole.  Hence, the alternative allegation at TAC, ¶ 159.  *See also Hahn*, 2014 WL 5100220, at *6 (granting summary judgment to plaintiffs where they "claim[ed] the membership agreements [there at issue, which they contended to contain a liquidated damages provision] [we]re unconscionable under Civil Code § 1670.5(a) to the extent they effect[ed] a forfeiture of unused prepaid massage services.").

[69] 2015 WL 4255061, at *5; *see also* Restatement (Third) of Restitution and Unjust Enrichment § 36(1) (2011) ("A performing party whose material breach prevents a recovery on the contract has a claim in restitution against the recipient of performance, as necessary to prevent unjust enrichment."). (Of course, plaintiffs deny material breach.)

[70] The same might be said of the AdWords program, and yet plaintiffs' UCL claims have proceeded through the class certification process.  *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 981-84 (9th Cir. 2015).

at 4 (emphasis added).)  According to Google, "AdSense affords *all types of publishers* (including thousands of small businesses, *individual bloggers*, and other content producers who may lack dedicated advertising sales teams) access to a large pool of advertisers . . . ."  (*Id.* (emphasis added).)  The foregoing descriptions underscore that one aspect of the Google-publisher relationship is of a consumer nature; that AdSense is not merely a "business-to-business" program, but one that is available to individuals including plaintiffs Chose and Simpson, who are decidedly not "corporate"; and that AdSense, given its broad reach and the sheer numbers involved, absolutely "implicates the public in general [and] individual consumers."  (*Cf.* Google MTD at 22.)  Accordingly, each plaintiff has standing to bring a UCL claim on the facts alleged.

    The court in *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *8-9 (N.D. Cal. Oct. 25, 2010), rejected contentions similar to Google's.  There, as here, plaintiffs were both corporations and individuals, and there, plaintiffs were decidedly engaged in business.[71]  Also, this action, too, "deals exclusively with form contracts."  It also "involves individual consumers," *i.e.*, not only the plaintiff and class consumers of Google's AdSense "service," to use Google's own term, MTD/FAC at 4, but also the consumers who click on AdSense ads on the plaintiffs' and class members' web pages. (TAC, ¶¶ 32, 167.)  Under the facts presented here, where the plaintiffs and a significant portion of the class are well likely *not* large, sophisticated corporations, plaintiffs' UCL claims survive.[72]

---

[71] *Id.* at *1-2.  The *eBay* court explained that there is no broad, general proscription on corporations and business entities seeking relief under the UCL.  *Id.* at *8.  It also distinguished Google's authority here, *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007), by nothing that it dealt with "'sophisticated corporate customers who have entered or will enter *their own contracts* with [defendants].'"  2010 WL 4269259, at *8 (citing 152 Cal. App. 4th at 135 (emphasis in original)). It noted that *Linear Tech* relied on *Rosenbluth Int'l v. Superior Court*, 101 Cal. App. 4th 1073, 1078 (2002), but that in *Rosenbluth*, the court was focused on representing victims "who were 'sophisticated corporations, most in the Fortune 1000, each of which *negotiate[d] contracts individually with [the defendant].*'"  2010 WL 4269259, at *8 (emphasis in original).

[72] *Cf. In re Yahoo! Litig.*, 251 F.R.D. 459, 474-75 (C.D. Cal. 2008) (noting that Proposition 64 changed the standing requirement articulated in *Linear Tech.*, and also noting that "[t]he holdings of both *Linear Tech.* and *Rosenbluth* turn less on the fact that the alleged victims in those cases were businesses, and more on the fact that these entities were sophisticated and individually capable of seeking relief for their injuries.").

    Google's reliance on its other cited authorities is also misplaced.  *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010) (relying on *Linear Tech.* and *Rosenbluth*, and granting dismissal of UCL claim with leave to amend to "set out the requisite factual connection to the general public or to individual consumer's interest"); *Dollar Tree*, 875 F. Supp. 2d at 1083 (on motion for summary judgment, court dismissed UCL claim where claim was "based on a breach of a contract

1          **2.      Plaintiffs state a claim under the UCL's fraudulent prong.**

2          Google's AdSense contract tells publishers that it "may withhold unpaid amounts" upon

3   termination for supposed breach.  (TAC Exs. A and C, ¶ 10.)  This advised publishers that Google

4   purportedly had a right to do so on their accounts, but it did *not* tell them that Google would show no

5   mercy and do this in every single instance, as plaintiffs have pled that Google actually does, by its

6   admission.  (TAC, ¶¶ 25, 32, 134, 171.)  This is a material omission, and plaintiffs need show no

7   specific duty to them given that it is a truth omitted from a positive statement.  *See*, *e.g.*, *Doe v.*

8   *Successfulmatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014).  As for reliance, plaintiffs have

9   pled that they reviewed the AdSense contract before signing up and periodically thereafter; that "they

10  would have behaved differently" had the truth been known to them; and that they would not have

11  expended time, energy, and money in their websites serving AdSense program ads if they had known

12  that Google would always withhold 100% of their unpaid program earnings if it terminated their

13  accounts."  (TAC, ¶ 171.)  This is sufficient under California law.[73]

14         However much Google wishes to scoff at the notion that its publishers might actually

15  consider it a strong, behavior-influencing matter of principle that contract language should mean

16  fully what it says, it cannot extinguish plaintiffs' claims by bald assertion and snark.[74]  Each plaintiff

17  cares enough to have shown the courage to file this suit.  Plaintiffs' claim under the fraud prong

18  should survive.

19         **3.      Plaintiffs state a claim under the UCL's unlawful prong.**

20         Plaintiffs' claims under the unlawful prong survive as well.  Plaintiffs have pled

21  unconscionability and violation thereby of Cal. Civ. Code § 1670.5(a), as well as an invalid,

22

23  that does not implicate the public in general or individual consumers") (citing *Linear Tech.*, 152 Cal.
    App. 4th at 135).

24         [73] *Cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("[R]eliance is *proved* by showing that
    the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-
25  producing conduct.") (emphasis added) (citation omitted).  The parties are at the pleadings stage;
    plaintiffs are not required to prove their claims at this point in time, but to allege them adequately,
26  which they have.

    [74] Google's attack on Mr. Simpson, supported by an improper assertion of fact that he signed up
27  anew under the AdSense program, does not even account for the obvious possibility that Google's
    policy of always withholding 100% of unpaid earnings at termination was discovered after the event
28  that Google asserts to have occurred.

1   penalizing liquidated damages provision pursuant to Cal. Civ. Code § 1671(b). Additionally, they

2   have pled violation of Cal. Civ. Code § 1709 (Deceit); *see also* Cal. Civ. Code § 1710 (defining

3   "Deceit").  This UCL claim should survive accordingly.

4           **4.       Plaintiffs state a claim under the UCL's unfair prong.**

5           With respect to plaintiffs' claims under the UCL's unfair prong, California courts of appeal

6   do not agree on what exactly this prong covers, but Google's cases rely on language and concepts

7   that are outside the statute.  The better standard comports with the statutory language itself: that an

8   "unfair business practice under the UCL is 'one that either offends an established public policy or is

9   immoral, unethical, oppressive, unscrupulous, or substantially injurious to users.'"[75]

10          Google's unreasonable, punitive liquidated damages term offends the public policy expressed

11  in the liquidated damages statute, Cal. Civ. Code § 1671(b), and its actions as alleged in the TAC are

12  immoral, unethical, oppressive, unscrupulous, and substantially injurious to plaintiffs and the

13  proposed class.  There is no good reason or justification for Google's action; it is a sharp practice

14  grounded in Google's unwillingness to segregate good ad serves from those it might contend to be

15  bad, and to pay accordingly.  For these reasons, plaintiffs' claim under the unfair prong survives.[76]

16  **H.      Plaintiffs allege adequately their remaining claims.**

17          For the reasons set forth above, plaintiffs allege adequately claims for equitable relief

18  pursuant both to the federal and California Declaratory Judgment Acts (Counts VI and VII).  Also, as

19  set forth above, plaintiffs allege adequately their liquidated-damages-based claim (Count I and

20  otherwise) pursuant to Cal. Civ. Code § 1671.

21                          **IV.     CONCLUSION**

22          For all of the foregoing reasons, plaintiffs respectfully ask the Court to deny Google's motion

23  in its entirety, and, as needed to save their claims, for leave to amend.

---

[75] *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) (citation omitted).  "To determine whether a business practice is unfair, a court should consider 'the impact of the practice or act on its victim, balanced against the reasons, justifications and motives of the alleged wrongdoer;' this prong of the UCL should be used to 'enjoin deceptive or sharp practices.'"  *Id.* (citation omitted).

[76] *See Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (refusing to dismiss claim based on wrongful use of liquidated damages provision that allegedly constituted unfair behavior under the UCL).

1   DATED:  November 10, 2015                    HAGENS BERMAN SOBOL SHAPIRO LLP

2                                                By  /s/ Steve W. Berman
                                                     Steve W. Berman (*pro hac vice*)
3                                                Robert F. Lopez (*pro hac vice*)
                                                 1918 Eighth Avenue, Suite 3300
4                                                Seattle, WA 98101
                                                 Telephone: (206) 623-7292
5                                                Facsimile: (206) 623-0594
                                                 steve@hbsslaw.com
6                                                robl@hbsslaw.com

7                                                Jeff D. Friedman
8                                                715 Hearst Avenue, Suite 202
                                                 Berkeley, CA 94710
9                                                Telephone: (510) 725-3000
                                                 Facsimile: (510) 725-3001
10                                               jefff@hbsslaw.com

11                                               *Attorneys for Plaintiffs and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

        I hereby certify that on November 10, 2015, I electronically filed the foregoing document

3

using the CM/ECF system which will send notification of such filing to the email addresses

4

registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify

5

that I have caused to be mailed a paper copy of the foregoing document via the United States Postal

6

Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the

7

CM/ECF system.

8

9

Dated: November 10, 2015                         */s/ Steve W. Berman*
                                                 Steve W. Berman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28