1

2

3

4

5

6      **UNITED STATES DISTRICT COURT**

7      **NORTHERN DISTRICT OF CALIFORNIA**

8      **SAN JOSE DIVISION**

9

10     FREE RANGE CONTENT, INC., et al.,          Case No.  14-cv-02329-BLF

                  Plaintiffs,

11

            v.                                 **ORDER GRANTING IN PART AND**
12                                             **DENYING IN PART MOTION TO**
                                               **DISMISS**
13     GOOGLE INC.,

                  Defendant.                   [Re:  ECF 94]
14

15

16          Plaintiffs, former AdSense publishers, bring this purported class action to challenge

17     Google for allegedly terminating their accounts without cause and unlawfully withholding revenue

18     they had accrued over their last one to two months as publishers. The Court previously dismissed

19     the case with leave to amend. *See* First Dismissal Order, ECF 66. Defendant now asks the Court to

20     dismiss the action with prejudice. Mot., ECF 94. For the reasons stated below, the Court GRANTS

21     IN PART and DENIES IN PART the Motion to Dismiss without leave to amend.

22     **I.      BACKGROUND**

23          Through Google's AdSense for Content program ("AdSense"), Google contracts with

24     website operators who publish ads on their websites in exchange for a percentage of the money

25     advertisers pay to place the ads. Third Am. Compl. ("TAC") ¶ 23, ECF 92. Plaintiffs are former

26     AdSense publishers who allege that Google terminated each of them without cause and withheld

27     the entirety of the earnings they had accrued but had not yet been paid upon termination. *Id.* ¶¶ 14-

28     17, 50, 63, 73, 85, 134. Plaintiffs seek to represent a class of former publishers in 40 countries

United States District Court
Northern District of California

whose balances Google withheld in their entirety upon termination. *Id.* ¶ 115.[1]

### A. AdSense Terms

The AdSense Terms ("Terms") constitute the contract between Google and U.S. publishers. *Id.* ¶ 27. Plaintiffs allege that the Terms took numerous forms over the years that they were publishers, *id.* n.27: 10 pages of "Terms and Conditions" until mid-2013, *id.* Exh. B ("T&C"), ECF 92-2, when they were replaced by a 5-page "Terms of Service," *id.* Exhs. A, C ("TOS"), ECF 92-1, 92-3. Both were non-negotiable and linked to non-negotiable "Program Policies" and "Branding Guidelines." TAC ¶ 27. Plaintiffs allege that the Payment and Termination Terms central to this litigation ("Challenged Terms") remained substantially similar between the contracts. *Id.* ¶¶ 23-25, 29-31. The Court identifies the relevant portions of each below.

### 1. Payment Term

The Payment Term states, "[Y]ou will receive a payment related to the number of valid clicks . . . valid impressions . . . or other valid events performed in connection with the display of Ads on your Properties, in each case as determined by Google." TOS ¶ 5; *see also* T&C ¶ 11. Plaintiffs allege that this constitutes a promise by Google to pay publishers for interactions with the ads they publish. TAC ¶ 23.

At the same time, Plaintiffs allege that the Payment Term purports to allow Google, in its sole discretion, to withhold earnings from a publisher for invalid activity. TAC ¶ 25. The TOS provide, "Payments will be calculated solely based on our accounting. Payments to you may be withheld to reflect or adjusted to exclude . . . any amounts arising from invalid activity, as determined by Google in its sole discretion." TOS ¶ 5. The T&C stated, "Google shall not be liable for any payment based on [invalid activity]" and that "Google reserves the right to withhold payment . . . due to any [invalid activity or breach] by You, pending Google's reasonable investigation. . ." T&C ¶ 11.

---

[1] Plaintiffs seek to represent a worldwide class for the first time in their Third Amended Complaint. Because Defendant does not challenge this class definition, the Court does not reach the issue, but notes that the amendment exceeds the leave granted in the First Dismissal Order.

United States District Court
Northern District of California

As defined in the Payment Term, "invalid activity" includes: (i) spam or invalid clicks "by any person, bot, automated program or similar device;" (ii) clicks solicited by payment, false representation, or request; (iii) ads served to users whose JavaScript is disabled; and (iv) clicks "co-mingled with a significant amount of the activity described . . . above." *See, e.g.,* TOS ¶ 5. Plaintiffs allege that any invalid activity they did not cause should be excused under the Terms' *force majeure* provision, *see* TAC ¶¶ 55, n.16, n.18, 92, which provides, "Neither party will be liable for inadequate performance to the extent caused by a condition (for example, natural disaster, act of war or terrorism, riot, labor condition, governmental action, and Internet disturbance) that was beyond the party's reasonable control." TOS ¶ 14; *see also* T&C ¶ 10.

Finally, the Payment Term also provides, "[i]f you dispute any payment made or withheld relating to the Services, you must notify Google in writing within 30 days of any such payment. If you do not, any claim relating to the disputed payment is waived." TOS ¶ 5; *see also* T&C ¶ 11.

### 2. Termination Term

The Termination Term provides, "Google may at any time terminate the Agreement, or suspend or terminate the participation of any Property in the Services for any reason." TOS ¶ 10; T&C ¶ 6. The TOS also states, "If we terminate the Agreement due to your breach or due to invalid activity, we may withhold unpaid amounts . . . ." TOS ¶ 10.

Plaintiffs allege that the Terms require Google to apply discretion when withholding funds for invalid activity but that Google instead imposes a blanket policy of withholding all of a publisher's unpaid earnings upon termination for invalid activity. TAC ¶¶ 31-32. Plaintiffs contend that this blanket withholding occurs regardless of how many ads a publisher legitimately served and notwithstanding Google's alleged ability to distinguish between valid and invalid activity. *Id.* ¶¶ 32-33. Plaintiffs also allege that the withholding does not translate to refunds for advertisers. *Id.* n.8, ¶¶ 46, 48.

In addition, Plaintiffs allege that the Challenged Terms are unenforceable because they constitute an unreasonable liquidated damages provision and are unconscionable. *Id.* ¶¶ 139-142. Regarding unconscionability, Plaintiffs allege that publishers are typically unrepresented individuals or small businesses, who do not and cannot negotiate any of the Terms. *Id.* ¶ 28.

Plaintiffs allege that they nevertheless entered into the contract because they "were convinced that there was no real alternative to AdSense for publication of ads on web properties" given AdSense's ability to target ads, leverage Google's search technology, set up accounts quickly and easily, and access the largest global advertiser pool on the web. *Id.* ¶ 20.

**B. Plaintiffs**

Plaintiffs illustrate Google's alleged practices with their own experiences, as well as online comments by purported former publishers, an anonymous report from a self-described former Google employee, and pleadings in other lawsuits. *Id.* ¶¶ 50-113. The Court summarizes each Plaintiff's alleged experience below.

**1. Free Range Content**

Free Range Content ("FRC"), a California corporation, was a publisher from approximately July 2012 to March 2014. *Id.* ¶¶ 14, 51. FRC published ads on various websites, which it monitored for compliance with the Terms. *Id.* ¶ 51. In February 2014, FRC's earnings, as estimated by Google, began to increase at a previously unseen rate; by the end of the month, the earnings had surpassed $40,000. *Id.* ¶¶ 53, 57. FRC reported the increase to Google, asking for help in ascertaining the source and correcting any problem. *Id.* ¶ 54. FRC set up a meeting with a Google representative for March 6, 2014, but Google disabled FRC's account on March 4, 2014 due to "invalid activity" and withheld the entirety of FRC's unpaid earnings. *Id.* ¶ 58. The termination notice identified an internal appeal process, which FRC timely used to seek reinstatement of its account and the earnings Google withheld. *Id.* ¶ 59. On March 6, FRC had its scheduled call and, on March 7, 2014, FRC's appeal was denied. *Id.* ¶ 60.

FRC alleges that, if invalid activity occurred on its sites, FRC did not cause it. *Id.* ¶ 55. FRC contends that any invalid activity should therefore be excused as a *force majeure*. *Id.* ¶ 55. FRC additionally alleges that it was at least due the earnings from valid activity in its final pay period—perhaps $8,000 to $11,000—but that Google withheld the entirety of its February 2014 earnings without any attempt to limit the withholding to invalid activity. TAC ¶¶ 57, 61.

**2. Coconut Island Software**

CIS, a Hawaii corporation, was a publisher from March 2005 through November 2012. *Id.*

United States District Court
Northern District of California

4

¶¶ 15, 64. Like FRC, CIS alleges that it successfully served thousands of ads on sites that complied with the Terms. *Id.* ¶¶ 66-68. CIS alleges that its owner spent thousands of dollars in fees for programming, connectivity, and equipment to participate in AdSense, and that the revenue from AdSense constituted a substantial portion of its owner's family income. *Id.* ¶¶ 66, 69.

Notwithstanding CIS' alleged compliance, Google terminated CIS on November 16, 2012, because its specialists had "found that [CIS] was not in compliance with [Google's] policies," including webmaster guidelines and the "spirit" of AdSense policies. *Id.* ¶ 70. That same day, CIS appealed using the same process FRC used, but the appeal was denied three days later. *Id.* ¶ 71. CIS alleges that, at the time of termination, Google owed it earnings for the preceding 1.5 months, which amounted to approximately $2,400. *Id.* ¶¶ 71, 72.

### 3.   Taylor Chose

Ms. Chose, a resident of Minnesota, was a publisher from approximately September 2013 to November 2013. *Id.* ¶¶ 16, 74. Ms. Chose alleges that she complied with the Terms. *Id.* ¶¶ 76-77. Like CIS, Ms. Chose paid hosting fees and for a domain name to participate in AdSense. *Id.* ¶ 78. On November 27, 2013, Google terminated Ms. Chose, stating that it is "important for sites displaying AdSense ads to offer significant value to the user by providing unique and relevant content, and not to place ads on auto-generated pages or pages with little to no content." *Id.* ¶ 79. Ms. Chose alleges that her site was composed of original content and that she did not intentionally violate any Google policy. *Id.* ¶ 79. Ms. Chose estimates that, at the time of termination, she was owed $25,000, which Google withheld in full. *Id.* ¶¶ 80-81. Ms. Chose alleges that she did not appeal the termination because she was not aware that she could. *Id.* ¶ 82. Unlike the termination notices sent to FRC and CIS, the notice sent to Ms. Chose did not mention the appeal process. *Id.* ¶ 82 (citing Exh. 11 to Google's First Motion to Dismiss, ECF 39-11).

### 4.   Matthew Simpson

Mr. Simpson, a resident of Canada, was a publisher from approximately February 2012 through mid-June 2013. *Id.* ¶¶ 17, 86. Mr. Simpson alleges that he successfully served thousands of ads and complied with the Terms. *Id.* ¶¶ 88-89, 91. Nevertheless, in June 2013, Google terminated Mr. Simpson's account for invalid activity. *Id.* ¶ 91. At that time, his unpaid earnings

amounted to approximately $147, all of which was withheld. *Id.* ¶¶ 93-94. Like FRC, Mr. Simpson contends that any invalid activity on his site should be excused as a *force majeure* because he did not cause it. *Id.* ¶ 92. Mr. Simpson also alleges that he paid for hosting and domain registration to participate in AdSense, as well as for the products he reviewed on his sites. *Id.* ¶ 90. Mr. Simpson did not appeal his termination or dispute the withholding of his unpaid earnings. *Id.* ¶ 95.

Based on these allegations, Plaintiffs seek to bring the following claims on behalf of a class of former publishers from 40 countries not limited to any time frame, *id.* ¶ 115: (1) violation of California Civil Code § 1671(b); (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment; (5) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and two requests for declaratory relief, one pursuant to the California Declaratory Judgment Act, Cal. Civ. Pro. Code § 1060, and one pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), declaring the Challenged Terms unenforceable as unconscionable and unreasonable liquidated damages provisions.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III.   DISCUSSION

### A.   Breach of Contract

Defendant argues that Plaintiffs' breach of contract claim fails because, as in their first pleading, they do not sufficiently allege performance or excuse. Mot. at 7-10. Defendant also challenges Plaintiffs' allegations that the Challenged Terms are unenforceable. *Id.* at 10-17. Finally, Defendant seeks to dismiss Mr. Chose and Ms. Simpson's claims, arguing that they

United States District Court
Northern District of California

waived their right to assert any payment-related claim by failing to timely dispute the withholding with Google. *Id.* at 18-19. The Court considers each argument in turn.

### 1. Performance or Excuse

"In order to plead and prove a successful claim for breach of contract in California, a plaintiff must show: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damage to plaintiff resulting therefrom." *Google, Inc. v. Jackman*, No. 5:10-CV-04264 EJD, 2011 WL 3267907, at *4 (N.D. Cal. July 28, 2011) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990)).

The Court previously dismissed Plaintiffs' breach of contract claim for failure to adequately allege performance or excuse. First Dismissal Order at 1. The Court granted leave to amend and Plaintiffs now allege that they complied with the Terms. *See* TAC ¶¶ 51-52, 67-68, 76-77, 79, 88-89, 91, 132; n.11, 15, 20, 22. Defendant argues that these additions do not suffice and challenges each Plaintiff separately. Mot. at 7-10.

### a. FRC

First, Defendant contends that FRC admitted breach in the original complaint by alleging that it "was due some substantial portion of [its estimated $40,000 earnings] . . . perhaps in the $8,000 to $11,000 range[] for AdSense ads it had dutifully served during that final period . . ." Mot. at 8 (citing Compl. ¶ 22, ECF 1). Defendant reads this as an admission that 75-80 percent of FRC's ad clicks in its final pay period were invalid. *Id.* In the TAC, Plaintiffs anticipate this argument and allege that FRC made no such admission, but rather referred "in good faith to what it recollected seeing on Google's dashboard before Google terminated its account." TAC ¶ 57.

The Court agrees with Plaintiffs. FRC did not admit breach; rather FRC alleged, and continues to allege, that activity on its site had spiked and it could not discern why. *See, e.g.,* Compl. ¶ 20. Because FRC did not know what caused the spike, it could not have admitted that invalid activity had occurred. Thus, the Court cannot find that FRC has failed to allege performance.

Defendant additionally argues that FRC's allegations of compliance are implausible because of its business model, which Defendant describes as "placing ads on thousands of third-

1    party websites," including "over 100,000 domains." Mot. at 8. The Terms permit publishers to

2    display ads on third-party sites only if the sites are "in compliance with [the AdSense] program

3    policies." *See* Exh. 2 to Gray Decl. at 12, ECF 94-3. Defendant argues that FRC necessarily

4    breached because it could not possibly have continuously reviewed every site on which it

5    displayed ads, nor does the TAC allege that it did so. Mot. at 8.

6         Plaintiffs respond that they have alleged that "FRC monitored participating sites for

7    compliance with AdSense policies." TAC ¶ 51. In addition, Plaintiffs do not allege that FRC

8    served ads on 100,000 domains and they argue that Google cannot negate FRC's allegations with

9    assertions of its own. Opp. at 4, ECF 103. Finally, Plaintiffs contend that this is not the proper

10   time for factual determinations. *Id.* The Court agrees with Plaintiffs. Defendant's arguments are

11   based on purported facts not before the Court and thus fail to override Plaintiffs' allegations.

12        **b.  CIS**

13        With regard to CIS, Defendant argues that screenshots of its website, which the Court

14   previously judicially noticed, *see* First Dismissal Order at n.1, contradict its allegations of

15   performance because CIS' ad placements were identical to examples of "unacceptable

16   implementations" included in a Google page that set forth the AdSense policies in more detail.

17   Mot. at 9 (citing Exhs. 25 and 26 to Wong Decl., ECF 95-13, 95-14; Exh. 2 to Gray Decl.).

18        Plaintiffs argue that this position is misleading for two reasons. First, they note that the

19   screenshots of CIS' website were taken in 2014, *see* Wong Decl. ¶¶ 14-15, ECF 95, nearly two

20   years after Google terminated CIS, *see* TAC ¶ 70, and therefore cannot demonstrate how CIS

21   placed ads when it was an AdSense publisher. In addition, Google admits that the Program

22   Policies did not link to the detailed article when CIS was a Publisher, *see* Gray Decl. ¶ 5, ECF 94-

23   1, and so, Plaintiffs argue, Google has not established that the article was in effect then. Opp. at 4.

24        The Court agrees with Plaintiffs. While the Court need not accept as true allegations that

25   are contradicted by judicially-noticed documents, Defendant fails to establish such contradiction

26   here.

27        **c.  Taylor Chose**

28        The parties' arguments with regard to Ms. Chose are similar to those regarding CIS.

United States District Court
Northern District of California

8

1    Defendant argues that Ms. Chose's allegations regarding compliance, *see, e.g.,* TAC ¶ 74, are

2    contradicted by a cached screenshot of her now inactive website, which Defendant contends is

3    largely composed of scraped content. Mot. at 9, *see also* Wong Decl. Exh. 27, ECF 95-15.

4    Plaintiffs respond, again, that Defendant's assertions are misleading—this time because Defendant

5    compares a November 2013 screenshot, *see* Wong Decl. ¶ 16, with a help page that was not only

6    published in October 2014, *see* Gray Decl. ¶ 9, but was also too many clicks away from the

7    Program Policies to be deemed part of the contract. The Court again agrees with Plaintiffs; the

8    screenshot does not suffice to contradict Ms. Chose's allegations of performance.

9              **d.  Matthew Simpson**

10           Finally, Defendant argues that Mr. Simpson's allegations of performance are insufficient

11    because he alleges only that he neither conducted nor is aware of any invalid activity on his

12    websites—not that it did not occur. Mot. at 9 (citing TAC ¶ 91). Plaintiffs argue that this reads the

13    TAC too narrowly, focusing on one paragraph when numerous paragraphs allege performance.

14    Opp. at 5. The Court agrees with Plaintiffs. *See, e.g.,* TAC ¶ 88 (Mr. Simpson "complied with all

15    terms set forth in Google's AdSense terms and conditions . . . ."). Thus, the Court finds that each

16    Plaintiff has sufficiently alleged performance.[2]

17              **e.  Excuse by *Force Majeure***

18           Defendant additionally challenges Plaintiffs' allegations that any invalid activity on their

19    sites must be excused as a *force majeure* because it was outside of their control. Mot. at 10; *see*

20    *also* TAC ¶¶ 55, n.16, n.18, 92. The Court has reviewed Plaintiffs' theory and finds that, while

21    creative, it is not sound.

22           Under California law, unless a contract explicitly identifies an event as a *force majeure*, the

23    event must be unforeseeable at the time of contracting to qualify as such. *See Watson Laboratories*

24    *Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1111 (C.D. Cal. 2001).[3] Applying that

25    _____

26    [2] In addition, having determined that Plaintiffs have sufficiently alleged performance, the Court
does not reach Plaintiffs' two alternative arguments—that, even if Google can establish that

27    Plaintiffs breached, it may only withhold payment for invalid activity because the Terms are a
divisible contract, *see* Opp. at 6, and that, even if the Court finds the allegations of performance

28    insufficient, Plaintiffs have sufficiently pled a "common count" of breach of contract, *id* at 2.
[3] Plaintiffs argue that *Watson* misstates California law and offer *Eastern Air Lines, Inc.* for the

United States District Court
Northern District of California

rule here, the Court finds that invalid activity cannot be excused as a *force majeure* because, while the Terms foresaw the risk*,* they explicitly placed the burden on Plaintiffs and did not identify invalid activity as a qualifying *force majeure*. *See* Exhs. A, C ¶¶ 5, 14. Accordingly, the Court GRANTS Defendant's Motion to Dismiss this theory of excuse.

### 2.  Termination for "No Reason"

Defendant also challenges Plaintiffs' allegations that Google breached by terminating them for "no reason." Mot. at 17-18. The Court agrees that each Plaintiff's termination notice identified a reason. *See* TAC ¶¶ 58, 70, 79, 91. However, because Plaintiffs' breach of contract claim is based on other alleged misconduct, the Court cannot dismiss the claim on this basis.

### 3.  Unconscionability

Defendant next argues that Plaintiffs have failed to sufficiently allege the third element of breach of contract—defendant's breach—because Google acted in accordance with the Terms when it terminated Plaintiffs and withheld their payments. Mot. at 10-17. Google first argues that the Challenged Terms are not unenforceable as unconscionable. *Id.* at 10-13.

"[U]nconscionability has both a procedural and a substantive element . . . ." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal citations omitted). "The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (internal citations omitted). "But they need not be present in the same degree . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal citations omitted). Defendant argues that neither element is present here, and the Court considers each in turn.

#### a.  Procedural

proper statement. However, *Eastern Airlines*' statement of the law is identical to that set forth in *Watson*: a foreseeable event can qualify as a *force majeure* if the contract explicitly identifies it as such. *See Eastern Airlines v. McDonnell Douglas Corp.*, 532 F.2d 957, 991 (5th Cir. 1976).

Procedural unconscionability exists where a contract imposes "oppression or surprise due to unequal bargaining power." *Id.* Here, Plaintiffs allege that the Challenged Terms are oppressive because they are non-negotiable, *see* TAC ¶¶ 62, 65, 75, 87, 140; *see also* Opp. at 7. Defendant responds that this, by itself, is insufficient because Plaintiffs had other options for website monetization and because monetization is not essential. Mot at 11-12.

Defendant offers two cases that reach this result. First, *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1246 (2007) found an adhesive contract for cable services not oppressive because customers could obtain the desired service, which was "a nonessential recreational activity," from alternative sources. Similarly, *Morris v. Redwood Empire Bancor*, 128 Cal. App. 4th 1305, 1320 (2005) found a contract of adhesion not oppressive where "the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." Defendant argues that the same result is proper here because Plaintiffs had other choices for the non-essential service of website monetization.

Plaintiffs respond with several cases from this district and the Ninth Circuit that find allegations of an adhesive contract sufficient to establish procedural unconscionability because "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010), (citing *Armendariz*, 24 Cal. 4th at 114). For example, Plaintiffs offer *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012), *aff'd*, 549 F. App'x 692 (9th Cir. 2013), which considered an adhesive debt-settlement contract. *Newton* expressly rejected the arguments Defendant makes here, finding that the "other choices" argument "ignores California case law finding that 'use of a contract of adhesion establishes a minimal degree of procedural unconscionability *notwithstanding the availability of market alternatives*.'" *Id.* at 723 (emphasis in original) (quoting *Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74, 91 (2011)). The court similarly found the defendants' argument that unconscionability is not present where the good at issue is non-essential to contradict a string of California cases. *Id.* at 723.

United States District Court
Northern District of California

11

United States District Court
Northern District of California

In addition to offering cases that challenge Defendant's reading of California law, Plaintiffs argue that, under California Civil Code § 1670.5, it is too early to dismiss the unconscionability claims. Opp. at 7. Section 1670.5 provides, "When it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Plaintiffs contend that they have not had such an opportunity here.

Defendant responds that § 1670.5 is satisfied because Defendant has provided exhibits showing that CIS and Mr. Simpson display ads from other networks on their sites and therefore have other alternatives. Mot. at 12 (citing Wong Decl. Exhs. 25, 26, 28-30, ECF 95-13, 95-14, 95-16 to 18). Plaintiffs argue that this is insufficient to overcome their allegation that "Google touts AdSense as *sui generis*" with "the largest global advertiser pool on the web." TAC ¶ 20.

Given the early stage of this case, the Court agrees with Plaintiffs. The parties have not had a "reasonable opportunity to present evidence as to [the contract's] commercial setting, purpose, and effect." *See* Cal. Civ. Code § 1670.5. Thus, the Court finds that Plaintiffs have sufficiently alleged at least a degree of procedural unconscionability. *See Bridge Fund*, 622 F.3d at 1004.

### b.  Substantive

 "[E]ven if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale and render the [ ] provision unconscionable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (citing *Armendariz*, 24 Cal. 4th at 113). Substantive unconscionability exists where a term is "so one-sided as to shock the conscience, or [ ] impose harsh or oppressive terms." *Walnut Producers*, 187 Cal. App. 4th at 648.

Defendant argues that, far from being shocking, oppressive, or overly harsh, the Challenged Terms are justified by Google's need to improve AdSense's integrity, which in turn helps publishers because they benefit from the success of the platform. Mot. at 12-13. Defendant explains that Google's discretion in termination is justified by the need to prevent fraudulent clicks and undesirable content and to compensate advertisers, and that Google's ability to withhold earnings is limited to a short, finite period that is proportional to the harm invalid activity causes to AdSense's integrity. *Id.* at 13. In support of its position, Defendant offers two cases it

distinguishes as considering far harsher terms, *Hahn* and *Pardee,* and two cases that uphold terms that Defendant contends are similar to those at issue here, *Am. Software* and *Schuman*.

In *Hahn*, the plaintiff challenged a term in a massage-services membership agreement that forfeited any pre-purchased massages upon cancellation of the membership. *Hahn v. Massage Envy Franchising, LLC*, No. 12-CV-153 DMS BGS, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014). The court found the term substantively unconscionable, in part because no legitimate business reason supported the term, which was "[a]t bottom . . . a deceptive way for a business to extract relatively small monthly sums from thousands of consumers (generating large sums over time) in exchange for an illusory service." *Id.* at *9, 11.

Defendant asserts that the Challenged Terms do not resemble the clause in *Hahn*, but offers no explanation. Mot. at 13. On the other hand Plaintiffs, who also rely on *Hahn*, contend that, just as the forfeiture clause in *Hahn* "negate[d] the reasonable expectation" that consumers will receive pre-purchased services, 2014 WL 5100220, at *9, the Challenged Terms negate the reasonable expectation that a party will be paid for services it rendered. Opp. at 9.

Defendant next offers *Pardee* as a distinguishing case. Mot. at 13. In *Pardee*, the court found terms waiving the parties' rights to punitive damages and a jury trial in a real estate contract "so one-sided as to be substantively unconscionable." *Pardee Constr. Co. v. Superior Court*, 100 Cal. App. 4th 1081, 1092 (2002). The court explained that the waiver of punitive damages was "in practical reality, only for Pardee's benefit" and that nothing in the record showed that waiver of a jury trial "would in fact result in any significant saving of time or costs" or any other gain for the buyers. *Id.* at 1091-92. Defendant argues that these terms constituted hidden and complex waivers, unlike the terms at issue here. Mot. at 13.

In contrast, Defendant contends that the Challenged Terms are similar to the terms considered in *Am. Software* and *Schuman*. In *Am. Software*, the court found a term in a software salesperson's employment contract that terminated her right to receive commissions on payments received 30 days after her severance enforceable. *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386 (1996). The court found that the term was not substantively unconscionable because the contract "was the result of an arm's-length negotiation between two sophisticated and experienced parties

13

of comparable bargaining power and is fairly reflective of prevailing practices in employing commissioned sales representatives." *Id.* at 1394-95. The court recognized the company's need to compensate the individual who services the account after the seller leaves. *Id.* at 1393. In addition, the court noted that the relevant terms "involved certain risks to both parties." *Id.* at 1393.

*Schuman* similarly found a term deferring commissions until payment is received or reasonably certain to be enforceable. *Schuman v. Ikon,* 232 Fed. App'x 659, 663 (9th Cir. 2007). In this unpublished opinion, the Ninth Circuit was persuaded by the fact that the commissions were paid to the plaintiff's successor, rather than the employer, and noted that the plaintiff had not actually forfeited any commissions as he had not executed any sales pursuant to the contract. *Id.*

Defendant contends that the Challenged Terms similarly authorize withholding payments during a short, finite period. Mot. at 13. Plaintiffs argue that the Terms are not similar because the contracts in both *Am. Software* and *Schuman* provided for other compensation—a base salary in *Am. Software* and 30 percent commissions for six months in *Schuman*—and withheld payments to compensate the plaintiff's successor, not employer. Opp. at 9. In addition, Plaintiffs note that the parties shared risks regarding compensation in *Am. Software* and argue that the *Schuman* plaintiff was not terminated arbitrarily. *Id.*

Having reviewed the cases offered by the parties,[4] most of which considered unconscionability at summary judgment, the Court finds that Plaintiffs have sufficiently alleged substantive unconscionability. Taking the allegations are true, the Challenged Terms are one-sided because they let Google withhold funds for up to two months regardless of the severity of the purported breach and even if the funds are earned through valid activity, notwithstanding Google's supposed ability to distinguish between valid and invalid ad serves. TAC ¶ 32. In addition, Plaintiffs allege that Google, unlike the defendants in *Am. Software* and *Schuman,* withholds payments not to compensate other publishers or even advertisers, but solely for its own profit. *Id.* ¶ 46. While a more developed record may reveal that Google is justified in withholding the entirety

United States District Court
Northern District of California

---

[4] Plaintiffs also rely on *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758 (1989), *see* Opp. at 9, but the defendant in that case conceded that "some measure of substantive unconscionability might be present" and the parties disputed only procedural unconscionability.

of unpaid earnings, Plaintiffs offer sufficient allegations to survive the pleading stage on this issue.

### 4. Liquidated Damages

Defendant next challenges Plaintiffs' allegations that the Terms contain an unenforceable liquidated damages provision. Mot. at 14-15, 25. The parties agree that this concerns the Termination Term and Plaintiffs allege that the Payment Term is also implicated to the extent that Google uses it to withhold 100 percent of a publisher's reported earnings upon termination for supposed breach. Opp. at 9 (citing TAC ¶ 36). Having found that Plaintiffs sufficiently allege that the terms are unenforceable as unconscionable, the Court nevertheless considers this argument because it determines whether or not Plaintiffs' §1671(b) claim survives.

The Court most recently considered Plaintiffs' liquidated damages theory in the Order Granting Plaintiffs' Motion for Reconsideration. ECF 91 ("Recon. Order"). The Court explained that, under California law, liquidated damages are defined as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement . . . ." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (quoting *Kelly v. McDonald*, 98 Cal. App. 121, 125 (1929)). "Thus, to constitute liquidated damages, the contractual provision must: (1) arise from a breach, and (2) provide a fixed and certain sum." *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1196 (N.D. Cal. 2009).

In the Reconsideration Order, the Court dismissed the allegations that Defendant withheld earnings from FRC and Mr. Simpson pursuant to a liquidated damages provision because Plaintiffs had alleged that Google terminated them due to invalid activity rather than breach based on Plaintiffs' own actions. Recon. Order at 5. The Court granted leave to amend and Plaintiffs have cured the defect by alleging that invalid activity is a form of breach, *see* TAC ¶ 38, and therefore any damages due as a result of invalid activity "arise from a breach." *See Ruwe*, 613 F. Supp. 2d at 1196. Defendant does not contest Plaintiffs' allegation that invalid activity constitutes breach of the Terms.

The parties' current disagreement focuses on the second requirement—that the provision identify a fixed and certain sum. The Court previously found Plaintiffs' allegations sufficient to survive a motion to dismiss on this issue. Recon. Order at 6-8. The Court explained that "unpaid

15

amounts" could refer to the entirety of a terminated publisher's unpaid but earned balance—a fixed, ascertainable sum to which Plaintiffs were entitled. Defendant challenges this finding.

Defendant first contends that, rather than require Plaintiffs to forfeit a deposit or pay a fee, as is common in liquidated damages provisions, Google simply exercised its right to not pay for work done in violation of the Terms. *Id.* at 14-15. Plaintiffs respond that Google's own word choice, which refers to money generated by terminated publishers as "earnings," reveals that Google is withholding money Plaintiffs have already earned. Opp. at 11-12; *see also* TAC ¶¶ 32, 40-44, 83, 96. Plaintiffs also allege that Google tallies and reports each publisher's earnings for serving ads in the publisher's account. *Id.* ¶ 44, 53, 57. As before, the Court finds Plaintiffs argument more persuasive. *See* Recon. Order at 7 (Because the Termination Term "also states '[a]ny earned balance below the applicable threshold will remain *unpaid*,'" unpaid amounts could refer to an earned balance).

Defendant next argues that the withheld sum is insufficiently certain for the Challenged Terms to constitute a liquidated damages provision. Defendant bases this argument in large part on *Bayol*, which found that Zipcar's late fees constitute liquidated damages because the subscriber agreement provides a high degree of certainty regarding the fee amount for a late return. *Bayol v. Zipcar*, Inc., 78 F. Supp. 3d 1252, 1258 (N.D. Cal. 2015). Defendant highlights two portions of the decision: that "courts will find fees that are not a single, fixed number to be liquidated damages provisions where they can easily be determined *from the contract* at the time of breach" and that "[t]o be sufficiently fixed and certain to qualify as liquidated damages, a provision must either set the exact amount (i.e., a single number), or provide some formula by which the amount is certain or readily ascertainable." Mot. at 15 (quoting *Bayol,* 78 F. Supp. 3d at 1256) (internal citations omitted) (emphasis in Motion). Defendant argues that the Terms fail to satisfy either requirement, as they identify neither an amount nor a formula. Instead, Defendant argues, the Terms explicitly build in discretion for the amount and they result in amounts that vary widely in terms of both absolute number and percentage of a publisher's previous earnings. Mot. at 15.

Plaintiffs respond that the Terms specify a formula: 1.00 x unpaid earnings at termination. Opp. at 13. In addition, as noted above, Plaintiffs allege that Google reports each publisher's

earnings to the publisher. TAC ¶¶ 44, 53, 57.

As before, the Court finds that the amount is "readily ascertainable." While Defendant may be correct that the Terms do not specify a formula or set amount, the Court finds Plaintiffs' allegations that, in practice, Google always withholds the entire sum sufficient to establish that the parties "possess some degree of certainty regarding their liability in the event of a breach." *Ruwe*, 613 F. Supp. 2d at 1198 (amount was sufficiently certain because same amount was charged to each customer in practice).

Defendant next argues that, even if the Challenged Terms constitute a liquidated damages provision, it is not unreasonable and is therefore enforceable under § 1671(b), which presumes enforceability "unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). The statute "casts the burden on the opposing party to prove unreasonableness and requires only that the liquidated damages bear a reasonable relationship to the range of harm that might reasonably be anticipated." *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645, 656 (1997).

Defendant argues that Plaintiffs fail to meet this burden because the amount Google withholds relates to the anticipated harm to AdSense's integrity in two ways. Mot. at 16. First, the amount is a reasonable estimate of damages at the time of contracting and, second, the penalty is greater for sites with higher traffic, which cause greater harm than do less popular sites. *Id.*

Plaintiffs respond that they have adequately pled a lack of reasonable relationship by alleging that Google withholds all earned but unpaid funds, regardless of the magnitude of the breach and despite Google's purported ability to separate valid from invalid activity. Opp. at 14-15; *see also* TAC ¶¶ 6, 32, 132. In addition, Plaintiffs contend that Google does not refund the money to advertisers and that it often terminates accounts without any prompting by an advertiser, thus cutting any link to harm. Opp. at 14 (citing TAC ¶ 48). Finally, Plaintiffs argue that the reasonableness of a liquidated damages provision is too fact-intensive to be determined at this stage. *Id.*

The Court agrees with Plaintiffs. "[T]he validity of a liquidated damages provision is a

United States District Court
Northern District of California

17

fact-based inquiry not appropriately determined on a motion to dismiss." *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1255 (N.D. Cal. 2015). Defendant argues that *Bayol* is different because factual questions suggested a mismatch between the liquidated damages amount and the damage Zipcar actually suffers, *see* Reply at 9 n.6, but the Court finds that the same is true here. As Defendant admits, the harm caused by publishers' invalid activity or other breaches is difficult to measure, *see* Mot. at 16, and Plaintiffs have raised factual questions regarding the link to harm by alleging that Google does not refund the withheld money to advertisers. Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' breach of contract and §1671(b) claims.

### 5.  Waiver

Defendant separately challenges Ms. Chose and Mr. Simpson's breach of contract claims on the basis that they waived any payment-related claim, including breach of contract, by failing to timely dispute the withholding of their payments pursuant to the Terms. Mot. at 18-19.

The Payment Term provides, "If you dispute any payment made or withheld relating to the Services, you must notify Google in writing within 30 days of any such payment. If you do not, any claim relating to the disputed payment is waived." TOS ¶ 5. Plaintiffs do not argue that Ms. Chose and Mr. Simpson timely challenged their payments, *see* TAC ¶¶ 82, 95, but they argue that this should not translate into waiver for several reasons. The Court begins with the first four arguments, which it finds entirely unpersuasive.

First, Plaintiffs argue that Google failed to inform Ms. Chose and Mr. Simpson of the dispute requirement. Plaintiffs argue that, because the language about dispute appears in the Payment Term and not the Termination Term, it applies to active rather than terminated publishers. Opp. at 15. The Court finds this argument unavailing because, as Defendant points out, the term opens by explaining that payments are made "[s]ubject to this Section 5 [Payments] and Section 10 [Termination]." Reply at 9 (citing TOS ¶ 5).[5] Second, the Court agrees with Defendant

---

[5] Plaintiffs additionally argue that the termination notices failed to offer sufficient notice because, while they inform terminated publishers that the termination can be appealed, they do not state that the withholding of earnings can be disputed. *Id.* at 16; *see also* Exh. 12 to Gray Decl, ECF 94-13. Defendant responds that Google was not under any obligation to remind publishers of the dispute requirement as it is clearly set forth in the Terms. The Court has previously considered this argument and, as before, agrees with Defendant.

United States District Court
Northern District of California

that the Terms gave Ms. Chose and Mr. Simpson sufficient instruction on how to dispute a payment, specifying that publishers should "notify Google in writing." TOS ¶ 5. Third, the Court agrees with Defendant that Plaintiffs' allegations that Google's support pages tell publishers that they cannot appeal withholding are irrelevant because Plaintiffs do not allege that Ms. Chose or Mr. Simpson read or relied on those pages. *See* Reply at 10; *see also* Opp. at 15-16; TAC ¶¶ 83, 96. Fourth, the Court also agrees with Defendants that, even if the condition is a forfeiture clause that must be "strictly interpreted against the party for whose benefit it is created," *see* Opp. at 16 (quoting Cal. Civ. Code § 1442), the result is the same: a publisher waives any payment-related claim by failing to dispute the payment or withholding within 30 days. *See* Reply at 10, n.7.

Finally, Plaintiffs contend that the requirement is a private statute of limitations and that it is unenforceable because thirty days is not enough time for former publishers to consult with an attorney or even identify the precise cause for their termination. Opp. at 17-18. Plaintiffs rely on two cases employment cases, *Ellis* and *Assaad*, and one far more applicable case from the Eastern District of Pennsylvania, which considers Google's contract for its AdWords program.

The plaintiffs in both *Ellis v. U.S. Security Associates* and *Assaad v. Am. Nat. Ins. Co.* sought to sue their former employers after signing employment agreements that barred them from bringing employment claims after a certain time—more than six months after any incident in *Ellis*, 224 Cal. App. 4th 1213, 1217 (2010), and if the employee failed to timely request arbitration within 30 days of termination in *Assaad,* No. C 10-03712, 2010 WL 5416841, at *7 (N.D. Cal. Dec. 23, 2010). Both plaintiffs filed their claims within the statutory time but outside of the contractual terms. *Id.* at *7; *Ellis*, 224 Cal. App. 4th at 1222. Both courts held that the provisions functioned as a private statute of limitations. *Id.* at 1222-23; *Assaad*, 2010 WL 5416841, at *7. The *Ellis* court explained that a private period of limitation is enforceable if it is reasonable, and that it is reasonable "if the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained." *Ellis*, 224 Cal. App. 4th at 1223.

Applying that standard, *Ellis* found six months insufficient to bring an employment claim, noting that "most reported decisions upholding shortened periods involve straightforward

commercial contracts plus the unambiguous breaches or accrual of rights under those contracts." *Id.* (quoting *Moreno,* 106 Cal.App.4th at p. 1430, 131 Cal.Rptr.2d 684). *Assaad* found 30 days to be an unreasonable, "vastly shortened statute of limitations." *Assaad,* 2010 WL 5416841, at *7-8.

Much more applicable to the case at hand, Plaintiffs also offer *Feldman*, which considered the following provision in Google's AdWords terms: "You waive all claims relating to charges unless claimed within 60 days after the charge . . ." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 243 n.7 (E.D. Pa. 2007). The court found that the provision constituted a contractual limitations period, but determined that it was enforceable because it was reasonable. *Id.* at 243. "Contractual limitations periods are valid and can be shorter than limitations periods prescribed by statute so long as the period for bringing claims is reasonable." *Id.* (citing *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995)). The *Feldman* court enforced the provision because 60 days provided the plaintiff, an attorney, "sufficient time to identify, investigate, and report billing errors." *Id.* at 243.

Defendant responds that those cases do not apply, as each required a party to file suit within a shortened period of time, but that here the notice is simply a condition precedent to filing suit. In support of its position, Defendant offers *Brosnan*, which found that "[f]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal." *Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008). However, the contract placed no time limit on when such mediation could be initiated and therefore did not bar later suit.

Defendant also points to a decision finding that a purchase agreement barring attorney fees for a party who commences litigation without first attempting to mediate the dispute "means what it says: plaintiff's failure to seek mediation precludes an award of attorney fees." *Lange v. Schilling*, 163 Cal. App. 4th 1412, 1414. Finally, Defendant offers a case that finds a term barring a plaintiff from compelling arbitration after a contractually-set time to be an enforceable condition precedent to arbitration. *Platt Pacific, Inc. v. Anderson* 6 Cal. 4th 307, 313 (1993).

Having reviewed these cases, the Court finds that the Payment Dispute Term constitutes a private statute of limitations. As in the cases offered by Plaintiffs, failure to comply with the term bars claims in their entirety, rather than only alternative dispute resolution or recovery of

1   attorneys' fees. Thus, as in those cases, the Court next considers whether the 30-day period is

2   reasonable. *See Han*, 73 F.3d at 877 ("California permits contracting parties to agree upon a

3   shorter limitations period for bringing an action than that prescribed by statute, so long as the time

4   allowed is reasonable.").

5       Though Plaintiffs argue in their Opposition that 30 days was an insufficient amount of time

6   in which to raise a payment-related dispute, they do not allege the same. To the contrary, they

7   plead that both CIS and FRC succeeded in disputing their payments within that time, TAC ¶¶ 59,

8   71, and explain that Ms. Chose and Mr. Simpson failed to do the same based on the four reasons

9   the Court rejected above, *id.* ¶ 82, 95. Accordingly, the Court GRANTS Defendant's Motion to

10  Dismiss to the extent that it seeks to dismiss all payment-related claims by Ms. Chose and Mr.

11  Simpson.

12      In addition, the Court finds that amendment would be futile because 30 days is a

13  reasonable amount of time in which to notify Google of a dispute. The Court finds a comparison

14  to *Feldman* instructive. There, the court found 60 days sufficient for the plaintiff to make any

15  charge-related "claim." Here, publishers have less time (30 days), but they need only "dispute" a

16  payment or withholding, not file a full claim. Moreover, the adequacy of the time period is

17  demonstrated by FRC and CIS' admitted compliance. The Court finds 30 days sufficient for this

18  task, particularly as publishers regularly receive payments and earnings estimates from Google

19  and, as discussed above, the Terms identify how to communicate the dispute. Thus, the Court does

20  not grant Ms. Chose and Mr. Simpson leave to amend their payment-related claims.

21  **B.  Implied Covenant of Good Faith and Fair Dealing**

22      Defendant next challenges Plaintiffs' breach of covenant claim. Mot. at 20-21. "Under

23  California law, a claim for breach of the covenant of good faith and fair dealing requires that a

24  contract exists between the parties, that the plaintiff performed his contractual duties or was

25  excused from nonperformance, that the defendant deprived the plaintiff of a benefit conferred by

26  the contract in violation of the parties' expectations at the time of contracting, and that the

27  plaintiff's damages resulted from the defendant's actions." *Avila v. Countrywide Home Loans*, No.

28  10-CV-05485-LHK, 2010 WL 5071714, at *5 (N.D. Cal. Dec. 7, 2010).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant's first two challenges to the breach of covenant claim are identical to arguments

2    the Court considered and rejected above: that Plaintiffs failed to plead performance or excuse and

3    that Defendant cannot be held liable for acting in accordance with an express contractual

4    provision. As above, the Court rejects these arguments.

5    Defendant next argues that Plaintiffs' breach of covenant claim should be dismissed as

6    duplicative of their breach of contract claim. Mot. at 20. Defendant relies on *Careau & Co. v. Sec.*

7    *Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371 (1990), *as modified on denial of reh'g* (Oct. 31,

8    2001), which dismissed as duplicative a breach of covenant claim brought against a defendant that

9    had refused to provide a $13 million loan after the plaintiff had allegedly completed the conditions

10   precedent to disbursement. The court explained that "[i]f the allegations do not go beyond the

11   statement of a mere contract breach and, relying on the same alleged acts, simply seek the same

12   damages or other relief already claimed in a companion contract cause of action, they may be

13   disregarded as superfluous." *Id.* at 1395. To plead a separate breach of covenant claim, the

14   plaintiff must offer allegations "demonstrat[ing] a failure or refusal to discharge contractual

15   responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a

16   conscious and deliberate act, which unfairly frustrates the agreed common purposes and

17   disappoints the reasonable expectations of the other party." *Id.* at 1395. Applying that rule to the

18   facts before it, the court upheld the trial court's summary adjudication of the breach of covenant

19   claim because it "alleged nothing more than a duplicative claim for contract damages." *Id.* at 1401.

20   Defendant also offers *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358,

21   (1999), which reached the same result. In *Bionghi*, the owner of a temporary employment agency

22   sued the defendant for breach of contract and breach of covenant for allegedly terminating the

23   agency due to office politics and racial prejudice. *Id.* at 1361-63. Relying on *Careau*, the appellate

24   court upheld the trial court's summary adjudication of the breach of covenant claim because it

25   "relies on the same acts, and seeks the same damages, as its claim for breach of contract." *Id.* at

26   1370.

27   Defendant argues that the Court should reach the same result because Plaintiffs' breach of

28   contract and covenant claims rest on the same allegations: that Plaintiffs entered into and

United States District Court
Northern District of California

performed under a contract yet were denied payment by Google. Mot. at 20. Plaintiffs respond that they have additionally alleged bad faith on Google's part. Plaintiffs allege that Google showed its bad faith when it terminated Ms. Chose and CIS while leaving other publishers with the same types of displays active, and by withholding all unpaid earnings notwithstanding the agreement's language that Google "may" withhold unpaid amounts. TAC ¶¶ 70, 79, 137.

Plaintiffs rely on *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846 (C.D. Cal. 2004), which denied dismissal of a breach of covenant claim as duplicative. *Celador* considered breach of contract and covenant claims brought by the creators of a television show against the parent company of their production and distribution partners for allegedly causing those partners not to seek competitive deals and failing to renegotiate a higher licensing fee when custom and practice dictated that it should. *Id.* at 850-851. The court explained that, because breach of contract and covenant claims "will always be based on the same facts [since] a certain set of circumstance gives rise to a lawsuit" and "will always seek the same remedy [since] the same remedies are available for both claims . . . the challenge brought by *Careau* and its progeny is to distinguish two claims based on the same facts." Reviewing the allegations before it, the court found that the plaintiff had pled two claims—they "allege that Defendants' actions breached the contract. If not, the actions, allegedly taken in bad faith, frustrated the actual benefits of the contract." *Id.* at 853.

Plaintiffs contend that the same is true here: they allege that Google breached the Terms by terminating Publishers arbitrarily and withholding all unpaid earnings. If not, they allege that those actions, taken in bad faith, removed any consideration for Plaintiffs serving ads. TAC ¶ 154.

In support of their argument that the withholding breached the covenant, Plaintiffs offer *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44 (2002), which considered whether a bank breached the covenant by refusing to disburse a loan after determining, allegedly in bad faith, that the plaintiff failed to complete a condition precedent—specifically, to satisfy the bank that the loan amount would cover the costs of the project. The court explained that, when a party's satisfaction is a condition precedent, that party must either make a purely subjective decision in good faith or an objectively reasonable decision. The choice depends on the parties' intent as expressed in the contract or defaults to the reasonableness standard. *Id.* at 59. The court

1   found that, because the loan contract was for a commercial transaction and the decision to be made

2   by the bank was a matter entirely of financial concern, with no implication for aesthetics or

3   personal taste, the bank was required to make an objectively reasonable decision. *Id.* at 60, 64.

4        Plaintiffs argue that, here, Google's satisfaction with their websites and ad serves was a

5   condition precedent to payment and that they have pled that Google neither exercised its discretion

6   in an objectively reasonable manner nor in good faith. Opp. at 20-21. The Court first reviews the

7   Terms to determine whether they include a condition precedent and finds that Plaintiffs are

8   correct. Under the Payment Term, Publishers "will receive a payment related to the number of . . .

9   valid events performed in connection with the display of Ads on [their] Properties, *in each case as*

10  *determined by Google*." TOS ¶ 5; *see also* T&C ¶ 11 (emphasis added). Thus, Google's

11  determination of valid activity is a condition precedent to it paying publishers.

12       Under *Storek*, only one test can apply to any given contract. In this one regard, the Court

13  finds that the express language of the TOS and T&C differ in a material way. The TOS provide,

14  "Payments to you may be withheld to reflect . . . any amounts arising from invalid activity, *as*

15  *determined by Google in its sole discretion*," while the T&C stated, "Google reserves the right to

16  withhold payment . . . due to [invalid activity or breach] by You, *pending Google's reasonable*

17  *investigation*." TOS ¶ 5; T&C ¶ 11 (emphasis added). Thus, the Court finds that the TOS require

18  Google to make a purely subjective determination in good faith, *see* TOS ¶ 5, while the T&C

19  require Google to make an objectively reasonable determination without an accompanying good

20  faith requirement, *see* T&C ¶ 11. As a result, Plaintiffs' claims regarding withholding under the

21  T&C are subsumed by their breach of contract claim,[6] while their claims that Google withheld

22  payments under the TOS without exercising discretion in good faith suffice to go forward.

23       With regard to Plaintiffs' allegations that Defendant exercised bad faith when terminating

24  Ms. Chose and CIS by allowing similar websites to remain active, Defendant argues that the

25  websites are not similar and that, even if they were, Google's failure to terminate other violators is

26

27  ─────────────────────

28  [6] As the court in *Storek* explained, a challenge to a party's reasonableness under a contract is a claim of nonperformance of the express terms of the contract, not a claim for breach of the implied covenant. *Storek*, 100 Cal. App. 4th at 62.

United States District Court
Northern District of California

1    not enough to establish bad faith. The Court agrees that allegations of selective enforcement are

2    not enough to plead bad faith.

3         Thus, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' breach of the implied

4    covenant claim to the extent that it relies on allegations of termination and payments withheld

5    under the T&C and DENIES the motion to the extent that the claim relies on allegations of

6    payments withheld under the TOS.

7    **C. Unjust Enrichment**

8         In the First Dismissal Order, the Court dismissed Plaintiffs' unjust enrichment claim for

9    failing to comply with *Klein v. Chevron*, which held that a plaintiff could plead claims based both

10   on the existence and the absence of an agreement if the plaintiff "was uncertain as to whether the

11   parties had entered into an enforceable agreement." *Klein v. Chevron U.S.A. Inc.*, 202 Cal. App.

12   4th 1342, 1388. "A plaintiff may not, however, pursue or recover on a quasi-contract claim if the

13   parties have an enforceable agreement regarding a particular subject matter." *Id.* at 1388. The

14   Court granted leave to amend to allege uncertainty regarding the existence of a contract here.

15        Plaintiffs now allege that "[f]or purposes of this cause of action, plaintiffs deny the

16   enforceability of the terms at issue, and, as needed to enable the recovery of the earnings due them

17   for serving AdSense program ads, the enforceability of the entire AdSense contracts with Google."

18   TAC ¶ 159. Defendant argues that this conclusory allegation fails to cure the deficiency because

19   the parties do not dispute that the Terms exist and are, as a whole, enforceable. Mot. at 21-22.

20        Plaintiffs respond that they satisfy *Klein* by alleging that the Challenged Terms are

21   unenforceable. Opp. at 21-22. Plaintiffs rely on *Bear, LLC v. Marine Grp. Boat Works*, *LLC*, No.

22   3:14-CV-02960-BTM, 2015 WL 4255061 (S.D. Cal. July 14, 2015) to argue that contesting only

23   some of a contract's terms suffices. However, in *Bear*, the defendant conceded that the complaint

24   "contests the validity of . . . the amendments pursuant to which [the defendant] performed its

25   work, labor and services . . . ." *Id.* at *5. In other words, in *Bear*, the heart of the contract was in

26   dispute. In contrast, here, Plaintiffs allege that "[s]ave for certain terms alleged to be invalid and

27   unenforceable, the [Terms] are valid." TAC ¶ 130.

28        Thus, the Court agrees with Defendant. Because the parties agree that there is an

United States District Court
Northern District of California

1    enforceable contract here, Plaintiffs cannot bring a claim for unjust enrichment. Accordingly, the

2    Court GRANTS Defendant's Motion to Dismiss Plaintiffs' unjust enrichment claim.

3        **D.  UCL Claim**

4        Defendant next challenges the UCL Claim, arguing that Plaintiffs lack standing to bring it

5    and that they fail to state that Defendant engaged in "any unlawful, unfair or fraudulent business

6    act or practice." Mot. at  22-25; *see also* Cal. Bus. & Prof. Code § 17200.

7            **i.   Standing**

8        Defendant contends that Plaintiffs lack standing under § 17200 because they are

9    businesses, not the consumers or competitors the law was written to protect. Mot. at 22-23.

10   Defendant relies on *Linear Tech Corp*, which upheld dismissal of a UCL claim brought by

11   "sophisticated corporate customers who have entered or will enter their own contracts with

12   respondents" because "where a UCL action is based on contracts not involving either the public in

13   general or individual consumers who are parties to the contract, a corporate plaintiff may not rely

14   on the UCL." *Linear Tech Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007).

15   *See also Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal.

16   2012) (dismissing corporation's UCL claim because the "claim is based on a breach of a contract

17   that does not implicate the public in general or individual consumers.").

18       Defendant misreads *Linear Tech* to suggest that a business can never bring a UCL claim.

19   *Linear Tech* instead states that a business cannot bring such a claim when the contract does not

20   involve "the public in general or individual consumers. . . ." *See also In re Webkinz Antitrust

21   Litig.*, 695 F. Supp. 2d 987, 999 (N.D. Cal. 2010) (finding that the "UCL grants standing to

22   companies of varying size" as long as they "state a connection to the protection of the general

23   public" or "to individual consumer's interest"). Thus, the Court considers whether Plaintiffs have

24   stated a connection to the interests of the public or individual consumers.

25       Plaintiffs argue that their allegations implicate the public and individual consumers

26   because of AdSense's size and consumers' interactions with Plaintiffs' pages. Plaintiffs argue that

27   this case is like *Ewert*, which allowed corporate and individual sellers to bring a UCL claim

28   against eBay for preventing them from listing their products for the full contractual period. *Ewert*

United States District Court
Northern District of California

26

1   *v. eBay, Inc.*, No. C-07-02198 RMW, 2010 WL 4269259, at *1, 8-9 (N.D. Cal. Oct. 25, 2010).

2   Applying *Linear Tech,* the court found that this group of sellers could bring a UCL claim because

3   it dealt "exclusively with form contracts . . . and involve[d] individual consumers." *Id.* at *9.

4       Plaintiffs argue that the same is true here: the Terms are form contracts and consumers

5   who click on AdSense ads are involved. Mot. at 23. Defendant argues that users who click on ads

6   are different than users who buy products. The Court agrees with Plaintiffs. Plaintiffs allege that

7   publishers use their content "as the driving force for attracting legitimate ad consumers to their

8   sites." TAC ¶ 32. Thus, as in *Ewert*, the interests of individual consumers are implicated because

9   consumers may be harmed if a Publisher who caters to their interests is terminated. Thus, the

10  Court finds that Plaintiffs have sufficiently alleged their standing under the UCL.

11          **ii.  Fraudulent Prong**

12      Defendant next argues that Plaintiffs fail to allege that Google engaged in a fraudulent act

13  or practice, to plead reliance on any alleged omission, and to satisfy the pleading standards for

14  fraud. Mot. at 23-24; *see also* Fed. R. Civ. P. 9(b) (plaintiff must "state with particularity the

15  circumstances constituting fraud"). Plaintiffs respond that Google's policy of withholding all of a

16  publisher's unpaid earnings at termination while stating only that it "may" withhold unpaid

17  amounts constitutes a material misrepresentation. Opp. at 24 (citing TAC ¶ 171). In addition, they

18  contend that they have pled reliance by alleging that they would not have expended time, energy,

19  and money in serving AdSense ads had they known that Google would withhold all of their unpaid

20  earnings upon termination. Opp. at 24 (citing TAC ¶ 171).

21      "Generally, to be actionable under the UCL, a concealed fact must be material in the sense

22  that it is likely to deceive a reasonable consumer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d

23  1017, 1025-26 (9th Cir. 2008) (citing *Aron v. U–Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806

24  (2006)). "[T]he plaintiff must produce evidence showing 'a likelihood of confounding an

25  appreciable number of reasonably prudent purchasers exercising ordinary care.'" *Id.* (quoting

26  *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003)). In addition, "a class representative

27  proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate

28  actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 46

United States District Court
Northern District of California

27

Cal. 4th 298, 306 (2009). "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* at 326 (internal citations omitted).

The Court agrees with Defendant that Plaintiffs have failed to plausibly allege reliance. Instead, CIS and FRC allege that they received AdSense payments for more than seven and nearly two years, respectively, before their final payments were withheld. In addition, CIS alleges that "a substantial portion of the family income" of its owner came from AdSense. TAC ¶ 66. Based on these allegations, the Court finds it entirely implausible that Plaintiffs would not have invested in their work as publishers if they knew Google would withhold earnings from up to two pay periods upon termination.[7] In addition, Plaintiffs have not met Rule 9(b) because they failed to plead Google's intent to withhold and its knowledge of withholding the entirety of every publisher's unpaid earnings at termination. Thus, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' fraudulent UCL claim without leave to amend.

### iii.  Unlawful Prong

Defendant argues that Plaintiffs have failed to allege any unlawful activity because the Terms are not unconscionable and contain no liquidated damages provision. *See* Mot. at 24-25. As above, the Court finds that Plaintiffs have sufficiently alleged unlawful conduct. Thus, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' unlawful UCL claim.

### iv.  Unfair Prong

Defendant's challenge to Plaintiffs' claim under the UCL's unfair prong fares no better. Again, Defendant argues that Plaintiffs do not explain how Google's alleged conduct violates a legislative public policy that is "tethered to specific constitutional, statutory, or regulatory provisions." Mot. at 25 (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247,

---

[7] The only Plaintiff for whom reliance may have been plausible is Ms. Chose, who alleges that she was a publisher for only 2 months and lost $25,000 in unpaid earnings. TAC ¶¶ 74, 80-81. However, her payment-related claims were dismissed above.

257 (2010).[8] As discussed above, the Court finds that Plaintiffs' sufficiently allege a claim under § 1671(b). Thus, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' unfair UCL claim.

### E. Declaratory Relief – Counts Six and Seven

Defendant finally seeks to dismiss Plaintiffs' declaratory relief claims, which ask for a declaration that certain terms are unconscionable and improper liquidated damages. Mot. at 25. Defendant argues that the declaratory relief claims fail because the underlying claims fail. As discussed above, the Court disagrees with Defendant about the underlying claims. Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' claims for declaratory relief.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART as follows. The Motion is GRANTED without leave to amend with regard to:

1. Plaintiffs' *force majeure* theory of excuse;

2. any payment-related claims by Ms. Chose and Mr. Simpson;

3. Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing to the extent that it relies on allegations of termination or payments withheld under the T&C;

4. Plaintiffs' unjust enrichment claim; and

5. Plaintiffs' fraudulent UCL claim.

The Motion is DENIED with regard to:

1. Plaintiffs' §1671(b) claim;

2. Plaintiffs' breach of contract claim, except as outlined above regarding payment-related claims by Ms. Chose and Mr. Simpson and Plaintiffs' *force majeure* theory;

3. Plaintiffs' breach of the implied covenant of good faith and fair dealing claim to the extent that it relies on allegations of payments withheld under the TOS;

---

[8] The Court notes that the precise test for the UCL's unfair prong has not been definitively established. Other formulations include whether the conduct was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Drum*, 182 Cal. App. 4th at 257; *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) (citation omitted). As noted above, while a more-developed record may prove otherwise, the Court finds that Plaintiffs have sufficiently alleged harm to consumers to satisfy this test as well.

United States District Court
Northern District of California

4.   Plaintiffs' unlawful and unfair UCL claims; and

5.   Plaintiffs' claims for declaratory relief.

**IT IS SO ORDERED.**

Dated: May 13, 2016

BETH LABSON FREEMAN
United States District Judge