UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others simply situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>    Defendant. | Case No.  5:14-cv-02329-BLF<br><br>**DISCOVERY DISPUTE JOINT REPORT #1**<br><br>Judge:   Hon. Howard R. Lloyd<br><br>Hearing on Motion for Class Certification: April 20, 2017<br><br>Close of Non-Expert Discovery: July 20, 2017<br><br>Trial Date:   March 19, 2018 |

The Parties to the above-entitled action respectfully submit this Discovery Dispute Joint Report, pursuant to the September 9, 2016 Order Instructing Parties to File Discovery Dispute Joint Report if Necessary. The disputed issue is whether, as Defendant Google Inc. ("Google") submits, Section 7.4(a)(2) of this Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (the "Model Order") should apply to a party who intends to show another party's Highly Confidential – Attorneys' Eyes Only ("Highly Confidential") information to an expert or consultant, or whether, as Plaintiffs submit, the "alternative" language in footnote 7 of the Model Order should govern. The Parties have met and conferred extensively by phone and email, as explained in Docket No. 132.

**I.    PLAINTIFFS' POSITION**

This is a proposed class action concerning Google's withholding of earnings from *publishers*—owners or operators of web properties—when it terminates their participation in its AdSense program. Plaintiffs are former AdSense publishers. During plaintiffs' participation in the AdSense program, they published ads that Google had sold to advertisers and sent to them for display. Invoking a provision of its non-negotiated AdSense terms and conditions ("TOC"), Google withheld 100% of unpaid earnings from plaintiffs when it terminated their AdSense accounts, with no parsing between supposedly problematic ad serves and those that were not. Among claims that withstood Google's second motion to dismiss is plaintiffs' claim that

provisions of Google's TOC violate California law regarding liquidated damages. *See Free Range Content, Inc. v. Google Inc.*, 2016 WL 2902332, at *9-11 (N.D. Cal. May 13, 2016).

Discovery is underway. The parties are largely agreed on the terms of a stipulated protective order, basing it on this judicial district's Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets. (Declaration of Robert F. Lopez Regarding Protective Order ("Lopez Decl."), ¶ 2.) Accordingly, they have gone forward with responding to each other's discovery requests and producing documents to each other as if the protective order had been entered on terms to which they have agreed. (*Id.*)

But one substantial issue remains outstanding. Google, citing fears of commercial harm, wants to employ paragraph 7.4(a)(2) of the model stipulated order, perhaps with a modification to shorten the time periods inherent in that provision. Plaintiffs, on the other hand, want to employ the alternative language in footnote seven to the model order (but exclusively as it pertains to highly confidential—attorneys' eyes only material), perhaps with further-assuring modifications that they have asked Google to consider as a way to break the parties' stalemate. (*See* p. 3, *infra*.)

As the Court is aware, having recently decided this very issue against Google, *see Corley v. Google Inc.*, 2016 WL 3421402, *3-4 (N.D. Cal. June 22, 2016), paragraph 7.4(a)(2) concerns disclosure of material designated as highly confidential-attorneys' eyes only (as distinct from Source Code) to experts. Google wants to know ahead of time the identities of these experts (and other specified information) as part of a process whereby it can say yay or nay to such sharing. (Ostensibly, the provision is bilateral, but in reality, it would benefit only Google.)

Plaintiffs acknowledge Google's concerns—however abstract and speculative they are, *see* Lopez Decl., ¶¶ 3, 6—but believe that the alternative provision in footnote seven best balances the parties' interests in *this* case. After all, the Court-approved and authored alternative provision already provides that the identity of the receiving party's expert can be kept confidential only if he or she "is not a current officer, director, or employee of a competitor of a Party or anticipated to become one." Moreover, the parties are not themselves competitors. *See Nygren v. Hewlett-Packard Co.*, 2008 WL 2610558, at *1 (N.D. Cal. July 1, 2008) (in refusing to order the-then alternative language that defendant sought (similar to that which Google seeks

here), court noted that "Plaintiffs are not competitors of HP. Indeed all of the authorities defendant cites where extra protection against disclosure of sensitive information was imposed involved parties who were business competitors."; court then went on to order additional protection now contained in footnote seven of the model order).

As plaintiffs have explained to Google, their opposition to its proposed term is grounded on the rule that parties should not have to reveal the identities of their consulting experts to one another—absent truly extraordinary circumstances not present here—because to do so exposes work product, *see*, *e.g.*, *Corley*, 2016 WL 3421402, at \*3 ("When a litigant attempts to discover the identities of any retained non-testifying experts who know certain facts, he is therefore indirectly seeking information that is ordinarily non-discoverable—is a certain 'fact[] known' by any retained non-testifying expert"); because a provision of the sort Google wants can and does lead to needless delay and complexity, when the parties are on a short track to class certification proceedings (plaintiffs' motion is presently due on December 22, 2016); and because such a provision can be used strategically, no matter Google's intentions at this time. (Lopez Decl., ¶ 4.)

Plaintiffs also have asked Google to consider compromises such as the one adopted last year in *Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 433481 (N.D. Cal. Feb. 2, 2015), where the dispute involved expert access to the literal formula for the material making up the defendant's signature product. *Id.* at \*2 ("Defendant objects to producing this information as the closest held trade secret of Defendant's business. Only a handful of people in Tempur-Pedic know the formula for TEMPUR® material. Disclosure of this information, accidental or otherwise, could destroy Defendant's business."). There, the court ordered a new, augmenting provision to already ordered terms that required the receiving party to undertake a reasonable investigation to determine that the expert was not a current, former, or anticipated employee of a competitor. *Id.* at \*4-5. This new provision required the receiving party to prepare a declaration attesting to the reasonableness of the investigation and its findings, which declaration would be maintained and provided to the producing party at the conclusion of the case if the court so ordered upon a showing of good cause. *Id.* But Google has declined any compromise that would not allow it to know the identity of any consulting expert ahead of time, Lopez Decl., ¶ 5, even though it offered

1  such a compromise in *Corley*. *Corley*, N.D. Cal. No. 5:16-cv-00473, Dkt. No. 90 at 3.

2  Here, Google has indicated that it intends to produce purportedly highly sensitive
3  information that constitutes material by which it fundamentally differentiates itself from
4  competitors. (*Id.*, ¶ 6.) Yet to-date, despite not only plaintiffs' outstanding discovery requests,
5  but their requests in conjunction with this dispute, Google has not produced a single such
6  document. (*Id.*) In fact, Google's attorneys' eyes only production thus far has included 71
7  documents that this week it down-designated to "Confidential" status following plaintiffs'
8  questions regarding their AEO designation. (*Id.*, ¶ 3.) Furthermore, Google has objected to
9  several of plaintiffs' discovery requests, and where it has thus far agreed to produce documents,
10 in several instances it has said it will only produce materials or information that respond *in*
11 *general* to plaintiffs' requests. (*Id.*, ¶ 6.) (Certain of Google's responses and objections may
12 soon become subjects of a motion to compel absent voluntary resolution among the parties.)

13 Google faces a heavy burden here—a showing of substantial, or very substantial, need—
14 in order to gain access to the identities of plaintiffs' consulting experts. *See*, *e.g.*, *Corley*, 2016
15 WL 3421402, at *3 ("This court has also ruled that the identities of non-testifying experts should
16 not be disclosed without a showing of 'substantial need' because that information is 'central to
17 lawyering strategy' and is therefore protected work product.") (citing *In re Pizza Theatre Sec.*
18 *Litig.*, 113 F.R.D. 94, 98 (N.D. Cal. 1986). In fact, because access to "identifying information" is
19 "'[o]rdinarily' prohibited, *Corley*, 2016 WL 3421402, at *3 (citing *Pizza Theatre*, 113 F.R.D. at
20 98), "such disclosure should only be made after a showing equivalent to 'exceptional
21 circumstances.'" *Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 1022886, at *3 (N.D. Cal. Mar. 6,
22 2016) (noting that "the identity of non-testifying experts may sometimes be disclosed after a
23 'very substantial showing of need'") (citing *Pizza Theatre*, 113 F.R.D. at 98); *see also Ager v.*
24 *Stormont Hosp.*, 622 F.2d 496, 501-03 (10th Cir. 1980) (holding that the "discovery of the
25 identity and other collateral information concerning experts consulted informally" is insulated
26 from discovery absent "bearing the heavy burden" of demonstrating "exceptional circumstances,"
27 and discussing policy reasons for the rule); *see also Todd*, 2015 WL 1022886, at *2 (collecting
28 other cases in accord).

Here, Google has shown no (very) substantial need or exceptional circumstances. Its concerns as expressed to plaintiffs are "unexceptional," and no more than the ordinary risks "inherent to the civil discovery of confidential information." *See Corley*, 2016 WL 3421402, at *3. The court-approved language that plaintiffs propose already provides that protections vis-à-vis Google's competitors, which are not limitless or difficult to ascertain by any means. In fact, in its requests for production to plaintiffs, Google offered as examples only eight such companies that might be considered AdSense counterparts in some way in the marketplace, and plaintiffs have suggested to Google that it offer us a list of what it reasonably considers to be competitors where AdSense is concerned. (Lopez Decl., ¶ 7.) Further, Google has not at all suggested that it cannot rely on our "integrity and good faith in the course of civil discovery." *See Corley*, 2016 WL 3421402, at *4 ("the court sees no reason to suspect that Plaintiffs' lawyers will be unwilling or unable to determine in good faith whether a given person or entity is a competitor of Google."). Under all of these circumstances, Google's concerns are speculative and do not overcome the protections ordinarily afforded to parties where their consulting experts are at issue.

For these reasons, plaintiffs respectfully ask the Court to order for the parties' protective order the pertinent language set forth in footnote seven to the Court's model order.

## DECLARATION OF ROBERT F. LOPEZ REGARDING PROTECTIVE ORDER

1. I am one of the attorneys representing plaintiffs in this matter. I make this declaration based upon personal knowledge, and I am otherwise competent to testify.

2. Being largely agreed on the terms of a stipulated protective order, basing it on this judicial district's Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, the parties have gone forward with responding to each other's discovery requests and producing documents to one another as if the protective order had been entered on terms to which they have agreed. Plaintiffs have agreed while this dispute is pending to treat highly confidential—attorneys' eyes only ("AEO") material vis-à-vis experts as if subject to Google's favored language in paragraph 7.4(a)(2) of the Court's model order.

3. Google's concerns are abstract and speculative. Plaintiffs have seen no material designated AEO that is exceptional in any sense. In fact, Google has down-designated 71

1  documents that it initially marked AEO. Plaintiffs have indeed requested material of a technical
2  and confidential nature, but they have not requested nor seen any such material that would not be
3  protected by the Court-authored language they propose or that would merit the exceptional
4  handling that Google seeks.

5        4.      Plaintiffs object to Google's proposed language because, as discussed in the cases
6  we cite, it would needlessly expose work product; likely lead to needless delay and complexity,
7  when the parties already are on a short track to class certification proceedings; and because such a
8  provision can be used strategically, no matter Google's intentions at this time.

9        5.      We have proposed potential compromises with Google, as discussed above, but it
10 has declined any that do not entail disclosure of the identity of plaintiffs' consulting experts.

11       6.      Google has indicated that it intends to produce purportedly highly sensitive AEO
12 material by which it differentiates itself from competitors. Again, we have seen none to-date—
13 even, despite our requests, as samples during talks on this issue—and Google's descriptions have
14 not been fully clear to us. Also, Google has objected to several of plaintiffs' discovery requests,
15 and where it has thus far agreed to produce documents, in several instances it has said it will only
16 produce materials and information that respond *in general* to plaintiffs' requests.

17       7.      In its RFPs to plaintiffs, Google offered as examples eight entities that evidently it
18 considers AdSense competitors in some way. We also have suggested to Google that it offer us a
19 list of what it reasonably considers to be competitors where AdSense is concerned.

20       I declare under penalty of perjury under the laws of the State of Washington and the
21 United States of America that the foregoing is true and correct.

22       DATED this 15th day of September, 2016, at Seattle, Washington.

                                    /s/ Robert F. Lopez
                                    Robert F. Lopez

**II.    GOOGLE'S POSITION**

The Parties have, with minor modifications, agreed to the entry of the Model Order and have only one dispute for the Court to resolve: whether Google should have notice of and an opportunity to object to Plaintiffs' experts or consultants who will access Highly Confidential

documents Google produces. The default terms in Section 7.4(a)(2) of the Model Order are vital to protecting the sensitive information Google will produce, and Plaintiffs cannot meet their burden to override them here. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2013 U.S. Dist. LEXIS 151831, at *4 (N.D. Cal. Oct. 17, 2013) (party requesting to alter model order must show "the specific harm and prejudice that will result if its request is not granted"); *Kelora Sys., LLC v. Target Corp.*, 2011 U.S. Dist. LEXIS 96724, at *8-10 (N.D. Cal. Aug. 29, 2011).

Google's free "AdSense" service, which is the subject of this litigation, provides website owners, called "publishers," with advertisements to display on their sites. When users click on (or, in some cases, simply view) those ads, advertisers pay Google, and Google pays the publisher the majority of that revenue. The system works well, but creates serious risks for abuse. Unethical publishers, or those selling services to increase publisher revenue, may be incentivized to create false ad clicks or traffic, called "spam," that costs advertisers money while providing no value, as such interactions do not reflect actual interest in the product or service advertised.

AdSense is successful in large part due to Google's industry-leading and proprietary systems for detecting (and not charging advertisers for) spam. (Declaration of Zachary Loebel-Fried ("Decl.") at ¶¶ 2-6.) Google is producing, at Plaintiffs' request, large numbers of documents containing details about these detection systems. These documents are extremely confidential and Google employs strict internal safeguards to maintain the secrecy of this information.[1] (*Id.* ¶ 4.) Google does this because, not only would the disclosure of the information to any competitor be very damaging to Google, but disclosure to anyone who might (even inadvertently) allow the information in these documents to leak out would allow bad actors to "reverse engineer" a road map to trick Google's systems, harming both Google and advertisers. (*Id.* ¶¶ 5-6.) The Model Order's notice and objection protocol ameliorates these concerns by letting Google employees with the necessary technical expertise and years of industry knowledge to evaluate Plaintiffs' experts and assess the risk of leaks to a competitor or bad actor.[2]

---

[1] Indeed, while Google lacks the space to address the issue here, the majority of this information likely qualifies for trade secret protection under California law. *See* Cal. Civ. Code § 3426.1(d).
[2] Plaintiffs' counsel has offered to compromise by carefully vetting the experts himself, however, respectfully, though Google trusts he would do so in good faith, he does not have the needed

1   The Court can see the clearest proof of the compelling need for the protection of this
2   information in Google's handling of the preparation of these documents for production.  When
3   the "Ad Traffic Quality" team learned that these documents could have to be produced, Google
4   undertook extraordinary measures to ensure that the information received the proper
5   confidentiality designation.  As the declaration below shows, in addition to all the review time
6   spent by attorneys, ***75 non-legal Google employees have already devoted over 300 hours to***
7   ***reviewing over 7,000 documents*** marked for production to ensure that any documents revealing
8   sensitive system information were marked as Highly Confidential.  (*Id.* ¶ 7-8.)  Google's
9   demonstrated commitment to protecting this information makes this case particularly unsuitable
10  for the lesser confidentiality protections Plaintiffs advocate, and distinguishes the authorities on
11  which Google expects Plaintiffs to rely, including this Court's decision in *Corley v. Google Inc.*,
12  2016 U.S. Dist. LEXIS 81814 (N.D. Cal. June 22, 2016).  *Corley* arose, as the Court knows, in an
13  unusual procedural context, in which Google did not submit a declaration in support of its
14  request, and that action concerned very different Google information unrelated to AdSense.

15  The Model Order rightly recognizes that "[d]isclosure of 'highly confidential' information
16  creates greater concerns about ensuring confidentiality than 'confidential' information, and thus it
17  is reasonable to require greater transparency of designated experts with access to such
18  information." *See, e.g., Freed Designs, Inc. v. Sig Sauer, Inc.*, 2014 U.S. Dist. LEXIS 108746, at
19  *10 (C.D. Cal. Aug. 4, 2014). "Courts in this district treat 'the model protective order as setting
20  forth presumptively reasonable conditions regarding the treatment of highly confidential
21  information.'" *Verinata*, 2013 U.S. Dist. LEXIS 151831 at *4 (quoting *Kelora*, 2011 U.S. Dist.
22  LEXIS 96724 at *7).  Moreover, the Model Order should govern where the parties "have failed to
23  agree on the terms of the stipulated protective order." *Open TV, Inc. v. Apple, Inc.*, 2014 U.S.
24  Dist. LEXIS 144191, at *8-9 (N.D. Cal. Oct. 9, 2014).  Google seeks ***only standard protections***
25  afforded litigants required to disclose highly sensitive information; its request should be granted.
26  Plaintiffs' attempt to strip Google of the default protections the Model Order provides is
27
28  industry experience to perform that task, nor to know which disclosures could create real risk.

supported by no valid rationale. Plaintiffs have articulated only two reasons for rejecting Section 7.4 of the Model Order: 1) the risk of problematic delay from an expert challenge and 2) the loss of the advantage that comes with keeping testifying experts undisclosed until their reports and consulting experts undisclosed indefinitely. As to delay, Google offered to greatly accelerate the time periods specified in the Model Order to allay Plaintiffs' concerns (e.g., Google offered to shorten its time to object from the Model Order's 14 days *to only 4 business days* and offered to *cut in half Google's time to oppose* a motion for disclosure). As to Plaintiffs' desire to preserve the strategic advantage of keeping their experts undisclosed, Plaintiffs can do so for any expert not being shown Highly Confidential information. Apart from that, Plaintiffs' tactical considerations should give way to Google's more pressing concerns.[3]

For all these reasons, the Court should order the parties to submit the agreed-version of the Model Order that includes the standard protections of Section 7.4, without modification.

### Declaration of Zachary Loebel-Fried In Support of Google's Position

I, Zachary Loebel-Fried, hereby declare as follows:

1. I am a Manager on the Ad Traffic Quality team in the Trust and Safety department for Google, and have been a member of that team for almost five years. Except as otherwise noted, I have personal knowledge of the following facts and if called to testify could and would testify competently thereto.

2. The Ad Traffic Quality team's primary function is to prevent Google from charging advertisers for queries, impressions, clicks, or other paid interactions on ads that do not reflect a genuine potential interest in the advertised product or service. This invalid Internet traffic is often called "spam." Preventing invalid traffic is critical to Google's online advertising business because, if these invalid ad interactions are undetected, Google's advertising customers are charged for the ad event without receiving the benefit of the genuine user interest for which

---

[3] As Plaintiffs may note, less than 3% of Google's first production was tagged Highly Confidential, but did not contain highly-sensitive information. These documents were reviewed at the very outset of Google's process, were not reviewed by the Ad Traffic Quality Team, and were designated as Highly Confidential out of an abundance of caution, as they contained Plaintiffs' own account information. Google has reproduced those documents as Confidential.

they are paying.  Third parties, including unethical website publishers, may be incentivized to create invalid traffic, because publishers are generally paid for the user interactions on ads displayed on their websites that Google does not determine are invalid.

3. To identify and prevent invalid traffic, Google has created numerous, complex, and sophisticated systems for analyzing the data related to a website's ad activity, which we refer to as "filters" or "signals," as well as extensive manual review protocols.  Each year, Google invests ***more than a hundred thousand Google personnel hours*** into developing, refining, and implementing Google's filters and signals.  This work is ongoing and perpetual, as parties with a financial interest in creating invalid traffic, sometimes called "spammers," are constantly inventing new methods to try to evade detection by Google's systems.

4. Information about the functioning of these filters and signals – including their descriptive names, which often reveal the type of analyses Google's systems perform – is extraordinarily sensitive and handled with extreme care to prevent unauthorized disclosures.  Documents containing such information are accessible only to Ad Traffic Quality team members and other employees on a need-to-know basis; not even other AdSense employees or members of other abuse fighting teams in the Trust & Safety group can see them.  Google uses technological controls to restrict access to email groups, documents, databases, and other internal backend tools to Ad Traffic Quality engineers and analysts.  Google's Code of Conduct also requires employees to preserve confidentiality, and Ad Traffic Quality employees are instructed to share sensitive information only within the team, unless specifically directed otherwise.

5. Google maintains the secrecy of this information, for two primary reasons.  First, Google's ability to identify invalid activity is a key differentiator between Google and its competitors in the online advertising space.  In my view, the superiority of Google's approach to identifying invalid traffic is central to maintaining advertiser trust in Google's products and Google's market-leading position in this competitive space.

6. Second, and even more importantly from Google's perspective, information about these filters and signals is closely guarded because of the virtual certainty of abuse, if it ever fell into the wrong hands.  If information about the details of what filters Google runs or how they

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

**DISCOVERY DISPUTE JOINT REPORT #1**
CASE NO. 5:14-CV-02329-BLF

operate was obtained by a sophisticated spammer, or if anyone knowingly or unknowingly provided consulting to such an actor, it would create a road map to circumventing the filters, defrauding advertisers, and damaging Google reputationally and financially. This information is akin to a credit card company's system for identifying suspicious spending, and its disclosure would create similar risks that savvy bad actors could learn how to evade detection.

7. When the Ad Traffic Quality team learned that documents containing information about our filters and signals might be produced in this litigation, we requested the opportunity to review the documents to ensure that they were given the proper confidentiality designations. In particular, because I understood that Google would be given the opportunity to vet any technical expert to whom Highly Confidential documents would be disclosed, but not so for documents marked Confidential, our team wanted to be sure that sensitive filter or signal information that could be used to reverse engineer Google's filters received the Highly Confidential designation.

8. To accomplish this, after the lawyers finished their review of batches of the documents, we enlisted the help of **75 Ad Traffic Quality engineers and analysts** to review the documents one by one. I estimate that, so far, Ad Traffic Quality team members have spent **over 300 hours reviewing more than 7,000 documents**. We felt Google devoting the time of its own technical personnel was vital to minimizing the risk of inadvertent disclosure of highly sensitive information to unknown people. Having reviewed more than 150 documents myself, I can confirm that many of the documents slated for production contain exactly the kind of detailed and extremely sensitive information about our signals that Google never discloses, other than to authorized Google employees. In my view, the disclosure of these documents to unidentified technical personnel that Google is not permitted to vet in advance, would create a serious risk to Google. Moreover, if the information became known (intentionally or inadvertently) to any party seeking to create invalid traffic, that would create a serious risk to Google's advertisers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Mountain View, California on September 15, 2016.

Zachary Loebel-Fried

| | |
|---|---|
| Dated: September 15, 2016 | COOLEY LLP |
| | By: /s/ *Jeffrey M. Gutkin* |
| | Jeffrey M. Gutkin (216083) |
| | MICHAEL G. RHODES (11612) |
| | JEFFREY M. GUTKIN (216083) |
| | KYLE C. WONG (224021) |
| | *Attorneys for Defendant Google Inc.* |
| | |
| | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | By: /s/ *Robert F. Lopez* |
| | Robert F. Lopez |
| | STEVE W. BERMAN (*pro hac vice*) |
| | ROBERT F. LOPEZ (*pro hac vice*) |
| | *Attorneys for Plaintiffs and the Proposed Class* |

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

I, Jeffrey M. Gutkin, attest that concurrence in the filing of this document has been obtained from the other signatory. Executed on September 15, 2016 in Washington, District of Columbia.

 /s/ *Jeffrey M. Gutkin*
Jeffrey M. Gutkin

136576899

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DISCOVERY DISPUTE JOINT REPORT #1
CASE NO. 5:14-CV-02329-BLF