Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-729237.34
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Plaintiffs, the Certified Class,
and the Proposed Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>   v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>                        Defendant. | No. 5:14-cv-02329-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:     April 27, 2018<br>Time:    9:00 a.m.<br>Judge:   Hon. Beth Labson Freeman<br>Dept.:    Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT ............................................................................2

II.     STATEMENT OF ISSUES TO BE DECIDED ...........................................................2

III.    STATEMENT OF RELEVANT FACTS ....................................................................2

        A.      Background facts ...........................................................................2

        B.      Plaintiffs' claims ...........................................................................3

        C.      Proceedings to-date ........................................................................4

        D.      The Settlement .............................................................................6

                1.      Mediation .........................................................................6

                2.      Settlement Class definition, class period, and claims period .............6

                3.      Relief to the Settlement Class ...............................................7

                        a.      Generally .........................................................7

                        b.      Direct payments to Settlement Class Members .....................8

                                (1)     Claims for direct payments ...........................8

                                (2)     Settlement Scenarios .................................8

                                (3)     Payment Groups .....................................9

                                (4)     Disposition of any remaining funds ..................10

                4.      Notice, opt-out procedures, and release ..................................10

                5.      Service awards and attorneys' fees, costs, and expenses..................11

IV.     ARGUMENT ..........................................................................................12

        A.      The Court should grant preliminary approval of the Parties' negotiated
                Settlement. ...............................................................................12

                1.      Negotiated class-action settlements are desirable...........................13

                2.      The Settlement meets the standards for preliminary approval. .............13

                        a.      The Settlement is the product of well-informed, vigorous,
                                and thorough arm's-length negotiation...............................14

| | | b. | The Settlement bears no obvious deficiencies, including improper preferential treatment. | 15 |

c. The Settlement falls within the range of possible approval. ... 16

B. The proposed Settlement Class merits provisional certification. ... 18

   1. The Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy are met. ... 20

      a. Numerosity ... 20

      b. Commonality ... 20

      c. Typicality ... 21

      d. Adequacy ... 22

   2. Common questions predominate, and a class action is the superior method to adjudicate Settlement Class Member claims. ... 22

      a. Common questions predominate. ... 23

      b. Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class. ... 24

C. The Court should approve the proposed forms and methods of class Notice. ... 24

D. The Court should set a schedule toward final approval of the Parties' Settlement. ... 25

V. CONCLUSION ... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................. 20

*Arnold v. Arizona Dep't of Pub. Safety*,
2006 WL 2168637 (D. Ariz. July 31, 2006) .................................................................. 14

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ...................................................................................... 14

*Burden v. SelectQuote Ins. Servs.*,
2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ..................................................... *passim*

*In re: Cathode Ray Tube (Crt) Antitrust Litigation*,
2016 WL 3648478 (N.D. Cal. July 7, 2016) ......................................... 15, 16, 17, 18

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ...................................................................................... 21

*Chavez v. WIS Holding Corp.*,
2010 WL 11508280 (S.D. Cal. June 7, 2010) .............................................................. 13

*Chin v. RCN Corp.*,
2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010) .............................................................. 16

*Churchill Village, L.L.C. v. GE*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................... 13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................. 24

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) .................................................................................... 22

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) .................................................................................... 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988) ................................................................................ *passim*

*In re HP Laser Printer Litig.*,
2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) .............................................................. 25

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*,
306 F.3d 842 (9th Cir. 2002) ...................................................................................... 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund. v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................... 23

*Marilley v. Bonham*,
    2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ............................................ 20

*Mathein v. Pier 1 Imports (U.S.), Inc.*,
    2017 WL 6344447 (E.D. Cal. Dec. 12, 2017) .......................................... 13

*Nachsin v. A.O.L., LLC*,
    663 F.3d 1034 (9th Cir. 2011) ................................................................. 16

*Newman v. CheckRite Cal., Inc.*,
    1996 WL 1118092 (E.D. Cal. Aug. 2, 1996) ........................................... 21

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015) ................................................................... 16

*In re OSI Systems, Inc. Derivative Litigation*,
    2017 WL 5634607 (C.D. Cal. Jan. 24, 2017)........................................... 14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................. 24

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 13

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 315 (C.D. Cal. 2016)................................................... 14, 18, 19

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)............................................. 14, 25

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................... 23

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................... 13

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................... 17

*Willcox v. Lloyds TSB Bank, PLC*,
    2016 WL 8679353 (D. Haw. Jan. 8, 2016) .............................................. 24

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2012 WL 5055810 (D. Minn. Oct. 18, 2012) .......................................... 15

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004) ............................................. 12

MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed. 2004) ........................................... 25

MANUAL FOR COMPLEX LITIGATION § 21.312 (4th ed. 2004) ..................................... 24, 25

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) ..................................... 13, 19

MANUAL FOR COMPLEX LITIGATION § 21.633 (4th ed. 2004) ........................................... 19

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017) .............................. 12

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.13 (5th ed. 2017) ........................ 14, 15

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.45 (5th ed. 2017) .............................. 14

PLEASE NOTE that on April 27, 2018, at 9:00 a.m., or as soon thereafter as may be heard in the courtroom of the Hon. Beth Labson Freeman, U.S. District Court for the Northern District of California, San Jose Division, Plaintiffs Free Range Content, Inc. (FRC), Coconut Island Software, Inc. (CIS), Taylor Chose, and Matthew Simpson will move, pursuant to Fed. R. Civ. P. 23(e), for an order:

1.      Preliminarily approving the Settlement[1] they have reached with the Defendant;

2.      Granting provisional certification of the Settlement Class, appointing the Plaintiffs as Settlement Class Representatives, and appointing Hagens Berman Sobol Shapiro LLP, by Steve W. Berman and Robert F. Lopez, as Class Counsel for the Settlement Class;

3.      Approving the Parties' proposed Notice program, including as set forth in the attachments to the Declaration of Shandarese Garr Regarding Notice Plan, Claims, and Requests for Exclusion (Garr Decl.), and directing Notice of the proposed Settlement to the Settlement Class;

4.      Appointing Garden City Group, LLC (GCG), as the Settlement Administrator and directing it to carry out the duties assigned to it in the Settlement Agreement;

5.      Approving the Parties' proposed Claim Form (as attached to the Garr Declaration, and the proposed procedures for submitting Claims, objecting to the Settlement, and requesting exclusion;

6.      Staying all non-settlement-related proceedings in the this case pending final approval; and

7.      Setting the following schedule:

| Notice Date | No later than 60 days after Preliminary Approval |
|---|---|
| Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 30 days prior to the Objection and Exclusion Deadline (referenced below as the Objection and Opt-Out Deadlines) |
| Claims Deadline | 60 days after Notice Date |
| Opt-Out Deadline | 60 days after Notice Date |
| Deadline for Objection to Settlement | 60 days after Notice Date |
| Deadline for Objection to Motion for Attorneys' Fees, Costs, Expenses, and Service Awards | No later than 14 days after the Motion is filed |
| Motion for Final Approval | At least 14 days before Final Fairness Hearing |
| Responses to Objections | At least 14 days before Final Fairness Hearing |
| Final Fairness Hearing | Approximately 150 days after Preliminary Approval, subject to the Court's availability |

---

[1] Unless otherwise indicated by context, all capitalized terms in this motion refer to capitalized terms in the Parties' Settlement Agreement.

## I.    SUMMARY OF ARGUMENT

Plaintiffs, former publishers in Google LLC's AdSense program, move for preliminary approval of a Settlement regarding unpaid amounts they contend Google withheld in connection with its termination of their publisher accounts.  The Settlement covers the claims of these ex-publishers under contracts applicable in the U.S., its territories, or Canada.  It provides for a non-reversionary sum of $11 million to satisfy these claims at a rate of up to 100% of sums withheld; the costs of administration and notice; Class Representative Service Awards; and Plaintiffs' reasonable attorneys' fees, costs, and expenses.  The Parties reached this Settlement after vigorous discovery and litigation, mediation, and numerous follow-up conversations and exchanges of information, both mediated and direct.  Regarding Notice, the Parties have agreed to a strong, comprehensive program whose centerpiece is Direct Email Notice.

As Plaintiffs demonstrate below, the Parties' Agreement is worthy of preliminary approval and presentation to the proposed Settlement Class.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Should the Court preliminarily approve the Parties' Settlement, which followed extensive motions practice and discovery; is the product of intense, arm's-length negotiations, including mediation conduct-ed by experienced and esteemed mediators; and which provides valuable monetary compensation to a well-defined Settlement Class following implementation of a comprehensive Notice program?

Further, should the Court: provisionally certify a Settlement Class; order Notice; appoint the four Plaintiffs as Settlement Class Representatives; appoint Hagens Berman as Class Counsel for the Settlement Class; approve Garden City Group, LLC (GCG) as Settlement Administrator; approve the Parties' proposed Claim Form; approve the Claim, Objection, and exclusion procedures set forth in the Settlement Agreement; and schedule a Final Approval Hearing as well as a hearing on Plaintiffs' motion for Service Awards and recovery of Plaintiffs' attorneys' fees, costs, and expenses?

## III.    STATEMENT OF RELEVANT FACTS

### A.    Background facts

Google sells Internet advertising via its AdWords program, among others.  One way Google arranges for the display of such advertising is via its AdSense program.  Google invites owners and

1    operators of web properties to join the AdSense program.  If Google approves an application to

2    participate, these persons or companies become AdSense publishers.  They can then use their inventory

3    of space to display ads that Google serves to them.

4        Participation in AdSense is subject to localized contracts.  Members of the proposed Settlement

5    Class entered into terms for the U.S., its territories, or Canada.  These contracts were largely identical

6    across localities at any point in time that is pertinent to this case.  During the relevant period, there were

7    two contracts in effect: (a) terms and conditions applicable at the inception of the class period, May 20,

8    2010, through April 22, 2013 (earlier-effective contract); and (b) terms of service applicable from April

9    23, 2013, through the present (latter-effective contract).  Each of these localized contracts contained

10   identical California choice-of-law and venue provisions.

11   **B.    Plaintiffs' claims**

12       Three of the Plaintiffs were AdSense publishers subject to the U.S. AdSense terms, and the

13   fourth, Mr. Simpson, was subject to the localized terms for Canada.  (*E.g.*, Dkt. No. 92 ¶¶ 9, 17.)  Each

14   displayed ads that Google pushed to their websites.  (*E.g.*, *id.* ¶¶ 51, 66, 76, 88.)  Google terminated each

15   of their accounts, allegedly for breach of contract.  (*E.g.*, *id.* ¶¶ 58, 70, 74, 79, 86, 91.)  None, however,

16   had done anything knowingly to violate Google's contract, and each had endeavored to be good and

17   loyal participants.  (*See generally* Dkt. Nos. 214, 215, 216, 217.)  In their view, Google's notices of

18   termination told them little of substance as to why Google had disabled their accounts.  (*E.g.*, Dkt. No.

19   92 ¶¶ 58, 70, 79, 91.)

20       All Plaintiffs had unpaid amounts in their AdSense accounts at termination, which Google

21   withheld in their entireties.  (*E.g.*, *id.* ¶¶ 61, 72, 81, 94.)  Plaintiffs contended that Google maintained a

22   policy and practice of zeroing-out publisher accounts—*i.e.*, withholding 100% of accrued but unpaid

23   earnings—on termination for supposed breach of contract.  (*E.g.*, *id.* ¶¶ 30, 34.)   Plaintiffs contended

24   that Google's policy and practice were uniform (though Google contended that in a small number of

25   instances, it did not zero-out accounts, and that ultimately, it paid certain publishers some or all of their

26   unpaid amounts).  (*E.g.*, Dkt. No. 193 at 6-7.)  Google claimed the contractual right to withhold all such

27   unpaid amounts.  (*E.g.*, Dkt. No. 94 at 10-13.)  Google also repeatedly asserted that it did not keep the

28   money it withheld—that instead it attempted to credit back to advertisers all amounts for ads displayed

by the terminated publisher over the prior 60 days, including its (Google's) revenue share.  (*E.g.*, Dkt. No. 193 at 6.)  In fact, it asserted that in the aggregate over the proposed litigation class period, it had credited to advertisers more than the total of what it had allegedly withheld from publishers plus what it had been paid in connection with those ads.  (*Id.*)

Plaintiffs challenged Google's withholding practice on behalf of themselves and similarly situated former publishers.  (*E.g.*, Dkt. No. 92 ¶¶ 114-185.)  Plaintiffs claimed that Google's actions violated California law as to liquidated damages and that Google had breached its contracts to pay Plaintiffs and others what was due them for displaying ads.  (*E.g.*, *id.* ¶¶ 125-146.)  They also claimed that Google's actions constituted breach of the implied covenant of good faith and fair dealing, and they asserted that Google had violated California's Unfair Competition Law.  (*E.g.*, *id.* ¶¶ 147-177.)   Finally, Plaintiffs alleged unjust enrichment.  (*E.g.*, *id.* ¶¶ 158-163.)

**C.      Proceedings to-date**

Plaintiffs filed their complaint on May 20, 2014.  (Dkt. No. 1.)  Rather than answering, Google moved to dismiss all of Plaintiffs' claims on August 20, 2014.  (Dkt. No. 21.)

Following Plaintiffs' amendment of their complaint on September 10, 2014, Dkt. No. 27, Google moved again to dismiss all their claims, this time on October 15, 2014, Dkt. No. 38.  After a hearing on February 12, 2015, the Court dismissed all of Plaintiffs' Claims, with leave to amend as to most.  (Dkt. Nos. 66, 68.)  Plaintiff filed its second amended complaint on March 5, 2014.  (Dkt. Nos. 71, 73.)

Plaintiffs then moved for leave to file a motion for reconsideration of dismissal of their liquidated-damages-based claim.  (Dkt. No. 75.)  The Court granted their motion, Dkt. No. 81, and Plaintiffs filed their reconsideration motion on April 30, 2015, Dkt. No. 84.  After full briefing and a hearing, the Court granted Plaintiffs' motion for reconsideration on August 25, 2015.  (Dkt. No. 91.)

Next, on September 15, 2015, Plaintiffs filed their third amended complaint, which included an amended liquidated-damages-based claim.  (Dkt. No. 92.)  Again Google moved to dismiss.  (Dkt. No. 94.)  After full briefing and a hearing on February 19, 2016, Dkt. No. 113, the Court on May 13, 2016, granted in part and denied in part Google's motion to dismiss, Dkt. No. 116.  Google answered Plaintiffs' third amended complaint on June 3, 2016.  (Dkt. No. 120.)

1   Discovery ensued and continued through (and in some regards past) the date the Parties agreed

2   to a settlement-in-principle.  (Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for

3   Preliminary Approval (Lopez Decl.) ¶ 5.) The Parties' efforts included 169 requests for production and

4   numerous interrogatories from the Plaintiffs; numerous requests for production and interrogatories from

5   Google; the Parties' answers, objections, and document production in response to these requests, with

6   Google producing tens of thousands of documents, totaling over 96,000 pages, to the Plaintiffs, which

7   included myriad details concerning the inner-workings of the AdSense program and Google's fraud-

8   detection practices; depositions of the Parties, including a 30(b)(6) deposition of Google for which it

9   produced three designees; consultation with experts and, in connection with Plaintiffs' motion for class

10  certification, depositions of each side's consultant; requests for admission from both Parties, and their

11  responses; and many, many calls and exchanges to discuss and work-out various discovery-related

12  disputes.  (*Id.* ¶ 3.)

13  Following much intensive work on discovery, including the review and analysis of large volumes

14  of highly-detailed, dense, and technical material produced by the Defendant, Plaintiffs moved on March

15  10, 2017, for class certification.  (Dkt. Nos. 140-172.)  On April 28, 2017, Google opposed

16  wholeheartedly, Dkt. Nos. 175-197, and after an extensive reply on June 2, 2017, and a hearing on June

17  15, 2017, Dkt. Nos. 198-204, 209, 213-217, the Court issued its decision granting in part and denying in

18  part Plaintiffs' motion, Dkt. Nos. 224, 234.  By way of its order, the Court certified a class defined as:

19          All former or current Google AdSense publishers: (1) whose AdSense accounts
        were subject to Google's terms of service for the United States; (2) whose AdSense
20      account Google disabled or terminated for any breach of contract, including policy
        violations or invalid activity, on any date between and including April 23, 2013, and the
21      date of judgment in this matter; (3) whose last AdSense program earnings or unpaid
        amounts Google withheld in their entirety, and permanently, in connection with such
22      disablement or termination; and (4) who submitted a written notice of dispute to Google
        within 30 days of notice from Google of withholding from their AdSense publishers'
23      accounts.

24  Dkt. No. 234 (Class Cert. Order) at 33-34. The question certified was based on Plaintiffs' claim for

25  breach of the implied covenant of good faith and fair dealing.  (*Id.* at 34.)

26  Former publishers terminated under the earlier-effective contract were not included in the

27  certified class due to differing language in a term pertinent to Plaintiffs' claim for breach of the implied

28  covenant of good faith and fair dealing.  (*See* Dkt. No. 116 at 24-25.)  Also, the class did not include

1   publishers who had not submitted a timely notice of dispute pursuant to a contractual-statute-of-

2   limitations term that the Court had earlier upheld.  (*Id.* at 18-21.)

3        The Parties continued with discovery and prepared for summary judgment and trial, the latter of

4   which was scheduled for March 2018.  (Lopez Decl. ¶ 5; Dkt. Nos. 226, 228-231, 115.)

5   **D.      The Settlement**

6        **1.      Mediation**

7        On May 15, 2017, after Google filed its opposition to Plaintiffs' motion for class certification,

8   and following the exchange of mediation letters and voluminous exhibits, the Parties engaged in an in-

9   person mediation session with the Hon. Layn Phillips (U.S.D.J. Ret.) and his colleague Greg Lindstrom

10  in Newport Beach, California.  (Lopez Decl. ¶ 4.)  The Parties did not settle that day.  (*Id.*)

11       After the Court issued its class-certification decision, the Parties engaged in further discussions

12  with and via Mr. Lindstrom to ascertain if a settlement could be reached.  (*Id.* ¶ 5.)  But the Parties did

13  not abate discovery and preparations for motions for summary judgment and trial.  (*Id.*)

14       On September 14, 2017, following many exchanges with and through Mr. Lindstrom, including

15  writings by the Plaintiffs, the Parties agreed to hear a mediator's recommendation.  (*Id.* ¶ 6.)  After

16  deliberation, the Plaintiffs accepted this recommendation in principle.  (*Id.*)  So did Google.  (*Id.*)

17       **2.      Settlement Class definition, class period, and claims period**

18       The Parties advised the Court on September 20, 2017, that they had reached a settlement in

19  principle.  (Dkt. No. 232.)  But more effort and time was needed before final terms could be reached,

20  such that preliminary approval proceedings could be scheduled.  (*See* Dkt. Nos. 238-39.)

21       On March 1, 2018, following much negotiation and discussion, including numerous email

22  exchanges; requests for, and production of, further data; telephone conferences; exchanges of drafts and

23  terms; and consultation with clients, the Parties inked (via counsel) their Agreement.  (Lopez Decl. ¶ 7.)

24       The Settlement Agreement defines the Settlement Class as:

25            All persons or entities Google's records indicate are located within the United
    States, American Samoa, Puerto Rico, the United States Minor Outlying Islands, the U.S.

26  Virgin Islands, or Canada, whose AdSense account Google disabled or terminated on any
    date between May 20, 2010 and the date the Court grants Preliminary Approval of this

27  Settlement, and whose last AdSense unpaid amounts Google withheld in their entirety,
    and permanently, on any date between May 20, 2010 and the date the Court grants

28

1     Preliminary Approval of this Settlement in connection with such disablement or termination, and where the sum withheld totals $10 or more.

(Lopez Decl. Ex. A, ¶ 1.41.)  The $10 minimum reflects Google's lowest purported payment threshold. (See Dkt. No. 92 Ex. A, ¶ 5 (linking to https://support.google.com/adsense/answer/1709871 (last accessed Feb. 27, 2018)) and Ex. B, ¶ 11.)

The Settlement Class differs from the certified litigation class by including former publishers from the U.S. territories and Canada, former publishers who did not file notices of dispute, and publishers terminated under the earlier-effective contract.  (*Compare* Lopez Decl. Ex. A, ¶ 1.41, *with* Class Cert. Order at 33-34.)  The Settlement Class is subsumed within the class the Plaintiffs proposed in the operative complaint.  (Dkt. No. 92 ¶ 115.)  Based on discovery and analysis, including recent represent-ations by Google, the Parties estimate that the proposed Settlement Class consisted of approximately 190,000 members as of the last date on which Google compiled its publisher data, which it did in late July 2017 in connection with the Parties' final mediated settlement discussions.  (Lopez Decl. ¶ 8.)

The class period extends from May 20, 2010, four years prior to the date of filing of Plaintiffs' initial complaint, through the date of Preliminary Approval.  (Lopez Decl. Ex. A, ¶ 1.41.)  The claims period runs 60 days from the Notice Date—the date that Notice is complete (which is to occur no later than 60 days following Preliminary Approval).  (*Id.* ¶¶ 1.7, 1.24.)

### 3.   Relief to the Settlement Class

#### a.   Generally

The Settlement provides for a Settlement Fund of $11 million in non-reversionary monetary relief.  (*Id.* ¶¶ 1.44, 2.1-.2.)   Based on discovery and analysis, including representations by Google, the aggregated sum of Amounts Allegedly Withheld by Google from the Settlement Class totaled approximately $140 million when Google last compiled its data in late July 2017; an approximate subtotal of funds withheld from the certified litigation class, with the U.S. territories and Canada included, was some $37.34 million as of July 2017.  (Lopez Decl. ¶ 17.)  The Settlement Agreement provides that proceeds payable to the Settlement Class are net of: the cost of notice and administration (presently estimated to total up to $102,150, *see id.* ¶ 14; attorneys' fees, costs, and expenses (if approved); and Service Awards to the four proposed Class Representatives (if approved).   (*Id.* Ex. A,

¶¶ 1.21.)  Plaintiffs and their counsel, whom the Court appointed Class Counsel for the certified

litigation class, endorse the value and reasonableness of this proposed Settlement.  (Lopez Decl. ¶ 9.)

### b.   Direct payments to Settlement Class Members

#### (1)   Claims for direct payments

The proposed Settlement is claims-made.  (Lopez Decl. Ex. A, ¶ 2.4.)  Settlement Class Members

may submit a Claim for the Amount Allegedly Withheld, *i.e.*, for up to 100% of the unpaid amounts that

Google withheld.  (Lopez Decl. Ex. A, ¶¶ 1.4, 1.6, 3.1-3.2.2, 2.4-2.4.4.)  Claims will be made via a short,

plain Claim Form, which asks the Claimant a few simple questions.  (Garr Decl. Ex. F.)  The Claims

Deadline is 60 days after the Notice Date.  (Lopez Decl. Ex. A, ¶ 1.7.)  As a fraud-protection measure,

Claimants will be asked to certify on the Claim Form that they did not "intentionally violate Google's

policies or intentionally cause invalid clicks with regard" to the Amount Allegedly Withheld.  (*Id.*, ¶

3.1.2.)

Also, in recognition of the Court's ruling with respect to a 30-day private statute of limitations in

the latter-effective contract, Dkt. No. 116 at 18-21, Claimants will be asked via the Claim Form whether

they submitted notices of dispute within 30 days of termination or withholding of unpaid amounts in

connection with termination.  (Lopez Decl. Ex. A, ¶ 3.1.2.)  Google's records will be checked for any

claimed notice of dispute.  (*Id.*, ¶ 3.3.)  Additionally, Claimants will be invited to submit with their Claim

Form any proof they may have of submitting such a notice, which the Settlement Administrator will

consider in the event that Google's records do not indicate that notice was received.  (*Id.*)

#### (2)   Settlement Scenarios

The Settlement provides for three Settlement Scenarios, each of which depends on the total sum

of Amounts Allegedly Withheld corresponding to Valid Claims.  (*Id.*, ¶ 2.4.1.)  Scenario 1 addresses the

situation where the Net Settlement Fund is sufficient to satisfy all Valid Claims in their entirety, meaning

that each Claimant's Amount Allegedly Withheld, as set forth in Google's records, *id.*, ¶ 3.7, will be paid

in full.  (*Id.*, ¶¶ 2.4.1-2.4.2.)  Scenario 2 addresses the situation where the Net Settlement Fund is not

sufficient to cover the full amount of all Valid Claims, but it exceeds the amount necessary to pay

Adjusted Amounts due them under a negotiated and rational payment formula.  (*Id.*, ¶¶ 2.4.1, 2.4.3; *see*

*also* Dkt. No. 116 at 24.)  Scenario 3 addresses the situation where the Net Settlement Fund is equal to or

1   less than the amount required to pay Claimants the Adjusted Amounts due them by application of the

2   payment formula.  (Lopez Decl. Ex. A, ¶¶ 2.4.1, 2.4.4.)

### (3)   Payment Groups

4   In order to satisfy Claims fairly if Scenario 2 or 3 develops, the Parties have agreed to three

5   Payment Groups.  (*Id.*, ¶¶ 2.4.3(i)-(iii).)   These Payment Groups take into account available funds and

6   the Court's prior rulings on class certification, Dkt. No. 234 at 33-34; Plaintiffs' breach-of-the-implied-

7   covenant claim as it relates to both the earlier and latter iterations of the AdSense contract, Dkt. No. 116

8   at 24; and Google's contractual statute of limitations provisions, Dkt. No. *id.* at 18-21.

9   Payment Group 1 consists of Settlement Class Members such as Plaintiff FRC who fell within

10  the certified litigation class because they were terminated under the latter-effective contract and

11  submitted timely notices of dispute.  (Lopez Decl. Ex. A, ¶ 2.4.3(i); Dkt. No. 234 at 33-34.)

12  Payment Group 2 consists of Settlement Class Members such as Plaintiff CIS who were not

13  included in the certified litigation class because they were terminated under the earlier-effective contract.

14  As noted above, the Court had ruled earlier in the case that the earlier-effective contract did not support

15  Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.  (Lopez Decl. Ex. A,

16  ¶ 2.4.3(ii); Dkt. No. 116 at 24 ("Plaintiffs' claims regarding withholding under the T&C are subsumed by

17  their breach of contract claim, while their claims that Google withheld payments under the TOS without

18  exercising discretion in good faith suffice to go forward.").)

19  Payment Group 3 consists of Settlement Class members terminated under either the earlier- or

20  latter-effective contract who did not submit timely notices of dispute (Lopez Decl. Ex. A, ¶ 2.4.3(iii).)

21  This latter Payment Group 3 includes Plaintiffs Chose and Simpson.  Placement in this group reflects

22  their positions vis-à-vis the Court's prior decisions, including the Court's ruling as to Google's

23  contractual statute of limitations.  (*E.g.*, Dkt. No. 116 at 18-21.)

24  If Scenario 2 or 3 develops—there is not enough money in the Net Settlement Fund to satisfy all

25  Valid Claims in full—Claimants will be entitled to Adjusted Amounts.  That is, if the Settlement Class

26  Member is in Payment Group 1 and Scenario 2 develops, the Claimant will be entitled to 100% of the

27  Claimant's individual Amount Allegedly Withheld, while Claimants in Payment Groups 2 and 3 will be

28  entitled to at least 50% and 30% of their Amounts Allegedly Withheld, respectively. (Lopez Decl Ex. A.,

1    ¶¶ 2.4.3(i)-(iii).)  Scenario 3 would maintain the same 10/5/3 ratio among the payment groups, albeit

2    with pro-rata reductions if needed.  (*Id.*, ¶¶ 2.4.3(i)-(iv), 2.4.4.)

3                        **(4)      Disposition of any remaining funds**

4            The Agreement also provides that any residuum under Scenario 1, *i.e.*, (a) funds remaining after

5    full satisfaction of all Valid Claims; (b) funds corresponding to failed ACH transfers and uncashed

6    checks; and (c) funds otherwise payable to a Claimant that total less than $3.00 if that Claimant has

7    requested a physical check, *see* Lopez Decl. ¶ 11, will be donated to two worthy *Cy Pres* Recipients: Public

8    Counsel and Public Justice Foundation. (*See id.* Ex. A, ¶¶ 1.11, 2.4.2, 2.5.1-2.5.2.)  Each has national

9    reach and a reputation for consumer protection, including in the Internet arena.  (*See* Lopez Decl. Exs.

10   D and E.)

11           **4.      Notice, opt-out procedures, and release**

12           The Parties' Settlement provides for robust Direct Email Notice, which is possible because

13   Google presumptively has records of email addresses for all class members.  (Lopez Decl. Ex. A,

14   ¶¶ 4.1.3, 4.2; Garr Decl. ¶¶ 16-17 and Ex. D.)   Supplemental Postcard Notice for addresses of

15   undeliverable emails will follow, where Google has physical mail addresses.  (Lopez Decl. Ex. A, ¶ 4.3;

16   Garr Decl. ¶ 18 and Ex. E.)

17           Further, the Settlement Administrator will establish a Settlement Website, where Notice of the

18   Settlement and key documents will be available, including the long- and short-form notices.  (Lopez

19   Decl. Ex. A, ¶ 1.46, 4.4-4.4.3; Garr Decl. ¶ 20 and Ex. C.)  Also, Plaintiffs will issue a press release

20   advising of the Settlement, which will be posted on the Settlement Website and Class Counsel's Website.

21   (Lopez Decl. Ex. A, ¶ 4.5; Garr Decl. ¶ 19.)  And the Settlement Administrator will effect CAFA notice.

22   (Lopez Decl. Ex. A, ¶ 4.7.)  Additionally, in the unlikely event that the Settlement Administrator

23   determines that these Notice efforts appear likely to reach less than 72% of Settlement Class Members,

24   then it will initiate a Supplemental Digital Notice Campaign consisting of Internet publication notice.

25   (Lopez Decl. Ex. A, ¶ 4.6; Garr Decl. ¶ 12.)

26           Thus, the Agreement provides for the best notice practicable under the circumstances.  (Garr

27   Decl. ¶ 23.)

28

To reiterate, costs of Notice will be paid from the $11 million Gross Settlement Fund.  (Lopez Decl. Ex. A, ¶ 4.1.4.)  Prior to the Final Approval Hearing, the Settlement Administrator will file an affidavit confirming that Notice has been provided as set forth in the Settlement Agreement and ordered by the Court.  (*See id.*, ¶ 4.8(h).)

The long-form notice describes the material terms of the Settlement and the procedures that Settlement Class Members must follow in order to submit Claims.  (Garr Decl. Ex. C at 3.)  The long-form notice also describes the procedures for Settlement Class Members to object to, or exclude themselves from, the Settlement.  (*Id.* at 5, 6-7.)  Any Settlement Class Member who wishes to be excluded from the Settlement need only opt-out by making a timely request on a simple form.  (Lopez Decl. Ex. A, ¶ 5.2.1; Garr Decl. Ex. G.)  The short-form notice provides a summary of the foregoing. (Garr Decl. Ex. D.)  Additionally, the Settlement Agreement provides that if opt-outs exceed a negotiated value, which the Parties are providing to the Court via a confidential filing, then Google will have the option to terminate the Settlement or to continue under it with no variations.  (Lopez Decl. Ex. A, ¶ 5.2.5.)

If the Court grants final approval of the Settlement following Notice, and after the period for opt-out requests and objections expires, then the Releasing Named Plaintiffs and Releasing Class Members who have not excluded themselves from the Settlement Class will be deemed to have released all Released Claims against the Releasees.  (Lopez Decl. Ex. A, ¶¶ 1.34-1.37, 6.2-6.3.)  The Released Claims are those that "arise out of or relate to the allegations in the operative complaint and that occurred during the Settlement Class Period . . . ."  (*Id.*, ¶ 1.34.)

**5.      Service awards and attorneys' fees, costs, and expenses**

The Parties have agreed that Plaintiffs may apply for Service Awards of no more than $5,000 for each of the four Plaintiffs.  (*Id.*, ¶ 9.2.)  Plaintiffs have assisted counsel with the preparation of complaints in this matter; worked with counsel on initial disclosures; consulted with counsel as requested, and on their own initiative, throughout the pendency of this case; monitored the proceedings on their own behalf and on behalf of the putative class; worked with counsel to prepare, review, and submit declarations in support of their claims and those of the proposed Settlement Class; answered interrogatories and responded to requests for production, including by gathering and producing

1    documents, in consultation with counsel; and prepared for and sat for depositions.  (Lopez Decl. ¶ 12.)

2        Also, Plaintiffs have consulted with counsel regarding the terms of the proposed Settlement and

3    reviewed and approved the Settlement Agreement on their behalf and that of members of the proposed

4    Settlement Class.  (*Id.*)  Finally, each Plaintiff will be entitled to the same Settlement benefits, subject to

5    the same conditions, as any other Settlement Class Member.  (*Id.*)

6        As for Plaintiffs' attorneys' fees, costs, and expenses, the Settlement Agreement contemplates

7    that Plaintiffs will make a request for these by motion.  (*Id.* ¶ 13.)  Google reserves the right to oppose

8    Plaintiffs' motion.  (*Id.*)  Regarding attorneys' fees, Plaintiffs plan to request the Ninth Circuit

9    benchmark of 25% of the Settlement Fund, or $2.75 million; their motion will be filed prior to the Final

10   Approval Hearing.  (Lopez Decl. Ex. A, ¶ 8.3; Lopez Decl. ¶ 13.)  Plaintiffs also expect to request

11   reimbursement of costs and expenses in the approximate sum of $116,045.   (Lopez Decl. ¶ 13.)

12                              **IV.    ARGUMENT**

13   **A.    The Court should grant preliminary approval of the Parties' negotiated Settlement.**

14       Settlements are to be encouraged in class-action lawsuits.  The Court, however, must approve

15   class settlements for them to become effective, and in so doing, it examines "whether a proposed

16   settlement is 'fundamentally fair, adequate, and reasonable.'"  *Burden v. SelectQuote Ins. Servs.*, 2013 WL

17   1190634, at *2 (N.D. Cal. Mar. 21, 2013) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)

18   (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988))); *see also* Fed. R. Civ. P. 23(e).

19   Approval of a class-action settlement proceeds through two stages: preliminary approval and final

20   approval (with notice in between).  *See* MANUAL FOR COMPLEX LITIGATION § 13.14, at 173 (4th ed.

21   2004) ("This [approval of a settlement] usually involves a two-stage procedure.  First, the judge reviews

22   the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If

23   so, the final decision on approval is made after the hearing."); 5 William B. Rubenstein, NEWBERG ON

24   CLASS ACTIONS § 13.10 (5th ed. 2017) (discussing the two-step approval process).  Because the

25   Settlement in this matter passes the standards set for this first step in the process, Plaintiffs ask the Court

26   to grant their request for preliminary approval.

27

28

1          **1.      Negotiated class-action settlements are desirable.**

2          As the Ninth Circuit has stated, "there is an overriding public interest in settling and quieting

3   litigation.  This is particularly true in class action suits . . . ."  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229

4   (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Churchill*

5   *Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004).  Settlement is desirable in class action suits

6   because they are "an ever increasing burden to so many federal courts and . . . frequently present serious

7   problems of management and expense."  *Van Bronkhorst*, 529 F.2d at 950.

8          Additionally, courts should give "proper deference" to negotiated compromises.  The Ninth

9   Circuit "has long deferred to the private consensual decision of the parties" to settle.  *See Rodriguez v.*

10   *West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  "[T]he court's intrusion upon what is otherwise a

11   private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

12   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

13   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

14   reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (citation omitted); *see also Charez v.*

15   *WIS Holding Corp.*, 2010 WL 11508280, at *1 (S.D. Cal. June 7, 2010) ("The Court gives weight to the

16   parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d

17   373, 378 (9th Cir. 1995)).

18          **2.      The Settlement meets the standards for preliminary approval.**

19          At the preliminary approval stage, the Court asks whether "[1] the proposed settlement appears

20   to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3]

21   does not improperly grant preferential treatment to class representatives or segments of the class, and [4]

22   falls within the range of possible approval . . . ."  *See, e.g.*, *Burden*, 2013 WL 1190634, at *3 (citing *In re*

23   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *accord*, *Mathein v. Pier 1 Imports*

24   *(U.S.), Inc.*, 2017 WL 6344447, at *3 (E.D. Cal. Dec. 12, 2017) (citations omitted).  Put another way, the

25   Court should "make a preliminary determination on the fairness, reasonableness, and adequacy of the

26   settlement terms …."  Manual for Complex Litig. (Fourth) § 21.632.

27          Further, where, as here, the Settlement was attained via "arms-length negotiations," following

28   "meaningful discovery," in which the Parties were represented by "experienced, capable" counsel, the

1 Court may afford to it "a presumption of fairness, adequacy, and reasonableness." *See, e.g., Arnold v.*

2 *Arizona Dep't of Pub. Safety*, 2006 WL 2168637, at *11 (D. Ariz. July 31, 2006) (citing *Wal-Mart Stores, Inc.*

3 *v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005)); Rubenstein, *supra*, § 13.45, at 90 (fairness is

4 usually presumed when a proposed class settlement, which was negotiated at arm's length by counsel for

5 the class, is presented for approval). Also, the involvement of neutral mediators such as Judge Phillips

6 and Mr. Lindstrom, which was extensive in this case, is "a factor weighing in favor of a finding of non-

7 collusiveness." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); *In re OSI*

8 *Systems, Inc. Derivative Litigation*, 2017 WL 5634607, at *3 (C.D. Cal. Jan. 24, 2017) (agreeing that Judge

9 Phillips' participation "'weigh[ed] considerably against any inference of a collusive settlement'") (citation

10 omitted).

11 Because a preliminary evaluation of the instant Settlement will reveal no "grounds to doubt its

12 fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or

13 segments of the class, or excessive compensation for attorneys," and because the Settlement "appears to

14 fall within the range of possible approval," Plaintiffs submit that it passes this initial evaluation. *See* 4

15 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.13 (5th ed. 2017); *see also In re Tableware*

16 *Antitrust Litig.*, 484 F. Supp. 2d at 1079-80. This is so even though the proposed Settlement Class is

17 broader than the certified litigation class, such that the Parties' Settlement is not unlike settlements

18 reached before class certification. Here, the proposed Settlement satisfies the higher level of scrutiny

19 applied in those situations. *See, e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 315, 318-24 (C.D. Cal. 2016)

20 (noting that certification standards should be given "'undiluted, even heightened, attention in the

21 settlement context'" and proceeding to approve settlement class broader than litigation class) (citations

22 omitted).

23 **a.    The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation.**

24 In contemplating preliminary approval, one of the Court's duties is to ensure that "the agreement

25 is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."

26 *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted). As set forth above, the Settlement was

27 achieved only after extensive written and oral discovery; review and analysis of tens of thousands of

28

documents and of initial disclosures and interrogatory answers, including with the aid of consulting experts; depositions of the parties and their consultants; two motions to dismiss; a motion for reconsideration; a motion for class certifications; four hearings; and much negotiation with the aid of well-experienced and respected mediators.  (Lopez Decl. ¶ 15.)  Further, the Plaintiffs were represented throughout by experienced counsel. (*Id.* ¶ 15 and Ex. C.)

Given the extensive pre-settlement discovery and litigation, Plaintiffs' counsel were well-situated to evaluate the strength and weakness of Plaintiffs' case.  (*Id.* ¶ 16.)  Far from being the product of anything inappropriate, the Settlement at issue is the result of long, hard-fought, adversarial work.  *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information).

###### b.   The Settlement bears no obvious deficiencies, including improper preferential treatment.

Also, the Settlement bears no obvious deficiencies.  *See Burden*, 2013 WL 1190634, at *3.  There are no patent defects that would preclude its approval by the Court, such that notifying the class and proceeding to a formal fairness hearing would be a waste of time.  *See* Rubenstein, *supra*, § 13.13 (referring to the Court's inquiry as to, *inter alia*, "obvious deficiencies").  An examination of the Settlement will reveal no apparent unfairness or unreasonableness.  *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) ("There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys.").

To the contrary, the Settlement provides cash relief to qualified Class Members on a fair, claims-made basis.  (Lopez Decl. Ex. A, ¶ 2.4-2.4.7.)  Under the Agreement, there is no biased treatment of Class Members or segments of the class.  (*See id.*)  Variations in Payment Groups, if there are insufficient funds to satisfy all Valid Claims at the rate of 100% of Amounts Allegedly Withheld, are rationally based on the Court's prior rulings as to Google's contractual statute of limitations and Plaintiffs' breach-of-the-implied-covenant-claim.  (*See* Dkt. No. 116 at 18-21; *id.* at 24.)  This is proper.  *See, e.g., In re: Cathode Ray Tube (Crt) Antitrust Litigation*, 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (an "'allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent

1  counsel'"; '"it is reasonable to allocate the settlement funds to class members based on . . . the strength of

2  their claims on the merits.'") (citations omitted).

3       All Settlement Class Members, including the proposed Class Representatives, are treated equally.

4  (*Id.*)  As for Service Awards to the Class Representatives of up to $5,000 each, such awards are supported

5  by precedent and also by the time and attention that these Plaintiffs have devoted to this matter.  *See, e.g.,*

6  *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 943 (9th Cir. 2015) (affirming approval of

7  $5,000 service awards as "relatively small" and "well within the usual norms of 'modest compensation'

8  paid to class representatives for services performed in the class action") (citations omitted).

9       As for the possibility of *cy pres* distributions, the Ninth Circuit has stated that "[t]he cy pres

10  doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement

11  fund to the 'next best' class of beneficiaries."  *Nachsin v. A.O.L., LLC*, 663 F.3d 1034, 1036 (9th Cir.

12  2011) (citation omitted)).  Here, such distributions would only occur under very limited circumstances.

13  (*See* Sec. III.D.3.b(4), *supra*.)  And the two proposed *Cy Pres* Recipients, with their national scope and

14  their work on behalf of consumers, including in Internet enterprises, are apt proposed beneficiaries.  (*See*

15  Lopez Decl. ¶ 11 and Exs. D and E.)

16       Finally, Plaintiffs will seek 25% of the Settlement Fund for attorneys' fees, *i.e.*, the Ninth Circuit's

17  benchmark rate for recovery in the class context.  Plaintiffs respectfully submit that 25% is fair in light of

18  the years spent by counsel on this matter, their experience, and the results achieved for the proposed

19  Settlement Class.  (*See id.*)  Plaintiffs will demonstrate in their forthcoming motion that this rate will pass

20  a cross-check for reasonableness. Likewise, their upcoming request for reimbursement of costs and

21  expenses, which they currently expect to be in the sum of approximately $116,045, will be reasonable.

22       **c.**    **The Settlement falls within the range of possible approval.**

23       According to the Ninth Circuit, the Court should consider whether "the settlement, taken as a

24  whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (internal quotes and

25  citations omitted).  Still, the Court at this point does not conduct the fuller analysis that occurs upon the

26  motion for final approval.  *E.g.*, *Chin v. RCN Corp.*, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010)

27  ("In fact, 'a full fairness analysis is neither feasible nor appropriate' when evaluating a proposed

28  settlement agreement for preliminary approval.") (citation omitted).  Here, the Parties' Settlement, which

1    will result in an $11 million Settlement Fund in compromise of hotly contested claims, Lopez Decl. ¶¶ 2-

2    9, falls within the range of possible approval, such that preliminary approval is warranted.

3          "To evaluate the 'range of possible approval' criterion, which focuses on 'substantive fairness

4    and adequacy,' 'courts primarily consider plaintiffs' expected recovery balanced against the value of the

5    settlement offer.'" *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 1114, 1125 (E.D. Cal. 2009)

6    (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080).  But it is "'well-settled law that a proposed

7    settlement may be acceptable even though it amounts to only a fraction of the potential recovery that

8    might be available to the class members at trial.'" *In re: Cathode Ray Tube*, 2016 WL 3648478, at *6 (citing

9    *Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citing *Linney v.

10   Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998))).

11         Here, as addressed above, discovery and information provided by the Defendant indicates that

12   the unpaid amounts withheld from Settlement Class Members aggregated to approximately $140 million

13   based on Google's last data pull, with approximately $35.82 million allocable to the certified litigation

14   class.  (*See* Sec. III.D.3.a, *supra*.)  Plaintiffs sought to recover all these funds based on the underlying

15   theory that withholding 100% of unpaid amounts in connection with account termination is unlawful.

16   (Dkt. No. 92 at 48-64.)  But they also acknowledged the possibility that Google might be able to

17   demonstrate the right even now to withhold funds directly affected by the purported invalid activity or

18   policy violations that it claimed to have led it to terminate these publisher accounts.  (*See* Dkt. No. 103 at

19   6-7 ("In any event, even if Google ultimately could demonstrate that each plaintiff materially breached as

20   to certain ad serves, it cannot withhold payment for all the other ad serves.").)

21         Further, Plaintiffs had to acknowledge Google's steadfast and vigorous contention that every

22   Amount Allegedly Withheld is spurious, given that the dollar value reflects no deductions for the

23   purported breaches of contract, claimed by Google to be extensive and egregious, that led it to terminate

24   and withhold. (*E.g.*, Dkt. No. 193 at 7-8.)   At class certification, for example, Google adduced what it

25   asserted to be strong evidence of ad-related activity that breached its contract and violated its

26   purportedly incorporated policies.  (*E.g.*, Dkt. Nos. 178 and 179.)   In its view, such activity justifies its

27   withholdings.  (*E.g.*, Dkt. No. 193 at 3-8)  Further, Google has always maintained that publishers'

28

1   purported breaches of contract entitled it contractually to withhold 100% of these unpaid amounts, as it

2   did with respect to all Settlement Class Members.  (*E.g.*, Dkt No. 94 at 10; Dkt. No. 103 at 6-7.)

3   Also, Google advised Plaintiffs that it would rely on contractual limitations of liability that in its

4   view would severely curtail any recovery, even under Plaintiffs' best-case scenarios.  (*See* Dkt. No. 92

5   (Exs. A and B, ¶¶ 13 and 10, respectively.)  While Plaintiffs disagreed based on their reading of the

6   provisions and relevant authorities, nonetheless they had to consider this risk.  (Lopez Decl. ¶ 19.)

7   And while the Court certified a class on Plaintiffs' breach-of-the-implied-covenant theory,

8   success was not assured for class members.  (*Id.*, ¶ 20.)  As the Court pointed out, a jury might

9   "determine that merely hosting a website that attracts clicks is not substantial performance, in which case

10  Plaintiffs will lose on the merits."  (Dkt. No. 234 at 29 n.4.)  And again, Plaintiffs continued to face the

11  prospect that even though Google chose not to make granular cuts in connection with termination, the

12  Court might find that it was entitled to offsets by proving them now.  Likely to Google this would signal

13  grounds for class decertification; and in any event, proceeding to prove these cuts could significantly, or

14  even dramatically, cut into recovery by members of the certified class.  (Lopez Decl. ¶ 20.)  "Approval of

15  a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."

16  *In re: Cathode Ray Tube*, 2016 WL 3648478, at *6 (citation omitted).

17  So while Plaintiffs had what they believed to be strong affirmative theories and rebuttals to

18  Google's defenses, nonetheless, there was significant risk in proceeding further with litigation.  (Lopez

19  Decl. ¶ 21.)  Ultimately, after taking into account the risk, expense, complexity, and likely duration of

20  further litigation, *see, e.g.*, *Burden*, 2013 WL 1190634, at *3, Plaintiffs and their experienced counsel, with

21  the aid of the Parties' seasoned and well-respected mediators, were able to achieve a Settlement that

22  allows for substantial monetary relief to the Settlement Class.  (Lopez Decl. ¶ 21.)  With all of these

23  factors considered, the Settlement falls within the range of possible approval.

## B.    The proposed Settlement Class merits provisional certification.

25  Plaintiffs also ask that the Court provisionally certify the Proposed Settlement Class.  The Court

26  has already certified a litigation class; the proposed Settlement Class is similar, but broader.  The Court

27  has the authority to change or expand a previously certified class, including for settlement purposes, but

28  "the propriety of certification cannot be assumed."  *Spann*, 314 F.R.D. at 318.  So the Court should

1    undertake the analysis set forth below, which demonstrates the propriety of provisionally certifying the

2    Settlement Class.  *See id.*

3          Here, the proposed Settlement Class includes publishers terminated under the earlier-effective

4    contract.  Their exclusion from the litigation class was based on the Court's ruling regarding the

5    amenability of language in that version of the contract to Plaintiffs' breach-of-the-implied covenant

6    claim; however, this ruling presents no structural bar to class certification.  But the Plaintiff affected by

7    this ruling, CIS, retains appellate rights worthy of settlement.  *See Spann*, 314 F.R.D at 320 (noting

8    argument that defendant was seeking complete peace via settlement).  CIS and similarly situated former

9    publishers will gain the right to claim Settlement benefits in exchange.

10         The proposed Settlement Class also includes publishers who did not file timely notices of

11   dispute.  Their exclusion from the litigation class is based on the Court's previous ruling regarding the

12   effect of failing to submit a timely notice of dispute under the latter-effective contract.  Google claims

13   this ruling applies to the earlier-effective contract as well; Plaintiffs disagree.  But regardless, the Court's

14   ruling is not of a sort that would bar class certification.  Also, Plaintiffs Chose and Simpson retain

15   appellate rights worthy of settlement. And by settling, they and those similarly situated gain the right to

16   claim Settlement benefits.

17         As for the inclusion of former publishers from Canada and U.S. territories, Google waives any

18   objection for settlement purposes (only).  Further, as explained below, their inclusion does not conflict

19   with the Court's prior class-certification decision.

20         Provisional certification of the proposed Settlement Class will permit notice of the proposed

21   Settlement to issue.  Such notice will inform proposed Settlement Class Members of the existence and

22   terms of the Settlement Agreement, of their right to be heard regarding its fairness, of their right to opt-

23   out, and of the date, time, and place of the fairness hearing.  *See* MANUAL FOR COMPLEX LITIG.

24   (FOURTH) §§ 21.632, 21.633.

25         In a situation such as this, where the proposed class seeks only economic damages (as distinct

26   from a class or classes seeking individualized personal injury and future-injury damages), class

27   certification is eminently proper.  *E.g.*, *Hanlon*, 150 F.3d at 1019-23.  Here, there is one underlying type

28   of event at issue (withholding of unpaid amounts in connection with termination), an alleged course of

conduct common to several tens of thousands of Settlement Class Members (withholding of 100% of unpaid funds, rather than lesser sums, based on common contractual terms and policy), and money damages at stake, such that this matter is amenable to class disposition.  Also, without this class action and Settlement, most Settlement Class Members would be "without effective strength to bring their opponents into court at all." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

### 1. The Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy are met.

To merit class certification, Plaintiffs must show that the class is so numerous that joinder is impracticable; questions of law or fact are common to the class; the claims of the representative Plaintiffs are typical of the claims of the class; and the proposed Class Representatives will protect the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(a).  Plaintiffs meet these requirements.

### a. Numerosity

Based on discovery and representations by Google, there are approximately 190,000 Settlement Class Members.  (Lopez Decl. ¶ 8.)  "[J]oinder of all members is [thus] impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  Given this large number, the requirement of numerosity is easily satisfied here.  *See, e.g., Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (noting that numerosity requirement has been satisfied in cases involving 39 class members).

### b. Commonality

As one court has summarized:

> Commonality requires the existence of questions of law or fact that are common to the class.  Fed. R. Civ. P. 23(a)(2).  Commonality focuses on the relationship of common facts and legal issues among class members.  *See, e.g.*, 1 William B. Rubenstein, *Newberg on Class Actions* § 3:19 (5th ed. 2011).  Courts construe this requirement permissively.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*  In fact, it only takes one common question of fact or law shared between proposed class members to satisfy commonality.  *Dukes*, 131 S. Ct. at 2556.

*Marilley v. Bonham*, 2012 WL 851182, at *4 (N.D. Cal. Mar. 13, 2012).  The requirement of commonality is satisfied by Plaintiffs' allegations.

Among the common questions raised is whether the Defendant violated the implied covenant of good faith and fair dealing by way of its uniform withholding practices.  (Dkt. No. 143 at 20-21.)  This

1   subsumes the common question of whether Plaintiffs provided compensable value by way of allowing

2   the display of ads on their web properties, and it entails the common question of whether Google

3   demonstrated bad faith in its procedures relating to the withholding of 100% of unpaid amounts upon

4   termination of publisher accounts.  The Ninth Circuit cited a list of common questions including ones

5   similar to these in *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005), where it found

6   commonality.  *See id.* at 962 (citing simple questions of fact and law).  Likewise here, the requirement of

7   commonality is met.

8                                    **c.      Typicality**

9           Typicality is met as well.  In fact, "[c]ommonality and typicality are closely related and a finding

10   of one will generally satisfy the other."  *Newman v. CheckRite Cal., Inc.*, 1996 WL 1118092, at *5 (E.D. Cal.

11   Aug. 2, 1996) (citation omitted).

12           Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical
        of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3) "The purpose of the
13        typicality requirement is to assure that the interest of the named representative aligns
        with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 408 (9th Cir.
14        1992).

15   *Burden*, 2013 WL 1190634, at *5.  Here, the interests of the named Plaintiffs and Settlement Class

16   Members align neatly.

17           Plaintiffs advanced the same claims as members of the Settlement Class they seek to represent,

18   and they must satisfy the same legal elements that Settlement Class Members must satisfy, including with

19   respect to their breach-of-the-implied covenant claims, as well as with respect to the liquidated-damages,

20   breach-of-contract, and UCL claims that the Court declined to certify for litigation-class treatment.  (*See*

21   Dkt No. 92 ¶¶ 114-117; Dkt. 143 at 13-14.)  They share identical legal theories with putative Settlement

22   Class Members, based on allegations that the Defendant violated the law by way of its withholding

23   practices.  (*Id.*)  Their injuries are the same, too; like others in the proposed class, Google withheld 100%

24   of unpaid amounts from them in connection with termination of their publisher accounts.  (Dkt. No. 92

25   ¶¶ 61, 72, 81, 94.)  Yet as Plaintiffs maintained, at the least they all were entitled to be paid for displaying

26   ads not directly affected by their supposed breaches, Dkt. No. 103 at 6-7; further, Plaintiffs claimed that

27   Google waived any right to make granular cuts at this late date, such that Plaintiffs were entitled in the

28   first instance to recover all unpaid amounts.  (Dkt. No. 143 at 20.)  Thus, Rule 23(a)(3) is satisfied.

#### d.     Adequacy

It also must be determined whether Plaintiffs "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). Plaintiffs meet this requirement as well.

First, Plaintiffs' claims are co-extensive with members of the putative class. All have an identical interest in establishing the Defendant's liability, and each has been injured in the same manner. All assert the same legal claims, and all seek identical relief. There is no conflict among them. Also, each Plaintiff has agreed to assume the responsibility of representing the Settlement Class. And all have acted accordingly, including by way of the means described above. (*See* Lopez Decl. ¶ 12.)

Second, as discussed and referenced in the declaration of counsel and as illustrated in the attached resumes, Plaintiffs' lawyers have extensive experience and expertise in prosecuting complex class actions, including consumer and commercial actions. (*Id.* ¶ 15 and Ex. C.) Counsel have pursued this litigation vigorously, and they remain committed to advancing and protecting the common interests of all members of the Settlement Class. (Lopez Decl. ¶¶ 2-3, 15.)

Rule 23(a)(4) is satisfied.

Finally, the Court has previously appointed Plaintiffs' lawyers as Class Counsel for the litigation class. Plaintiffs respectfully seek their re-appointment as Class Counsel for the Settlement Class

### 2.     Common questions predominate, and a class action is the superior method to adjudicate Settlement Class Member claims.

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied. Here, Rule 23(b)(3) is satisfied because questions common to Settlement Class Members predominate over questions affecting only individual Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of Settlement Class Members' claims. Furthermore, the Defendant does not oppose provisional Settlement Class certification for the purpose of giving effect to the Parties' Settlement. When addressing the

propriety of class certification, the Court should consider the fact that, in light of the Settlement, trial will now be unnecessary, such that the manageability of the class for trial purposes is not relevant to the Court's inquiry.  *E.g.*, *Hanlon*, 150 F.3d at 1021-23.

### a.    Common questions predominate.

Rule 23(b)(3) requires an examination of whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members …."  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," class treatment is justified.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Even one issue of central importance to the case and common to all class member claims can cause class litigation to be appropriate.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).  Here, common questions predominate.

Common questions include whether the Defendant had uniform policies and practices as alleged; whether Plaintiffs and putative class members gave compensable value by displaying ads on their web properties; and whether the Defendant breached the implied covenant of good faith and fair dealing, or violated other law, by withholding 100% of unpaid amounts in connection with termination.  (*E.g.*, Dkt. No. 234 at 13-14, 27-29.)  (As to questions attendant to claims beyond their certified breach-of-the-implied-covenant claim, Plaintiffs maintained their rights to appeal the denial of class certification, for which they obtained value in this Settlement.)  These common questions predominate over any issues affecting only individuals.

Furthermore, there are no variations in state law that might swamp common questions.  The same California choice-of-law provision inheres in both the earlier- and latter-effective contracts applicable to U.S., U.S. territory, and Canadian publishers.  (Dkt. No. 92. ¶ 26 and Exs. A, ¶ 14, and B, ¶ 17.)  Accordingly, Google has never contested the application of California law to all their claims.

Predominance is established.

1

2

### b. Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class.

3

As for the requirement in Fed. R. Civ. P. 23(b)(3) that the class action be "superior to other

4

available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the

5

fair and efficient resolution of all putative Settlement Class Members' claims.  Given that Plaintiffs are

6

aware of up to 190,000 Settlement Class Members sharing common issues, the class device is the most

7

efficient and fair means of adjudicating all these many claims.  Class treatment is certainly far superior to

8

tens of thousands of individual suits or piecemeal litigation; in this matter, it will fulfill its function of

9

conserving scarce judicial resources and promoting the consistency of adjudication.  *See*, *e.g.*, Class Cert.

10

Order at 30-31 (citing *In re Apple In-App Purchase Litig.*, 2013 WL 1856713, at *4 (N.D. Cal. May 2,

11

2013)).  Accordingly, the superiority aspect of Rule 23(b)(3) is readily met.

12

Also, the presence of U.S. territory and Canadian members of the proposed Settlement Class

13

should give the Court no concerns.  The contracts applicable to their accounts contain the same

14

California law and venue provisions as the U.S. contracts.  Also, Google has never opposed their

15

membership in a class.

16

Google did oppose the inclusion of non-Canadian foreign publishers because of purported res

17

judicata concerns, and the Court, citing these concerns, declined to include foreign class members in the

18

certified class, Class Cert. Order at 31-33, but Google has agreed to include Canadians (and U.S. territory

19

ex-publishers) in the Settlement Class.  *See, e.g., Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 8679353, at

20

*13 (D. Haw. Jan. 8, 2016) ("Federal courts have previously certified classes with Canadian members,

21

finding that Canadian courts 'would more likely than not recognize and give preclusive effect to a

22

judgment rendered' by a U.S. court.") (citations omitted).

23

### C.   The Court should approve the proposed forms and methods of class Notice.

24

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members

25

who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . .'"  MANUAL FOR

26

COMPLEX LITIG. (FOURTH) § 21.312, at 293.  In order to protect the rights of absent Settlement Class

27

Members, the Court must direct the best notice practicable to them.  *See, e.g., Phillips Petroleum Co. v. Shutts*,

28

472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

1    "Rule 23 … requires that individual notice in [opt-out] actions be given to class members who

2    can be identified through reasonable efforts.  Those who cannot be readily identified must be given the

3    'best notice practicable under the circumstances.'"  MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.311,

4    at 287.  Here Plaintiffs' notice expert has devised an intensive and best-notice-practicable Notice

5    program that entails direct email notice to Settlement Class Members; Supplemental Postcard Notice; a

6    Settlement Website; and a press release. (*See* Garr Decl. ¶ 15 & Exs. C-E; Lopez Decl. Ex. A, ¶¶ 4.1-4.6.)

7    Also, the Settlement Agreement contemplates a Supplemental Digital Notice campaign in the

8    unlikely event that the reach appears to be below 72% of Settlement Class members.  (Lopez Decl. Ex.

9    A, ¶ 4.6.)  Notice by publication is an acceptable method of providing notice where the class size is as

10   large as it is here.  *E.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (citing MANUAL FOR

11   COMPLEX LITIG. § 21.311); *In re HP Laser Printer Litig.*, 2011 WL 3861703, at *3 (C.D. Cal. Aug. 31,

12   2011) (approving a notice plan utilizing direct email notice, publication of the summary notice in print

13   publications, banner advertisements on websites, and "providing a link on both notice forms to a

14   settlement website").

15   As for notice generally, it should: inform settlement class members of the "essential terms" of an

16   agreement, including the benefits it provides; advise of other pertinent information, including as to

17   attorneys' fees; and describe pertinent procedural matters.  MANUAL FOR COMPLEX LITIG. (FOURTH)

18   § 21.312, at 295 (listing elements).  Here, the Notice forms attached to the Settlement Administrator's

19   declaration satisfy these requirements.  (*See* Garr Decl. Exs. C and D (short- and long-form notices).)

20   The Notice program and documents are designed to afford notice in a comprehensive and

21   reasonable manner.  Plaintiffs respectfully ask the Court to approve them.

22   **D.    The Court should set a schedule toward final approval of the Parties' Settlement.**

23   Finally, if the Court grants preliminary approval and provisionally certifies the Settlement Class,

24   respectfully, the Court should also set the schedule set forth above and in Plaintiffs' proposed order.

25   **V.    CONCLUSION**

26   For all of the foregoing reasons, Plaintiffs ask respectfully that the Court grant preliminary

27   approval of the Parties' Settlement, conditionally certify the proposed Settlement Class, and grant the

28   other relief requested in this motion.

DATED:  March 1, 2018

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____/s/ Steve W. Berman_____
Steve W. Berman
Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Plaintiffs, the Certified Class, and the Proposed
Settlement Class*