Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>                                        Defendant. | No. 5:14-cv-02329-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES, AND COSTS AND EXPENSES**<br><br>Date:        October 17, 2018<br>Time:       9:00 a.m.<br>Judge:      Hon. Beth Labson Freeman<br>Dept.:       Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ....................................................1

III.  STATEMENT OF RELEVANT FACTS ..............................................................1

     A.    Introduction ..............................................................................................1

     B.    Background facts ......................................................................................2

     C.    Plaintiffs' claims .....................................................................................2

     D.    Proceedings to-date .................................................................................3

     E.    The Settlement ........................................................................................5

          1.    Mediation ....................................................................................5

          2.    Relief to the Settlement Class ....................................................6

              a.    Summary of benefits to class members ..........................6

              b.    Service awards and attorneys' fees, costs, and expenses........6

     F.    Preliminary approval of the settlement....................................................7

IV.  ARGUMENT ........................................................................................................7

     A.    Applicable standards for attorneys' fee request .........................................8

     B.    The Court should award 25% of the gross settlement fund as attorneys' fees..............10

          1.    Results achieved.........................................................................10

          2.    The risk of litigation..................................................................11

          3.    Skill required and quality of the work performed .....................11

          4.    Contingent nature of the fee and the financial burden ..............12

          5.    Awards made in similar cases ....................................................13

     C.    Under a lodestar cross-check, plaintiffs' attorneys' fee request is fair and reasonable..............13

          1.    Counsels' hourly rates are reasonable. ......................................14

          2.    The number of hours that counsel has worked, and will need to work, is reasonable. ..............17

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERV.
AWARDS AND ATTY FEES, COSTS, AND EXPENSES`
Case No.: 5:14-cv-02329-BLF

- i -

3.   Counsels' fees are reasonable pursuant to the *Kerr* factors subsumed in the lodestar analysis. ...................................................................19

(1)   Novelty and complexity of the litigation ...................................19

(2)   Skill and experience of class counsel and quality of representation .........................................................................19

(3)   Favorability of result ...............................................................20

4.   The presence of a modest multiplier further supports the reasonableness of plaintiffs' fee request.........................................20

D.   Costs and expenses ....................................................................................20

E.   The class representatives each should receive $5,000 incentive awards.........................21

V.   CONCLUSION ................................................................................................23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERV.
AWARDS AND ATTY FEES, COSTS, AND EXPENSES`
Case No.: 5:14-cv-02329-BLF

- ii -

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Ackerman v. W. Elec. Co.*,
   643 F. Supp. 836 (N.D. Cal. 1986) .......................................................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................... 13, 19

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................................... 14

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ................................................................................. 14

*Camberis v. Ocwen Loan Serv. LLC*,
   2015 WL 7995534 (N.D. Cal. Dec. 7, 2015) ......................................................... 22

*Deatrick v. Securitas Sec. Servs. USA, Inc.*,
   2016 WL 5394016 (N.D. Cal. Sept. 27, 2016) ........................................................ 8

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................*passim*

*Ferrington v. McAfee, Inc.*,
   2013 WL 12308314 (N.D. Cal. July 22, 2013) ....................................................... 8

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
   307 F.3d 997 (9th Cir. 2002) ................................................................................. 14

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ............................................................................... 15

*Fraley v. Facebook, Inc.*,
   2013 WL 4516806 (N.D. Cal. Aug. 26, 2013) ...................................................... 13

*G.F. v. Contra Costa Cty.*,
   2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ...................................................... 15

*Grove v. Wells Fargo Fin. Cal., Inc.*,
   606 F.3d 577 (9th Cir. 2010) ................................................................................. 21

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................. 19, 20

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................... 23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERV.
AWARDS AND ATTY FEES, COSTS, AND EXPENSES`
Case No.: 5:14-cv-02329-BLF

\- iii -

*Kerr v. Screen Extras Guild, Inc.*,
     526 F.2d 67 (9th Cir. 1975) .......................................................................... 13, 19

*Laffitte v. Robert Half Int'l Inc.*,
     376 P.3d 672 (2016) ........................................................................................ 8, 9

*Messineo v. Ocwen Loan Servicing, LLC*,
     2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ......................................................... 9

*Missouri v. Jenkins*,
     491 U.S. 274 (1989) ............................................................................................. 21

*In re Netflix Privacy Litig.*,
     2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................................................... 13

*In re Omnivision Techs., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................... 19, 21

*In re Online DVD-Rental Antitrust Litig.*,
     779 F.3d 934 (9th Cir. 2015) .............................................................................. 22

*People Who Care v. Rockford Bd. of Educ.*,
     90 F.3d 1307 (7th Cir. 1996) .............................................................................. 14

*Perkins v. LinkedIn Corp.*,
     2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ......................................... 9, 11, 12, 13

*Petersen v. CJ Am., Inc.*,
     2016 WL 5719823 (S.D. Cal. Sept. 30, 2016) ............................................... 8, 9, 14

*Richardson v. THD At-Home Serv., Inc.*,
     2016 WL 1366952 (E.D. Cal. Apr. 6, 2016) ........................................................ 10

*Rodriguez v. W. Publ'g Corp.*,
     563 F.3d 948 (2009) ............................................................................................ 21

*Singer v. Becton Dickinson & Co.*,
     2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................................ 22

*Spann v. J.C. Penney Corp.*,
     211 F. Supp. 3d 1244 (S.D. Cal. 2016) ................................................................. 9

*Stuart v. RadioShack*,
     2010 WL 3155645 (N.D. Cal. Aug 9, 2010) ........................................................ 15

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
     896 F.2d 403 (9th Cir. 1990) .............................................................................. 14

*Vizcaino v. Microsoft Corp.*,
     290 F.3d 1043 (9th Cir. 2002) .............................................................................. 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................14

*Weeks v. Kellogg Co.*,
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ......................................................22

*Williams v. SuperShuttle Int'l Inc.*,
    2015 WL 685994 (N.D. Cal. Feb. 12, 2015) .........................................................20

*Wilson v. Airborne, Inc.*,
    2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ......................................................22

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)..........................................................22

1

**NOTE FOR MOTION AND MOTION**

2      PLEASE NOTE that on October 17, 2018, at 9:00 a.m., or as soon thereafter as may be heard in

3   the courtroom of the Hon. Beth Labson Freeman, U.S. District Court for the Northern District of

4   California, San Jose Division, plaintiffs Free Range Content, Inc. (FRC), Coconut Island Software, Inc.

5   (CIS), Taylor Chose, and Matthew Simpson, pursuant to Fed. R. Civ. P. 23(h) and the parties' settlement

6   agreement, will and do hereby move for an order:

7      1.      Granting to each of them, as named plaintiffs, a $5,000 service award;

8      2.      Granting plaintiffs' request for a reasonable attorneys' fee in the sum of $2.75 million,

9   which is 25% of the gross settlement sum in this matter; and

10     3.      Granting plaintiffs' request for reimbursement of costs and expenses in the sum of

11  $116,045.

12     This motion is based on the declaration of each plaintiff; the declarations of their lawyers,

13  including exhibits; the records and files in this matter; the argument below; and oral argument at the

14  upcoming hearing.

15                    **I.     SUMMARY OF ARGUMENT**

16     Plaintiffs, former publishers in Google LLC's AdSense program who had their unpaid earnings

17  withheld when Google disabled their accounts, move for service awards and reasonable attorneys' fees,

18  costs, and expenses.  As plaintiffs will demonstrate, their requests are justified under the facts of this

19  case and applicable law.

20               **II.     STATEMENT OF ISSUES TO BE DECIDED**

21     Should the Court grant plaintiffs' request for service awards in the sum of $5,000 per named

22  plaintiff, reasonable attorneys' fees in the sum of $2.75 million, and reasonable costs and expenses in the

23  sum of $116,045?

24                **III.     STATEMENT OF RELEVANT FACTS**

25  **A.      Introduction**

26     FRC filed this suit on May 20, 2014. (Dkt. No. 1.)  FRC thought it was wrong for Google, the

27  champion of information, to withhold all unpaid earnings when it terminated publisher accounts for

28

purported breaches of contract, rather than making more granular, evidence-based cuts when and if warranted.  Hagens Berman agreed to help.

But FRC and its counsel were under no illusion that this case would be easy.  FRC and later its co-plaintiffs, CIS, Ms. Chose, and Mr. Simpson, would face one of the world's largest companies. What's more, they would face a litigation opponent that, with the aid of highly skilled counsel, contended with equal vigor that its contracts allowed it to behave as it did, and that its policies and practices were thoroughly lawful and commercially appropriate.

So began and continued this dispute.  Counsel is proud of their clients for having taken on this battle on behalf of many thousands of former publishers.  Through the hard work and dedication of all concerned, the parties were able to reach a settlement that they consider to be reasonable given the law, facts, and circumstances.  Because the four plaintiffs stepped up and stayed the course for over four years now, millions of dollars will be paid to publishers who faced the actions of which they complained.

**B.      Background facts**

Google sells Internet advertising via its AdWords program, among others.  One way Google arranges for the display of such advertising is via its AdSense program.  Google invites owners and operators of web properties to join the AdSense program.  If Google approves an application to participate, these persons or companies become AdSense publishers.  They can then use their inventory of space to display ads that Google sends to them for that purpose.

Participation in AdSense is subject to localized contracts.  Members of the proposed Settlement Class entered into terms for the U.S., its territories, or Canada.  These contracts were largely identical across localities at any point in time that is pertinent to this case.  During the relevant period, there were two contracts in effect: (a) terms and conditions applicable at the inception of the class period, May 20, 2010, through April 22, 2013 (earlier-effective contract); and (b) terms of service applicable from April 23, 2013, through the present (latter-effective contract).  Each of these localized contracts contained California choice-of-law and venue provisions.  (*E.g.,* Dkt. No. 92, Exs. A-C.)

**C.      Plaintiffs' claims**

Three of the plaintiffs were AdSense publishers subject to the U.S. AdSense terms, and the fourth, Mr. Simpson, was subject to the localized terms for Canada.  (*E.g.,* Dkt. No. 92 ¶¶ 9, 17.)  Each

displayed ads that Google pushed to their websites.  (*E.g.*, *id.* ¶¶ 51, 66, 76, 88.)  Google terminated each of their accounts, allegedly for breach of contract.  (*E.g.*, *id.* ¶¶ 58, 70, 74, 79, 86, 91.)  None, however, had done anything knowingly to violate Google's contract, and all had endeavored to be good and loyal participants.  (*See generally* Dkt. Nos. 214, 215, 216, 217.)  In their view, Google's notices of termination told them little of substance as to why Google had disabled their accounts.  (*E.g.*, Dkt. No. 92 ¶¶ 58, 70, 79, 91.)

All plaintiffs had unpaid amounts in their AdSense accounts at termination, which Google withheld in their entireties.  (*E.g.*, *id.* ¶¶ 61, 72, 81, 94.)  Plaintiffs contended that Google maintained a policy and practice of zeroing-out publisher accounts—*i.e.*, withholding 100% of accrued but unpaid earnings—on termination for supposed breach of contract.  (*E.g.*, *id.* ¶¶ 30, 34.)  Plaintiffs contended that Google's policy and practice were uniform (though Google contended that in a small number of instances, it did not zero-out accounts, and that ultimately, it paid certain publishers some or all of their unpaid amounts).  (*E.g.*, Dkt. No. 193 at 6-7.)  Google claimed the contractual right to withhold all such unpaid amounts.  (*E.g.*, Dkt. No. 94 at 10-13.)  Google also repeatedly asserted that it did not keep the money it withheld—that instead it attempted to credit back to advertisers all amounts for ads displayed by the terminated publisher over the prior 60 days, including its (Google's) revenue share.  (*E.g.*, Dkt. No. 193 at 6.)  In fact, it asserted that in the aggregate over the proposed litigation class period, it credited to advertisers more than the total of what it had allegedly withheld from publishers plus what it had been paid in connection with those ads.  (*Id.*)

Plaintiffs challenged Google's withholding practice on behalf of themselves and similarly situated former publishers.  (*E.g.*, Dkt. No. 92 ¶¶ 114-185.)  Plaintiffs claimed that Google's actions violated California law as to liquidated damages and that Google had breached its contracts to pay plaintiffs and others what was due them for displaying ads.  (*E.g.*, *id.* ¶¶ 125-146.)  They also claimed that Google's actions constituted breach of the implied covenant of good faith and fair dealing, and they asserted that Google had violated California's Unfair Competition Law.  (*E.g.*, *id.* ¶¶ 147-177.)  Finally, plaintiffs alleged unjust enrichment.  (*E.g.*, *id.* ¶¶ 158-163.)

**D.     Proceedings to-date**

Counsel performed much necessary work on behalf of plaintiffs and the proposed class.

1        After much investigation, research, and drafting on the part of its counsel, FRC filed its

2   complaint on May 20, 2014.  (Dkt. No. 1.)  Google moved to dismiss all of plaintiffs' claims on August

3   20, 2014.  (Dkt. No. 21.)

4        Following plaintiffs' amendment of their complaint on September 10, 2014, Dkt. No. 27, Google

5   moved again to dismiss all their claims, with a voluminous request for judicial notice, this time on

6   October 15, 2014, Dkt. Nos. 38-41.  Plaintiffs responded.  (Dkt. Nos. 43-44.)  After a hearing on

7   February 12, 2015, the Court dismissed all of plaintiffs' claims, with leave to amend as to most.  (Dkt.

8   Nos. 66, 68.)  Plaintiff filed its second amended complaint on March 5, 2014.  (Dkt. Nos. 71, 73.)

9        Plaintiffs then moved for leave to file a motion for reconsideration of dismissal of their

10  liquidated-damages-based claim.  (Dkt. No. 75.)  The Court granted their motion, Dkt. No. 81, and

11  plaintiffs filed their reconsideration motion on April 30, 2015, Dkt. No. 84.  After full briefing and a

12  hearing, the Court granted plaintiffs' motion for reconsideration on August 25, 2015.  (Dkt. No. 91.)

13       Next, on September 15, 2015, plaintiffs filed their third amended complaint, which included an

14  amended liquidated-damages-based claim.  (Dkt. No. 92.)  Again Google moved to dismiss, with another

15  request for judicial notice and voluminous supporting papers.  (Dkt. No. 94-95.)  Plaintiffs and their

16  counsel responded.  (Dkt. No. 103.)  After full briefing and a hearing on February 19, 2016, Dkt. No.

17  113, the Court on May 13, 2016, granted in part and denied in part Google's motion to dismiss, Dkt. No.

18  116.  Google answered plaintiffs' third amended complaint on June 3, 2016.  (Dkt. No. 120.)

19       Discovery ensued and continued through (and in some regards past) the date the parties agreed

20  to a settlement-in-principle.  (Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for

21  Preliminary Approval (Dkt. No. 246) (Lopez Prelim. Appr. Decl.), ¶ 5.) The parties' efforts included 169

22  requests for production and numerous interrogatories from the plaintiffs; numerous requests for

23  production and interrogatories from Google; the parties' answers, objections, and document production

24  in response to these requests, with Google producing tens of thousands of documents, totaling over

25  96,000 pages, to the plaintiffs, which included myriad details concerning the inner-workings of the

26  AdSense program and Google's fraud-detection practices; depositions of the parties, including a 30(b)(6)

27  deposition of Google for which it produced three designees; consultation with experts and, in

28  connection with plaintiffs' motion for class certification, depositions of each side's consultant; requests

1   for admission from both sides, and their responses; and many, many calls and exchanges to discuss and

2   work-out various discovery-related disputes.  (*Id.* ¶ 3.)

3          Following much intensive work on discovery, including the review and analysis of large volumes

4   of highly-detailed, dense, and technical material produced by Google, plaintiffs moved on March 10,

5   2017, for class certification.  (Dkt. Nos. 140-172.)  Because of the highly confidential designations

6   attached to many of the documents submitted by both sides, motions to seal and follow-up filings were

7   made by both sides.

8          On April 28, 2017, Google opposed plaintiffs' motion for class certification wholeheartedly,

9   including by way of (a) two dense client declarations with many exhibits and (b) a technical expert

10  declaration.  (Dkt. Nos. 175-197.)  After an extensive reply on June 2, 2017, which included plaintiff

11  declarations and more exhibits, and a hearing on June 15, 2017, Dkt. Nos. 198-204, 209, 213-217, the

12  Court issued its decision granting in part and denying in part plaintiffs' motion, Dkt. Nos. 224, 234.

13  By way of its order, the Court certified a class of certain U.S. publishers.  (Dkt. No. 234 (Class Cert.

14  Order) at 33-34.) The question certified was based on plaintiffs' claim for breach of the implied covenant

15  of good faith and fair dealing.  (*Id.* at 34.)

16         The parties continued with discovery and prepared for summary judgment and trial, the latter of

17  which was scheduled for March 2018.  (Lopez Prelim. Appr. Decl. ¶ 5; Dkt. Nos. 226, 228-231, 115.)

18  **E.     The Settlement**

19         **1.      Mediation**

20         On May 15, 2017, after Google filed its opposition to plaintiffs' motion for class certification,

21  and following the exchange of mediation letters and voluminous exhibits, the parties engaged in an in-

22  person mediation session with the Hon. Layn Phillips (U.S. Dist. J. Ret.) and his colleague Greg

23  Lindstrom in Newport Beach, California.  (Lopez Prelim. Appr. Decl. ¶ 4.)  The parties did not settle

24  that day.  (*Id.*)

25         After the Court issued its class-certification decision, the parties engaged in further discussions

26  with and via Mr. Lindstrom to ascertain if a settlement could be reached.  (*Id.* ¶ 5.)  But the plaintiffs and

27  their counsel did not abate discovery and preparations for motions for summary judgment and trial.  (*Id.*)

28

On September 14, 2017, following many exchanges with and through Mr. Lindstrom, including writings by the plaintiffs, the parties agreed to hear a mediator's recommendation.  (*Id.* ¶ 6.)  After deliberation, the plaintiffs (and Google) accepted this recommendation in principle.  (*Id.*)

### 2. Relief to the Settlement Class

#### a. Summary of benefits to class members

Plaintiffs' counsel, on behalf of plaintiffs and the proposed settlement class, negotiated and worked with Google's counsel to come to the terms of settlement now before this Court.

The parties' agreement provides for a common fund of $11 million in non-reversionary monetary relief.  (Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses (Lopez Decl.) Ex. A, ¶¶ 1.44, 2.1-2.2 thereto.)  Settlement class members include former publishers subject to Google's localized terms and conditions for the U.S. and Canada.  As a result of intense negotiations, the settlement provides benefits even to those publishers who were similarly situated but not covered by the Court's class-certification order.

The settlement agreement provides that proceeds payable to the settlement class are net of: the cost of notice and administration; attorneys' fees, costs, and expenses (if approved); and service awards to the four class representatives.  (Lopez Decl. Ex. A, ¶¶ 1.21.)  Plaintiffs and their counsel, whom the Court appointed as class counsel for the certified litigation class, and as class counsel for the settlement class provisionally approved by the Court, endorse the value and reasonableness of this proposed settlement.  (Lopez Decl. ¶ 2.)

#### b. Service awards and attorneys' fees, costs, and expenses

The parties also have agreed that plaintiffs may apply for service awards of no more than $5,000 for each of the four plaintiffs.  (Lopez Decl. Ex. A, ¶ 9.2.)  As set forth in their supporting declarations, plaintiffs have assisted counsel with the preparation of complaints in this matter; worked with counsel on initial disclosures; consulted with counsel as requested, and on their own initiative, throughout the pendency of this case; monitored the proceedings on their own behalf and on behalf of the putative class; worked with counsel to prepare, review, and submit declarations in support of their claims and those of the proposed settlement class; answered interrogatories and responded to requests for production, including by gathering and producing documents, in consultation with counsel; answered

1    requests for admission (three of the four); and prepared for and sat for depositions.  (*See* Declaration of

2    John Pettitt in Support of Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and

3    Expenses (Pettitt Decl.), ¶ 5; Declaration of Michael Clark in Support of Plaintiffs' Motion for Service

4    Awards, Attorneys' Fees, and Costs and Expenses (Clark Decl.), ¶ 5; Declaration of Taylor Chose in

5    Support of Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses (Chose

6    Decl.), ¶ 5; Declaration of Matthew Simpson in Support of Plaintiffs' Motion for Service Awards,

7    Attorneys' Fees, and Costs and Expenses (Simpson Decl.), ¶ 5; *see also* Lopez Decl. ¶ 3).)  They also have

8    experienced various detriments due to their service, as explained below.  (*See* Sec. IV.E, *infra*.)

9         As for plaintiffs' attorneys' fees, costs, and expenses, the parties addressed the recovery of these

10   following negotiation of the substantive terms of the proposed class settlement.  (Lopez Prelim. Appr.

11   Decl. ¶ 16.)  The parties then agreed that class counsel could request (and distribute) attorneys fees,

12   costs, and expenses payable from the $11 million gross settlement fund.  (Lopez Decl. Ex. A, ¶ 8.1.)

13   **F.      Preliminary approval of the settlement**

14        On April 27, 2018, the Court held a hearing on plaintiffs' motion for preliminary approval of the

15   proposed settlement.  At the hearing, the Court asked the parties to consider modifying certain terms of

16   the settlement agreement and notice documents.  After conferring, the parties agreed to make the

17   requested modifications and notified the Court that they had done so on May 4, 2018.  (Dkt. No. 253.)

18        Following receipt of the parties' notification, the Court granted preliminary approval on May 7,

19   2018.  (Dkt. No. 254.)  The Court also appointed plaintiffs as class representatives for the proposed

20   settlement class and Hagens Berman as class counsel for that proposed class.  (*Id.*)

21                               **IV.      ARGUMENT**

22        The settlement agreement provides that plaintiffs would make their request for service awards,

23   fees, costs, and expenses by motion.  (Lopez Decl. Ex. A, ¶ 8.1.)  Plaintiffs now request service awards

24   in the amount of $5,000 per named plaintiffs; a reasonable attorneys' fee at the rate of 25% of the gross

25   settlement fund, or $2.75 million.  *See, e.g.*, Fed. R. Civ. P. 23(h) (permitting such awards when authorized

26   by law or the parties' agreement in certified class actions).  They also request reimbursement of costs and

27   expenses in the sum of $116,045.

28

1    Plaintiffs make these requests well in advance of the deadline for objections and exclusions,

2    which is September 4, 2018.

3    **A.      Applicable standards for attorneys' fee request**

4    Because this case was brought pursuant to CAFA diversity jurisdiction, and because the

5    underlying contract as well as the settlement agreement contain broad California law provisions (*see* Dkt.

6    No. 92 Exs. A-C, ¶¶ 14, 17, 14, respectively; Lopez Decl. Ex. A, ¶ 10.5), California law applies to

7    plaintiffs' request for attorneys' fees.  *E.g.*, *Petersen v. CJ Am., Inc.*, 2016 WL 5719823, at *1 (S.D. Cal.

8    Sept. 30, 2016) (citations omitted); *accord, e.g.*, *Ferrington v. McAfee, Inc.*, 2013 WL 12308314, at *2 (N.D.

9    Cal. July 22, 2013).

10    This is a common-fund case.  Plaintiffs seek an attorneys' fee award of 25% of the $11 million

11    settlement fund, *i.e.*, $2.75 million.  (*See* Lopez Decl. Ex. A, ¶ 8.1 ("Class Counsel will file a motion with

12    the Court seeking a portion of the Settlement Fund as payment of their reasonable attorneys' fees, as

13    well as reimbursement of actual costs and expenses, including experts and consultants, incurred in

14    connection with prosecuting this Action . . . .").)

15    The California Supreme Court has recently and emphatically clarified that the percentage-of-fund

16    method is an available, venerable, and desirable way under California law to determine fee awards in

17    common-fund cases such as this one. *Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 686 (2016) ("The

18    recognized advantages of the percentage method—including relative ease of calculation, alignment of

19    incentives between counsel and the class, a better approximation of market conditions in a contingency

20    case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily

21    prolonging the litigation . . . —convince us the percentage method is a valuable tool that should not be

22    denied our trial courts.") (citations omitted).

23    Likewise, in situations where state law does not apply to a fee request, the Ninth Circuit has

24    made plain that district courts have the discretion in common-fund cases "to choose either the

25    percentage-of-the-fund or the lodestar method" for fee awards.  *E.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d

26    1043, 1047 (9th Cir. 2002); *see also, e.g.*, *Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016, at *6

27    (N.D. Cal. Sept. 27, 2016); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016)

28    ("Under the percentage of the fund method, the court may award class counsel a given percentage of the

common fund recovered for the class.") (citing *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

In fact, the percentage method is especially suitable here, given the easily quantified, non-reversionary common fund provided by the settlement.  *See, e.g.*, *Deatrick*, 2016 WL 5394016, at *6 ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases. . . . Because the benefit to the class is easily quantified in common-fund settlements, courts can award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.") (citations and internal quotations omitted)); *Destefano*, 2016 WL 537946, at *16 (citations omitted); *Laffitte*, 376 P.3d at 686–87 (approving the use of the percentage method in the "true common fund" case before it).

California has no specific, longstanding percentage benchmark like the Ninth Circuit's.  But California courts have recognized that 25% and even percentages considerably above that figure are well within the range of reasonableness.  *E.g.*, *Peterson*, 2016 WL 5719823, at *1 ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent.") (citation omitted); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262-63 (S.D. Cal. 2016) (same, and citing additional cases).  As for common-fund cases where state law is not the governing authority, the benchmark award is 25 percent of the recovery obtained.  *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *8 (N.D. Cal. Feb. 24, 2017) ("Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.") (citations omitted) (alteration in original).

When the percentage-of-fund method is chosen, whether pursuant to California law or Ninth Circuit precedent, the Court may, but is not required to, use a lodestar cross-check to further examine the reasonableness of the requested award.  *See, e.g.*, *Laffitte*, 376 P.3d at 687; *Perkins v. LinkedIn Corp.*, 2016 WL 613255, at *13 (N.D. Cal. Feb. 16, 2016) (citing *Vizcaino*, 290 F.3d at 1050-51).  However, a lodestar cross-check normally does not involve inspecting and scrutinizing each hour attested-to by counsel.  *E.g.*, *Laffitte*, 376 P.3d at 687–88 ("With regard to expenditure of judicial resources, we note that trial courts conducting lodestar cross-checks have generally not been required to closely scrutinize

each claimed attorney-hour, but have instead used information on attorney time spent to 'focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.'") (citations omitted).

**B.      The Court should award 25% of the gross settlement fund as attorneys' fees.**

As stated above, plaintiffs seek an award of 25% of the $11 million gross settlement fund, *i.e.*, $2.75 million.

"As there is no definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach, the Court [may] consider[] the reasonableness of the percentage request in light of the factors endorsed by the Ninth Circuit, with a 25% award as a starting point." *Richardson v. THD At-Home Serv., Inc.*, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016).

The Ninth Circuit factors are as follows:

> In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work performed; (4) the contingent nature of the fee and the financial burden; and (5) the awards made in similar cases.

*Destefano*, 2016 WL 537946, at *17 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1047). Plaintiffs will now address these factors.

**1.      Results achieved**

The results achieved for the class are the most significant factor to be considered as the Court considers whether a fee request is fair and reasonable. *Id.* (citations omitted). Here, after much investigation, research, and analysis; discovery; motions practice, including two fully briefed motions to dismiss, an important motion for reconsideration, and a motion for class certification; an in-person mediation session helmed by a well-respected retired federal judge, and several follow up discussions, plaintiffs, facing a determined opponent, achieved an $11 million cash settlement for the Class. Plaintiffs' hard-won settlement makes millions of dollars available for distribution to class members who otherwise would not have had the ability to wage a case on their own.

**2.      The risk of litigation**

The foregoing results were obtained notwithstanding the significant legal odds captured by the Court's orders on Google's motion to dismiss.  (*See generally* Order Granting Motion to Dismiss with Leave to Amend (Dkt. No. 66); Order Granting in Part and Denying in Part Motion to Dismiss Third Amended Complaint (Dkt. No. 116).)  Plaintiffs and their experienced counsel engaged in settlement discussions after having undertaken much discovery beforehand.  The Court's decisions on Google's motions to dismiss provided further guidance to add to their careful analysis of the risks, as well as the potential benefits of going forward with litigation.

Moreover, Google promised to continue to contest this case vigorously—a consideration not to be taken lightly given its staunch defense of this case since its inception.  Even so, it was only after mediation with Judge Phillips (preceded by briefing on both sides), numerous discussions with Google's counsel (aided by further writings), and several follow up conferences with Judge Phillips' colleague, Mr. Lindstrom, that plaintiffs could agree to a settlement they considered reasonable under all the circumstances.  *See, e.g.*, *LinkedIn*, 2016 WL 613255, at *15 (the defendant "contested its liability, and intended to contest class certification as well," such that the risk factors at issue "favor[ed] granting Class Counsel's request" for fees).  Here, while the Court certified a class, plaintiffs had to consider the risk that Google would seek decertification of the class following summary judgment.

**3.      Skill required and quality of the work performed**

As courts have recognized, the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Destefano*, 2016 WL 537946, at *17 (citation omitted).

Counsel in this matter has litigated vigorously against one of the best-financed corporations in the world, in a case involving complicated technical issues.  The skill and efforts of Google's counsel amplified the challenges, time, and effort necessary to prosecute plaintiffs' claims.  Counsel also worked closely with four named plaintiffs, including one from Canada.  Along the way, plaintiffs faced complex motions to dismiss, as well as intensive discovery efforts, both on the prosecuting and defending end of the spectrum.  They also faced an extensive response to their motion for class certification.  These are some of the challenges inherent in this sort of litigation that were referenced by the court in *Destefano*.

1      Yet plaintiffs, with the aid of counsel, prevailed as to several claims against Google's final motion

2  to dismiss, won a critical motion for reconsideration, and prevailed in their efforts to see a class certified.

3  And then class counsel managed complex settlement negotiations with Google, leading to the instant

4  settlement.

5      The qualifications of class counsel and additional counsel are set forth in declarations submitted

6  with this motion.  (*See* Lopez Decl. ¶¶ 4-5 and Ex. B thereto; Declaration of Andrew S. Levetown

7  (Levetown Decl.) Ex. A; Declaration of Mikki Barry (Barry Decl.) Ex. A; Declaration of Urminder

8  Aulakh (Aulakh Decl.) Ex. A; Declaration of Simon Bahne Paris, Esq. in Support of Plaintiffs' Motion

9  for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards (Paris Decl.) Ex.

10  1.)   Where, as here, counsel are highly experienced in class action litigation, shepherded this case

11  through several key motions, have a record of success in this type of litigation, and faced high caliber

12  opposing counsel throughout, this factor, too, "supports the fee award sought."  *Destefano*, 2016 WL

13  537946, at *17 (citations omitted).

14      **4.      Contingent nature of the fee and the financial burden**

15      Further, plaintiffs' counsel undertook this matter on a contingent fee basis, with all of the

16  financial risk that arrangement entailed, including the risk of no recovery.  *See LinkedIn*, 2016 WL

17  613255, at *15.  Given the complexities, difficulties, and size of individual claims, which, unfortunately,

18  made it difficult to engage representation, this case could not have gone forward except as a class action,

19  with lawyers experienced in complex class actions to lead it.  *See Destefano*, 2016 WL 537946, at *18.

20  Courts have observed that "when counsel takes on a contingency fee case and the litigation is protracted,

21  the risk of non-payment after years of litigation justifies a significant fee award."  *Id.* (citation omitted).

22  Here, this case has gone on since May 2014, such that class counsel have accrued significant lodestar,

23  costs, and expenses along the way.  *See id.* (describing a similar situation).

24      "Additionally, Class Counsel was, to an extent, precluded from taking and devoting resources to

25  other cases or potential cases, with no guarantee that the time expended would result in any recovery or

26  recoupment of costs."  *LinkedIn*, 2016 WL 613255, at *15.  "Thus, that Lead Counsel here have

27  significant experience in this field and took on this matter on a contingent basis further indicates that the

28  25 percent benchmark fee request is reasonable."  *See Destefano*, 2016 WL 537946, at *18.

5.       **Awards made in similar cases**

Finally, the 25% award sought here is similar to that awarded in other similar cases involving contract and commercial issues in a web/technology setting.  For example, in *In re Google AdWords Litigation*, a case involving the advertiser side of Google's advertising business, the court, pursuant to California law, recently awarded plaintiffs a fee at 27% of the common fund.  Order Granting Mot. Final Approval of Class Action Settlement 11, *In re Google AdWords Litig.*, No. 5:08-cv-03369-EJD (N.D. Cal. Aug. 7, 2017), Dkt. No. 384.  Plaintiffs there faced counsel led by Mr. Rhodes, as well.  Other such cases saw fee awards at the 25% rate.  *See, e.g.*, *LinkedIn*, 2016 WL 613255, at *14-17 (25% award) (citing *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1128, 1132 (N.D. Cal. 2015) (granting 25% benchmark attorney's fees)); *Fraley v. Facebook, Inc.*, 2013 WL 4516806, at *3 (N.D. Cal. Aug. 26, 2013) (same); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *9-10 (N.D. Cal. Mar. 18, 2013) (same).  This factor, too, supports the fee award sought by plaintiffs.

## C.       Under a lodestar cross-check, plaintiffs' attorneys' fee request is fair and reasonable.

If the Court chooses to perform a lodestar cross-check, which is discretionary, plaintiffs believe that it will confirm that the instant attorneys' fees request is fair and reasonable.  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted).  "[T]he court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 941-42 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975))).  Such factors, which are included in the so-called *Kerr* factors, many of which are "subsumed within the initial calculation of hours reasonably expended at a reasonable rate," only warrant a departure from "the lodestar figure in 'rare and exceptional cases.'"  *Id.* at 942 n.7 (citations omitted).  The *Kerr* factors themselves "largely subsume[]" California factors and are similar to state law factors, *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 860-61 (N.D. Cal. 1986), so plaintiffs discuss the *Kerr* factors below.

1    Here, 25% of the common fund represents a modest multiplier of 1.21 to the lodestar of

2    plaintiffs' counsel.  This multiplier is well within the range of multipliers awarded by California and

3    Ninth Circuit courts.  *E.g.*, *Petersen*, 2016 WL 5719823, at *1 (awarding fees with a 1.12 multiplier, and

4    noting that in *Vizcaino*, 290 F.3d at 1051-54, the Ninth Circuit upheld a 3.65 multiplier and stated that

5    "the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than

6    lodestar") (citation omitted).

7            **1.      Counsels' hourly rates are reasonable.**

8            For purposes of the lodestar method, reasonable hourly rates are determined by "prevailing

9    market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "[T]he relevant

10   community is the forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,

11   979 (9th Cir. 2008).  The rates applied should be in line with those commanded by lawyers of reasonably

12   comparable skill, experience, and reputation.  *Blum*, 465 U.S. at 895 n.11.  Here, plaintiffs' class counsel

13   attorneys have extensive experience in prosecuting complex litigation, including consumer class actions.

14   (*See* Lopez Decl. ¶¶ 4-5 and Ex. B thereto.)  So do plaintiffs' other attorneys.  (*See* Levetown Decl. Ex. A;

15   Aulakh Decl. Ex. A; Barry Decl. Ex. A; Paris Decl. Ex. 1.)

16          Declarations of counsel regarding prevailing fees in the community and rate determinations in

17   other cases "are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps*

18   *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The district court also may consider evidence of

19   counsel's customary hourly rate.  *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.

20   1996) (holding that an attorney's actual billing rate for similar work is presumptively appropriate).  Here,

21   declarations from counsel provide such evidence.  (*See* Lopez Decl. ¶¶ 6-7; *see also* Levetown Decl. ¶ 5;

22   Barry Decl. ¶ 5; Aulakh Decl. ¶ 5; Paris Decl. ¶ 6.)

23          Counsel's declarations set forth their current professional and para-professional rates.  This is so

24   because courts generally apply each biller's current rates for all hours of work performed, regardless of

25   when the work occurred, as a means of compensating for the deferred nature of counsel's work.  *See, e.g.*,

26   *Fischel*, 307 F.3d at 1010; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

27

28

Counsels' rates are reasonable and appropriate for complex, nationwide litigation conducted in the Northern District of California.  For example, in the *In re Google AdWords Litigation* matter, the Court found reasonable "ranges for hourly rates" including "$600 to $900 for partners and 'of counsel' attorneys, $350 to $520 for associates and 'project attorneys,' $350 for a law clerk, [and] $190 to $220 for paralegals." Order Granting Mot. Final Approval of Class Action Settlement, *supra*, at 12.

The hourly rates of the attorneys involved in this case compare favorably to those rates.  And they fall within the range of other rates awarded by other courts in this judicial district.  *See, e.g.*, *Stuart v. RadioShack*, 2010 WL 3155645, at *6-7 (N.D. Cal. Aug 9, 2010) (approving 25% percentage-of-fund award with rates at and exceeding $800 per hour, where average hourly rate was $708); *G.F. v. Contra Costa Cty.*, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015) (referring to Bay Area litigation where rates "of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals" were found reasonable) (citation omitted); *see also* Lopez Decl. ¶ 7 (describing instances of rates approved in this judicial district at up to $900 and $975 per hour for attorneys and at up to $170 per hour for para-professionals).

In their supporting declaration, Lopez Decl. ¶ 9 and Ex. C thereto, class counsel submit categorized summaries of time reasonably accrued (including by the other attorneys referenced in this brief), together with a chart showing time multiplied by counsels' hourly rates.  *Cf. Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (concluding that a "summary of the time spent on a broad category of tasks such as pleadings and pretrial motions" met "basic requirement" of documentation).  This chart is reproduced here:

| Category | Timekeeper[†] | Hours | Rate | Total |
|---|---|---|---|---|
|  |  |  |  |  |
| Investigation/Research/ Preparation of Complaints  († For personnel roles, see Lopez Decl. Ex. C)  (* Work performed by non-class-counsel attorneys) | Bede, Ashley | 1.3 | $425.00 | $552.50 |
|  | Berman, Steve | 6.5 | $975.00 | $6,337.50 |
|  | Fegan, Elizabeth | 0.5 | $750.00 | $375.00 |
|  | Lopez, Robert | 272.9 | $575.00 | $156,917.50 |
|  | Wojtanowicz, Garth | 2 | $550.00 | $1,100.00 |
|  | Paris, Simon* | 1.7 | $660.00 | $1,122.00 |
|  | Kocher, Charles* | 17.3 | $535.00 | $9,255.50 |
|  | Levetown, Andrew* | 62.0 | $450.00 | $27,900.00 |
|  | Barry, Miki* | 94.0 | $250.00 | $23,500.00 |
|  | Aulakh, Urminder* | 31.0 | $325.00 | $10,075.00 |

| | | | | |
|---|---|---|---|---|
| **Total Investigate/Rsrch/Complaints** | | 489.2 | | $237,135.00 |
| Case Management & Administration | Berman, Steve | 3.5 | $975.00 | $3,412.50 |
| | Conte, Jennifer | 6.5 | $250.00 | $1,625.00 |
| | Cornelius, Dawn | 27.5 | $170.00 | $4,675.00 |
| | Flexer, Carrie | 2.2 | $250.00 | $550.00 |
| | Garcia, Adrian | 210.05 | $175.00 | $36,758.75 |
| | Grueneich, Nicolle | 38.4 | $200.00 | $7,680.00 |
| | Haegele, Robert | 2.4 | $200.00 | $480.00 |
| | Heneghen, Rebecca L | 85.9 | $170.00 | $14,603.00 |
| | Lopez, Robert | 90.3 | $575.00 | $51,922.50 |
| | Miller, Brian | 4.2 | $265.00 | $1,113.00 |
| | Salonga, Joseph | 238 | $200.00 | $47,600.00 |
| | Su, Alexander Y | 21.9 | $425.00 | $9,307.50 |
| **Total Case Management** | | 730.85 | | $179,727.25 |
| Discovery | Gannon, Catherine | 21.8 | $425.00 | $9,265.00 |
| | Lopez, Robert | 1282.1 | $575.00 | $737,207.50 |
| | Matt, Sean | 1 | $750.00 | $750.00 |
| | Reynolds, Conor D | 16 | $225.00 | $3,600.00 |
| | Wojtanowicz, Garth | 1.8 | $550.00 | $990.00 |
| **Total Discovery** | | 1322.7 | | $751,812.50 |
| Motions | Bede, Ashley | 0.9 | $425.00 | $382.50 |
| | Berman, Steve | 25.3 | $975.00 | $24,667.50 |
| | Lopez, Robert | 809.1 | $575.00 | $465,232.50 |
| | Reynolds, Conor D | 10 | $225.00 | $2,250.00 |
| | Stevenson, Shayne | 3.5 | $650.00 | $2,275.00 |
| | Su, Alexander Y | 22.5 | $425.00 | $9,562.50 |
| | Wojtanowicz, Garth | 2.1 | $550.00 | $1,155.00 |
| **Total Motions** | | 873.4 | | $505,525.00 |
| Experts | Lopez, Robert | 68.3 | $575.00 | $39,272.50 |
| | Matt, Sean | 1.5 | $750.00 | $1,125.00 |
| | Spiegel, Craig | 0.5 | $775.00 | $387.50 |
| | Wojtanowicz, Garth | 0.4 | $550.00 | $220.00 |
| **Total Experts** | | 70.7 | | $41,005.00 |
| Settlement | Berman, Steve | 22.5 | $975.00 | $21,937.50 |
| | Lopez, Robert | 244.6 | $575.00 | $140,645.00 |
| | O'Hara, Chris | 14 | $625.00 | $8,750.00 |
| | Spiegel, Craig | 1.5 | $775.00 | $1,162.50 |
| **Total Settlement** | | 282.6 | | $172,495.00 |
| Settlement Approval | Lopez, Robert | 172.5 | $575.00 | $99,187.50 |
| | O'Hara, Chris | 71 | $625.00 | $44,375.00 |
| **Total Settlement Approval** | | 243.5 | | $143,562.50 |
| Class Certification | Berman, Steve | 13.8 | $975.00 | $13,455.00 |
| | Lopez, Robert | 443.4 | $575.00 | $254,955.00 |
| | Matt, Sean | 1 | $750.00 | $750.00 |
| | Spiegel, Craig | 67 | $775.00 | $51,925.00 |
| **Total Class Certification** | | 525.2 | | $321,085.00 |
| **Grand Total** | | 4538.15 | | $2,352,347.25 |

Class counsel's reasonable rates, when multiplied by the number of hours expended on the tasks described in the immediately following section of this memorandum, and in counsel's supporting declaration, result in a reviewed, adjusted lodestar of $2,280,494.75.  (*See* Lopez Decl. ¶¶ 8-9 and Ex. C thereto.)  Other counsels' rates, when multiplied by the number of hours expended on certain of the tasks summarized immediately below, and as set forth in their supporting declarations and captured on the chart submitted as Ex. C to the Lopez Decl., result in an additional lodestar of $71,852.50.  (*See* Levetown Decl. ¶ 5; Barry Decl. ¶ 5; Aulakh Decl. ¶ 5; Paris Decl. ¶ 5 and Ex. 2 thereto.)  All told, counsels' fees total $2,352,347.25.

### 2. The number of hours that counsel has worked, and will need to work, is reasonable.

The number of hours worked by class counsel to-date also is reasonable.  (*See* Lopez Decl. ¶¶ 9-11 (summarizing reasonableness factors).)  As discussed in the declarations of counsel submitted with this motion, *see* Lopez Decl. ¶¶ 10-25 and Ex. C thereto; *see also* Levetown Decl. ¶ 4; Barry Decl. ¶ 4; Aulakh Decl. ¶ 4; Paris Decl. ¶¶ 2, 4-5, reasonable and necessary work on this matter has included:

a. **Investigation, research, and preparation of complaints:**  Investigation and analysis of fact, legal, and technical issues pertaining to plaintiffs' claims; legal and factual research, including analysis of publicly available statements; extensive review and analysis of technical documents; and drafting of the initial and subsequent versions of the complaint.

b. **Case management and administration:**  Consultation with the named plaintiffs and members of the putative class throughout the pendency of the case; innumerable telephone conferences and emails with opposing counsel regarding case issues; communications with database staff re: our document repository; coordination among counsel and staff re: work assignments and needed projects and tasks; case management efforts with the Court; and coordination regarding assignments, time maintenance, and recordkeeping.

c. **Discovery:**  Work on initial disclosures and review and analysis of Googles' disclosures; interrogatories, requests for production, and requests for admission from plaintiffs to Google, and vice-versa; numerous depositions of parties and party representatives on both sides, including depositions of each side's consulting expert; document production and document review (including review and analysis of the voluminous materials produced by Google); and numerous conferences with Google.

d. **Motions:**  Research and drafting of the opposition to Googles' two motions to dismiss (including extensive analysis of Google's first motion to dismiss, which was mooted when plaintiffs responded with an amended complaint); preparation for, and oral argument, at the hearing on these motions; a motion (and pre-motion) for reconsideration regarding plaintiffs' liquidated-damages based theory; a motion regarding the protective order to be entered in this matter; review and

analysis of Google's motion to exclude international class members, and a motion asking that it be held in abeyance.

e. **Experts:** Work pertaining to and with consulting experts, including the preparation of questions; deposition preparation and the defense of plaintiffs' consultant's deposition; preparation for the deposition of defendant's consultant; extensive document review and analysis in advance of the deposition of Google's consultant; the preparation of exhibits therefor, and the deposition of Google's consultant.

f. **Class certification:** Research and drafting of motion for class certification, including plaintiffs' reply brief; work on motions to, and responses to motions to, seal; extensive factual and legal research and analysis re: Google's voluminous, extensive, detailed, and technical opposition papers; consultation with named plaintiffs regarding plaintiffs' opening papers and reply; work with plaintiffs regarding preparation of their supporting declarations; preparation of oral argument outline; preparation for hearing; attendance at hearing and argument; and analysis of the Court's decision, including follow-up legal and fact research, and expert consultation.

g. **Settlement:** Consultation with the named plaintiffs regarding settlement issues; settlement negotiations and mediations, and the drafting of mediation briefing, as well as an in-person mediation with Judge Phillips and Mr. Lindstrom; continued and negotiations following the in-person mediation, with and without the aid of the mediator; drafting and analysis of term sheets; drafting and revision of further writings for use in negotiations; drafting and revision of settlement-related documents, including the first and amended settlement agreements; interviewing prospective settlement administrators; conferring with notice providers regarding a suitable notice program in this case; research regarding suitable potential *cy pres* recipients; working with the settlement administrator and Google on notice documents and the claim form; and continuing work with the settlement provider regarding notice and claims processing.

h. **Settlement approval process:** Research for, and drafting of, the motion for preliminary approval and related papers; further negotiation and follow-up in response to the Court's requests regarding changes to the settlement agreement; working with Google on revisions to the settlement agreement; working with the four plaintiffs to prepare their declarations in support of the instant motion; and research toward, and drafting of, the instant motion.

Further, additional work remains to be performed. The final approval hearing is scheduled for October 17, 2018, and class counsel presently estimates that before then, they will need to work approximately 30 additional hours to answer questions posed by class members or the settlement administrator, to draft and file final approval papers, to review and analyze objections from class members and to draft responses to those objections as appropriate, and to prepare for argument. (Lopez Decl. ¶ 26.)

Beyond the final approval hearing, assuming final approval is granted, class counsel presently estimates an additional 30-40 hours of work will be necessary to attend to the issues that will arise during

administration of the settlement, to field inquiries from class members regarding the settlement and their claims and benefits, to work with Google as appropriate to address any class-member appeals or concerns under the settlement, and to work with Google and the settlement administrator as needed to determine the total value of claims against the net settlement funds available, among other activities, including potentially the preparation of filings with the Court in the possible (though unlikely) event that funds remain to be distributed to the two proposed *cy pres* recipients instead of to individual class members.  (*Id.*)  These are conservative projections; counsel could be required to spend much more time on any or all of these tasks, as matters develop.

### 3.   Counsels' fees are reasonable pursuant to the *Kerr* factors subsumed in the lodestar analysis.

In considering the reasonableness of plaintiffs' lodestar figure, courts also may consider the quality of representation, the benefit obtained for the class, and the complexity and novelty of the issues presented, among other factors.  *Bluetooth*, 654 F.3d at 941-42.  Each of these factors supports plaintiffs' lodestar here.

### (1)   Novelty and complexity of the litigation

Given the foregoing history and lack of precedent on several issues; Google's many defenses and deep resources; and questions regarding individual issues, this case was novel and complex.  (*See* Lopez Decl. ¶ 27.)

### (2)   Skill and experience of class counsel and quality of representation

The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005).  The courts consider counsel's skill alongside the quality of work performed by counsel.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  In this case, success required experienced and skilled class-action attorneys.  As attested in the declarations cited above, class counsel are members of the bar with extensive experience in consumer class-action litigation, which they utilized to obtain the best recovery for the class.

The Court also should consider the quality of opposing counsel in evaluating the quality of class counsel's work.  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20.  Class counsel faced renowned and

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERV.
AWARDS AND ATTY FEES, COSTS, AND EXPENSES`
Case No.: 5:14-cv-02329-BLF

- 19 -

highly skilled defense attorneys in this matter, with well-deserved reputations for vigorous advocacy in the defense of their clients, including Google.  *See id.*

### (3)    Favorability of result

In a case with numerous legal and technical complexities, and facing a determined, well-financed, and well-represented defendant, plaintiffs and their counsel were able to achieve a settlement including an $11 million cash component and significant non-monetary relief.  This result was genuinely favorable to the class, the vast majority of whose members, given practical realities, truly needed dedicated counsel to advocate for them in a class setting.  (*See, e.g.*, Lopez Decl. ¶ 28.)

### 4.    The presence of a modest multiplier further supports the reasonableness of plaintiffs' fee request.

Furthermore, plaintiffs seek only a modest multiplier to reach the 25% of the common fund they seek.  Lodestar is presently at $2,280,494.75 for class counsel, such that the multiplier is 1.21.  If one considers lodestar reported by other plaintiffs' counsel, at $71,852.50, and includes it in the calculus, the multiplier drops further, to 1.17.  The presence of these modest multipliers further supports the reasonableness of plaintiffs' request.  *Williams v. SuperShuttle Int'l Inc.*, 2015 WL 685994, at *2 (N.D. Cal. Feb. 12, 2015).

## D.    Costs and expenses

The settlement agreement also provides for the recovery of costs and expenses.  (Lopez Decl. Ex. A, ¶ 8.1.)

Class counsel and other plaintiffs' counsel have incurred costs and expenses in the amount of $117,320.72.  However, they limit their request to $116,045, which is the amount they gave as an approximation in the long form-notice.  These costs and expenses are set forth in the declarations of counsel submitted with this motion, and class counsel's chart is reproduced here.   (*See* Lopez Decl. ¶ 29 and Ex. D thereto; Paris Decl. ¶ 7 and Ex. 3 thereto.)

| Expense Category | Total |
|---|---|
| 10 – Airfare | $7,062.97 |
| 15 – Printing/Copies | $18,987.50 |
| 18 – Depositions/Court Reporters | $12,802.23 |
| 20 – Miscellaneous | $43.83 |
| 35 – Copy | $238.19 |

| 40 – Expert Fees | $22,725.00 |
| 50 – Overnight Shipping | $1,365.28 |
| 52 – Filing Fees | $400.00 |
| 53 – Hotel | $5,127.14 |
| 55 – Online Services/Legal Research | $26,418.04 |
| 59 – Meals | $1,054.75 |
| 60 – Messenger/Process Services | $4,591.27 |
| 61 – Mediation | $11,112.50 |
| 70 – Transportation/Travel Expenses | $1,848.20 |
| 71 – Parking | $415.13 |
| 72 – Court Fees | $610.00 |
| 76 – Public Relations/Marketing | $1,900.80 |
| 90 – Telephone | $7.89 |
| Saltz Mongeluzzi Barrett & Bendesky costs | $610.00 |
| Grand Total | $117,320.72 |

Class counsel anticipates that they may expend more on behalf of the settlement class before the close of this matter, but the sums are unclear at this time.

All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable. *See Missouri v. Jenkins*, 491 U.S. 274, 286 (1989); *accord Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010); *see also Omnivision*, 559 F. Supp. 2d at 1048 ("[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"). As detailed in the declarations of counsel, plaintiffs incurred substantial costs on court reporters, travel (including to numerous hearings, deposition, and a California mediation), consulting expert fees, computer-aided research, photocopies, postage, court fees, and telephone charges. These costs were necessarily and reasonably incurred to bring this case to a successful outcome.

**E.      The class representatives each should receive $5,000 incentive awards.**

Finally, plaintiffs seek service awards to the long-serving named plaintiffs in this matter, as contemplated by the settlement agreement. (*See* Lopez Decl. Ex. A, ¶¶ 9.1-9.3.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (2009) (citing 4 ALBA CONTE ET AL., NEWBERG ON CLASS ACTIONS § 11:38 (4th ed. 2008)). These awards, generally sought after a settlement has been reached, "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. The Court has discretion

1  to approve incentive awards, and its consideration includes factors such as the amount of time and effort

2  spent by the class representatives, the duration of the litigation, and the personal benefit (or lack thereof)

3  enjoyed by the class representatives as a result of the litigation.  *Wilson v. Airborne, Inc.*, 2008 WL

4  3854963, at *12 (C.D. Cal. Aug. 13, 2008).

5          Broadly speaking, the named plaintiffs have assisted counsel with counsel's investigation,

6  analysis, and prosecution of their potential and actual claims; the preparation of pleadings (including the

7  complaints filed in this matter and declarations); settlement negotiations and considerations; and review

8  and analysis of the parties' settlement papers.  (Lopez Decl. ¶ 3.)  They also have monitored this case on

9  behalf of their fellow putative class members.  (*Id.*)  Greater specifics, and including as to time spent on

10  this case on behalf of settlement class members, are included in the named-plaintiff declarations

11  submitted with this motion.  (*See* Pettitt Decl. ¶ 5; Clark Decl. ¶ 5; Chose Decl. ¶ 5; Simpson Decl. ¶ 5.)

12  As attested in their declarations, time spent on this case has meant time spent away from family (and a

13  stressed relationship), friends, work, business endeavors, and various other activities.  (*See* Pettitt Decl.

14  ¶ 6; Clark Decl. ¶ 6; Chose Decl. ¶ 6; Simpson Decl. ¶ 6.)  It also affected the health of at least one of

15  the named plaintiffs, who nonetheless soldiered on.  (Simpson Decl. ¶ 6.)

16          $5,000 service awards are presumptively reasonable in this judicial district.  *See, e.g., Camberis v.

17  Ocwen Loan Serv. LLC*, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015) ("As this Court has recognized,

18  . . . as a general matter, $5,000 is a reasonable amount [for service awards].") (citation and internal

19  quotations omitted).  This is so even in cases when there is the prospect of small recoveries by individual

20  settlement class members.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947-48 (approving

21  $5,000 incentive awards where class members would receive $12); *Weeks v. Kellogg Co.*, 2013 WL 6531177,

22  *3, 34-37 (C.D. Cal. Nov. 23, 2013) (approving incentive awards of $5,000 per named plaintiff, where

23  settlement provided for the recovery by class members of $5 per box of cereal purchased during the

24  class period, up to a maximum of $15 per class member, all subject to proportional reduction if all

25  eligible claims exceeded the settlement fund); *see also Wren v. RGIS Inventory Specialists*, 2011 WL 1230826,

26  at *31-37 (N.D. Cal. Apr. 1, 2011) (making $5,000 service awards to 20 named plaintiffs "where average

27  award to class members was $207.69").  Also, the awards sought here are modest compared with

28  incentive awards in other cases.  *See, e.g., Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *9 (S.D.

Cal. June 1, 2010) ($25,000 award); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ($300,000 award).

In this case, given the valuable and time-consuming aid rendered to the settlement class by each of the named plaintiffs in this long-running, complex case, plaintiffs respectfully submit that the requested awards are fair and reasonable, and that they ought to be awarded.

## V. CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully ask that the Court grant the foregoing requests for reasonable service awards, attorneys' fees, costs, and expenses.

DATED:  August 3, 2018

HAGENS BERMAN SOBOL SHAPIRO LLP

By    /s/ *Steve W. Berman*
Steve W. Berman
Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERV.
AWARDS AND ATTY FEES, COSTS, AND EXPENSES`
Case No.: 5:14-cv-02329-BLF

- 23 -