Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, a Delaware corporation,<br><br>Defendant. | No. 5:14-cv-02329-BLF<br><br>DECLARATION OF ROBERT F. LOPEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES<br><br>DATE: October 17, 2018<br>TIME: 9:00 a.m.<br>DEPT: Courtroom 4, 5th Floor<br>JUDGE: Hon. Beth Labson Freeman |

I, Robert F. Lopez, hereby declare as follows:

1. I am a partner at Hagens Berman Sobol Shapiro, LLP, which has been appointed as class counsel in this matter. I am one of the attorneys, including my partner Mr. Berman and others, who represented the plaintiffs and proposed settlement class in this matter. I submit this declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives. I make this declaration based upon personal knowledge, and I am otherwise competent to be a witness.

2. This matter involves Google's AdSense program. Plaintiffs and settlement class members were former AdSense publishers—they displayed ads that Google pushed to their web properties in exchange for an advertiser revenue share. Google terminated these publishers' AdSense accounts for what it deemed breaches of contract, and when it did so, it withheld all unpaid earnings in their accounts at the time of termination. Plaintiffs contended that this practice was unlawful under several aspects of California law, which applied in light of California choice-of-law provisions in the AdSense contracts. After much litigation, the parties reached a mediated settlement on behalf of a class consisting of former publishers subject to AdSense contracts for the U.S. and Canada. Attached as Exhibit A is a true and correct copy of the parties' Class Action Settlement Agreement. (Dkt. No. 253-2.) We, as appointed class counsel for the certified litigation class and the settlement class, endorse the value and reasonableness of this proposed settlement.

3. This matter could not have proceeded through litigation and to the settlement now before the Court were it not for the service of our clients and named plaintiffs Free Range Content, Inc. (FRC); Coconut Island Software, Inc. (CIS); Taylor Chose; and Matthew Simpson. As set forth in greater detail in their own supporting declarations, plaintiffs assisted us with the preparation of complaints in this matter; worked with counsel on initial disclosures; consulted with counsel as requested, and on their own initiative, throughout the pendency of this case; monitored the proceedings on their own behalf and on behalf of the putative class; worked with counsel to prepare, review, and submit declarations in support of their claims and those of the proposed settlement class; answered interrogatories and responded to requests for production, including by gathering and producing documents, in consultation with counsel; answered requests for admission (three of the four plaintiffs

did so); and prepared for and sat for depositions. They also reviewed their deposition transcripts. Additionally, they made themselves available whenever we asked for consultation or assistance in this matter. We support their requests for $5,000 service awards, as contemplated by the settlement agreement. (Ex. A, ¶¶ 9.1-9.3.)

**HAGENS BERMAN'S QUALIFICATIONS AND EXPERIENCE**

4. Hagens Berman is a leader in class-action litigation. (*See* Ex. B (Hagens Berman firm resume); *see also* http://www.hbsslaw.com/.) The firm has achieved extraordinary results for millions of consumers, investors, employees, inventors, and whistleblowers.

5. We have extensive experience in successfully prosecuting class actions throughout the United States. The firm has represented millions of plaintiffs in large-scale, nationwide cases involving, *inter alia*, product liability, consumer protection and fraud, tort, antitrust, and securities and investment fraud, and has recovered billions for the classes it represented. Some of these groundbreaking recoveries include:

    a. *Visa-MasterCard Antitrust Litigation*, Case No. CV-96-5238 (E.D.N.Y.) – Hagens Berman was co-lead counsel in this suit that challenged the charges imposed in connection with debit cards. The result was the largest antitrust settlement in history – a $3.05 billion cash settlement and injunctive relief valued at over $20 billion.

    b. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 8:10ML2151 JVS (C.D. Cal.) – As co-lead counsel, we alleged a defect causing dozens of models spanning an eight year period to undergo sudden, unintended acceleration. The Firm's efforts resulted in a $1.6 billion settlement that included $500 million in cash payments to class members; installation of a safety-enhancing brake override system on millions of vehicles; and a substantial extended warranty for millions of consumers. To our knowledge, this was the largest automobile class settlement in U.S. history.

    c. *In re Elec. Books Antitrust Litig.*, 11-md-2293 DLC (S.D.N.Y.) – Hagens Berman pioneered this litigation as lead counsel against Apple and the largest e-book publishers. We partnered with the U.S. Department of Justice and 33 state attorneys general, representing purchasers of e-books in 19 states and four U.S. territories. Consumers will receive $560 million in benefits on single damages of $270 million.

    d. *Average Wholesale Price Drug Litigation* – Hagens Berman was co-lead counsel to several certified classes in litigation against the nation's largest pharmaceutical companies. The suits allege that defendants artificially inflated the Average Wholesale Price used as a benchmark for almost all prescription drug sales in the

United States. Hagens Berman was lead trial counsel in a consolidated trial resulting in verdicts against AstraZeneca and BMS, and class settlements approximating $338 million were approved in favor of consumers and health plans. Hagens Berman was also special counsel to the states of Arizona, Montana, and Nevada in their AWP suits, which have settled on terms favorable to the states.

e. *McKesson and First DataBank Drug Litigation* – Hagens Berman was lead counsel in this RICO case alleging that McKesson and First DataBank fraudulently inflated the prices of more than 400 prescription drugs by manipulating drug-pricing benchmarks. The class action against McKesson settled for $350 million on the eve of trial. The First DataBank settlement resulted in a four percent rollback on the prices of 95% of the nation's retail branded drugs – a net impact of potentially billions of dollars. Building on the recovery against McKesson, Hagens Berman represents six states (Oregon, Virginia, Utah, Montana, Mississippi, and Connecticut), the City and County of San Francisco, and other local government agencies in their efforts to recoup the damages caused to their health plans by McKesson's scheme. The county public-payor case (a class of counties) settled for $82 million, and the City and County of San Francisco settled its claims for $12.5 million.

f. *Schwab: YieldPlus Funds* – Hagens Berman filed the first class action against Charles Schwab Corporation, alleging that Schwab deceived investors about the underlying risk in its YieldPlus Funds Investor Shares and YieldPlus Funds Select Shares. On July 3, 2008, the Honorable William H. Alsup of the Northern District of California appointed five members of the YieldPlus Investor Group to the position of lead plaintiff and instructed them to interview and choose lead counsel. On August 14, 2008, they submitted their decision to the court to retain Hagens Berman, and on August 18, 2008, the Court approved that decision. *Id.* On April 19, 2011, Judge Alsup gave final approval to the $235 million settlement.

g. *Enron ERISA Litigation* – Hagens Berman was co-lead counsel in this litigation and recovered over $220 million in settlements for the benefit of former Enron employees. This is the largest ERISA settlement in history.

h. *DRAM Manufacturers* – Hagens Berman filed a class-action suit against the leading DRAM (Dynamic Random Access Memory) manufacturers, claiming the companies secretly agreed to reduce the supply of DRAM in order to artificially raise prices. DRAM is a necessary component in a wide variety of electronics, such as personal computers, cellular telephones, and digital cameras because it allows for the storage and retrieval of electronic data. Plaintiffs included equipment manufacturers, franchise distributors, smaller-volume customers, and consumers who purchased DRAM from any of the named defendants. The case settled for $300 million.

i. *Volkswagen "Clean Diesel" MDL* (N.D. Cal.). As lead counsel for the Volkswagen Franchise Dealers, we received final approval of a settlement of $1.2 billion, representing a result of nearly full damages for the class. Mr. Berman also serves

on the Plaintiffs' Steering Committee and played a role in obtaining a settlement of $14.7 billion on behalf of consumers that included injunctive relief in the form of an optional buyback of the affected vehicles.

j.  *In re Stericycle, Inc. Steri-Safe Contract MDL* (N.D. Ill.). As lead counsel in this contract-based case involving pricing for medical-waste services, we and our clients recovered $295 million for the class after intensive discovery, litigation, and economic modeling. The late Judge Milton Shadur, a true lion of the bench, deeply honored Hagens Berman by observing: "[I]t must be said that the track record of Hagens Berman and its lead partner Steve Berman is . . . impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big-ticket results." *In re Stericycle, Inc.*, 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013).

## HAGENS BERMAN'S BILLING RATES

6. The current billing rates for Hagens Berman attorneys and non-attorney professionals who worked on this matter are specified in the chart attached as Exhibit C hereto. The billing rates for each attorney or other professional were established by Hagens Berman and reflect each professional's experience and training, and they are comparable to rates charged in this judicial district. These rates also represent our firm's customary and actual billing rates for work similar to that performed in this matter. Additional information about each partner and associate is available on the firm's website and in the firm resume attached as Exhibit B.

**Key attorneys who worked on this matter**

a.  Steve W. Berman has been an attorney for over 35 years and is a founding member and managing partner of Hagens Berman. His current rate is $975 per hour. Mr. Berman has served as lead or co-lead counsel in securities, consumer, products liability, antitrust, employment class actions, and complex litigation throughout the country.

b.  Robert F. Lopez, a partner at Hagens Berman, has been an attorney for 26 years. His current rate is $575 per hour. He has extensive experience in complex commercial litigation and various other sorts of disputes, including individual, multi-party and class action cases. His cases have involved product defect, contract, warranty, drug pricing, consumer protection and fraud, securities, antitrust, False Claims Act, and consumer privacy issues.

c.  Chris A. O'Hara has practiced as an attorney for 29 years, with noteworthy experience in antitrust litigation, consumer protection, tax law, securities litigation, and pharmaceutical fraud. His current rate is $625 per hour. Mr. O'Hara has played the invaluable role of working with claims administrators on

class settlements and class notice programs in many of the firm's complex class action settlements.

**Key paralegals and investigator who worked on this matter**

7. The firm also utilized the following paralegals whose rates are usual and customary based on years of litigation experience. Among them are:

    a. Carrie L. Flexer (Current rate: $250/hr). Ms. Flexer is the lead paralegal at Hagens Berman. Ms. Flexer has over 20 years of litigation paralegal experience. Courts in the Bay Area and throughout the United States have approved her rate on multiple occasions.

    b. Robert N. Haegele (Current rate: $200/hr). Mr. Haegele is a senior paralegal at Hagens Berman. Mr. Haegele has over 20 years of litigation paralegal experience. His rate has been approved on multiple occasions by courts in the Bay Area and throughout the United States.

    c. Joseph Salonga (Current rate: $200/hr). Mr. Salonga is a paralegal at Hagens Berman with nearly 10 years of litigation paralegal experience. Based on his experience, combined with his Ivy League education, his rate is well within the range of rates approved on multiple occasions by courts in the Bay Area and throughout the United States.

    d. Rebecca Heneghen (Last rate: $170/hr). Ms. Heneghen was a litigation paralegal at Hagens Berman Sobol Shapiro LLP, where she worked from 2012 through June 2015. By 2015 Ms. Heneghen had some eight years' experience as a paraprofessional, with the last three years focused on plaintiffs' class action litigation. Ms. Heneghen's rate of $170/hr was approved in this district in the *Mahan* case referenced below.

8. Hagens Berman rates applied in this matter are consistent with prevailing rates in this judicial district. This assertion is based on our own fee awards, published awards in other cases, and periodic review of surveys. For example, Hagens Berman's rates such as those sought in this matter recently have been approved in the *Keller v. National Collegiate Athletic Ass'n* matter, N.D. Cal. No. 09-cv-1967-CW antitrust matter. *See Keller v. National Collegiate Athletic Ass'n*, 2015 WL 8616392, at *1, 5, 9 (N.D. Cal. Dec. 15, 2015). Docket No. 1195 in *Keller*, the Declaration of Robert B. Carey in Support of Motion for an Award of Attorneys' Fees, Expenses, an Incentive Award Payments, sets forth the rates for attorneys and other professionals who worked on that matter. Examples include Mr. Berman at the rate of $900 per hour and other partners at the rates of $700 per hour and $550 per hour, as well as paralegals and our investigator at the rate of $170 per hour. (*Id.* at 10-12.) Also, in *Mahan v. Trex Co.*,

*Inc.*, N.D. Cal. No. 09-cv-00670, a product defect case, Judge White in December 2013 approved rates similar to those sought here. (*See* Dkt. Nos. 309 at 5-6 (attorney declaration discussing rates); 309-3 (chart setting forth rates); 341 (order granting request for fees, costs, and service awards).) (Sometimes the Court referred to the *Mahan* case as *Ross*, due to consolidation under the *Ross* docket number.) Those rates included Mr. Berman's rate on the matter at $800 per hour, with other partners on the case billed from $500-600 per hour. My own current rate as a Hagens Berman partner is $575/hr. Additionally, similar rates for attorneys in other non-Hagens Berman Northern District of California cases have been approved in various cases. Among them was a rate of $975 per hour for partners in the *AXA Rosenberg* litigation. (*See Mahan*, N.D. Cal. No. 09-cv-00670, at Dkt. No. 309, ¶ 18.) Thus, we submit that the rates for Hagens Berman attorneys and other professionals who worked on this case are reasonable, appropriate, and within the range of rates charged by attorneys and professionals with similar education and experience in this judicial district.

9. It is the policy of our firm to maintain daily, contemporaneous billing records setting forth time entries in increments of one-tenth of an hour. In connection with this fee application, I and a colleague, at my direction, reviewed our time entries for purposes of categorizing them in a manner that we thought would be helpful to the Court in this process. Along the way, I and my colleague, at my direction, made cuts to entries (sometimes cutting the time entry altogether) where there might be inefficiencies or duplication. In other instances I directed that we cut the time altogether of certain timekeepers who had performed certain discrete or limited case-related tasks. We believe that the time comprising our adjusted lodestar in this matter was reasonably expended on behalf of our clients and the settlement class. Attached as Exhibit C is a chart containing true and correct categorized summaries of time reasonably accrued in this matter. This chart includes summaries not only of class counsel time, but also that of Mr. Levetown, Ms. Barry, and Mr. Aulakh, as referenced in the declarations they have also submitted with plaintiffs' instant motion. Mr. Paris, another attorney who worked on this matter on behalf of plaintiffs, submits a similar summary with his declaration. We asked that these other attorneys review their time for reasonableness before submitting any of it in support of plaintiffs' fee motion, and we believe they have done so. Exhibit C also contains the reviewed, adjusted lodestars (including totals) for class counsel and these other attorneys.

## REASONABLENESS OF COUNSEL'S FEES

10. Given the complicated technical matters inherent in this case, including with respect to Google's fraud-detection methods, practices, and policies; questions regarding the nature and implications of the unpaid earnings withheld from plaintiffs and the proposed class; the various facts in play for our four named plaintiffs; and the fact that we sought to certify a nationwide+ class of tens of thousands of former AdSense publishers, each of whom had been terminated for purported breach of contract by Google, this case was novel and complex. To our knowledge, an AdSense class case such as this one had never been attempted before, even though it was not difficult to find publisher complaints regarding Google's termination and withholding practices online.

11. Also, we faced experienced and highly skilled opposing lawyers from a renowned firm, all with well-deserved reputations for strong and vigorous advocacy—which they exhibited here—in the defense of their clients.

12. As a result of the work we did in this case, in which we and our clients continually faced difficult challenges of law and fact, we collectively were able to achieve a $11 million cash settlement for the class. This is a laudable achievement considering the many defenses that Google arrayed before the plaintiffs and proposed class, not to mention its financial ability to litigate for the long term. Given the context, nature, and constituent tasks of our efforts as described below, we believe the time expended in prosecuting this matter was thoroughly reasonable.

13. The plaintiffs and proposed class in this matter were represented throughout by dedicated counsel, all of whom have extensive experience in class-action and commercial litigation. As our attached firm resume and biographies show, Hagens Berman and its attorneys, led by Mr. Berman, have prosecuted many complex class cases, including commercial and consumer actions. This experience informed our belief as to what was reasonable in terms of the time and effort we expended in this matter.

## SUMMARY OF TIME ACCRUED BY HAGENS BERMAN PROFESSIONALS

14. Below we summarize how attorney and para-professional time was accrued by class counsel and other plaintiffs' counsel (the latter described in their declarations) in this matter. We refer to

these same categories in the chart attached as Ex. C. But first, I provide a brief account of the proceedings in which this work was performed.

**Proceedings**

15. We represented the plaintiffs in this matter in order to help them address the harm that they and other Google AdSense publishers felt when, in connection with terminating them for purported breach of contract, Google withheld the unpaid amounts in their AdSense accounts. This case has been hotly litigated through two fully briefed and argued motions to dismiss, a fully briefed and argued motion for reconsideration, and a fully and voluminously supported and argued motion for class certification.

16. Much discovery has been undertaken as well. The parties' efforts included 169 requests for production and numerous interrogatories from the plaintiffs; numerous requests for production and interrogatories from Google; the parties' answers, objections, and document production in response to these requests, with Google producing tens of thousands of documents, totaling over 96,000 pages, to the plaintiffs, which included myriad details concerning the inner-workings of the AdSense program and Google's fraud-detection practices; depositions of the parties, including a 30(b)(6) deposition of Google for which it produced three designees; consultation with experts and, in connection with plaintiffs' motion for class certification, depositions of each side's consultant; requests for admission to and from both sides, and both sides' responses; and many, many calls and exchanges to discuss and work out various discovery-related disputes.

17. On May 15, 2017, after Google filed its opposition to plaintiffs' motion for class certification, and following an exchange of mediation letters and voluminous exhibits, the parties engaged in an in-person mediation session with the Hon. Layn Phillips (U.S.D.J. Ret.) and his colleague, Greg Lindstrom, in Newport Beach, California. The parties did not settle that day.

18. After the Court issued its class-certification decision on July 13, 2017 (Dkt. No. 234), in which it certified a litigation class, the parties engaged in further settlement discussions with and via Mr. Lindstrom. During this time, plaintiffs did not abate discovery or preparations for motions for summary judgment and trial. Instead, the parties continued with discovery and prepared for summary judgment

and trial, the latter of which was scheduled for March 2018. This work continued through (and in some regards past) the date the parties agreed to a settlement-in-principle.

19. On September 14, 2017, following many exchanges with and through Mr. Lindstrom, including writings by the plaintiffs, the parties agreed to hear a mediator's recommendation. After deliberation, the plaintiffs (and Google) accepted this recommendation in principle.

20. The parties advised the Court on September 20, 2017, that they had reached a settlement in principle. (Dkt. No. 232.) But much more attorney effort and time was needed before final terms would be reached, such that preliminary approval proceedings could be scheduled. On March 1, 2018, following much negotiation and discussion, including numerous email exchanges; requests for, and production of, further data; telephone conferences; exchanges of drafts and terms; and consultation with clients, the parties, via counsel, inked their Settlement Agreement.

21. To reiterate, the Settlement Agreement provides that Google will pay a non-reversionary sum of $11 million to former publishers subject to Google's U.S., U.S. territory, and Canadian AdSense terms and conditions.

22. The settlement allows qualified settlement class members to make claims for 100% of funds withheld in connection with Google's termination of their AdSense accounts for breach. To account for the possible oversubscription of the net settlement fund, the parties anticipated various settlement scenarios and devised corresponding payment groups in order to enable a fair distribution of settlement benefits. (*See* Ex. A, ¶¶ 2.2-2.4.4.)

**Categories and summaries**

23. In order to assist the Court in its deliberations, we have examined and categorized the various tasks performed in this matter as follows. We report lodestar figures for these categories in the attached Ex. C.

   a. **Investigation, research, and preparation of complaints:** Investigation and analysis of fact, legal, and technical issues pertaining to plaintiffs' claims; legal and factual research, including analysis of publicly available statements; extensive review and analysis of technical documents; and drafting of the initial and subsequent versions of the complaint.

   b. **Case management and administration:** Consultation with the named plaintiffs and members of the putative class throughout the pendency of the case;

innumerable telephone conferences and emails with opposing counsel regarding case issues; communications with database staff re: our document repository; coordination among counsel and staff re: work assignments and needed projects and tasks; case management efforts with the Court; and coordination regarding assignments, time maintenance, and recordkeeping.

 c. **Discovery:** Work on initial disclosures and review and analysis of Googles' disclosures; interrogatories, requests for production, and requests for admission from plaintiffs to Google, and vice-versa; numerous depositions of parties and party representatives on both sides, including depositions of each side's consulting expert; document production and document review (including review and analysis of the voluminous materials produced by Google); and numerous conferences with Google.

 d. **Motions:** Research and drafting of the opposition to Googles' two motions to dismiss (including extensive analysis of Google's first motion to dismiss, which was mooted when plaintiffs responded with an amended complaint); preparation for, and oral argument, at the hearing on these motions; a motion (and pre-motion) for reconsideration regarding plaintiffs' liquidated-damages based theory; a motion regarding the protective order to be entered in this matter; review and analysis of Google's motion to exclude international class members, and a motion asking that it be held in abeyance.

 e. **Experts:** Work pertaining to and with consulting experts, including the preparation of questions; deposition preparation and the defense of plaintiffs' consultant's deposition; preparation for the deposition of defendant's consultant; extensive document review and analysis in advance of the deposition of Google's consultant; the preparation of exhibits therefor, and the deposition of Google's consultant.

 f. **Class certification:** Research and drafting of motion for class certification, including plaintiffs' reply brief; work on motions to, and responses to motions to, seal; extensive factual and legal research and analysis re: Google's voluminous, extensive, detailed, and technical opposition papers; consultation with named plaintiffs regarding plaintiffs' opening papers and reply; work with plaintiffs regarding preparation of their supporting declarations; preparation of oral argument outline; preparation for hearing; attendance at hearing and argument; and analysis of the Court's decision, including follow-up legal and fact research, and expert consultation.

 g. **Settlement:** Consultation with the named plaintiffs regarding settlement issues; settlement negotiations and mediations, and the drafting of mediation briefing, as well as an in-person mediation with Judge Phillips and Mr. Lindstrom; continued and negotiations following the in-person mediation, with and without the aid of the mediator; drafting and analysis of term sheets; drafting and revision of further writings for use in negotiations; drafting and revision of settlement-related documents, including the first and amended settlement agreements; interviewing prospective settlement administrators; conferring with notice providers regarding a suitable notice program in this case; research regarding suitable potential *cy pres*

recipients; working with the settlement administrator and Google on notice documents and the claim form; and continuing work with the settlement provider regarding notice and claims processing.

    h. **Settlement approval process:** Research for, and drafting of, the motion for preliminary approval and related papers; further negotiation and follow-up in response to the Court's requests regarding changes to the settlement agreement; working with Google on revisions to the settlement agreement; working with the four plaintiffs to prepare their declarations in support of the instant motion; and research toward, and drafting of, the instant motion.

## ADDITIONAL WORK

24. Additional work remains to be reasonably performed. The final approval hearing is scheduled for October 17, 2018, and we presently estimate that before then, we will need to work approximately 30 additional hours to answer questions posed by class members or the settlement administrator, to draft and file final approval papers, to draft responses to any objections by class members, and to prepare for argument. Also, beyond the final approval hearing, assuming final approval is granted, we presently estimate that an additional 30-40 hours of work will be necessary to attend to the issues that will arise during administration of the settlement, to field inquiries from class members regarding the settlement, to work with Google to address any class-member appeals or concerns under the settlement, and to work with the settlement administrator and Google, as required, to see that class claims are decided and that eligible claimants get the settlement benefits they deserve, among other activities. These are conservative projections; we could be required to spend much more time on any or all of these tasks, as matters develop.

25. In a case with numerous legal and technical complexities, where former publishers faced a determined, well-financed, and well-represented company, plaintiffs and their counsel were able to achieve a significant non-reversionary cash settlement. This result is genuinely favorable to class members; these former publishers, given practical realities, truly needed dedicated counsel to advocate for them in a class setting.

## COSTS AND EXPENSES

26. Hagens Berman also incurred a total of $116,710.72 in actual costs and expenses in this matter, per the chart attached as Ex. D. This summary was prepared by regular records kept by our

accounting department.  Based on our experience, we know that incurring such costs and expenses is typical in cases of this sort and size.  Mr. Paris's declaration adds detail for an additional $610.00 in costs and expenses for which plaintiffs seek reimbursement.  Though these sums total over $116,045, plaintiffs seek reimbursement only of that sum here.  (This was the approximate figure the parties' published in the notice to the settlement class.)  Reimbursement of costs and expenses is contemplated by the settlement agreement.  (Ex. A., ¶ 8.1.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2018, in Seattle, Washington.

                       */s/ Robert F. Lopez*
                       Robert F. Lopez