Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Ste. 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE RANGE CONTENT, INC., a California corporation, COCONUT ISLAND SOFTWARE, INC., a Hawaii corporation, TAYLOR CHOSE, a Minnesota resident, and MATTHEW SIMPSON, a British Columbia, Canada resident, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>   v.<br><br>GOOGLE INC, a Delaware corporation,<br><br>                      Defendant. | No. 5:14-cv-02329-BLF<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT<br><br>Date: February 7, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. Beth Labson Freeman<br>Dept.: Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

**Page**

A.   Background facts ...............................................................................3

B.   Plaintiffs' claims ...............................................................................3

C.   Litigation ...........................................................................................4

D.   The Settlement ..................................................................................6

    1.   Mediation .................................................................................6

    2.   Settlement Class definition, class period, and claims period .............6

    3.   Relief to the Settlement Class ..................................................7

        a.   Generally ........................................................................7

        b.   Direct payments to Settlement Class Members ................8

            (1)   Claims process for direct payments...........................8

            (2)   Settlement Scenarios ...............................................9

            (3)   Payment Groups.......................................................9

            (4)   Disposition of any remaining funds ..........................9

    4.   Notice, opt-out procedures, and release ....................................9

    5.   Service awards and attorneys' fees, costs, and expenses...................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Bluetooth Headset Prods. Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..........................................................................12, 13, 23

*Burden v. SelectQuote Ins. Servs.*,
   2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ..................................................12, 15, 19

*In re: Cathode Ray Tube*,
   2016 WL 3648478 (N.D. Cal. July 7, 2016) .................................................................15

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................................13, 16

*In re Easysaver Rewards Litig.*,
   906 F.3d 747 (9th Cir. 2018) ...........................................................................................25

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .........................................................................................................17

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) .........................................................................................19

*Fraley v. Facebook, Inc.*,
   966 F. Supp. 2d 939 (N.D. Cal. 2013)........................................................................15, 16

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) .........................................................................................12

*Free Range Content, Inc. v. Google Inc.*,
   2016 WL 2902332 (N.D. Cal. May 13, 2016)..................................................................14

*In re Google Referrer Header Privacy Litig.*,
   87 F. Supp. 3d 1122 (N.D. Cal. 2015)..............................................................................16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................................12, 17

*Hickox-Huffman v. US Airways, Inc.*,
   2018 WL 5291990 (N.D. Cal. Oct. 22, 2018) ..................................................................21

*In re High-Tech Emp. Antitrust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015)...................................................................17

*Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor v. I.N.S.*,
   306 F.3d 842 (9th Cir. 2002) ...........................................................................................18

*Jacob v. Pride Transp., Inc.*,
  2018 WL 1411136 (N.D. Cal. Mar. 21, 2018) ...................................................................19

*Kumar v. Salov North America Corp.*,
  2017 WL 2902898 (N.D. Cal. July 7, 2017) ..............................................................12, 13

*Lane v. Facebook, Inc.*,
  696 F.3d 811(9th Cir. 2012) ...............................................................................23, 24

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 .....................................................................................................16

*Marilley v. Bonham*,
  2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ...............................................................18

*Mendoza v. Hyundai Motor Co., Ltd.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017)....................................................... *passim*

*Messineo v. Ocwen Loan Servicing, LLC*,
  2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ................................................................17

*Moore v. Verizon Commc'ns Inc.*,
  2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .............................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................................13

*In re OSI Systems, Inc. Derivative Litigation*,
  2017 WL 5634607 (C.D. Cal. Jan. 24, 2017)..............................................................13

*Perkins v. LinkedIn Corp.*,
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ...............................................................15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ...............................................................................................17

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ...................................................................................18

*In re Qualcomm Antitrust Litig.*,
  2018 WL 4680214 (N.D. Cal. Sept. 27, 2018).....................................................20, 21

*Roberts v. Marshalls of CA, LLC*,
  2018 WL 510286 (N.D. Cal. Jan. 23, 2018)........................................................24, 25

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................12

*Russell v. United States*,
  2013 WL 12172989 (N.D. Cal. Mar. 5, 2013) ............................................................13

*Russell v. United States*,
   2013 WL 12172989 (N.D. Cal. Mar. 5, 2013) ............................................................13

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 315 (C.D. Cal. 2016) ..............................................................................13

*Taylor v. Universal Auto Group I, Inc.*,
   2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ......................................................19

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .....................................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .............................................................................................20

*Willcox v. Lloyds TSB Bank, PLC*,
   2016 WL 8679353 (D. Haw. Jan. 8, 2016) ..............................................................22

**OTHER AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) § 13.14 ...............................................11

Manual for Complex Litigation (4th ed. 2004) § 21.312 .............................................17

**NOTE FOR MOTION AND MOTION**

PLEASE NOTE that on February 7, 2019, at 1:30 p.m., or as soon thereafter as may be heard in the courtroom of the Honorable Beth Labson Freeman, United States District Court for the Northern District of California, San Jose Division, Plaintiffs and Class Representatives Free Range Content, Inc. (FRC), Coconut Island Software, Inc. (CIS), Taylor Chose, and Matthew Simpson will and hereby do move the Court, pursuant to Fed. R. Civ. P. 23(e), for a Final Approval Order approving the Class Action Settlement Agreement (Settlement or Settlement Agreement) they have reached with Defendant Google LLC (Google).

More specifically, Plaintiffs seek an order:

1.      Finding that the Settlement is fair, reasonable, and adequate, within the meaning of Fed. R. Civ. P. 23(e)(2);

2.      Finding that the Notice provided to the Settlement Class was directed in a reasonable manner to all Settlement Class Members who would be bound by the Settlement, Fed. R. Civ. P. 23(e)(1); that it constitutes due, adequate, and sufficient notice; and that it comports with the requirements of due process;

3.      Confirming, for settlement purposes, certification of the Settlement Class specified in the Settlement Agreement, per Fed. R. Civ. P. 23;

4.      Approving the method set forth in the Settlement Agreement for distribution of the Settlement Fund, and directing the Settlement Administrator to distribute it pursuant to the outcome of the claims process and Plaintiffs' motion separately pending for service awards to the Plaintiffs and attorneys' fees, costs, and expenses to Class Counsel (ECF No. 258);

5.      Reserving and continuing jurisdiction over the Settlement and any disputes regarding it;

6.      Directing that a final judgment of dismissal be entered; and

7.      Reiterating and confirming the appointment of Plaintiffs as Class Representatives and Hagens Berman Sobol Shapiro LLP, by Steve W. Berman and Robert F. Lopez, as Class Counsel.

This motion is based on the attached supporting memorandum; the declarations submitted herewith and referenced below, with exhibits; the pleadings and papers on file in this action, including (but not limited to) those submitted by the Parties in support of Plaintiffs' motion for preliminary

approval, ECF No. 245, and those submitted by Plaintiffs in support of Plaintiffs' motion for service awards, attorneys' fees, and costs and expenses, ECF No. 258; and the oral argument of counsel to be presented at the scheduled hearing.

## I.     INTRODUCTION

Plaintiffs move for final approval of their Settlement with Google, as well as the related relief requested herein.

All Plaintiffs are former publishers in Google's AdSense program.  They filed this suit because in their view, Google acted unlawfully in withholding 100% of their unpaid program earnings when it terminated their publisher accounts for what it deemed to be invalid activity or policy violations.  They contend that Google behaved in the same way with respect to similarly situated ex-publishers.

After much hard-contested litigation; discovery; and certification of a nationwide litigation class, the Parties reached an $11 million negotiated compromise with the aid of well-respected and experienced mediators.  The Court preliminarily approved the Settlement in May 2018.  (ECF No. 254.)

Following an extensive direct Notice campaign, the claims process ensued.  To ask for a share of the negotiated benefits, Settlement Class Members merely had to complete a simple claim form and to submit it online, via postal mail, or by fax; optionally, to attach any evidence of having submitted a timely notice of dispute to Google, if the class member had done so, such that it could be considered alongside Google's own records; and to sign with an attestation that the class member did not "intentionally violate Google's policies or intentionally cause invalid clicks with regard" to the money allegedly withheld from them in connection with termination.  No Settlement Class Member was required to undertake time-consuming research or to locate and provide proof of sums withheld.

The claims process was successful.  If approved, the Settlement will result in over 9,500 Claimants, with Amounts Allegedly Withheld totaling some $19.7 million, splitting the Net Settlement Fund among themselves per the fair and rational distribution model agreed-upon by the Parties. (Declaration of Brian A. Pinkerton Regarding Notice and Claims Administration (Pinkerton Decl.), ¶¶ 35-38.)

There were very few objectors and opt-outs, which further speaks to the fairness of the Settlement.  Only four of the 200,541 Settlement Class Members submitted what might be deemed

objections to any aspect of the Settlement.  And only 45 Settlement Class Members have timely excluded themselves from the proposed Settlement Class.  As for the objections, the submitters either wish the Settlement were better in their view; address terms that actually comport with precedent; or both.  None of these objections justifies rejection or revision of the Settlement, as Plaintiffs demonstrate below.

Respectfully, this motion should be granted.

## II.   STATEMENT OF RELEVANT FACTS

### A.   Background facts

One way Google arranges for the display of advertising it sells is via its AdSense program. Approved AdSense publishers use their inventory of space on web properties to display ads.

Settlement Class Members entered into AdSense contracts for the U.S., its territories, or Canada. During the relevant period, these contracts—(a) terms and conditions applicable at the inception of the class period, May 20, 2010, through April 22, 2013 (earlier-effective contract); and (b) terms of service applicable from April 23, 2013, through the present (latter-effective contract)— were substantially similar in all pertinent respects.  All contained identical California choice-of-law and venue provisions.

### B.   Plaintiffs' claims

Three of the Plaintiffs were AdSense publishers subject to the U.S. AdSense terms, and the fourth, Mr. Simpson, was subject to the localized terms for Canada.  (*E.g.*, ECF No. 92, ¶¶ 9, 17.)  All were publishers that displayed AdSense ads, but then Google terminated each of their accounts, allegedly for breach of the AdSense terms.  (*E.g.*, *id.* ¶¶ 51, 58, 66, 70, 74, 76, 79, 86, 88, 91.)

All Plaintiffs had unpaid amounts in their AdSense accounts at termination, which Google withheld in their entireties.  (*E.g.*, *id.* ¶¶ 61, 72, 81, 94.)  Plaintiffs contended that Google maintained a policy and practice of zeroing-out publisher accounts—*i.e.*, withholding 100% of accrued but unpaid earnings—on termination for supposed breach of contract.  (*E.g.*, *id.* ¶¶ 30, 34.)   Plaintiffs contended that Google's policies and practices in this regard were uniform.  (*E.g.*, ECF No. 193 at 6-7.)

Google claimed the contractual right to withhold all such unpaid amounts.  (*E.g.*, ECF No. 94 at 10-13.)  Google also repeatedly asserted that it did not keep the money it withheld—that instead it attempted to credit back to advertisers all amounts the advertisers had paid to display their ads on terminated publishers' pages over the prior 60 days, including Google's revenue share.  (*E.g.*, ECF No.

193 at 6.)  Additionally, Google asserted that in the aggregate, over the proposed litigation class period, it had credited to advertisers more than what it had allegedly withheld from publishers, plus what it had been paid in connection with those ads.  (*Id.*)

Plaintiffs challenged Google's withholding practices.  (*E.g.*, ECF No. 92, ¶¶ 114-185.)  They claimed that Google's actions violated California law as to liquidated damages and that Google had breached its contracts to pay Plaintiffs and others what was due them for displaying ads.  (*E.g.*, *id.* ¶¶ 125-146.)  They also claimed that Google's actions constituted breach of the implied covenant of good faith and fair dealing, and they asserted that Google had violated California's Unfair Competition Law.  (*E.g.*, *id.* ¶¶ 147-177.)   Finally, Plaintiffs alleged unjust enrichment.  (*E.g.*, *id.* ¶¶ 158-163.)

## C.   Litigation

Plaintiffs filed their complaint on May 20, 2014.  (ECF No. 1.)  Google responded by moving to dismiss all of Plaintiffs' claims on August 20, 2014.  (ECF No. 21.)  After Plaintiffs amended their complaint on September 10, 2014, ECF No. 27, Google again moved to dismiss, this time on October 15, 2014, ECF No. 38.  Following a hearing on February 12, 2015, the Court dismissed all of Plaintiffs' Claims, with leave to amend as to most.  (ECF Nos. 66, 68.)  Plaintiff filed its second amended complaint on March 5, 2014.  (ECF Nos. 71, 73.)

Plaintiffs then moved for leave to file a motion for reconsideration of dismissal of their liquidated-damages-based claim.  (ECF No. 75.)  The Court granted their motion, ECF No.81, and Plaintiffs filed their reconsideration motion on April 30, 2015, ECF No. 84.  After full briefing and a hearing, the Court granted Plaintiffs' motion for reconsideration on August 25, 2015.  (ECF No. 91.)

Next, on September 15, 2015, Plaintiffs filed their third amended complaint, which included an amended liquidated-damages-based claim.  (ECF No. 92.)  Again Google moved to dismiss.  (ECF No. 94.)  After full briefing and a hearing on February 19, 2016, ECF No. 113, the Court on May 13, 2016, granted in part and denied in part Google's motion to dismiss, ECF No. 116.  Google answered Plaintiffs' third amended complaint on June 3, 2016.  (ECF No. 120.)

Discovery ensued and continued through (and in some regards past) the date the Parties agreed to a settlement-in-principle.  (Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Preliminary Approval (ECF No. 246) (Lopez Prelim. Appr. Decl.), ¶ 5.) The Parties' efforts included 169

requests for production and numerous interrogatories from the Plaintiffs; numerous requests for production and interrogatories from Google; the Parties' answers, objections, and document production in response to these requests, with Google producing tens of thousands of documents, totaling over 96,000 pages, to the Plaintiffs, which included myriad details concerning the inner-workings of the AdSense program and Google's fraud-detection practices; depositions of the Parties, including a 30(b)(6) deposition of Google for which it produced three designees; consultation with experts and, in connection with Plaintiffs' motion for class certification, depositions of each side's consultant; requests for admission from both Parties, and their responses; and many, many calls and exchanges to discuss and work-out various discovery-related disputes.  (*Id.* ¶ 3.)

Following much intensive work on discovery, including the review and analysis of large volumes of highly detailed, dense, and technical material, Plaintiffs moved on March 10, 2017, for class certification.  (ECF Nos. 140-172.)  On April 28, 2017, Google filed a voluminous opposition.  (ECF Nos. 175-197.)  After an extensive reply on June 2, 2017, and a hearing on June 15, 2017, ECF Nos. 198-204, 209, 213-217, the Court issued its decision granting in part and denying in part Plaintiffs' motion, ECF Nos. 224, 234.  By way of its order, the Court certified a class defined as:

> All former or current Google AdSense publishers: (1) whose AdSense accounts were subject to Google's terms of service for the United States; (2) whose AdSense account Google disabled or terminated for any breach of contract, including policy violations or invalid activity, on any date between and including April 23, 2013, and the date of judgment in this matter; (3) whose last AdSense program earnings or unpaid amounts Google withheld in their entirety, and permanently, in connection with such disablement or termination; and (4) who submitted a written notice of dispute to Google within 30 days of notice from Google of withholding from their AdSense publishers' accounts.

ECF No. 234 (Class Cert. Order) at 33-34.  The question certified was based on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.  (*Id.* at 34.)

Ex-publishers terminated under the earlier-effective contract were not included in the certified class due to differing language in a term pertinent to Plaintiffs' implied-covenant claim.  (*See* ECF No. 116 at 24-25.)  Also, the class did not include publishers who had not submitted a timely notice of dispute pursuant to a private-statute-of-limitations term that the Court had earlier upheld.  (*Id.* at 18-21.)

The Parties continued with discovery and prepared for summary judgment and trial, the latter of which was scheduled for March 2018.  (Lopez Prelim. Appr. Decl. ¶ 5; ECF Nos. 226, 228-231, 115.)

1

**D.      The Settlement**

2

**1.      Mediation**

3

On May 15, 2017, after Google filed its opposition to Plaintiffs' motion for class certification,

4

and following the exchange of mediation letters and voluminous exhibits, the Parties engaged in an in-

5

person mediation session with the Hon. Layn Phillips (U.S. Dist. J. Ret.) and his colleague, Greg

6

Lindstrom, in Newport Beach, California.  (Lopez Prelim. Appr. Decl. ¶ 4.)  The Parties did not settle

7

that day.  (*Id.*)

8

After the Court issued its class-certification decision, the Parties engaged in further discussions

9

with and via Mr. Lindstrom to ascertain if a settlement could be reached.  (*Id.* ¶ 5.)  But the Parties did

10

not abate discovery or preparations for motions for summary judgment and trial.  (*Id.*)

11

On September 14, 2017, following many exchanges with and through Mr. Lindstrom, including

12

writings by the Plaintiffs, the Parties agreed to hear a mediator's recommendation.  (*Id.* ¶ 6.)  After

13

deliberation, the Plaintiffs accepted this recommendation in principle.  (*Id.*)  So did Google.  (*Id.*)

14

**2.      Settlement Class definition, class period, and claims period**

15

The Parties advised the Court on September 20, 2017, that they had reached a settlement in

16

principle.  (ECF No. 232.)  But more effort and time was needed before final terms could be reached.

17

(*See* ECF Nos. 238-39.)

18

On March 1, 2018, after much negotiation; numerous email exchanges; requests for, and

19

production of, further data; telephone conferences; exchanges of drafts and terms; and consultation with

20

clients, the Parties inked their Agreement.  (Lopez Prelim. Appr. Decl., ¶ 7.)

21

The Settlement Agreement defines the Settlement Class as:

22

> All persons or entities Google's records indicate are located within the United States,
> American Samoa, Puerto Rico, the United States Minor Outlying Islands, the U.S. Virgin

23

> Islands, or Canada, whose AdSense account Google disabled or terminated on any date
> between May 20, 2010 and the date the Court grants Preliminary Approval of this

24

> Settlement, and whose last AdSense unpaid amounts Google withheld in their entirety,
> and permanently, on any date between May 20, 2010 and the date the Court grants

25

> Preliminary Approval of this Settlement in connection with such disablement or
> termination, and where the sum withheld totals $10 or more.

26

27

(ECF No. 273 Ex. 1, ¶ 1.41.)  The $10 minimum reflects Google's lowest purported payment threshold.

28

(*See* ECF No. 92 Ex. A, ¶ 5 (including pertinent link) and Ex. B, ¶ 11.)

The Settlement Class differs from the certified litigation class by including former publishers from the U.S. territories and Canada, former publishers who did not file notices of dispute, and publishers terminated under the earlier-effective contract. (*Compare* ECF No. 273 Ex. 1, ¶ 1.41, *with* Class Cert. Order at 33-34.) But the Settlement Class is subsumed within the class the Plaintiffs proposed in the operative complaint. (ECF No. 92, ¶ 115.)

As Plaintiffs advised in their motion for preliminary approval, the Parties estimated there were approximately 190,000 Settlement Class Members as of the last date on which Google had compiled its publisher data. (Lopez Prelim. Appr. Decl. ¶ 8.) Google collected this data in late July 2017 in connection with the Parties' final mediated settlement discussions. (*Id.*) After further review of the final data following the Court's order granting preliminary approval, during which process Google identified additional Settlement Class Members, Google confirmed that the proposed Settlement Class includes 200,541 members. (*See* Pinkerton Decl. ¶¶ 5-8.)

The class period runs from May 20, 2010, four years prior to the date of filing of Plaintiffs' initial complaint, through the date of Preliminary Approval (which occurred on May 7, 2018). (ECF No. 273 Ex. 1, ¶ 1.41; ECF No. 254.) The claims period was to run (and did run) 60 days from the Notice Date—the date that Notice is complete (which was to occur no later than 60 days following Preliminary Approval). (ECF No. 273 Ex. 1, ¶¶ 1.7, 1.24; Pinkerton Decl. ¶ 31.) The Parties agreed to an additional 60-day claims period for a small number of Settlement Class Members whom Google identified after the Court granted preliminary approval. (Pinkerton Decl. ¶ 31; Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Final Approval (Lopez Final Appr. Decl.), ¶ 2; ECF Nos. 273 and 274.)

### 3.    Relief to the Settlement Class

#### a.    Generally

The Settlement provides for a Settlement Fund of $11 million in non-reversionary monetary relief. (ECF No. 273 Ex. 1, ¶¶ 1.44, 2.1-.2.) Based on discovery and analysis, including representations by Google, Plaintiffs advised previously that the aggregated sum of Amounts Allegedly Withheld by Google from the Settlement Class totaled approximately $140 million when Google last compiled its data in late July 2017; an approximate subtotal of funds withheld from the certified litigation class, with the U.S. territories and Canada included, was some $37.34 million as of July 2017. (Lopez Prelim. Appr.

Decl. ¶ 17.)  After Google: (a) completed further in-depth analysis, as a result of which it realized that it had previously overstated the total Amounts Allegedly Withheld because it had included revenue from another (non-AdSense) Google product for website publishers; and b) added Amounts Allegedly Withheld from the additional Settlement Class Members it identified after preliminary approval, Google advised that the aggregated sum of Amounts Allegedly Withheld from the Settlement Class actually decreased, to approximately $133 million.  (Lopez Final Appr. Decl. ¶ 3.)

The Settlement Agreement provides that proceeds payable to the Settlement Class are net of: the cost of notice and administration (as of the date of Plaintiffs' motion for preliminary approval, these were estimated to total up to $102,150, *see id.* ¶ 14); attorneys' fees, costs, and expenses (if approved); and Service Awards to the four proposed Class Representatives (if approved).   (ECF No. 273 Ex. 1, ¶¶ 1.21.)  Plaintiffs and their counsel (now Class Counsel) endorse the reasonableness of the Settlement. (Lopez Final Appr. Decl. ¶ 4; Lopez Prelim. Appr. Decl. ¶ 9; ECF Nos. 260-263 (Plaintiff declarations).)

### b.    Direct payments to Settlement Class Members

### (1)    Claims process for direct payments

The Settlement provides for the submittal of Claims for cash benefits.  (ECF No. 273 Ex. 1, ¶ 2.4.)  Settlement Class Members could (and did) submit Claims within the 60-day claims period for the Amount Allegedly Withheld, *i.e.*, for up to 100% of the unpaid amounts that Google withheld in connection with termination.  (ECF No. 273 Ex. 1, ¶¶ 1.4, 1.6, 3.1-3.2.2, 2.4-2.4.4.)  Claims were made via a short, plain Claim Form, which asked a few simple questions.  (Declaration of Shandarese Garr Regarding Notice Plan, Claims, and Requests for Exclusion (ECF No. 247) (Garr Decl.) Ex. F.)  As a fraud-protection measure, Settlement Class Members were asked to certify on the Claim Form that they did not "intentionally violate Google's policies or intentionally cause invalid clicks with regard" to the Amount Allegedly Withheld.  (ECF No. 273 Ex. 1, ¶ 3.1.2.)

Also, in recognition of the Court's ruling with respect to a 30-day private statute of limitations in the latter-effective contract, ECF No. 116 at 18-21, the Settlement Agreement contains provisions for ascertaining timely notices of dispute.  (ECF No. 273 Ex. 1, ¶¶ 3.1.2 and 3.3.)  These provisions were observed.  (*See* Lopez Final Appr. Decl. ¶ 5; Pinkerton Decl. ¶ 34.)

1

**(2)   Settlement Scenarios**

2    The Settlement contemplated and set forth three Settlement Scenarios, depending on the total

3    sum of Amounts Allegedly Withheld corresponding to Valid Claims.  (ECF No. 273 Ex. 1, ¶¶ 2.4.1-

4    2.4.4.)

5

**(3)   Payment Groups**

6    In order to satisfy Claims fairly if Scenario 2 or 3 developed, the Parties agreed to three Payment

7    Groups.  (*Id.*, ¶¶ 2.4.3(i)-(iii).)   The Parties designed these Payment Groups to take into account

8    available funds and the Court's prior rulings on class certification, ECF No. 234 at 33-34; Plaintiffs'

9    breach-of-the-implied-covenant claim as it relates to both the earlier and latter iterations of the AdSense

10    contract, ECF No. 116 at 24; and Google's contractual statute of limitations provisions, *id.* at 18-21.

11

**(4)   Disposition of any remaining funds**

12    The Agreement also provides for the redistribution of funds to Settlement Classes following

13    initial distribution to Settlement Class Members, with any remaining funds, *see* Lopez Prelim. Appr. Decl.

14    ¶ 11, to be donated to two worthy *Cy Pres* Recipients: Public Counsel and Public Justice Foundation. (*See*

15    ECF No. 273 Ex. 1, ¶¶ 1.11, 2.4.2, 2.5.1, 2.5.2.)  Each has national reach and a reputation for consumer

16    protection, including in the Internet arena.  (*See* Lopez Prelim. Appr. Decl. Exs. D and E.)

17    Because 100% of the Net Settlement Fund will be initially distributed to Settlement Class

18    Members as a result of the claims process, Pinkerton Decl. ¶¶ 35, 38.  Only paragraph 2.5.1 of the

19    Settlement Agreement could result in a modest *cy pres* distribution.  This would occur: (a) as to any failed

20    ACH/physical check redistribution funds left over as to Settlement Class Members whose Valid Claims

21    have already been paid at 100%; and (b) as to any redistribution funds otherwise payable to Settlement

22    Class Member who chose payment by physical check, but only if the redistribution otherwise payable to

23    those Settlement Class Members would total less than $3.00 apiece.  (*See* ECF No. 273 Ex. 1, ¶ 2.5.1.)

24

**4.   Notice, opt-out procedures, and release**

25    The Court-approved notice program provided for Direct Email Notice to Settlement Class

26    Members, with Supplemental Postcard Notice to those to whom Direct Email Notice was undeliverable

27    (where Google had physical mail addresses).  (ECF No. 254, ¶¶ 11-12.)  The Settlement also

28    contemplated a Supplemental Digital Notice Campaign if direct-notice efforts fell short of a 72% reach

1  (which they did not).  (*Id.* ¶ 7; ECF No. 273 Ex. 1, ¶ 4.6; Garr Decl. ¶ 12; Pinkerton Decl. ¶ 24.)

2  Additionally, the Settlement Agreement called for a press release (which was issued, Pinkerton Decl. ¶ 9)

3  and a Settlement Website (which was accomplished, *id.* ¶ 29).  (ECF No. 254, ¶¶ 7, 13; ECF No. 273 Ex.

4  1, ¶¶ 1.46, 4.4-4.4.3, 4.5; Garr Decl. ¶¶ 19-20 and Ex. C; ECF No. 253 Ex. 2.)  Also, the Settlement

5  Administrator was to (and did) effect CAFA notice.  (ECF No. 273 Ex. 1, ¶ 4.7; Pinkerton Decl. ¶ 4.)

6        The Settlement Administrator successfully administered the notice program, including as to the

7  additional Settlement Class Members whom Google discovered after preliminary approval.  (Pinkerton

8  Decl. ¶¶ 18-23; ECF No. 254, ¶¶ 11-12.)  The Settlement Administrator estimates that it reached 80% of

9  Settlement Class Members via direct email and postcard notice.  (Pinkerton Decl. ¶ 24.)

10        Costs of notice are to be paid from the Gross Settlement Fund.  (ECF No. 273 Ex. 1, ¶ 4.1.4.)  .

11  Plaintiffs provided an initial estimate of Settlement Administration costs and expenses, including notice,

12  of $102,150.  (Lopez Prelim. Appr. Decl. ¶ 14.)  Actual costs may moderately, per the Settlement

13  Administrator.  (Pinkerton Decl. ¶ 37.)  Plaintiffs ask leave for the Parties to pay the Settlement

14  Administrator accordingly, from the Settlement Fund.

15        The Email Notice approved by the Court, ECF No. 254, ¶¶ 6-7 and ECF No. 253 Ex. 3,

16  described the material terms of the Settlement and the claims procedure.  (ECF No. 253 Ex. 3 at 3.)  The

17  Email Notice also described the procedures for Settlement Class Members to object to, or exclude

18  themselves from, the Settlement.  (*Id.* at 5, 6-7.)  Opting out entailed a timely request on a simple form.

19  (ECF No. 273 Ex. 1, ¶ 5.2.1; Garr Decl. Ex. G.)  The Supplemental Postcard Notice provided a

20  summary of the foregoing.  (Garr Decl. Ex. E.)

21        If the Court grants final approval, then the Releasing Named Plaintiffs and Releasing Class

22  Members will be deemed to have released all Released Claims against the Releasees.  (ECF No. 273 Ex.

23  1, ¶¶ 1.34-1.37, 6.2-6.3.)  The Released Claims are those that "arise out of or relate to the allegations in

24  the operative complaint and that occurred during the Settlement Class Period . . . ."  (*Id.* ¶ 1.34.)

25        **5.       Service awards and attorneys' fees, costs, and expenses**

26        The Parties agreed that Plaintiffs could apply for Service Awards of no more than $5,000 for

27  each of the four Plaintiffs.  (*Id.* ¶ 9.2; ECF Nos. 258-263.)  As for Plaintiffs' attorneys' fees, costs, and

28

1   expenses, the Settlement Agreement contemplated that Plaintiffs would request those by motion.  (ECF

2   No. 273 Ex. 1, ¶ 8.1.)  Google reserved the right to oppose Plaintiffs' motion.  (*Id.*)

3   **E.      Preliminary approval, notice, and subsequent proceedings**

4          On May 7, 2018, the Court granted Plaintiffs' motion for preliminary approval of the Settlement,

5   ECF No. 254, followed by Notice and the claims process described herein.  Plaintiffs filed their motion

6   for service awards, attorneys' fees, costs, and expenses on August 3, 2018.  (ECF No. 258.)  On January

7   2, 2019, Plaintiffs re-noted this motion for hearing on February 7, 2019, per the Court's order of

8   September 25, 2018 (ECF No. 272).  (ECF No. 275.)

9   **F.      Outcome of the claims process**

10         Settlement Class Members submitted 9,548 Valid Claims (with 9,551 payments to be made on

11  these claims).  (Pinkerton Decl. ¶¶ 33, 35.)  The aggregated Amount Allegedly Withheld for these Valid

12  Claims is $19,737,936.01 (or .02, depending on rounding)—1,897 members in Group 1; 2,998 members

13  in Group 2; and 4,656 members in Group 3, with combined Amounts Allegedly Withheld at

14  $7,344,305.92, $4,045,904.87, and $8,347,725.23, respectively.  (*Id.* ¶ 35.)  If Plaintiffs' requests for final

15  approval; service awards, attorneys' fees, costs, expenses; and leave to pay the Settlement Administrator

16  are granted, the Net Settlement Fund will be close to $8 million.  (*Id.* ¶ 37.)  This sum is approximately

17  40.53% of the collective Amount Allegedly Withheld from Claimants (*i.e.*, of $19,737,936.01).

18         The claims process resulted in the Settlement's Scenario 3.  (Pinkerton Decl. ¶ 38.)  If the

19  "10/5/3 ratio of percentages" are applied per paragraphs 2.4.3-2.4.4 of the Settlement Agreements,

20  Total Valid Claims would be payable in the aggregated sum of $11,871,575.93, before pro-rating.  (*Id.*

21  ¶¶ 36, 38.)  A Net Settlement Fund of $8 million is approximately 67.39% of this sum.

22                            **III.      ARGUMENT**

23  **A.      The Court should grant final approval of the Settlement.**

24         Approval of a class-action settlement proceeds through two stages: preliminary approval and

25  final approval, with notice in-between.  *See, e.g.*, Manual for Complex Litigation (MCL) § 13.14 (4th ed.

26  2004).  It is now time to consider Plaintiffs' request for final approval.

27

28

1

### 1.      General standards

2      As the Ninth Circuit has stated, "there is an overriding public interest in settling and quieting

3  litigation.  This is particularly true in class action suits. . . ."  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229

4  (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

5      The Court is called upon to examine "whether [the] proposed settlement is 'fundamentally fair,

6  adequate, and reasonable.'"  *Burden v. SelectQuote Ins. Servs.*, 2013 WL 1190634, at *2 (N.D. Cal. Mar. 21,

7  2013) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150

8  F.3d 1011, 1026 (9th Cir. 1998))).  As they deliberate, courts should give proper deference to parties'

9  agreed settlements.  *E.g.*, *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit

10  has long deferred to the private consensual decision of the parties.") (citing *Hanlon*, 150 F.3d at 1027).

11      ### 2.      The Settlement meets the standards for final approval.

12      #### a.      The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation.

13

14      In the instant process, the Court should assure itself that "the agreement is not the product of

15  fraud or overreaching by, or collusion between, the negotiating parties . . . ."  *Hanlon*, 150 F.3d at 1027

16  (internal quotes and citations omitted).  Here, the Settlement was achieved only after much investigation;

17  research; informal discovery; analysis; consultation; an in-person mediation session with Judge Phillips

18  and Mr. Lindstrom; and much further arm's-length negotiation beyond that, including with the

19  continued aid of these mediators.  (Lopez Prelim. Appr. Decl. ¶¶ 4-8.)  The involvement of neutral

20  mediators is "a factor weighing in favor of a finding of non-collusiveness."  *See In re Bluetooth Headset

21  *Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607,

22  at *3 (C.D. Cal. Jan. 24, 2017) (agreeing that Judge Phillips' participation "'weigh[ed] considerably against

23  any inference of a collusive settlement'") (citation omitted).

24      Also, while the proposed Settlement Class is broader than the certified litigation class, this does

25  not require application of the "higher *Bluetooth* standards for settlement approval, which normally apply

26  only to agreements negotiated prior to class certification."  *Kumar v. Salov N. Am. Corp.*, 2017 WL

27  2902898, at *4 (N.D. Cal. July 7, 2017) (citing *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2016) (noting

28  that *Bluetooth's* "more strict" standards apply only "when a settlement is negotiated absent class

certification")).  Here, as in *Kumar*, this Court already "undertook a thorough analysis of the evidence and claims in the context of the class certification motion," which will aid its current deliberations.  *See id.*; *see also Russell v. United States*, 2013 WL 12172989, at *2 (N.D. Cal. Mar. 5, 2013) (granting certification for settlement purposes to "an expanded version of the class already certified under Rule 23(a) and (b)(3)").  And in any event, the Settlement satisfies the higher level of scrutiny applied to pre-certification settlements, as illustrated by the Court's well-informed decision to grant preliminary approval, ECF No. 254.  *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 315, 318-24 (C.D. Cal. 2016) (noting that certification standards should be given "undiluted, even heightened, attention in the settlement context" and proceeding to preliminarily approve settlement class broader than litigation class) (citations omitted).

There remains no "evidence of collusion or other conflicts of interest"—for example, counsel will not receive "a disproportionate distribution of the settlement," there is no "'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and there is no agreement that "fees not awarded" will "revert to defendants"—that would preclude final approval of the Settlement.  *Bluetooth*, 654 F.3d at 946-47.  To the contrary, the Settlement is the product of well-informed, adversarial negotiations conducted by Plaintiffs on behalf of the Settlement Class.

### b.   The settlement is fair, adequate, and reasonable.

Rule 23(e) requires a district court to ensure that a proposed class action settlement is fair, adequate, and reasonable.  *E.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted).  In making its assessment, a court must weigh a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("This list is not exclusive and different factors may predominate in different factual contexts.") (citing *Officers for Justice*, 688 F.2d at 625).  Consideration of these factors supports final approval.

*First, second, third, fifth, and sixth factors.*  Plaintiffs claimed that Google's actions violated California

law as to liquidated damages; that Google had breached its contracts to pay Plaintiffs and others what was due them for displaying ads; that Google's actions constituted breach of the implied covenant of good faith and fair dealing; and that Google had violated California's Unfair Competition Law.  (E.g., (ECF No. 92, ¶¶ 125-177.)   Plaintiffs also alleged unjust enrichment.  (*E.g.*, *id.* ¶¶ 158-163.)  Their liquidated damages claim; breach of contract claim (except as specified regarding payment-related claims by Ms. Chose and Mr. Simpson); breach of the implied covenant of good faith and fair dealing claim (to the extent that it relied on allegations of payments withheld under the later-effective Terms of Service); unlawful- and unfair-prong UCL claims; and claims for declaratory relief survived Google's motions to dismiss.  *Free Range Content, Inc. v. Google Inc.*, 2016 WL 2902332, at *19 (N.D. Cal. May 13, 2016).

Plaintiffs sought to recover all funds withheld from Settlement Class Members at account termination based on the theory that Google's 100% withholding practice is unlawful, and they were pleased with the outcome of Google's motions to dismiss.  (ECF No. 92 at 48-64.)  But they also acknowledged that Google might be able to demonstrate the right even now to withhold funds directly affected by the purported contractual breaches at issue.  (*See* ECF No. 103 at 6-7 ("In any event, even if Google ultimately could demonstrate that each plaintiff materially breached as to certain ad serves, it cannot withhold payment for all the other ad serves.").)

Further, Plaintiffs had to acknowledge Google's steadfast and vigorous contention that every Amount Allegedly Withheld is spurious, given that the dollar value reflects no deductions for the purported breaches of contract, claimed by Google to be extensive and egregious, that led it to terminate and withhold. (*E.g.*, ECF No. 193 at 7-8.)   At class certification, for example, Google adduced what it asserted to be strong evidence of ad-related activity on the part of terminated publishers that breached its contract and violated its purportedly incorporated policies.  (*E.g.*, ECF Nos. 178 and 179.)  In its view, such activity fully justified its withholdings.  (*E.g.*, ECF No. 193 at 3-8)  Further, Google has always maintained that publishers' purported invalid activity or policy violations entitled it contractually to withhold 100% of these unpaid amounts.  (*E.g.*, ECF No. 94 at 10; ECF No. 103 at 6-7.)

Google further contended that it routinely refunded both the funds withheld at termination, and that a separate provision of the terms gave it the right to reduce payments to publishers accordingly. Also, Google advised that it would rely on contractual limitations of liability that in its view would

1   severely curtail any recovery, even under Plaintiffs' best-case scenarios.  (*See* ECF No. 92 Exs. A and B,

2   ¶¶ 13 and 10, respectively.)  While Plaintiffs disagreed based on their reading of these provisions and

3   relevant authorities, nonetheless they had to consider this risk.  (Lopez Prelim. Appr. Decl. ¶ 19.)

4         And while the Court certified a class on Plaintiffs' breach-of-the-implied-covenant theory

5   (alone), success was not assured for class members.  (*Id.* ¶ 20.)  As the Court pointed out, a jury might

6   "determine that merely hosting a website that attracts clicks is not substantial performance, in which case

7   Plaintiffs will lose on the merits."  (ECF No. 234 at 29 n.4.)  And again, Plaintiffs continued to face the

8   prospect that even though Google chose not to make granular cuts in connection with termination, the

9   Court might find that it was entitled to offsets by proving them now.  Likely to Google this would signal

10  grounds for class decertification (which could lengthen this case significantly, as would an appeal); and in

11  any event, proceeding to prove these cuts could significantly, or even dramatically, cut into recovery by

12  members of the certified class.  (Lopez Prelim. Appr. Decl. ¶ 20.)  "Approval of a class settlement is

13  appropriate when plaintiffs must overcome significant barriers to make their case."  *In re: Cathode Ray*

14  *Tube*, 2016 WL 3648478, at *6 (N.D. Cal. July 7, 2016) (citation omitted).

15        So while Plaintiffs had what they believed to be strong affirmative theories and rebuttals to

16  Google's defenses, nonetheless, there was significant risk in proceeding further with litigation.  (Lopez

17  Prelim. Appr. Decl. ¶ 21.)  Plaintiffs' lawyers have extensive experience and expertise in prosecuting

18  complex class actions, including consumer and commercial actions.  (*Id.* ¶ 15 and Ex. C.)  Accordingly,

19  they were and are well-suited to evaluating the strength of Plaintiffs' claim alongside the risks of

20  continued litigation.  Ultimately, after taking into account the risk, expense, complexity, and likely

21  duration of further litigation, *see, e.g.*, *Burden*, 2013 WL 1190634, at *3, Plaintiffs and their counsel, with

22  the aid of the Parties' seasoned and well-respected mediators, were able to achieve the Settlement, which

23  allows for substantial monetary relief to the Settlement Class.  (Lopez Prelim. Appr. Decl. ¶ 21.)

24        *Fourth factor.*  Plaintiffs achieved an $11,000,000 compromise.  This is a fine real-world result

25  when weighed against the strengths and challenges of Plaintiffs' case.  *Cf., e.g.*, *Perkins v. LinkedIn Corp.*,

26  2016 WL 613255, at *2-3, 5 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement to some 20.8

27  million class members where exposure exceeded $1.6 billion); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939,

28  943-44 n.4, 949 (N.D. Cal. 2013) (granting final approval of settlement with $20 million to 124 million

class members where potential exposure was in the billions, perhaps in excess of $112 billion); *see also In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1130-31 (N.D. Cal. 2015) (granting final approval of settlement with $8.5 million to 129 million member class); *Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members a trial.") (citations omitted).

*Seventh factor.* Further, while there were no government participants in this action, the Settlement Administrator notified the U.S. attorney general and state and District of Columbia attorneys general of the Settlement, Pinkerton Decl. ¶ 4, and none objected. This, too, speaks to the fairness, reasonableness, and adequacy of the Settlement.

*Eighth factor.* As for the reaction of the 200,541 Settlement Class Members, the claims process resulted in a claims rate of approximately 4.76% (9,548/200,541). This is within the range of settlements approved in this district. *See, e.g., Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (3% claims rate); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 598 (5.93%).

Also, only 45 Settlement Class Members opted out by the published deadlines. (Pinkerton Decl. ¶ 40 and Ex. J.) This represents a scant .022% of Settlement Class Members.

A total of 57 "objections" were submitted by the deadlines (and none by Additional Class Members)—56 to the Settlement Administrator, and one to the Court directly. But, per the Settlement Administrator's verification, only 18 of these "objections" were actually submitted by Settlement Class Members. (*Id.* ¶ 42 and Ex. K.)

Of the 18 "objections" actually submitted by class members, only four actually constitute real objections in any way. (Lopez Final Appr. Decl. ¶ 6.) (Plaintiffs address these below.) The four class members who filed objections represent approximately .00199% of the Settlement Class.

The paucity of opt-outs and objections speaks to a positive class reaction to the settlement, further supporting its final approval. *E.g., Churchill Village*, 361 F.3d at 577 (affirming approval of settlement where 45 of 90,000 class members objected to the settlement and 500 class members opted out); *Mendoza*, 2017 WL 342059, at *7-8 (finding that low opt-out and objection rates—247 opt-outs and 41 objections from among 1.3 million class members—was an indication of positive class reaction that

favored final approval) (citations omitted); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *3 (N.D. Cal. Sept. 2, 2015) (finding indicia of approval where 11 class members out of 64,466 submitted objections and where less than 0.9% opted out).

**B.     The notice program was extensive, exceeded precedent, and satisfied applicable standards.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . . .'"  MCL § 21.312, at 293.  In order to protect the rights of absent class members, the Court must direct the best notice practicable to class members.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

Here, the Court ordered a direct-notice plan (with a Supplemental Digital Notice adjunct that proved unnecessary), ECF No. 254, ¶¶ 6-14, and the Settlement Administrator effected it as ordered. (Pinkerton Decl. ¶¶ 10-24.)  Per the Settlement Administrator, Notice via email and postcards where needed reached approximately 80% of Settlement Class Members directly (including the additional Settlement Class Members identified by Google post-preliminary approval).  (*Id.* ¶ 24.)  Also, the Settlement Administrator created a Settlement Website that went live on May 8, 2018, which provided additional notice.  (*Id.* ¶ 29.)  So did the press release regarding the Settlement.  (*See* Lopez Final Appr. Decl. ¶ 7.)

Given the foregoing, the best notice practicable was achieved here.  *See, e.g.*, *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *4 (N.D. Cal. Feb. 24, 2017) (citing *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements)).

In sum, the Settlement meets the standards for final approval.

**C.     Plaintiffs meet the requirements for class certification.**

Furthermore, the provisionally certified Settlement Class, which seeks only economic damages, is well-suited to final approval.  *E.g.*, *Hanlon*, 150 F.3d at 1019-23.

**1.     The Rule 23(a) requirements are met.**

In order to merit class certification, Plaintiffs must show at the outset that the class is so

numerous that joinder is impracticable; questions of law or fact are common to the class; the claims of

the representative plaintiffs are typical of the claims of the class; and the proposed class representatives

will protect the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(a).  Plaintiffs meet these

prerequisites, as recognized by way of the Court's grant of preliminary approval, ECF No. 53, ¶ 2,

following briefing and a hearing.  *See Mendoza*, 2017 WL 342059, at *5 (referring to order granting

preliminary approval and stating: "The Court is unaware of any changes that would alter its analysis, and

thus sees no reason to revisit the analysis of Rule 23.") (citation omitted).  For the sake of thoroughness,

Plaintiffs re-address these factors below.

### a.   Numerosity

The Settlement Class consists of 200,541 members.  Accordingly, "joinder of all members is

impracticable," to say the least.  Fed. R. Civ. P. 23(a)(1).  Thus, the requirement of numerosity is easily

satisfied.  *See, e.g.*, *Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor v. I.N.S.*, 306 F.3d 842, 869 (9th

Cir. 2002) (noting that numerosity requirement has been satisfied in cases involving 39 class members).

### b.   Commonality

As one court has summarized:

> Commonality requires the existence of questions of law or fact that are common to the
> class.  Fed. R. Civ. P. 23(a)(2).  Commonality focuses on the relationship of common
> facts and legal issues among class members.  *See, e.g.*, 1 William B. Rubenstein, *Newberg on
> Class Actions* § 3:19 (5th ed. 2011).  Courts construe this requirement permissively.
> *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).  "All questions of fact and
> law need not be common to satisfy the rule.  The existence of shared legal issues with
> divergent factual predicates is sufficient, as is a common core of salient facts coupled
> with disparate legal remedies within the class."  *Id.*  In fact, it only takes one common
> question of fact or law shared between proposed class members to satisfy commonality.
> *Dukes*, 131 S. Ct. at 2556.

*Marilley v. Bonham*, 2012 WL 851182, at *4 (N.D. Cal. Mar. 13, 2012).  The Ninth Circuit has more

recently reiterated that one common question is sufficient for Rule 23(a)(2) purposes.  *E.g.*, *Pulaski &*

*Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 n.8 (9th Cir. 2015) (citing *Wal–Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2556 (2011)).

Here, Plaintiffs' allegations raise numerous common questions.  Among them is whether Google

violated the implied covenant of good faith and fair dealing by way of its uniform withholding practices.

(ECF No. 143 at 20-21.)  This subsumes the common question of whether Plaintiffs provided

compensable value by way of allowing the display of ads on their web properties.  It also entails the common question of whether Google demonstrated bad faith in its procedures relating to the withholding of 100% of unpaid amounts upon termination of publisher accounts.  Commonality is satisfied here "because the key issues in the case are the same for all class members."  *Jacob v. Pride Transp., Inc.*, 2018 WL 1411136, at *3 (N.D. Cal. Mar. 21, 2018).

### c.   Typicality

Typicality is met as well.  "'[A] finding of commonality will ordinarily support a finding of typicality.'"  *Taylor v. Universal Auto Grp. I, Inc.*, 2014 WL 6654270, at *13 (W.D. Wash. Nov. 24, 2014) (citations omitted).

> Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class.  The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

*Burden*, 2013 WL 1190634, at *5 (citation omitted).

Here, Plaintiffs advanced the same claims as fellow proposed Settlement Class Members, and they were required to satisfy the same legal elements.  They share identical legal theories with putative Settlement Class Members, based on allegations that Google violated the law by withholding 100% of unpaid earnings from AdSense publishers upon termination for purported breach of contract.  Their alleged injuries are the same, too; like others in the proposed class, Plaintiffs allege that Google actually withheld all their unpaid earnings at termination.  Thus, Rule 23(a)(3) is satisfied.

### d.   Adequacy

Finally, it must be determined whether the named plaintiffs "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted).  Plaintiffs answer both of these questions in the affirmative.

First, Plaintiffs' claims are co-extensive with those of Settlement Class Members.  All have an identical interest in establishing the Defendant's liability, and each has been injured in the same manner.

All assert the same legal claims, and all sought identical relief.  There is no conflict among them.

Also, each Plaintiff agreed to assume the responsibility of representing the class, and each has done so, including by way of assisting with the drafting of complaints, consulting with counsel during the course of this litigation, monitoring the course of this case, and consulting with counsel regarding proposed terms of settlement.  (*See* Lopez Prelim. Appr. Decl. ¶ 12; *see also generally* ECF Nos. 260-263 (Plaintiff declarations).)

Second, as discussed in counsel's declaration and as illustrated in counsel's firm resume and biographies, Class Counsel have extensive experience and expertise in prosecuting complex class actions, including commercial, consumer, and high-tech based actions.  (*See* Lopez Prelim. Appr. Decl. ¶ 15 and Ex. C.)  Counsel have pursued this litigation vigorously, and throughout they have remained committed to advancing and protecting the common interests of all members of the class.  (*Id.* ¶¶ 15-16.)

Rule 23(a)(4) is satisfied.

**2.  Because common questions predominate, and a class action is the superior method to adjudicate class members' claims, the Court should certify the proposed Rule 23(b)(3) Settlement Class.**

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) also is satisfied.  Here, Rule 23(b)(3) is satisfied because common questions predominate over questions affecting only individual class members, and the class action device provides the best method for the fair and efficient resolution of class members' claims.

**a.  Common questions predominate.**

Rule 23(b)(3) requires an examination of whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ."  "The Ninth Circuit has held that 'there is clear justification for handling the dispute on a representative rather than an individual basis' if 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'"  *In re Qualcomm Antitrust Litig.*, 2018 WL 4680214, at *11 (N.D. Cal. Sept. 27, 2018) (citing *Hanlon*, 150 F.3d at 1022 (citation omitted)).  Therefore, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b) . . . ."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  "The ultimate predominance question is

'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Qualcomm*, 2018 WL 4682014, at \*11 (citing *Tyson*, 136 S. Ct. at 1045 (internal citation omitted)).

Common questions include whether Google had uniform policies and practices as alleged; whether Settlement Class Members gave compensable value by displaying ads; and whether Google breached the implied covenant of good faith and fair dealing, or violated other law, by withholding 100% of unpaid amounts in connection with termination of publisher accounts for purported breach of contract.  (*E.g.*, ECF No. 234 at 13-14, 27-29.)  (As to questions attendant to claims beyond their certified breach-of-the-implied-covenant claim, Plaintiffs maintained their rights to appeal the denial of class certification, for which they obtained value in this Settlement.)  These common questions predominate over any issues affecting only individuals.  Also, the Settlement obviates any litigation-management issues.  *E.g.*, *Hickcox-Huffman v. US Airways, Inc.*, 2018 WL 5291990, at \*2 (N.D. Cal. Oct. 22, 2018) ("The Court also concludes that, because the Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a nationwide class action involving the issues in this case.") (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)).

Furthermore, there are no variations in state law that might swamp common questions.  The same California choice-of-law provision inheres in both the earlier- and latter-effective contracts applicable to U.S., U.S. territory, and Canadian publishers.  (ECF No. 92, ¶ 26 and Exs. A, ¶ 14, and B, ¶ 17.)  Accordingly, Google has never contested the application of California law to all their claims.

Predominance is established.

**b.      Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class.**

As for the requirement in Fed. R. Civ. P. 23(b)(3) that the class action be "superior to other available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the fair and efficient resolution of all putative Settlement Class Members' claims.  Given that 200,541 Settlement Class Members share common issues, the class device is the most efficient and fair means of adjudicating all these many claims.  Class treatment is certainly far superior to tens of thousands of individual suits or piecemeal litigation; in this matter, it will fulfill its function of conserving scarce

1    judicial resources and promoting the consistency of adjudication.  *See*, *e.g.*, Class Cert. Order at 30-31

2    (citing *In re Apple In-App Purchase Litig.*, 2013 WL 1856713, at *4 (N.D. Cal. May 2, 2013)).  Accordingly,

3    the superiority aspect of Rule 23(b)(3) is readily met.

4         Also, the presence of U.S. territory and Canadian members of the proposed Settlement Class

5    should give the Court no concerns.  *See*, *e.g.*, *Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 8679353, at *13

6    (D. Haw. Jan. 8, 2016) ("Federal courts have previously certified classes with Canadian members, finding

7    that Canadian courts 'would more likely than not recognize and give preclusive effect to a judgment

8    rendered' by a U.S. court.") (citations omitted).

9    **D.      Objections**

10            **1.      Melin objection**

11        Eric Melin submitted an objection (but without the declaration required by the Preliminary

12   Approval Order) that may or may not concern AdSense.  (Lopez Final Appr. Decl. Ex. A (indicating

13   that he has "spent millions on Google AdSense," which is not a paid product).)  He states that he

14   "was/am a Client / Customer" within the class period and indicates that his account is linked to other

15   Google services, "so the Class Action cannot be limited to one AdSense account."  (*Id.*)  He states that

16   each account among the dozens his "Advertising Agency" represents should be "handled separately and

17   uniquely in order for the court to consider fairly and determine a percentage / accurate number of

18   accounts / replies."  (*Id.*)  He also indicates his belief that the "Settlement Fund is excessive for

19   Attorneys' Fees . . . ."  (*Id.*)  Finally, he asks for "a list of Non-Profit Organizations" and, evidently, the

20   method by which they were chosen.  (*Id.*)

21        Assuming for argument's sake that Mr. Melin intended his comments with respect to this

22   AdSense-related Settlement, his complaints mostly distill to a desire for terms he considers better.  This

23   is an insufficient basis to reject the Settlement, which was hard-won and thoroughly negotiated after

24   much discovery and litigation, and with the aid of experienced and respected mediators.  *See Mendoza*,

25   2017 WL 342059, at *8 ("[I]t is the nature of a settlement, as a highly negotiated compromise . . . that it

26   may be unavoidable that some class members will always be happier with a given result than others.")

27   (citing *Allen*, 787 F.3d at 1223).  Also, to the extent his Advertising Agency had clients that were

28   Settlement Class Members, each could have submitted a Claim for benefits under the Settlement.

1    As for Mr. Melin's comment that the "Settlement Fund is excessive for Attorneys' Fees," the

2    Settlement Agreement merely allows Plaintiffs to seek a portion of the Settlement Fund for attorneys'

3    fees.  This is a frequent, unobjectionable term in common-fund settlements.  *E.g.*, *Mendoza*, 2017 WL

4    342059, at *13 (noting that in *Bluetooth*, the Ninth Circuit reiterated the methods by which courts can

5    award fees "[w]here a settlement produces a common fund for the benefit of the entire class.") (citing

6    *Bluetooth*, 654 F.3d at 942); *Salazar v. McDonald's Corp.*, 2017 WL 6883994, at *1 (N.D. Cal. Sept. 15, 2017)

7    ("Class Counsel's fees should be paid from the common fund created by the settlement because all class

8    members should contribute their fair share of the cost of the litigation from which they benefited.").

9    Furthermore, Plaintiffs seek only the 25% Ninth Circuit benchmark rate for their fees, ECF No. 258 at

10   10, which also comports with governing California law.  *E.g.*, *Salazar* , 2017 WL 6883994, at *1 (noting

11   that "33 1/3% [is] generally awarded in [common fund] cases governed by California law") (citations

12   omitted); *Bluetooth*, 654 F.3d at 942 (reiterating benchmark rate) (citation omitted).  Respectfully, the fee

13   term provides no basis to reject the Settlement.

14   With respect to Mr. Melin's comments regarding Non-Profit Organizations, he may be referring

15   to the two potential *Cy Pres* Recipients.  But they are already identified (Public Counsel and Public Justice

16   Foundation), ECF No. 273 Ex. 1, ¶ 1.11.  Regarding their selection, each was determined following

17   investigation to be worthy of receiving residual Settlement funds, if any remain (*i.e.*, the small potential

18   residuum discussed above); each does pertinent work on a nationwide scale, including as to the

19   consumer-oriented claims that were part of Plaintiffs' complaint, Lopez Prelim. Appr. Decl. ¶ 11 and

20   Exs. D and E, and neither was selected due to any known connection to Class Counsel or Google's

21   counsel, Lopez Final Appr. Decl. ¶ 9.  Thus, Mr. Melin's comments also provide no basis for rejection

22   of the Settlement, especially where the *Cy Pres* Recipients were chosen in light of "the nature of

23   plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of silent class members. . . ."

24   *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820-21(9th Cir. 2012) (citing *Nachshin v. AOL, LLC*, 663 F.3d

25   1034, 1036 (9th Cir.2011)).  In fact, though the *Cy Pres* Recipients are in fact worthy potential donees of

26   any residual funds under the Settlement, the Ninth Circuit has stated that it "do[es] not require as a part

27   of [the cy pres] doctrine that settling parties select a cy pres recipient that the court or class members

28   would find ideal.").  *Lane*, 696 F.3d at 820-21.

1    For these reasons, Mr. Melin's objections should be overruled.

2    **2.    Dodaj objection**

3    George Dodaj objects because "[t]he amount of $11,000,000 appears incredibly low."  (Lopez

4    Final Appr. Decl. Ex. B.)  Mr. Dodaj states that "[a] fair settlement would be for Google to simply

5    release the funds [withheld] and pay interest on them."  (*Id.*)  He also states that "[c]onsumers and

6    business in this situation are entitled to a fair settlement that fully compensates them for their losses" as

7    distinct from a Settlement that appears to him "to provide class counsel with attorney fees and a few

8    dollars to the victims of Google's conversion of commissions."  (*Id.*)

9    While any litigant wishes he could obtain 100% of the topmost sum sought in any case, this

10   Settlement was the product of informed negotiations that took into account not only the strength and

11   righteousness of ex-publishers' claims, but also their weaknesses, as well as litigation risks and the

12   prospects for long delays before publishers might see any relief.  (Lopez Prelim. Appr. Decl. ¶¶ 16-21.)

13   Under these circumstances, $11,000,000 is hardly small.  And in fact, the Net Settlement Fund

14   approximates 40.53% of the aggregated Amount Allegedly Withheld from Claimants.  (Pinkerton Decl.

15   ¶¶ 35, 38.)  Also, any fee to Class Counsel will be made only pursuant to this Court's order, subject to

16   well-established legal principles.  (*See generally* ECF No. 258.)

17   Mr. Dodaj's objections should be overruled.  *See, e.g., Roberts v. Marshalls of CA, LLC*, 2018 WL

18   510286, at *11-13 (N.D. Cal. Jan. 23, 2018) (overruling objection based on contention that it was

19   "grossly inadequate and bloated with excessive and unreasonable attorneys' fees," and noting the Ninth

20   Circuit's admonition that "Settlement is the offspring of compromise; the question we address is not

21   whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate, and free

22   from collusion.") (citing *Hanlon*, 150 F.3d at 1027).

23   **3.    Isaac objection**

24   Next, Paul Isaac objects to the *Cy Pres* Recipients receiving any funds, *see* Lopez Final Appr.

25   Decl. Ex. C, but *cy pres* is a well-established and viable doctrine.  *E.g., Lane*, 696 F.3d at 819-21.  Here, its

26   potential use is unobjectionable.  Only small residual sums would ever go to the *Cy Pres* Recipients, and

27   only after reasonable efforts to redistribute residual sums to Settlement Class Members not already

28   receiving 100% of any Amount Allegedly Withheld.  (ECF No. 273 Ex. 1, ¶ 2.5.1o.)

1     Mr. Isaac's objections also should be overruled.  *See, e.g.*, *In re Easysaver Rewards Litig.*, 906 F.3d

2  747, 761 (9th Cir. 2018) (affirming district court's decision insofar as it rejected *cy pres*-related objection,

3  and noting that "district court was under no obligation to adopt a distribution approach that might

4  overcompensate claimants"; court also noted that further distribution would at best result in further *de*

5  *minimis* compensation, especially after the administrative costs that would be incurred).

6         **4.     Cappel objection**

7     Finally, George Cappel states that Google ought to be ordered "to re-instate all cancelled

8  accounts unless there was a criminal or other serious threat."  (Lopez Final Appr. Decl. Ex. D (emphasis

9  omitted).)  (Notably, this suit did not seek such relief.)  Additionally, he states that the "Settlement

10 Agreement should . . . order Google to have a fair appeal process and not be allowed to arbitrarily cancel

11 accounts without providing proof of the invalid activity or show cause."  (*Id.* (emphasis omitted).)

12    Mr. Cappel wishes for what he considers to be better settlement terms.  (In fact, Mr. Cappel's

13 suggestions may be wishes but not actual objections to the Settlement.  (*See id.*).)  But again, the desire

14 for what might be better terms in his view is no reason to reject this fair, reasonable, and hard-won

15 Settlement.  *E.g.*, *Roberts*, 2018 WL 510286, at *11-13; *Mendoza*, 2017 WL 342059, at *8.  Therefore, if

16 Mr. Cappel's statements are actually objections, they should also be overruled.

17         **5.     Other submittals made via the objections portal**

18    As stated above, there were an additional 14 "objections" submitted by Settlement Class

19 Members to the Settlement Administrator.  (Pinkerton Decl. ¶ 42.)  Each should be overruled as well

20 because none raises any sort of actual objection to the Settlement or any aspect of it.  (*See id.*)

21              **IV.    CONCLUSION**

22    For all of the foregoing reasons, Plaintiffs respectfully ask that the Court grant final approval of

23 the Parties' Settlement, and that it also grant the further relief requested herein.  Plaintiffs present a

24 proposed form of order and judgment with the instant motion.

25

26

27

28

DATED:  January 24, 2019

HAGENS BERMAN SOBOL SHAPIRO LLP

By     _/s/ Steve W. Berman_
     Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
1301 Second Ave., Ste. 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

*Class Counsel*