**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FREE RANGE CONTENT, INC., et al., | Case No. 14-cv-02329-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING PLAINTIFFS' MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES, AND COSTS AND EXPENSES** |
| GOOGLE, LLC, | |
| Defendant. | |
| | [Re: ECF 258, 276] |

On February 7, 2019, the Court heard (1) Plaintiffs' Motion for Final Approval of Settlement (ECF 276), and (2) Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses (ECF 258). For the reasons discussed below and those stated on the record at the hearing on the motions, the motions are GRANTED.

## I.  BACKGROUND

Plaintiffs are former ad publishers on Defendant Google, LLC's ("Google") AdSense advertising program. Third Am. Compl. ("TAC") ¶¶ 51, 58, 66, 70, 74, 76, 79, 86, 88, 91, ECF 92. As part of the AdSense program, known as the AdSense for Content service, the ad publishers host advertisements on their websites, and when visitors to the sites click on or interact with the ads, the publishers can receive a majority of the fees the advertisers pay to Google. TAC ¶¶ 1, 19, 23. To participate in the program, Plaintiffs and other AdSense publishers signed two contracts for the U.S., its territories, or Canada in the relevant period: (1) terms and conditions applicable at the inception of the class period, May 20, 2010, through April 22, 2013 (earlier-effective contract) ("terms and conditions"); and (2) terms of service applicable from April 23, 2013, through the present (latter-effective contract) ("terms of service") (collectively, "Terms"). TAC ¶¶ 23, 25, 27–

29 & Exs. A & B.  The terms of these two contracts were substantially similar in all material respects, except as discussed below with respect to class certification.

Plaintiffs were AdSense publishers subject to either the U.S. or Canada AdSense Terms. TAC ¶¶ 9, 17.  At some point during the relevant period, Google terminated each Plaintiff's AdSense account for alleged breach of the AdSense Terms.  TAC ¶¶ 51, 58, 66, 70, 74, 76, 79, 86, 88, 91.  On the respective dates of termination of each account, Google owed each Plaintiff certain unpaid earnings, which Google refused to pay to Plaintiffs based on each Plaintiff's purported violation of the Terms.  *See, e.g.*, TAC ¶¶ 61, 72, 81, 94.  Plaintiffs allege that Google had a uniform practice or policy of withholding 100% unpaid earnings from ad publishers for supposed breaches of the Terms.  TAC ¶¶ 30–34.

Because they never received their full earnings, Plaintiffs bring this putative class action law suit, asserting claims individually and on behalf of other former AdSense publishers whose accounts were subject to the Terms and whose accounts Google disabled or terminated without paying them their full earnings.  TAC ¶ 115.  Based on Google's actions, Plaintiffs brought the following claims: (1) violation of Cal. Civil Code § 1671(b), challenging the Terms' liquidated damages clause; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) violation of California's Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200, *et seq.*; and (6) & (7) requests for declaratory relief.  TAC ¶¶ 125–85.

This litigation has a long history.  Plaintiffs filed their complaint on May 20, 2014. Plaintiffs have twice amended their complaint: first, in response to a motion to dismiss by Google, and second, in response to a Court order granting Google's second motion to dismiss as to all claims, with leave to amend for most.  *See* ECF Nos. 21, 27, 38, 66, 73.  Plaintiffs then moved for reconsideration of the Court's order dismissing their liquidated damages claim.  ECF 75.  The Court granted leave to file a motion for reconsideration, ECF 81, and after full briefing and a hearing, the Court granted the motion for reconsideration, allowing Plaintiff to file a third amended complaint including the liquidated damages claim, ECF 91.  Google again moved to dismiss, which the Court granted in part and denied in part.  ECF 116.  Google answered the Third Amended Complaint on June 3, 2016, more than two years after the lawsuit's inception.  ECF 120.

The parties then engaged in substantial discovery, including numerous requests for production and interrogatories and their responses, as well as depositions. Lopez Prelim Appr. Decl. ¶¶ 3, 5, ECF 246. Following discovery, Plaintiffs moved for class certification on March 10, 2017. ECF Nos. 160–66. After extensive briefing and a hearing on the motion, the Court granted in part and denied in part Plaintiffs' motion to certify the class. ECF 234. The certified class was defined as follows:

> All former or current Google AdSense publishers: (1) whose AdSense accounts were subject to Google's terms of service for the United States; (2) whose AdSense account Google disabled or terminated for any breach of contract, including policy violations or invalid activity, on any date between and including April 23, 2013, and the date of judgment in this matter; (3) whose last AdSense program earnings or unpaid amounts Google withheld in their entirety, and permanently, in connection with such disablement or termination; and (4) who submitted a written notice of dispute to Google within 30 days of notice from Google of withholding from their AdSense publishers' accounts.

ECF 234 at 33–34. The certified question concerned only Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing ("GFFD"). Id. at 34. The Court declined to include in the certified class (1) publishers who were terminated based on the earlier-effective Terms and Conditions, because of differing language between the Terms and Conditions and Terms of Service that was material to the GFFD claim, and (2) publishers who had not submitted written notice, because of a private statute of limitations issue. See ECF 116 at 18–21, 24–25. After the order issued, the parties continued discovery and prepared for summary judgment and trial, which was scheduled for March 2018. Lopez Prelim. Appr. Decl. ¶ 5; ECF Nos. 115, 226, 228–31.

Concurrently with the briefing on class certification, the parties engaged in mediation and settlement discussions. On May 15, 2017, the parties attended an in-person mediation but did not settle. Lopez Prelim. Appr. Decl. ¶ 4. After the Court certified the class, the parties continued their negotiations. Id. ¶ 5. On September 14, 2017, the parties agreed to a mediator's proposal. Id. ¶ 6. The settlement was finalized on March 1, 2018. Id. ¶ 7.

On June 8, 2018, the Court granted Plaintiffs' motion for preliminary approval of class action settlement and set a fairness hearing for October 17, 2018, which was later moved to

3

February 7, 2018. *See* ECF 254. On October 5, 2018, the Court granted the parties' joint request to replace the settlement agreement included in the preliminary approval with a modified agreement ("Amended Agreement"). ECF 274.

The Amended Agreement defines the "Settlement Class" as follows:

> [A]ll persons or entities Google's records indicate are located within the United States, American Samoa, Puerto Rico, the United States Minor Outlying Islands, the U.S. Virgin Islands, or Canada, whose AdSense account Google disabled or terminated on any date between May 20, 2010 and the date the Court grants Preliminary Approval of this Settlement, and whose last AdSense unpaid amounts Google withheld in their entirety, and permanently, on any date between May 20, 2010 and the date the Court grants Preliminary Approval of this Settlement in connection with such disablement or termination, and where the sum withheld totals $10 or more.

Am. Agreement ¶ 1.43, ECF 273-1. The $10 minimum reflects Google's lowest purported payment threshold under the Terms—that is, the minimum earnings required for Google to issue payment to the publisher. *See* ECF 92, Ex. A ¶ 5 & Ex. B ¶ 11. In contrast to the certified class, but in conformance with the class proposed in the Third Amended Complaint, the Settlement Class includes publishers in the U.S. territories and Canada, those who did not file notices of dispute, and those who were terminated under the earlier-effective Terms and Conditions. The final Settlement Class includes 200,541 members, each of whom had a 60-day claims period. Pinkerton Decl. ¶¶ 5–8, 31, ECF 278; Lopez Final Appr. Decl. ¶ 2, ECF 277.

Under the Amended Agreement, Google has agreed to provide a Settlement Fund in the amount of $11 million. Am. Agreement ¶¶ 1.46, 2.1–2.2. Based on Google's calculations, the total amount of money allegedly withheld from members of the Settlement Class was $133 million. Lopez Final Appr. Decl. ¶ 3. Of the $11 million, the Settlement Class will receive what remains after subtracting the cost of notice and administration by the Settlement Administrator; attorneys' fees, costs, and expenses; and class representatives' service awards. Am. Agreement ¶ 1.21.

The Amended Agreement contemplates a process for direct payments to the Class members. First, Class members needed to submit within the 60-day class period claims for the

4

amount allegedly withheld from them via a simple claim form. *Id.* ¶¶ 1.4, 1.6, 3.1–3.2.2; Garr Decl., Ex. F, ECF 247-6. Given the Court's previous statute of limitations ruling, the Settlement Agreement contained provisions for determining whether the member had submitted to Google a timely notice of dispute. Am. Agreement ¶¶ 3.1.2, 3.3; Lopez Final Appr. Decl. ¶ 5. Second, based on the total sum of the claimed amounts allegedly withheld, the Amended Agreement contemplated choosing one of three "Settlement Scenarios." Am. Agreement ¶¶ 2.4.1–2.4.4. Two of those scenarios required the claimants to be categorized into three payment groups, which contemplated varied recovery based on several of the Court's earlier rulings. *Id.* ¶¶ 2.4.3(i)–(iii), 2.4.4; *see* ECF 234 at 33–34; ECF 116 at 18–21, 24.

After payment of the appropriate funds as contemplated by the chosen scenario, any remaining funds were to be distributed to two *Cy Pres* Recipients: Public Counsel and Public Justice Foundation, each of which has national reach and works in consumer protection, including in the Internet arena. Am. Agreement ¶¶ 1.11, 2.4.2, 2.5.1, 2.5.2; Lopez Prelim. Appr. Decl. Exs. D & E. The *Cy Pres* recipients will receive distributions only as to (1) any failed automated clearing house electronic transfer/physical check redistribution funds left over as to Settlement Class Members whose valid claims have been paid at 100%; and (2) any redistribution funds otherwise payable to any Settlement Class Member who chose payment by physical check, but only if the redistribution otherwise payable to those Settlement Class Members would total less than $3.00 apiece. Am. Agreement ¶ 2.5.1.

The Court approved, and the Settlement Administrator and parties complied with, the following notice process, Pinkerton Decl. ¶¶ 18–23: Settlement Class Members were sent direct email notice, with supplemental postcard notice if the email notice was undeliverable and Google knew the Member's physical address. ECF 254 ¶¶ 11–12. A press release was also issued, and a settlement website was created. *Id.* ¶¶ 7, 13–14; Pinkerton Decl. ¶ 9; Garr Prelim. Appr. Decl. ¶¶ 19–20 & Ex. C, ECF 247-3. Finally, the Settlement Administrator effected a CAFA notice. Am. Agreement ¶ 4.8; Pinkerton Decl. ¶ 4. Ultimately, there was no need to use a contemplated digital notice campaign because the direct-notice efforts did not fall below 72%. ECF 254 ¶ 7; Pinkerton Decl. ¶ 24. The email and postcard notice processes are estimated to have reached 80% of the

5

class. Pinkerton Decl. ¶ 24.

9,649 valid claims were submitted, with a total amount allegedly withheld of $20,054,697.93, resulting in Scenario 3 of the Amended Agreement.[1] Pinkerton Decl. ¶¶ 33, 35, 38; Am. Agreement ¶ 2.4.4; Pinkerton Second Suppl. Decl. ¶ 5, ECF 285. Based on the Payment Groups as defined in the Amended Agreement, Am. Agreement ¶¶ 2.4.3(i)–(iii), each group's total members and aggregate amount allegedly withheld was as follows: (1) Group 1—1,947 members for $8,990,232.81; (2) Group 2—3,048 members for $4,250,438.66; and (3) Group 3—4,657 members for $6,814,026.46. Pinkerton Second Suppl. Decl. ¶ 9; Pinkerton Decl. ¶ 35. After subtracting the contemplated costs as described above (*e.g.*, the attorneys' fees award), the Net Settlement Fund is close to $8 million, which is approximately 39.89% of the total amount allegedly withheld from the claimants. *Id.* ¶ 37; Pinkerton Suppl. Decl. ¶ 9, ECF 281; Pinkerton Second Suppl. Decl. ¶ 11. Pursuant to Scenario 3, as set forth in the Amended Agreement, Am. Agreement ¶¶ 2.4.3–2.4.4, the three Groups were set to be paid at a 10/5/3 ratio of percentages, resulting in an aggregated sum of $13,159,660 before pro-rating. Pinkerton Second Suppl. Decl. ¶ 5. After pro-rating, the total proposed payments to each group are as follows: 1,946 payments totaling $5,435,734.54 to Claimants in Payment Group 1; 3,048 payments totaling $1,284,964.78 to Claimants in Payment Group 2; and 4,512 payments totaling $1,235,638.84 to Payment Group 3. Pinkerton Second Suppl. Decl. ¶¶ 12–14.

The email and postcard notices informed Members of the opportunity to opt out through a simple form. Am. Agreement ¶ 5.2.1; Garr Decl., Ex. G, ECF 247-7. 45 settlement members opted out, representing only 0.22% of settlement class members. Pinkerton Decl. ¶ 40 & Ex. J, ECF 278-10. 57 objections were submitted; however, the Settlement Administrator determined that only 18 of these objections were submitted by settlement class members. *Id.* ¶ 42 & Ex. K, ECF 278-11; Lopez Final Appr. Decl., Ex. A ("Melin Obj."), ECF 277-1. The Court reviewed

---

[1] On March 4, 2019, the Settlement Administrator informed the Court that 101 Settlement Class Members had submitted valid claims that were not properly logged in the Administrator's original calculations submitted to the Court in support of the Final Approval motion. ECF 283 ¶¶ 3–5. After input from Google, the Settlement Administrator updated the estimated adjusted amount and proposed total payments for each payment group. ECF 285. This Order reflects these updates.

each of these 18 "objections" and determined that only five such objections can fairly be characterized as objections; the remainder either complain about Google's practices generally; describe the manner in which Google terminated the objectors' accounts; reprint the email the objector received from Google terminating his or her account; seek to provide information about the objector (*e.g.*, AdSense account id number); or say "I don't know." *See* Pinkerton Decl., Ex. K; Pinkerton Suppl. Decl., Ex. B, ECF 281-2.

On February 7, 2019, the Court heard Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses. No objectors appeared at the hearing. The Court indicated on the record that both motions would be granted.

## II.  MOTION FOR FINAL APPROVAL OF SETTLEMENT

In order to grant final approval of the class action settlement, the Court must determine that (1) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A.  The Class Meets the Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

 (1) the class is so numerous that joinder of all members is impracticable;

 (2) there are questions of law or fact common to the class;

 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

 (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule— those designed to protect absentees by blocking unwarranted or overbroad class definitions—

1    demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

2    620 (1997).[2]

3        In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification

4    must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614.  Plaintiffs

5    seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to

6    class members predominate over any questions affecting only individual members" and (2) "a

7    class action is superior to other available methods for fairly and efficiently adjudicating the

8    controversy." Fed. R. Civ. P. 23(b)(3).

9        The Court concluded that these requirements were satisfied when it granted preliminary

10   approval of the class action settlement.  *See* ECF 254.  The Court is not aware of any new facts

11   which would alter that conclusion.  However, the Court reviews the Rule 23 requirements again

12   briefly, as follows.

13       Turning first to the Rule 23(a) prerequisites, the Court has no difficulty concluding that

14   because the class contains 200,541 members, joinder of all class members would be impracticable.

15   *See* Pinkerton Decl. ¶¶ 5–8.  The commonality requirement is met because the key issues in the

16   case are the same for all class members, including whether Google's actions with respect to its

17   uniform withholding practice for terminated accounts violated the law, including the implied

18   covenant of good faith a fair dealing—a question this Court has already found warranted class

19   certification.  *See* ECF 143 at 20–21.  Plaintiffs' claims are typical of those of the class, as they

20   advance the same claims, share identical legal theories, and experienced withholdings of their

21   unpaid earnings when Google terminated their accounts.  *See Hanlon v. Chrysler Corp.*, 150 F.3d

22   1011, 1020 (9th Cir. 1998) (typicality requires only that the claims of the class representatives be

23   "reasonably co-extensive with those of absent class members").  Finally, to determine Plaintiffs'

24   adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel

25   have any conflicts of interest with other class members and (2) will the named plaintiffs and their

26

27   ───────────────

28   [2] Although the Court previously certified a class, the settlement class is broader in several
dimensions, thus the Court has considered the matter without regard to the previously certified
class.

counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest which would preclude Plaintiffs from acting as class representatives. *See* Lopez Prelim. Appr. Decl. ¶¶ 12, 15–16; *see also* ECF 260–63 (class representatives' declarations).

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common questions in this case which would be subject to common proof—including whether Google's actions with respect to its uniform withholding practice for terminated accounts violated the laws, such as the implied covenant of good faith a fair dealing; whether Google had uniform policies or practices with respect to withholding earnings; and whether Class Members gave compensable value by displaying ads—predominate. *See, e.g.*, ECF 234 at 13–14, 27–29. Given that commonality, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate. Plaintiffs Free Range Content, Inc., Coconut Island Software, Inc., Taylor Chose, and Matthew Simpson are hereby appointed as class representatives, and Steve W. Berman and Robert F. Lopez of Hagens Berman Sobol Shapiro LLP are appointed class counsel.

**B.     The Settlement is Fundamentally Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement

is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026–27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors).

### 1. Notice was Adequate

The Court previously approved Plaintiffs' plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* ECF 254. Prior to granting preliminary approval, the Court examined carefully the proposed class notice and notice plan and determined that they complied with Federal Rule of Civil Procedure 23 and Due Process. *Id.* ¶¶ 6–14. Plaintiffs have provided a declaration of the Settlement Administrator describing implementation of the notice plan. *See generally* Pinkerton Decl. The Court has summarized the key portions of that declaration in section I, above. Based on that declaration, it appears that at least approximately 80% of all class members received notice through direct email and postcard notice. *See id.* ¶¶ 12, 24. Moreover, the Settlement Administrator issued a press release and a settlement website was created. *See id.* ¶¶ 4, 9. "[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017). The Court is satisfied that the class members were provided with the best notice practicable under the circumstances, and that such notice was adequate.

### 2. Presumption of Correctness

Before discussing the *Hanlon* factors, the Court notes that "[a] presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT,

2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)). The settlement in this case was the result of arms-length negotiations between experienced counsel with the aid of a respected mediator. *See* Lopez Prelim. Appr. Decl. ¶¶ 4–8. Moreover, the parties conducted extensive discovery prior to settling. *Id.* ¶¶ 3, 5.

The Court therefore concludes that on this record a presumption of correctness applies to the class action settlement.

### 3. *Hanlon* Factors

Turning to the *Hanlon* factors, the Court first considers the strength of Plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery (factor 1). While Plaintiffs' claims certainly appear viable on their face, Google raised a variety of defenses, including that it had the contractual right to withhold at least some of the funds; that the amounts allegedly withheld were not the appropriate metric because they did not account for funds withheld for direct violations of the Terms, *see, e.g.*, ECF 176-50 at 7–8; and that Plaintiffs had not substantially performed by merely hosting a website that attracts clicks, *see* ECF 234 at 29 n.4. *See* Final Appr. Mot. at 14–15; Lopez. Prelim. Appr. Decl. ¶¶ 18–21. Likewise, Plaintiffs were aware that they might face a class decertification motion if Google could prove it was entitled to offsets from the amounts withheld. Lopez. Prelim. Appr. Decl. ¶ 20. With respect to the risk, expense, complexity, and duration of litigation (factor 2), Plaintiffs faced significant hurdles, including defense motions to dismiss and oppositions to an important motion for reconsideration and to class certification. Moving forward, they likely would have faced a defense motion for summary judgment, and perhaps a defense motion for class decertification. As such, the risk of maintaining class action status at trial was high (factor 3). *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

The settlement recovery of $11,000,000 is significant given the size of the class (~200,000 class members) (factor 4). Under the terms of the Agreement, class members with the strongest legal claims will receive the greatest recovery, and those whose claims the Court previously questioned or rejected will still receive a meaningful percentage of their claimed amounts. *See* Am. Agreement ¶ 2.4; *see also* Final Appr. Mot. at 15–16. Given those figures, the recovery

obtained under this settlement is significant.

Substantial formal discovery had been completed at the time of settlement, and the case is at an advanced stage, with summary judgment and trial on the imminent horizon (factor 5). Through discovery, Plaintiffs have gathered significant information about Google's relevant practices; "[s]uch information places the Plaintiff Class in a position to make an informed decision about settlement." *Lane v. Facebook, Inc.*, No. C 08-3845-RS, 2010 WL 9013059, at *5 (N.D. Cal. Mar. 17, 2010), *aff'd*, 696 F.3d 811 (9th Cir. 2012). Given this extensive discovery, as well as the substantial motions practice, the Court is satisfied that the parties are sufficiently familiar with the issues in the case to have informed opinions regarding its strengths and weaknesses (factor 6). Class Counsel have extensive experience in litigation of consumer and commercial class actions, and Google is represented by a well-respected law firm. Lopez Prelim. Appr. Decl. ¶¶ 15, 21 & Ex. C. Class counsel's views that the settlement is a good one is entitled to significant weight. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

There is no government participant (factor 7). However, the class reaction to the settlement is favorable (factor 8). There were only 45 opt outs and five true objections, which are discussed below. *See Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections and 500 opt outs of 90,000 notices sent).

Based on the foregoing reasons, and after considering the record as a whole as guided by the *Hanlon* factors, the Court finds that the settlement is fair, adequate, and reasonable.

### C.    Objections

As discussed above, 57 objections were submitted—56 to the Settlement Administrator and one to the Court, which was forwarded to class counsel. Pinkerton Decl. ¶ 42; ECF notice between ECF 256 & 257. The Settlement Administrator determined that only 18 of these objections were submitted by settlement class members. Pinkerton Decl. ¶ 42 & Ex. K. After reviewing these objections, the Court determined that only five objections contained substantive objections to the settlement. The Court discusses each objection in turn.

### 1.    Eric Melin Objection

Settlement Class member Eric Melin is the Founder & CEO of PopuTrust and claims he

has spent "millions on Google AdSense" in his "over 20 years as a digital ad agency." He objects

to the settlement on the following bases: (1) because his AdSense account is "linked to" other

Google accounts, he argues that the settlement "cannot be limited to one AdSense account"; (2)

"each [AdSense account] needs to be handled separately and uniquely for the court to consider

fairly and determine a percentage / accurate number of accounts / replies"; (3) the attorneys' fees

are excessive; and (4) he requests a "list of Non-Profit Organizations and the method by which

determination/selection is made." Lopez Final Appr. Decl., Ex. A ("Melin Obj."), ECF 277-1.

As to the first basis, the scope of the settlement is appropriately limited to the claims at

issue, which are grounded in the Terms for the AdSense program (not any other Google program),

as well as actions Google allegedly took with respect to the AdSense program alone. The

Settlement Class is appropriately limited to persons and entities whose AdSense accounts were

terminated or disabled. *See* Am. Agreement ¶ 1.41.

His next basis amounts to an argument that the Court needed to consider each Class

Member's account individually—that is, that class-wide resolution is inappropriate. But the Court

has found that class certification is appropriate here, including finding that there are questions of

law or fact common to the class, that those questions predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy. *See* Fed. Rule Civ. Proc. 23(a)–(b). Moreover, the

results are fair, adequate, and reasonable. *See* Fed. Rule Civ. Proc. 23(e). "[T]here is a strong

judicial policy that favors settlements, particularly where complex class action litigation is

concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted). Though this

policy is weighed against the "due process concerns for absent class members," the Settlement

here has taken into account the varied interests of class members, namely by categorizing the

accounts into different Class groups and awarding recovery based on the likelihood of success on

the merits for each group in accordance with the Court's previous rulings. Am. Agreement ¶¶

2.4.3(i)–(iii), 2.4.4; *see* ECF 234 at 33–34; ECF 116 at 18–21, 24. To the extent Mr. Melin is

upset with his recovery amount, "it is the nature of a settlement, as a highly negotiated

compromise . . . that '[i]t may be unavoidable that some class members will always be happier

with a given result than others.'" *Allen*, 787 F.3d at 1223 (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982)). Given these considerations, class-wide resolution of these claims and the recovery achieved for each class member is appropriate here.

Third, Mr. Melin challenges the attorneys' fees as excessive. As discussed in more detail below, the attorneys' fees awarded in this case (25% of the total recovery, or $2.75 million) are reasonable and comparable to other awards in similar common fund cases. *See* ECF 384, *In re Google AdWords Litig.*, No. 5:08-cv-03369-EJD (N.D. Cal. Aug. 7, 2017) (27%); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1128, 1132 (N.D. Cal. 2015) (25%). Plaintiffs' attorneys have worked diligently for a substantial amount of time, including several rounds of amended pleadings and motions to dismiss, discovery, and negotiations. There is also no evidence that through this award, the attorneys seek to somehow undermine the rights of the class for their own benefit. *Cf. Allen*, 787 F.3d at 1224 ("[W]e require district courts to look for 'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations.'" (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (alteration in original)). Thus, the attorneys' fees are not excessive.

Finally, though Mr. Melin does not appear to have the name of the *Cy Pres* recipients, these recipients were included in the Amended Agreement included in the notice. Am. Agreement ¶ 1.11. Moreover, each *Cy Pres* recipient is well-regarded and works in fields relevant to this litigation, namely consumer protection and the Internet. Am. Agreement ¶¶ 1.11, 2.4.2, 2.5.1, 2.5.2; Lopez Prelim. Appr. Decl. ¶ 11, Exs. D & E. Plaintiffs' counsel avers that there is no known connection between the recipients and counsel. Lopez Final Appr. Decl. ¶ 9. Here, the *Cy Pres* remedy "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane*, 696 F.3d at 819–20 (citation omitted) (alteration in original). Ultimately, courts "do not require as part of that doctrine that settling parties select a *cy pres* recipient that the court or class members would find ideal." *Id.*

For these reasons, Mr. Melin's objection is OVERRULED.

### 2. George Dodaj Objection

The next objection comes from George Dodaj. Mr. Dodaj objects on the following grounds: (1) "$11,000,000 appears incredibly low; (2) "[a] fair settlement would be for Google to simply release the funds and pay interest on them," such that the Class members would be "fully compensate[d] for their losses"; and (3) the provision of attorneys' fees, where the claimants get only "a few dollars" is unfair. Lopez Final Appr. Decl., Ex. B, ECF 277-2.

The Court has already addressed the third argument for excessive attorney fees. Taking the other two objections together, $11,000,000 represents a substantial recovery in light of the many difficulties and risks in litigating this case through trial and subsequent appeal. *See* Lopez Prelim. Appr. Decl. ¶¶ 16–21. At the time the parties settled, the Court had already dismissed several of Plaintiffs' theories of liability and issued several rulings against Plaintiffs, and Plaintiffs faced the serious risk of Google eventually moving for class decertification. Given that any individual attempting to bring these claims (as well as the class as a whole) would face a steep uphill battle, a net settlement fund that is approximately 39.89% of the total amount withheld from claimants is significant. *See* Pinkerton Decl. ¶¶ 35–38. Of course, every litigant hopes to recover the full amount of his losses, but the very nature of a settlement is that the parties must compromise and accept less than a full recovery, in exchange for no longer facing the risk of losing on the merits and losing any chance of recovery. *See Allen*, 787 F.3d at 1223; *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

For these reasons, Mr. Dodaj's objection is OVERRULED.

### 3. Paul Isaac Objection

Paul Isaac objects to (1) his damages being limited to just the "amount withheld" and asks to "recover the damages [he's] suffered, in totality"; and (2) any *Cy Pres* recipients receiving money. Lopez Final Appr. Decl., Ex. C, ECF 277-3. As to the former, the Court has already rejected the objection that 100% recovery is warranted, given the costs and risks of continued litigation and the nature of settlements generally. As to the *Cy Pres* recipients, the Court is satisfied that they will receive only minimal, residual sums of money where such awards cannot

be effectively distributed to members of the Class. *See* Am. Agreement ¶ 2.5.1. The Ninth Circuit has approved of a *Cy Pres* remedy where it "provide[s] the next best distribution absent a direct monetary payment to absent class members" and "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane*, 696 F.3d at 819–20 (citation omitted). Those requirements are satisfied here.

For these reasons, Mr. Isaac's objection is OVERRULED.

### 4. George Cappel Objection

George Cappel objects to the settlement, arguing that "Google should be ordered to re-instate all cancelled accounts unless there was a criminal or other serious threat," and that the Settlement Agreement should require "Google to have a fair appeal process and not be allowed to arbitrarily cancel accounts." Lopez Final Appr. Decl., Ex. D, ECF 277-4. As discussed above, the desire for better terms under the Settlement is not a persuasive objection, as long as the settlement is fair, adequate, and reasonable. *See Allen*, 787 F.3d at 1223; *Hanlon*, 150 F.3d at 1027; *see also Roberts v. Marshalls of CA, LLC*, No. 13-CV-04731-MEJ, 2018 WL 510286, at *13 (N.D. Cal. Jan. 23, 2018). Such is the result here. Mr. Cappel's objection is OVERRULED.

### 5. Ramon Ascanio Objection

The Plaintiffs do not include Ramon Ascanio in their list of substantive objections, but for comprehensiveness, the Court includes Mr. Ascanio, who objects that he had unpaid amounts in his account and he "would like google to pay [him] the amount owed after the ban thay [sic] didn't pay me." Pinkerton Suppl. Decl., Ex. B. This objection, like several of the others, requests 100% recovery, which is neither necessary nor contemplated by the practice of settling cases. *See Allen*, 787 F.3d at 1223; *Hanlon*, 150 F.3d at 1027. Mr. Ascanio's objection is similarly OVERRULED.

* * *

Accordingly, the five objections to final approval of the settlement are OVERRULED.

### D. CONCLUSION

For the foregoing reasons, and after considering the record as a whole (including the five substantive objections) as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the

settlement is fair, adequate and reasonable.

Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

### III.    MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES, AND COSTS AND EXPENSES

Plaintiffs seek an award of attorneys' fees totaling $2.75 million, reimbursement of litigation costs and expenses in the amount of $116,045, and a service award of $5,000 for each named plaintiff. The Court also considers the reasonableness of the Settlement Administrator's requested costs.

### A.    Attorneys' Fees and Expenses

#### 1.    Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Id.* Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made

in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Plaintiffs seek an award of attorneys' fees totaling $2.75 million, which represents 25% of the $11 million gross Settlement Fund, as well as litigation expenses and costs in the amount of $116,045.

Addressing expenses first, the Court has no hesitation in approving an award in the

requested amount of $116,045. Class Counsel have submitted an itemized list of expenses by category of expense. *See* Lopez Fees Decl. ¶ 29 & Ex. D, ECF 259, 259-4; Paris Fees Decl. ¶ 7 & Ex. 3, ECF 267, 267-3. The Court has reviewed the list and finds the expenses to be reasonable.

The Court likewise is satisfied that the request for attorneys' fees is reasonable. Using the percentage-of-recovery method, the Court starts at the 25% benchmark. *See Bluetooth*, 654 at 942. Plaintiffs request 25%, given the exceptional results achieved, the risk of litigation, the fine quality of Class Counsel's work, and the contingent nature of the fee. Courts have awarded comparable percentages in similar cases. *See* ECF 384, *In re Google AdWords Litig.*, No. 5:08-cv-03369-EJD (N.D. Cal. Aug. 7, 2017) (27%); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d at 1128, 1132 (25%). A lodestar cross-check confirms the reasonableness of the requested fees, which amounts to a 1.21 multiplier of the lodestar. *See* Lopez Fees Decl. ¶ 9 & Ex. C. "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases*." Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169-BTM, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015); *see also Petersen v. CJ Am., Inc.*, No. 14-CV-2570-DMS, 2016 WL 5719823, at *1 (S.D. Cal. Sept. 30, 2016) (awarding 1.12 multiplier and recognizing that "the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"). Thus, a multiplier of 1.21 is within the range of reasonableness.

Plaintiffs' motion for attorneys' fees and expenses is GRANTED. Plaintiff is awarded expenses in the amount of $116,045 and attorneys' fees in the amount of $2.75 million.

## B. Incentive Award

The class representatives request incentive awards in the amount of $5,000. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). $5,000 service awards are presumptively reasonable in this judicial district. *See, e.g.*, *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-

02970-EMC2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015). The class representatives'
participation in this case was substantial and was essential to obtaining the considerable monetary
recovery which will be enjoyed by each class member. *See* Lopez Fees Decl. ¶ 3. *See generally*
ECF 260–63 (class representatives' declarations). Given the amount of work the representatives
put into the case and the success of the recovery, an incentive award in the amount of $5,000 is
proportional to the class members' recoveries. *See Willner v. Manpower Inc.*, No. 11-CV-02846-
JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (district court must "consider the
proportionality between the incentive payment and the range of class members' settlement
awards."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (approving
$5,000 incentive awards where individual class members each received $12).

The Court concludes that the requested $5,000 incentive award is appropriate in this case.

### C.   Settlement Administrator Costs

The Court also holds that it is appropriate to award the Settlement Administrator its costs.
The Amended Agreement contemplates that the "Parties will obtain from the Settlement
Administrator its best estimate of such administrative costs, which shall then be set aside from the
Settlement Fund." Am. Agreement § 4.10, 4.1.4. At the time Plaintiffs moved for preliminary
approval motion, the Settlement Administrator estimated these costs would equal approximately
$102,150 if digital notice were required and $88,340 if no digital notice were required. Lopez
Prelim Appr. Decl. ¶ 14. As of January 23, 2019, the Settlement Administrator had invoiced
$97,616.84 through November 2018. Pinkerton Decl. ¶ 37. As of February 15, 2019, the
Settlement Administrator estimates the total cost of administering the settlement will be
$157,616.84, an amount which the Settlement Administrator agrees not to exceed. Pinkerton
Suppl. Decl. ¶ 8; Pinkerton Second Suppl. Decl. ¶ 11.

The Settlement Administrator has provided the Court with a detailed explanation of the
factors contributing to the added costs of claims administration. *See* Pinkerton Suppl. Decl. ¶¶ 3–
9. Mr. Pinkerton explains that the claims process was more complex, more time consuming, and
involved a significantly higher volume of settlement class member communications than
anticipated. Further, discovery of additional class members over an extended claims period added

to the costs. *Id.*

Accordingly, the Court approves Settlement Administrator Costs in an amount not to exceed $157,616.84. If the Settlement Administrator does not reach this cap, the excess funds shall be distributed to the class claimants according to the provisions of the Agreement if practicable, or such residual funds shall be distributed through *Cy Pres*.

## IV.  ORDER

For the reasons discussed above,

(1)     Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED; and

(2)     Plaintiffs' Motion for Service Awards, Attorneys' Fees, and Costs and Expenses is GRANTED. Plaintiffs are awarded attorneys' fees in the amount of $2.75 million, costs and expenses in the amount of $116,045, and service awards in the amount of $5,000 per class representative.

(3)     The Settlement Administrator costs are APPROVED in an amount not to exceed $157,616.84.

Without affecting the finality of this Order and accompanying Judgment in any way, the Court retains jurisdiction over (1) implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties pursuant to the Settlement Agreement has been performed; (2) any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Settlement Agreement; and (3) all parties to this action and Settlement class members for the purpose of implementing and enforcing the Settlement Agreement. Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements. The parties must seek approval from the Court for any *Cy Pres* distributions.

///

///

///

**IT IS SO ORDERED.**

Dated: March 21, 2019

_____
BETH LABSON FREEMAN
United States District Judge